Hearing Book
Exhibits for Damages
Assessment Hearing
*Book 1 of 2 *

This book contains
tabs 1 thru 12
as listed in the
Table of Contents

IN THE SUPREME COURT OF NOVA SCOTIA
I hereby certify that the foregoing document
is a true copy of the original.
Dated 12 day of April 2012

Prothonotary

Elaine L. d'Entremont
Prothonotary

EXHIBIT

"6"

**Charles Leary, Vaughn Perret, & Trout Point Lodge, Limited versus Doug Handshoe**

Exhibits for Damages Assessment Hearing – Honourable Justice Suzanne Hood

HEARING BOOK
TABLE OF CONTENTS

Tab                          Document
1.  Decision: **Jones v. Tsige 2012 ON CA 32**: "intrusion upon seclusion"
2.  Summary of recent Canada case law on permanent injunction in defamation cases
3.  Table of defendant's publications January, 2010 to January, 2012
4.  Notice to Defendant of damages assessment hearing: FedEx, email, fax
5.  The position and standing of the plaintiffs: Press Releases from NGS; article from Ashoka Foundation; article from Chronicle-Herald
6.  Relevant United States criminal laws plus comment from "sharkpuppet"
7.  Who is Handshoe and the extent & distribution of Slabbed
8.  Slabbed Internet prominence, use of tags, manipulation of key words
9.  Slabbed.org: false misrepresentation of "organization" status and solicitation of donations
10. Tagged posts on slabbed: Charles Leary, Vaughn Perret, etc.
11. Representative examples of the Defendant's activities/publications since being served with Notice on January 13, 2012
12. Images & visual depictions
13. Harassing/defamatory emails to Charles Leary and journalists
14. Specific threats & intimidation, and examples of lies—comportment of defendant
15. Publications across the Internet
16. U.S. Legal proceeding documents-- **U.S.A. v. Karen Parker** and **Louisiana (Ethics Board) v. Broussard**—as well as May, 2010 letter of Roy d'Aquila
17. List of allegations published on Slabbed of criminal offences, moral laxities, and ethical lapses
18  Documents related to copyright

CITATION: Jones v. Tsige, 2012 ONCA 32
DATE: 20120118
DOCKET: C53577

## COURT OF APPEAL FOR ONTARIO

Winkler C.J.O., Sharpe J.A. & Cunningham A.C.J. (*ad hoc*)

BETWEEN

Sandra Jones

Plaintiff (Appellant)

and

Winnie Tsige

Defendant (Respondent)

Christopher Du Vernet and Carlin McGoogan, for the appellant

Alex Cameron and N. Melanson, for the respondent

Heard: September 29, 2011

On appeal from the judgment of Justice Kevin M.V. Whitaker of the Superior Court of Justice dated March 23, 2011, with reasons reported at 2011 ONSC 1475, 333 D.L.R. (4th) 566.

**Sharpe J.A.:**

[1]    Does Ontario law recognize a right to bring a civil action for damages for the invasion of personal privacy?

2012 ONCA 32 (CanLII)

[2]    In July 2009, the appellant, Sandra Jones, discovered that the respondent, Winnie Tsige, had been surreptitiously looking at Jones' banking records. Tsige and Jones did not know each other despite the fact that they both worked for the same bank and Tsige had formed a common-law relationship with Jones' former husband. As a bank employee, Tsige had full access to Jones' banking information and, contrary to the bank's policy, looked into Jones' banking records at least 174 times over a period of four years.

[3]    The central issue on this appeal is whether the motion judge erred by granting summary judgment and dismissing Jones' claim for damages on the ground that Ontario law does not recognize the tort of breach of privacy.

**FACTS**

[4]    Jones and Tsige worked at different branches of the Bank of Montreal ("BMO"). Jones maintains her primary bank account there. Jones and Tsige did not know or work with each other. However, Tsige became involved in a relationship with Jones' former husband. For about four years, Tsige used her workplace computer to access Jones' personal BMO bank accounts at least 174 times. The information displayed included transactions details, as well as personal information such as date of birth, marital status and address. Tsige did not publish, distribute or record the information in any way.

[5]    Jones became suspicious that Tsige was accessing her account and complained to BMO. When confronted by BMO, Tsige admitted that she had looked at Jones' banking information, that she had no legitimate reason for viewing the information and that she

understood it was contrary to BMO's Code of Business Conduct and Ethics and her professional responsibility. Tsige explained then, and maintains in this action, that she was involved in a financial dispute with the appellant's former husband and accessed the accounts to confirm whether he was paying child support to the appellant. Jones does not accept that explanation as she says it is inconsistent with the timing and frequency of Tsige's snooping.

[6]    Tsige has apologized for her actions and insists that she has ceased looking at Jones' banking information. Tsige is contrite and embarrassed by her actions. BMO disciplined Tsige by suspending her for one week without pay and denying her a bonus.

[7]    In her statement of claim, Jones asserts that her privacy interest in her confidential banking information has been "irreversibly destroyed" and claims damages of $70,000 for invasion of privacy and breach of fiduciary duty, and punitive and exemplary damages of $20,000.

## 1. Motions for summary judgment

[8]    Jones proceeded under the simplified procedure of Rule 76 of the *Rules of Civil Procedure,* R.R.O. 1990, Reg. 194, and moved for summary judgment. Tsige brought a cross-motion for summary judgment to dismiss the action.

[9]    The motion judge found that Tsige did not owe Jones a fiduciary obligation and dismissed that claim. Jones has not appealed that finding.

2012 ONCA 32 (CanLII)

[10]   The motion judge then reviewed the jurisprudence concerning the existence of a tort of invasion of privacy. He observed that recent Superior Court decisions have refused to strike out such claims at the pleading stage and that some academic writing indicates that that the tort may exist.

[11]   The motion judge concluded, however, that the statement of Cronk J.A. in *Euteneier v. Lee* (2005), 77 O.R. (3d) 621 (C.A.), leave to appeal refused, [2005] S.C.C.A. No. 516, at para. 63, is, in his words, "binding and dispositive of the question" of whether the tort of invasion of privacy exists at common law in Ontario. *Euteneier* concerned a lawsuit brought by a woman whose clothes were forcibly removed by police following her suicide attempt while she was detained in a holding cell. In considering whether the trial judge had accurately described the plaintiff's privacy and dignity interests, Cronk J.A. observed, at para. 63, "[the plaintiff] properly conceded in oral argument before this court that there is no 'free-standing' right to dignity or privacy under the *Charter* or at common law."

[12]   The motion judge added that given the existence of privacy legislation protecting certain rights, any expansion of those rights should be dealt with by statute rather than common law.

[13]   The motion judge dismissed Jones' motion for summary judgment and granted the motion brought by Tsige. He rejected Jones' submission that costs should be denied on the ground that the issue was novel and that Tsige's conduct was objectionable. The

2012 ONCA 32 (CanLII)

Page: 5

motion judge felt that Jones had pursued the litigation aggressively and failed to accept reasonable settlement offers. He awarded costs fixed at $35,000.

**ISSUES**

[14]   Jones appeals to this court, raising the following issues:

1. Did the motion judge err in holding that Ontario law does not recognize a cause of action for invasion of privacy?

2. Did the motion judge err with respect to costs?

**ANALYSIS**

**Issue 1. Does Ontario law recognize a cause of action for invasion of privacy?**

**a) Introduction**

[15]   The question of whether the common law should recognize a cause of action in tort for invasion of privacy has been debated for the past one hundred and twenty years. Aspects of privacy have long been protected by causes of action such as breach of confidence, defamation, breach of copyright, nuisance, and various property rights. Although the individual's privacy interest is a fundamental value underlying such claims, the recognition of a distinct right of action for breach of privacy remains uncertain. As Adams J. stated in *Ontario (Attorney General) v. Dieleman* (1994), 117 D.L.R. (4th) 449 (Ont. Gen. Div.) at p. 688, after a comprehensive review of the case law, "invasion of privacy in Canadian common law continues to be an inceptive, if not ephemeral, legal concept, primarily operating to extend the margins of existing tort doctrine."

2012 ONCA 32 (CanLII)

[16]   Canadian, English and American courts and commentators almost invariably take the seminal articles of S.D. Warren & L.D. Brandeis, "The Right to Privacy" (1890) 4 Harv. L. R. 193 and William L. Prosser, "Privacy" (1960), 48 Cal. L. R. 383 as their starting point.

[17]   Warren and Brandeis argued for the recognition of a right of privacy to meet the problems posed by technological and social change that saw "instantaneous photographs" and "newspaper enterprise" invade "the sacred precincts of private life" (at p. 195). They identified the "general right of the individual to be let alone", the right to "inviolate personality" (at p. 205), "the more general right to the immunity of the person" and "the right to one's personality" (at p. 207) as fundamental values underlying such well-known causes of action as breach of confidence, defamation and breach of copyright. They urged that open recognition of a right of privacy was well-supported by these underlying legal values and required to meet the changing demands of the society in which they lived.

[18]   Professor Prosser's article picked up the threads of the American jurisprudence that had developed in the seventy years following the influential Warren and Brandeis article. Prosser argued that what had emerged from the hundreds of cases he canvassed was not one tort, but four, tied together by a common theme and name, but comprising different elements and protecting different interests. Prosser delineated a four-tort catalogue, summarized as follows, at p. 389:

> 1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.

2. Public disclosure of embarrassing private facts about the plaintiff.

3. Publicity which places the plaintiff in a false light in the public eye.

4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

[19]   Most American jurisdictions now accept Prosser's classification and it has also been adopted by the *Restatement (Second) of Torts* (2010). The tort that is most relevant to this case, the tort of "intrusion upon seclusion", is described by the *Restatement*, at § 652B as:

> One who intentionally intrudes, physically or otherwise, upon the seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the invasion would be highly offensive to a reasonable person.

[20]   The comment section of the *Restatement* elaborates this proposition and explains that the tort includes physical intrusions into private places as well as listening or looking, with or without mechanical aids, into the plaintiff's private affairs. Of particular relevance to this appeal, is the observation that other non-physical forms of investigation or examination into private concerns may be actionable. These include opening private and personal mail or examining a private bank account, "even though there is no publication or other use of any kind" of the information obtained.

[21]   If Jones has a right of action, it falls into Prosser's first category of intrusion upon seclusion. While I will make some reference to the fourth category of appropriation of the plaintiff's name or likeness in my discussion below, I will focus primarily on intrusion

2012 ONCA 32 (CanLII)

upon seclusion. I do so for two reasons. First, I accept Prosser's insight that the general right to privacy embraces four distinct torts, each with its own considerations and rules, and that confusion may result from a failure to maintain appropriate analytic distinctions between the categories. Second, as a court of law, we should restrict ourselves to the particular issues posed by the facts of the case before us and not attempt to decide more than is strictly necessary to decide that case. A cause of action of any wider breadth would not only over-reach what is necessary to resolve this case, but could also amount to an unmanageable legal proposition that would, as Prosser warned, breed confusion and uncertainty.

[22]   The following discussion will examine whether the common law recognizes a cause of action for invasion of privacy. I will canvass case law from Ontario and other provinces and examine federal and provincial legislation relating to privacy. For completeness, I will also discuss the state of the law in foreign jurisdictions.

**b) Case law**

[23]   Reflecting on Canadian jurisprudence, Allen M. Linden and Bruce Feldthusen, *Canadian Tort Law,* 9th ed. (Toronto: LexisNexis, 2011) observed at p. 59, that "[w]e seem to be drifting closer to the American model." See also Colin H.H. McNairn and Alexander K. Scott, *Privacy Law in Canada* (Toronto: Butterworths, 2001) at ch. 3; Barbara McIsaac, Rick Shields and Kris Klein, *The Law of Privacy in Canada,* looseleaf (Toronto: Carswell, 2000) at 2.4; Philip Osborne, *The Law of Torts,* 4th ed. (Toronto: Irwin Law, 2011) at pp. 267-71.

2012 ONCA 32 (CanLII)

[24]   My analysis of the case law supports the same conclusion: Ontario has already accepted the existence of a tort claim for appropriation of personality and, at the very least, remains open to the proposition that a tort action will lie for an intrusion upon seclusion.

### i)   Ontario case law

[25]   In Canada, there has been no definitive statement from an appellate court on the issue of whether there is a common law right of action corresponding to the intrusion on seclusion category. Ontario trial judges have, however, often refused to dismiss such claims at the pleading stage as disclosing no cause of action and some have awarded damages for claims based on violations of the right to be free of intrusion upon seclusion. The clear trend in the case law is, at the very least, to leave open the possibility that such a cause of action does exist.

[26]   *Saccone v. Orr* (1981), 34 O.R. (2d) 317 (Co. Ct.), for example, involved the recording of a private conversation without the knowledge or consent of the plaintiff. The recording was then played at a municipal council meeting and a transcript of the conversation published in a local newspaper. Jacob Co. Ct. J. dismissed the defendant's argument against the existence of a tort of invasion of privacy, found in favour of the plaintiff and awarded damages of $500.

[27]   *Roth v. Roth* (1991), 4 O.R. (3d) 740 (Gen. Div) involved interference with the plaintiffs' ability to use and enjoy their cottage property. Mandel J. considered the application of several torts – assault, battery, nuisance and trespass – but found that the

2012 ONCA 32 (CanLII)

cumulative effect of the defendants' actions could best be described as an invasion of privacy. He rejected the contention that the common law did not allow for a claim for invasion of privacy and held, at p. 743, that the common law should not be confined to existing categories but must evolve. In recognizing the right of privacy, Mandel J. quoted a passage from a leading torts text indicating that liability for breach of privacy should only be imposed where the intrusion is substantial and would be regarded as offensive and intolerable to a person of reasonable sensitivity. He then stated, at p. 758, "whether the invasion of privacy of an individual will be actionable will depend on the circumstances of the particular case and the conflicting rights involved."

[28]   A third trial judgment to award damages for breach of privacy falls under Prosser's fourth category of appropriation of the plaintiff's name or likeness. *Athans v. Canadian Adventure Camps Ltd.* (1977), 17 O.R. (2d) 425 (H.C.J.) involved a claim by an expert water-skier against a public relations firm that had copied a distinctive photograph of the plaintiff water skiing. Henry J. relied on *Krouse v. Chrysler* (1973), 1 O.R. (2d) 225 (Ont. C.A.) in which Estey J.A. had suggested that an action in tort for the appropriation of personality did exist under the common law of Ontario. Henry J. held that the plaintiff failed to make out the tort of passing off, but did have a claim for the tort of "appropriation of personality". The plaintiff recovered damages measured by the amount the plaintiff ought reasonably to have received in the market for permission to use his image.

2012 ONCA 32 (CanLII)

[29]   There are also several Ontario cases in which the trial judge refused to strike pleadings alleging the tort of invasion of privacy as disclosing no cause of action.

[30]   *Somwar v. McDonald's Restaurants of Canada Ltd.* (2006), 79 O.R. (3d) 172 (S.C.) contains perhaps the most coherent and definitive pronouncement in Ontario jurisprudence of the existence of a common law tort of invasion of privacy corresponding to the intrusion upon seclusion category. Somwar accused his employer, McDonald's Restaurants, of unlawfully invading his privacy by conducting a credit bureau check on him without his consent. The plaintiff claimed damages for invasion of privacy and for punitive damages. The defendant moved to strike the statement of claim and dismiss the plaintiff's action on the basis that it did not disclose a reasonable cause of action under rule 21.01(1)(b) of the *Rules of Civil Procedure*.

[31]   Stinson J. reviewed the Ontario case law and observed that while the cases were not entirely consistent, even where the courts did not accept the existence of a privacy tort, they rarely went so far as to rule out the *potential* of such a tort. The body of case law, together with the recognition by the Supreme Court of Canada of the protection of privacy under s.8 of the *Canadian Charter of Rights and Freedoms* led him to conclude at para. 29 and 31:

> With advancements in technology, personal data of an individual can now be collected, accessed (properly and improperly) and disseminated more easily than ever before. There is a resulting increased concern in our society about the risk of unauthorized access to an individual's personal information. The traditional torts such as nuisance, trespass and harassment may not provide adequate protection against

2012 ONCA 32 (CanLII)

Page:  12

infringement of an individual's privacy interests. Protection of
those privacy interests by providing a common law remedy
for their violation would be consistent with Charter values
and an "incremental revision" and logical extension of the
existing jurisprudence.

…

Even if the plaintiff's claim for invasion of privacy were
classified as "novel" (which, in any event, is not a proper
basis for dismissing it), the foregoing analysis leads me to
conclude that the time has come to recognize invasion of
privacy as a tort in its own right. It therefore follows that it is
neither plain nor obvious that the plaintiff's action cannot
succeed on the basis that he has not pleaded a reasonable
cause of action.

[32]    *Somwar* was followed in *Nitsopoulos v. Wong* (2008) 298 D.L.R. (4th) 265 (Ont.

S.C.). See also *Capan v. Capan* (1980), 14 C.C.L.T. 191 (Ont. H.C.); *Lipiec v. Borsa*

(1996), 31 C.C.L.T. (2d) 294 (Ont. Gen. Div.); *Shred-Tech Corp. v. Viveen,* 2006

CarswellOnt 7762 (Ont. S.C.) at para. 30. Compare *Haskett v. Trans Union of Canada*

*Inc.* (2002), 10 C.C.L.T. (3d) 128 (Ont. S.C.).

### ii)  Provincial case law

[33]    While there appears to be no appellate decision from another province definitively

establishing a common law right of action for intrusion upon seclusion, dicta in at least

two cases support the idea. In *Motherwell v. Motherwell* (1976), 73 D.L.R. (3d) 62 (Alta.

S.C. App. Div.), a case involving harassing telephone calls, the court held the plaintiff

had a right of action in nuisance but added, at para. 25, that "the interests of our

developing jurisprudence would be better served by approaching invasion of privacy by

abuse of the telephone system as a new category, rather than seeking by rationalization to enlarge" the existing categories of nuisance.

[34]   The issue in *Dyne Holdings Ltd. v. Royal Insurance Co. of Canada* (1996), 135 D.L.R. (4th) 142, leave to appeal to S.C.C. refused, [1996] S.C.C.A. No. 344, was an insurer's duty to defend. One aspect of the claim arguably amounted to an invasion of privacy akin to the category of intrusion upon exclusion. After a review of the jurisprudence, Carruthers C.J. observed, at p. 160: "the courts in Canada are not far from recognizing a common law right to privacy if they have not already done so. It is also clear that Canadian courts do not hesitate to protect privacy interests under some recognized tort."

### iii) *Euteneier v. Lee*

[35]   This brings me to *Euteneier v. Lee*, and the statement from the case that the motion judge here found to be dispositive. In my respectful view, the motion judge's reliance on *Euteneier* for the proposition Ontario law excludes any and all claims for breach of privacy interests was misplaced. The plaintiff in *Euteneier* had been arrested and detained on criminal charges. She complained of her treatment while in police custody and sought damages for negligence, assault, civil conspiracy, and breach of her ss. 7, 9, 12, and 15 rights under the *Charter*. The trial judge found that based on the appellant's own behaviour while in custody, which included an apparent suicide attempt, the defendant police officers had conducted themselves in a reasonable and prudent

Page: 14

manner. They had breached no duty nor exhibited any bad faith or malice to ground any of the claims she had asserted and the claim was dismissed.

[36]   The plaintiff's first appeal was to the Divisional Court on account of the quantum of damages assessed by the trial judge: see *Euteneier v. Lee* (2003), 113 C.R.R. (2d) 44 (Ont. Div. Ct.). The Divisional Court allowed the appeal in part. A new trial was ordered on the issue of whether, after disrobing the plaintiff to prevent her from continuing to use articles of clothing to hang herself, the police were negligent, committed assault, or breached the plaintiff's *Charter* rights "by confining her in the [holding cell] and by handcuffing her to its bars without taking steps to maintain her dignity or to prevent her humiliation."

[37]   The defendants appealed the order for a new trial to this court and the plaintiff cross-appealed seeking a new trial on all issues. This court allowed the appeal and dismissed the cross-appeal. Cronk J.A., writing for the court, held that the Divisional Court had failed to apply the proper standard of review with respect to the trial judge's factual findings. Of particular significance to the point at issue on this appeal is Cronk J.A.'s observation, at paras. 47 and 56. She noted that the plaintiff did not plead that that the defendants owed her any duty to maintain her dignity and prevent her humiliation, and that any reference to her dignity or privacy interests were as particulars of other causes of action or as the consequences she alleged flowed from the actions of the defendants. Cronk J.A. held that the Divisional Court had erred in treating those allegations as stand-alone causes of action.

[38]   Accordingly, it is clear from the context and from the words used that the passage at para. 63 relied on by the motion judge – "[the plaintiff] properly conceded in oral argument before this court that there is no 'free standing' right to dignity or privacy under the *Charter* or at common law" – could not have been intended to express any dispositive or definitive opinion as to the existence of a tort claim for breach of a privacy interest. No such claim had been advanced by the plaintiff, no argument on that point was addressed by counsel, and in my view, no opinion on that point was expressed by this court.

### c) *Charter* Jurisprudence

[39]   *Charter* jurisprudence identifies privacy as being worthy of constitutional protection and integral to an individual's relationship with the rest of society and the state. The Supreme Court of Canada has consistently interpreted the *Charter's* s. 8 protection against unreasonable search and seizure as protecting the underlying right to privacy. In *Hunter v. Southam Inc.*, [1984] 2 S.C.R. 145, at p. 158-59, Dickson J. adopted the purposive method of *Charter* interpretation and observed that the interests engaged by s. 8 are not simply an extension of the concept of trespass, but rather are grounded in an independent right to privacy held by all citizens.

[40]   In *R. v. Dyment*, [1988] 2 S.C.R. 417 at p. 427, La Forest J. characterized the s. 8 protection of privacy as "[g]rounded in a man's physical and moral autonomy" and stated that "privacy is essential for the well-being of the individual. For this reason alone, it is worthy of constitutional protection, but it also has profound significance for the public order." La Forest added, at p. 429:

> In modern society, especially, retention of information about oneself is extremely important. We may, for one reason or another, wish or be compelled to reveal such information, but situations abound where the reasonable expectations of the individual that the information shall remain confidential to the persons to whom, and restricted to the purposes for which it is divulged, must be protected.

[41]   *Charter* jurisprudence has recognized three distinct privacy interests: *Dyment* at pp. 428-9; *R. v. Tessling*, 2004 SCC 67, [2004] 3 S.C.R. 432, at paras. 19-23. The first two interests, personal privacy and territorial privacy, are deeply rooted in the common law. Personal privacy, grounded in the right to bodily integrity, protects "the right not to have our bodies touched or explored to disclose objects or matters we wish to conceal." Territorial privacy protects the home and other spaces where the individual enjoys a reasonable expectation of privacy. The third category, informational privacy, is the interest at stake in this appeal. In *Tessling*, Binnie J. described it, at para. 23:

> Beyond our bodies and the places where we live and work, however, lies the thorny question of how much *information* about ourselves and activities we are entitled to shield from the curious eyes of the state (*R. v. S.A.B.*, [2003] 2 S.C.R. 678, 2003 SCC 60). This includes commercial information locked in a safe kept in a restaurant owned by the accused (*R. v. Law*, [2002] 1 S.C.R. 227, 2002 SCC 10, at para. 16). Informational privacy has been defined as "the claim of individuals, groups, or institutions to determine for themselves when, how, and to what extent information about them is communicated to others": A. F. Westin, *Privacy and Freedom* (1970), at p. 7. Its protection is predicated on the assumption that all information about a person is in a fundamental way his own, for him to communicate or retain . . . as he sees fit.

(Report of a Task Force established jointly by Department of Communications/Department of Justice, *Privacy and Computers* (1972), at p. 13).

[42]   This characterization would certainly include Jones' claim to privacy in her banking records.

[43]   In *Hill v. Church of Scientology of Toronto*, [1995] 2 S.C.R. 1130, Cory J. observed, at para. 121, that the right to privacy has been accorded constitutional protection and should be considered as a *Charter* value in the development of the common law tort of defamation. In *Hill,* Cory J. stated, at para. 121: "reputation is intimately related to the right to privacy which has been accorded constitutional protection." See also *R. v. O'Connor*, [1995] 4 S.C.R. 411 at para. 113, *per* L'Heureux-Dubé J.: identifying privacy as "an essential component of what it means to be 'free'."

[44]   The *Charter* treatment of privacy accords with art. 12 of the *Universal Declaration of Human Rights,* G.A. Res. 271(III), UNGAOR, 3d Sess., Supp. No. 13, UN. Doc. A/810 (1948) 71, which provides that "[n]o one shall be subjected to arbitrary interference with his privacy, home or correspondence" and proclaims that "[e]veryone has the right to the protection of the law against such interference or attacks". Privacy is also recognized as a fundamental human right by art. 17 of the *International Covenant on Civil and Political Rights*, 19 December 1966, 999 U.N.T.S. 171.

[45]   While the *Charter* does not apply to common law disputes between private individuals, the Supreme Court has acted on several occasions to develop the common law in a manner consistent with *Charter* values: see *R.W.D.S.U. v. Dolphin Delivery Ltd.*, [1986] 2.S.C.R. 573 at 603; *R. v. Salituro*, [1991] 3 S.C.R. 654, at pp. 666 and 675; *Hill v. Scientology* at p. 1169; *R.W.D.S.U., Local 558 v. Pepsi-Cola Canada Beverages (West) Ltd.*, 2002 SCC 8, [2002] 1 S.C.R. 156; *Grant v. Torstar Corp.*, 2009 SCC 61, [2009] 3 S.C.R. 640.

[46]   The explicit recognition of a right to privacy as underlying specific *Charter* rights and freedoms, and the principle that the common law should be developed in a manner consistent with *Charter* values, supports the recognition of a civil action for damages for intrusion upon the plaintiff's seclusion: see John D.R. Craig, "Invasion of Privacy and *Charter* Values: The Common Law Tort Awakens" (1997), 42 McGill L.J. 355.

**d) Legislation**

   **i) Acts relating to Private Information**

[47]   The federal and Ontario governments have enacted a complex legislative framework addressing the issue of privacy. These include: *Personal Information Protection and Electronic Documents Act, 2000*, S.C. 2000, c. 5 ("PIPEDA"); *Personal Health Information Protection Act, 2004*, S.O. 2004, c. 3; *Freedom of Information and Protection of Privacy Act*, R.S.O. 1990, c. F.31; *Municipal Freedom of Information and Protection of Privacy Act*, R.S.O. 1990, c. M.56; *Consumer Reporting Act*, R.S.O. 1990, c. C.33

2012 ONCA 32 (CanLII)

[48]   Tsige argues that it is not open to this court to adapt the common law to deal with the invasion of privacy on the ground that privacy is already the subject of legislation in Ontario and Canada that reflects carefully considered economic and policy choices. It is submitted that expanding the reach of the common law in this area would interfere with these carefully crafted regimes and that any expansion of the law relating to the protection of privacy should be left to Parliament and the legislature.

[49]   I am not persuaded that the existing legislation provides a sound basis for this court to refuse to recognize the emerging tort of intrusion upon seclusion and deny Jones a remedy. In my view, it would take a strained interpretation to infer from these statutes a legislative intent to supplant or halt the development of the common law in this area: see Robyn Bell, "Tort of Invasion of Privacy – Has its Time Finally Come?" in Archibald and Cochrane (eds.), *Annual Review of Civil Litigation* (Toronto: Thompson Carswell, 2005) at p. 225.

[50]   PIPEDA is federal legislation dealing with "organizations" subject to federal jurisdiction and does not speak to the existence of a civil cause of action in the province. While BMO is subject to PIPEDA, there are at least three reasons why, in my view, Jones should not be restricted to the remedy of a PIPEDA complaint against BMO. First, Jones would be forced to lodge a complaint against her own employer rather than against Tsige, the wrongdoer. Second, Tsige acted as a rogue employee contrary to BMO's policy and that may provide BMO with a complete answer to the complaint. Third, the remedies

2012 ONCA 32 (CanLII)

available under PIPEDA do not include damages and it is difficult to see what Jones would gain from such a complaint.

[51]   The Ontario legislation essentially deals with freedom of information and the protection of certain private information with respect to government and other public institutions. Like PIPEDA, it has nothing to do with private rights of action between individuals.

### ii) Provincial Privacy Acts

[52]   Four common law provinces currently have a statutorily created tort of invasion of privacy: British Columbia, *Privacy Act*, R.S.B.C. 1996 c. 373; Manitoba, *Privacy Act*, R.S.M. 1987 c.P125; Saskatchewan, *Privacy Act*, R.S.S. 1978, c. P-24; and Newfoundland, *Privacy Act*, R.S.N. 1990, c.P-22. All four *Privacy Acts* are similar. They establish a limited right of action, whereby liability will only be found if the defendant acts wilfully (not a requirement in Manitoba) and without a claim of right. Moreover, the nature and degree of the plaintiff's privacy entitlement is circumscribed by what is "reasonable in the circumstances".

[53]   Under Quebec law, the right to privacy is explicitly protected both by arts. 3 and 35-37 of the *Civil Code of Quebec* and by s. 5 of the *Charter of Human Rights and Freedoms*, R.S.Q. c. C-12. See *Robbins v. Canadian Broadcasting Corp.* (1957), 12 D.L.R. (2d) 37 (Que. S.C.); *Aubry v. Éditions Vice-Versa*, [1998] 1 S.C.R. 591; H. Patrick Glenn "The Right to Privacy in Quebec Law" in *Aspects Privacy Law: Essays in Honour of John M. Sharp*, Dale Gibson ed. (Toronto: Butterworths, 1980) at ch. 3.

[54]   Significantly, however, no provincial legislation provides a precise definition of what constitutes an invasion of privacy. The courts in provinces with a statutory tort are left with more or less the same task as courts in provinces without such statutes. The nature of these acts does not indicate that we are faced with a situation where sensitive policy choices and decisions are best left to the legislature. To the contrary, existing provincial legislation indicates that when the legislatures have acted, they have simply proclaimed a sweeping right to privacy and left it to the courts to define the contours of that right.

**e) Other Jurisdictions**
   **i) United States**

[55]   As already indicated, most American states have recognized a right of action for invasion of privacy rights as defined by the four categories identified by Prosser and now adopted by the *Restatement*.

[56]   Generally speaking, to make out cause of action for intrusion upon seclusion, a plaintiff must show:

   1. an unauthorized intrusion;

   2. that the intrusion was highly offensive to the reasonable person;

   3. the matter intruded upon was private; and,

   4. the intrusion caused anguish and suffering.

2012 ONCA 32 (CanLII)

See William Prosser, *Law of Torts*, 4th ed. (West Publishing Company, 1971) at p. 808-12.

[57]   The first element indicates that the tort focuses on the act of intrusion, as opposed to dissemination or publication of information: *Roe v. Cheyenne Mt. Conf. Resort, Inc.*, 124 F(3d) 1221 at 1236 (10th Cir. 1997). The focus of the court in determining whether this element is satisfied is on "the type of interest involved and not the place where the invasion occurs": *Evans v. Detlefsen*, 857 F(2d) 330 at 338 (6th Cir. 1988).

[58]   With regard to the second element, factors to be considered in determining whether a particular action is highly offensive include the degree of intrusion, the context, conduct and circumstances of the intrusion, the tortfeasor's motives and objectives and the expectations of those whose privacy is invaded: see J.D. Lee & Barry A. Lindahl, *Modern Tort Law: Liability & Litigation*, 2d ed., looseleaf (Thomson West, 2002) at § 48:6.

[59]   In determining the third element, the plaintiff must establish that the expectation of seclusion or solitude was objectively reasonable. The courts have adopted the two-prong test used in the application of the Fourth Amendment of the United States Constitution. The first step is demonstrating an actual subjective expectation of privacy, and the second step asks if that expectation is objectively reasonable: *Katz v. United States*, 389 U.S. 347 at 361 (1967).

[60]   The fourth element has received considerably less attention as anguish and suffering are generally presumed once the first three elements have been established.

### ii) Commonwealth Jurisdictions

[61]   In England, privacy is expressly protected by art. 8 of the *Convention for the Protection of Human Rights and Fundamental Freedoms*, 4 November 1950, 213 U.N.T.S. 221 at 223, incorporated by the *Human Rights Act 1998* (UK), c. 42: "Everyone has the right to respect for his private and family life, his home and his correspondence." However, the House of Lords held in *Wainwright v. Home Office* [2003] UKHL 53, [2003] 4 All E.R. 969 at para. 31, that while privacy may be "a value which underlies the existence of a rule of law (and may point the direction in which the law should develop)", privacy is not "a principle of law in itself" capable of supporting a private law right if action for damages. Yet the next year, in *Campbell v. MGN Ltd.* [2004] UKHL 22, [2004] 2 A.C. 467, the House of Lords granted an injunction to restrain on grounds of breach of confidence publication of newspaper stories and photographs of a supermodel leaving a drug addiction treatment facility. Lord Hoffman held, in *Campbell* at para. 51, that the tort of breach of confidence had evolved into a form of privacy protection, described by the court as a tort of misuse of private information:

> [T]he new approach takes a different view of the underlying value which the law protects. Instead of the cause of action being based upon the duty of good faith applicable to confidential personal information and trade secrets alike, it focuses upon the protection of human autonomy and dignity – the right to control the dissemination of information about

Page: 24

one's private life and the right to the esteem and respect of
people.

[62]   The reformulated action for breach of confidence has been held to embrace
damages claims to protect privacy interests that would easily fall within the intrusion
upon seclusion category: see *Mosely v. News Group Newspapers Ltd.* [2008] EWHC
1777 (Q.B.) at para. 7: "[t]he law now affords protection to information in respect of
which there is a reasonable expectation of privacy, even in circumstances where there is
no pre-existing relationship giving rise of itself to an enforceable duty of confidence."

[63]   In *Lenah Game Meats Pty Ltd v. Australian Broadcasting Corp.*, [2001] H.C.A.
63, 185 ALR 1, the High Court of Australia expressly left the door open to the
recognition of a common law right to privacy despite earlier authority to the contrary.
This was applied in *Grosse v. Purvis*, [2003] Q.D.C. 151, Aust. Torts Reports 81-706,
where the elements for the tort were found to be:

1. a willed act by the defendant;

2. which intrudes upon the privacy or seclusion of the plaintiff;

3. in a manner which would be considered highly offensive to a reasonable
   person of ordinary sensibilities; and

4. which causes the plaintiff detriment in the form of mental, psychological or
   emotional harm or distress or which prevents or hinders the plaintiff from
   doing an act which she is lawfully entitled to do.

[64]   In *Hosking v. Runting*, [2004] NZCA 34, the New Zealand Court of Appeal recognized a common law tort of breach of privacy that is separate and distinct from the tort of breach of confidence. Although the court dismissed the claim on the merits, the majority judgment confirmed the existence of a privacy tort in New Zealand dealing with wrongful publication of private facts to address publicity that is (at para. 26) "truly humiliating and distressful or otherwise harmful". The elements of the tort were described at para. 109:

> 1. the existence of facts in respect of which there is a reasonable expectation of privacy; and

> 2. the publicity given to those private facts must be considered highly offensive to an objective reasonable person.

## 2. Defining the tort of intrusion upon seclusion

### a) Introduction

[65]   In my view, it is appropriate for this court to confirm the existence of a right of action for intrusion upon seclusion. Recognition of such a cause of action would amount to an incremental step that is consistent with the role of this court to develop the common law in a manner consistent with the changing needs of society.

### b) Rationale

[66]   The case law, while certainly far from conclusive, supports the existence of such a cause of action. Privacy has long been recognized as an important underlying and

2012 ONCA 32 (CanLII)

animating value of various traditional causes of action to protect personal and territorial privacy. *Charter* jurisprudence recognizes privacy as a fundamental value in our law and specifically identifies, as worthy of protection, a right to informational privacy that is distinct from personal and territorial privacy. The right to informational privacy closely tracks the same interest that would be protected by a cause of action for intrusion upon seclusion. Many legal scholars and writers who have considered the issue support recognition of a right of action for breach of privacy: see e.g. P. Winfield, "Privacy" (1931), 47 L.Q.R. 23; D. Gibson, "Common Law Protection of Privacy: What to do Until the Legislators Arrive" in Lewis Klar (ed.), Studies in Canadian Tort Law (Toronto: Butterworths, 1977) 343; Robyn M. Ryan Bell, "Tort of Invasion of Privacy – Has its Time Finally Come?" in Todd Archibald & Michael Cochrane, *Annual Review of Civil Litigation* (Toronto: Thomson Carswell, 2005) 225; Peter Burns, "The Law and Privacy: the Canadian Experience" (1976), 54 Can. Bar Rev. 1; John D.R. Craig, "Invasion of Privacy and *Charter* Values: The Common Law Tort Awakens" (1997), 52 McGill L.J. 355.

[67]   For over one hundred years, technological change has motivated the legal protection of the individual's right to privacy. In modern times, the pace of technological change has accelerated exponentially. Legal scholars such as Peter Burns have written of "the pressing need to preserve 'privacy' which is being threatened by science and technology to the point of surrender": "The Law and Privacy: the Canadian Experience" at p. 1. See also Alan Westin, *Privacy and Freedom* (New York: Atheneum, 1967). The

internet and digital technology have brought an enormous change in the way we communicate and in our capacity to capture, store and retrieve information. As the facts of this case indicate, routinely kept electronic data bases render our most personal financial information vulnerable. Sensitive information as to our health is similarly available, as are records of the books we have borrowed or bought, the movies we have rented or downloaded, where we have shopped, where we have travelled, and the nature of our communications by cell phone, e-mail or text message.

[68]   It is within the capacity of the common law to evolve to respond to the problem posed by the routine collection and aggregation of highly personal information that is readily accessible in electronic form. Technological change poses a novel threat to a right of privacy that has been protected for hundreds of years by the common law under various guises and that, since 1982 and the *Charter,* has been recognized as a right that is integral to our social and political order.

[69]   Finally, and most importantly, we are presented in this case with facts that cry out for a remedy. While Tsige is apologetic and contrite, her actions were deliberate, prolonged and shocking. Any person in Jones' position would be profoundly disturbed by the significant intrusion into her highly personal information. The discipline administered by Tsige's employer was governed by the principles of employment law and the interests of the employer and did not respond directly to the wrong that had been done to Jones. In my view, the law of this province would be sadly deficient if we were required to send Jones away without a legal remedy.

### c) Elements

[70]   I would essentially adopt as the elements of the action for intrusion upon seclusion the *Restatement (Second) of Torts* (2010) formulation which, for the sake of convenience, I repeat here:

> One who intentionally intrudes, physically or otherwise, upon the seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the invasion would be highly offensive to a reasonable person.

[71]   The key features of this cause of action are, first, that the defendant's conduct must be intentional, within which I would include reckless; second that the defendant must have invaded, without lawful justification, the plaintiff's private affairs or concerns; and third, that a reasonable person would regard the invasion as highly offensive causing distress, humiliation or anguish. However, proof of harm to a recognized economic interest is not an element of the cause of action. I return below to the question of damages, but state here that I believe it important to emphasize that given the intangible nature of the interest protected, damages for intrusion upon seclusion will ordinarily be measured by a modest conventional sum.

### d) Limitations

[72]   These elements make it clear that recognizing this cause of action will not open the floodgates. A claim for intrusion upon seclusion will arise only for deliberate and significant invasions of personal privacy. Claims from individuals who are sensitive or unusually concerned about their privacy are excluded: it is only intrusions into matters

Page: 29

2012 ONCA 32 (CanLII)

such as one's financial or health records, sexual practices and orientation, employment, diary or private correspondence that, viewed objectively on the reasonable person standard, can be described as highly offensive.

[73]   Finally, claims for the protection of privacy may give rise to competing claims. Foremost are claims for the protection of freedom of expression and freedom of the press. As we are not confronted with such a competing claim here, I need not consider the issue in detail. Suffice it to say, no right to privacy can be absolute and many claims for the protection of privacy will have to be reconciled with, and even yield to, such competing claims. A useful analogy may be found in the Supreme Court of Canada's elaboration of the common law of defamation in *Grant v. Torstar* where the court held, at para. 65, that "[w]hen proper weight is given to the constitutional value of free expression on matters of public interest, the balance tips in favour of broadening the defences available to those who communicate facts it is in the public's interest to know."

### 3. Damages

### a) Introduction

[74]   As I have indicated, proof of actual loss is not an element of the cause of action for intrusion upon seclusion. However, the question necessarily arises: what is the appropriate approach to damages in cases, like the present, where the plaintiff has suffered no pecuniary loss?

[75]   Where the plaintiff has suffered no provable pecuniary loss, the damages fall into the category of what Professor Stephen M. Waddams, *The Law of Damages*, looseleaf ed.

(Toronto: Canada Law Book, 2011) at para. 10.50 describes as "symbolic" and others have labeled as "moral" damages: see *Dulude v. Canada* (2000), 192 D.L.R. (4th) 714 at para. 30 (Fed. C.A.). They are awarded "to vindicate rights or symbolize recognition of their infringement": Waddams, at para. 10.50. I agree with Prof. Waddams' observation that a conventional range of damages is necessary to maintain "consistency, predictability and fairness between one plaintiff and another."

[76]   Guidance in determining an appropriate range of damages can be gleaned from existing case law from Ontario as well as from the provinces where there is a statutory cause of action.

### b) Damages under Ontario case law

[77]   Although the tort of intrusion upon exclusion has not been fully recognized in Ontario law, several cases award damages for invasion of privacy in conjunction with, or under the head of, a traditional tort such as nuisance or trespass. These claims typically involve intangible harm such as hurt feelings, embarrassment or mental distress, rather than damages for pecuniary losses. I attach, as Appendix A, a summary of these cases and the damages awarded and will briefly discuss the facts of some of those cases here.

[78]   In *Saccone v. Orr,* the court found that the proven damages were minimal; the plaintiff had not lost his job or suffered any material loss. However, acknowledging that the plaintiff's privacy was invaded and that he was embarrassed and felt that his confidence had been betrayed, the court awarded damages in the amount of $500. Similarly, in *Provincial Partitions Inc. v. Ashcor Inplant Structures Ltd.* (1993), 50

C.P.R. (3d) 497, (Ont. Gen. Div.), the judge found that the defendant committed the tort of nuisance by invasion of privacy through abuse of telephone communications when they called the plaintiff, a competitor company, dozens of times. The judge awarded only $500 against each defendant and because the defendants had already ceased placing the phone calls, the judge declined to provide injunctive relief.

[79]   In *Roth v. Roth*, the plaintiff claimed $100,000 in damages for intimidation, harassment and invasion of privacy, in addition to approximately $400,000 in additional damages for other tortious acts. The judge found that because the various causes of action overlapped, damages were best addressed as a lump sum and that the plaintiff was entitled to aggravated damages. Despite the lack of evidence of actual physical or psychological harm, the plaintiff was awarded the sum of $20,000.

[80]   *MacKay v. Buelow* (1995), 24 C.C.L.T. (2d) 184 (Ont. Gen. Div.) involved a family law dispute in which the defendant had harassed his ex-wife over a period of four months. He continuously called her, stalked her on several occasions, threatened to kill her, and threatened to kidnap their child and take her to another country. The trial judge found that the plaintiff was entitled to a remedy for the "calculated, devilishly creative and entirely reprehensible conduct by the defendant" and awarded $25,000 general damages, $15,000 aggravated damages, $15,000 punitive damages, together with special damages and a significant award for the future medical care she would require.

### c) Damages under provincial legislation

[81]   The four provincial privacy acts do not require proof of damage as an element of the cause of action. The Manitoba *Privacy Act*, however, is the only statute that provides specific guidance with regard to the determination of damages:

> Considerations in awarding damages
>
> 4(2) In awarding damages in an action for a violation of privacy of a person, the court shall have regard to all the circumstances of the case including
>
>> (a) the nature, incidence and occasion of the act, conduct or publication constituting the violation of privacy of that person;
>>
>> (b) the effect of the violation of privacy on the health, welfare, social, business or financial position of that person or his family;
>>
>> (c) any relationship, whether domestic or otherwise, between the parties to the action;
>>
>> (d) any distress, annoyance or embarrassment suffered by that person or his family arising from the violation of privacy; and
>>
>> (e) the conduct of that person and the defendant, both before and after the commission of the violation of privacy, including any apology or offer of amends made by the defendant.

[82]   The other provincial statutes leave this determination to judicial discretion. The case law, however, demonstrates that courts frequently consider the same factors enumerated in the Manitoba Act. Appendix B contains a summary of these cases, mostly from British Columbia.

2012 ONCA 32 (CanLII)

[83]   Absent proof of actual pecuniary loss, the awards are, for the most part, modest. For example, in *Heckert v. 5470 Investments Ltd.*, 2008 BCSC 1298, 299 D.L.R. (4th) 689, the judge noted that the only evidence regarding damages were "Ms. Heckert's general statements that she felt stressed and needed to see her chiropractor and acupuncturist for additional visits." The judge still found that Ms. Heckert's landlord had invaded her privacy by installing close imaging cameras in the hallway outside of her door, but that the lack of medical evidence meant that the award could be not more than nominal damages of $3,500.

[84]   Egregious conduct, however, has attracted awards of aggravated damages. In *Watts v. Klaemt*, 2007 BCSC 662, 71 B.C.L.R. (4th) 362, the plaintiff was terminated from her job when her next door neighbour, the defendant, recorded her phone calls and after discovering she was perpetrating fraud against her company, reported this to her employer. The plaintiff claimed general damages for emotional pain and suffering, loss of enjoyment of life and diminution of her reputation as well as punitive or exemplary damages for the invasion of privacy. In assessing the quantum of damages, the judge considered the degree to which the plaintiff's life was destroyed following the invasion of privacy - notably the termination of her employment, the need to seek psychological care for depression and post traumatic stress disorder – and weighed this against the plaintiff's own misconduct. The judge awarded $30,000 including aggravated damages for the "substantial degree of suffering experienced by the plaintiff".

[85]   The benchmark case for exemplary or punitive damages for an invasion of privacy under the British Columbia regime is *Malcolm v. Fleming,* [2000] CarswellBC 1316, (B.C.S.C.). The defendant, the plaintiff's landlord, installed a video camera in the plaintiff's apartment and recorded her in various stages of undress in her bathroom and bedroom. The judge awarded punitive damages of $35,000 in addition to $15,000 in general damages. In determining the figure for punitive damages the judge considered such factors as the intimate location of the invasion, the relationship between the parties as landlord and tenant as having a high expectation of privacy, the substantial premeditation and planning, the additional humiliation of discovery prior to trial, the fact that a permanent record of the violation existed creating the potential for future embarrassment and the fact that there was no other means of punishment as there was no criminal act perpetrated.

[86]   Other cases have awarded punitive damages in consideration of society's abhorrence of the defendant's actions, a lack of remorse on the part of the defendant and the desire to promote specific deterrence: see *Watts v. Klaemt*; *Lee v. Jacobson; Weber v. Jacobson* (1992), 87 D.L.R. (4th) 401 (B.C. S.C.), rev'd (1994), D.L.R. (4th) 155 (B.C.C.A). In *Hollinsworth v. BCTV* (1996), 34 C.C.L.T. (2d) 95 (B.C. S.C.), aff'd 1998 B.C.C.A. 304, for example, the court assessed the plaintiff's damages for both breach of confidentiality and for the invasion of privacy at $15,000. The court there noted at para. 27 that these damages were higher than usual for breaches of the *Privacy Act* in consideration of the "reprehensible conduct" of the defendant. In *Hollinsworth* the

defendant lied to a reporter saying that he had consent to use a videotape of the plaintiff

undergoing surgery to treat baldness. The video was then aired during a news broadcast.

**d) Determining the quantum of damages**

[87]    In my view, damages for intrusion upon seclusion in cases where the plaintiff has

suffered no pecuniary loss should be modest but sufficient to mark the wrong that has

been done. I would fix the range at up to $20,000. The factors identified in the Manitoba

*Privacy Act*, which, for convenience, I summarize again here, have also emerged from

the decided cases and provide a useful guide to assist in determining where in the range

the case falls:

   1.  the nature, incidence and occasion of the defendant's wrongful act;

   2.  the effect of the wrong on the plaintiff's health, welfare, social, business or
       financial position;

   3.  any relationship, whether domestic or otherwise, between the parties;

   4.  any distress, annoyance or embarrassment suffered by the plaintiff arising from
       the wrong; and

   5.  the conduct of the parties, both before and after the wrong, including any
       apology or offer of amends made by the defendant.

[88]    I would neither exclude nor encourage awards of aggravated and punitive

damages. I would not exclude such awards as there are bound to be exceptional cases

calling for exceptional remedies. However, I would not encourage such awards as, in my

view, predictability and consistency are paramount values in an area where symbolic or moral damages are awarded and absent truly exceptional circumstances, plaintiffs should be held to the range I have identified.

### 3. Application to this case

[89]   It is my view that in this case, Tsige committed the tort of intrusion upon seclusion when she repeatedly examined the private bank records of Jones. These acts satisfy the elements laid out above: the intrusion was intentional, it amounted to an unlawful invasion of Jones' private affairs, it would be viewed as highly offensive to the reasonable person and caused distress, humiliation or anguish.

[90]   In determining damages, there are a number of factors to consider.  Favouring a higher award is the fact that Tsige's actions were deliberate and repeated and arose from a complex web of domestic arrangements likely to provoke strong feelings and animosity. Jones was understandably very upset by the intrusion into her private financial affairs. On the other hand, Jones suffered no public embarrassment or harm to her health, welfare, social, business or financial position and Tsige has apologized for her conduct and made genuine attempts to make amends. On balance, I would place this case at the mid-point of the range I have identified and award damages in the amount of $10,000. Tsige's intrusion upon Jones' seclusion, this case does not, in my view, exhibit any exceptional quality calling for an award of aggravated or punitive damages.

**Issue 2. Did the motion judge err with respect to costs?**

[91]   As I would set aside the judgment in favour of Tsige and grant judgment in favour of Jones, it is not necessary for me to consider Jones' contention that the motion judge erred in his costs award.

**DISPOSITION**

[92]   Accordingly, I would allow the appeal, set aside the summary judgment dismissing the action and in its place substitute an order granting summary judgment in Jones' favour for damages in the amount of $10,000.

[93]   Both parties have filed bills of costs asking for significant awards. In my view, it is appropriate to take into account the novel issue raised by this case which has clearly broken new ground. There is discretion to depart from the usual order in cases of novelty. In my view, in the unusual circumstances of this case, the parties should bear their own costs throughout and I would make no order as to costs.

"Robert J. Sharpe J.A."
"I agree W.K. Winkler C.J.O."
"I agree J.D. Cunningham A.C.J."

RELEASED:  January 18, 2012

2012 ONCA 32 (CanLII)

## Appendix A: Ontario damage awards

|  | Facts | Details | Remedy |
|---|---|---|---|
| *Saccone v. Orr* (1981), 34 O.R. (2d) 317, (Ont. Co. Ct.) | Played tape of private telephone conversation aloud at municipal council meeting without counsel. | Cause of action: Invasion of privacy<br><br>Held: Defendant did not act with malice and proven damages were minimal. | $500 – General Damages |
| *Provincial Partitions Inc. v. Ashcor Inplant Structures Ltd.* (1993), 50 C.P.R. (3d) 497, (Ont. Gen. Div.) | Persistent crank calls to rival business. | Cause of action: Nuisance by invasion of privacy. | $1000 – General Damages |
| *Palad v. Pantaleon,* [1989] O.J. No. 985, (Ont. Dist. Ct.) | Harassment of borrower in an attempt to collect on a debt. | Cause of action: Invasion of privacy | $2,500 – General Damages |
| *Lipiec v. Borsa* (1996), 31 C.C.L.T. (2d) 294, (Ont. Gen. Div.) | Surveillance of backyard. | Causes of action: Trespass and nuisance by deliberate invasion of privacy | $3,000 – General Damages |
| *S. & A. Nagy Farm v. Repsys,* [1987] O.J. No. 1987, (Ont. Dist. Ct.) | Malicious attempt to persuade borrowers to amend mortgage agreement by embarrassing and harassing them. | Causes of action: Defamation and invasion of privacy. | $4,000 – General Damages (Husband and Wife) |
| *Roth v. Roth* (1991) 9 C.C.L.T. (2d) 141, (Ont. Gen. Div.) | Interference with access to cottage and with enjoyment of property. | Causes of action: Harassment, statutory breach, trespass and invasion of privacy` | $20,000 – General Damages<br>$5,000 – Exemplary Damages |
| *Garrett v. Mikalachki* [2000] O.J. No. 1326, | Man harassed neighbour, reducing neighbour's | Causes of action: Defamation, intentional infliction | $25,000 – General Damages |

2012 ONCA 32 (CanLII)

Page:  2

| | | | |
|---|---|---|---|
| (Ont. S.C.) | enjoyment of property, and spread rumours about the neighbour's alleged criminal past. | of emotional distress, nuisance, invasion of privacy, harassment. | |
| *Tran v. Financial Debt Recovery Ltd.* (2000), 193 D.L.R. (4th) 168 (Ont. S.C.) | Repeated abusive calls to debtor and his work colleagues regarding repayment. | Causes of action: Defamation, intentional interference with economic interests, intentional infliction of emotional harm, invasion of privacy | $25,000 – General Damages |
| *MacKay v. Buelow* (1995), 24 C.C.L.T. (2d) 184 (Ont. Gen. Div.) | Stalked former spouse. | Causes of action: invasion of privacy, trespass to person and intentional infliction of mental suffering and emotional distress<br><br>Held: Defendant's actions were "calculated, devilishly creative and entirely reprehensible". | $25,000 – General Damages $15,000 – Aggravated Damages $15,000 – Punitive Damages $6,248 – Special Damages $44,000 – Costs of future care |

**Appendix B: Damage awards under provincial privacy legislation**

| | Facts | Remedy |
|---|---|---|
| *Pateman et. al. v. Ross* (1988), 68 Mr. R. (2d) 181 (Man. Q.B.) | Woman harassed ex-boyfriend and his new wife with threatening phone calls, letters and visits. | Interlocutory injunction |
| *Insurance Corp of British Columbia v. Somosh* (1983), 51 B.C.L.R. 344 (B.C.S.C.) | Insurance company investigator asked invasive questions about car driver after accident, although the insurance company had no claim at law against driver | $1,000 – General Damages<br><br>$1,000 – Punitive Damages |
| *Wasserman v. Hall*, 2009 BCSC 1318, 87 R.P.R. (4th) 184 | Claim for breach of privacy and nuisance; breach was described as "relatively minor". | $3,500 – General Damages |
| *Heckert v. 5470 Investments Ltd.* 2008 BCSC 1298, 299 D.L.R. (4th) 689. | Landlord placed a video camera in the hallway of the building. Held that there was no legitimate reason for close-up imaging people immediately outside their apartment doors. | $3,500 – Nominal Damages |
| *Hollinsworth v. BCTV* (1996), 34 C.C.L.T. (2d) 95 (B.C.S.C.), aff'd 1998 B.C.C.A. 304. | Defendant released videotape of plaintiff having hair transplant surgery and media aired video. | $15,000 – General Damages |
| *F. (J.M.) v. Chappell,* (1998) 45 B.C.L.R. (3d) 64 (B.C.C.A.), leave to appeal to SCC refused, (1998), 231 N.R. 400. | Defendant published the name of complainant in sexual assault case in breach of publication ban.  Jury awarded $19,000 in damages, but the judge countenanced a defence of publication privilege and reduced this to $1,000.<br><br>Court of Appeal reinstated the jury award. | $3,000 – General Damages<br><br>$15,000 – Punitive Damages<br><br>$1,000 Non-pecuniary Damages |
| *Lee v. Jacobson; Weber v. Jacobson* (1992), 87 D.L.R. (4th) 401 (B.C. S.C.), rev'd | Landlord drilled a secret hold to spy on tenant.<br><br>Note: Findings of fact were overturned. | $2,000 – General Damages<br><br>$22,500 – Punitive Damages |

Page:  4

| | | |
|---|---|---|
| (1994), D.L.R. (4th) 155 (B.C.C.A). | | |
| *Watts v. Klaemt* 2007 BCSC 662, 71 B.C.L.R. (4th) 362. | Defendant recorded the plaintiff's telephone conversations and the reported the content to the plaintiff's employer. Plaintiff was then fired. | $30,000 – Actual damages<br><br>$5,000 – Punitive Damages |
| *Malcolm v. Fleming*, [2000] CarswellBC 1316, (B.C.S.C.) | Defendant landlord secretly videotaped plaintiff while she was in her bathroom and bedroom. | $15,000 – General Damages<br><br>$35,000 – Punitive Damages |
| *Nesbitt v. Neufeld*, 2010 BCSC 1605, [2011] B.C.W.L.D. 407. | Family dispute: defendant published private documents, started websites, Facebook groups, sent letters to friends / colleagues / professional associations accusing her of drug abuse, suicide attempts, mental illness and sexual promiscuity. | $40,000 – General Damages |