IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TROUT POINT LODGE, LIMITED,
A Nova Scotia Limited Company;
VAUGHN PERRET and
CHARLES LEARY,

                        Plaintiff,        Civil Action No.: 1:12-CV-90LG-JMR

v.

DOUG K. HANDSHOE,

                        Defendant.


\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*


## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS

**MAY IT PLEASE THE COURT**:

      This Memorandum in Support of Motion for Summary Judgment is submitted on behalf of defendants, Slabbed New Media, LLC ("Slabbed") and Douglas Handshoe ("Handshoe").

### *Facts*

      Slabbed New Media, LLC owns an Internet website, sometimes referred to as a "blog," which provides a forum for local residents and other interested parties to gather and share information regarding various political and legal issues that impact the Gulf Coast. Douglas Handshoe is the owner of this website, where he reports on issues such as ongoing civil and criminal court cases, Hurricanes Katrina and Rita, the Gulf Oil Spill, political corruption, and other miscellany, primarily impacting the Gulf Coast of Mississippi and Louisiana. (See Exhibit 1 – Affidavit of Douglas Handshoe).

      Slabbed has been instrumental in its reporting on the ongoing corruption scandal and indictment of Aaron Broussard, former Parish President of Jefferson Parish, Louisiana.

Broussard faces allegations of kickback schemes, money laundering, and fraud while in office. During his time in office, Broussard owned a lodge in Nova Scotia, Canada, which he used to funnel kickbacks from contractors doing business with Jefferson Parish, facts set forth in the factual basis of an indicted co-defendant.  Media reports have revealed that plaintiffs, Charles Leary and Vaughn Perret, co-owned and/or managed this property.  In addition, plaintiffs own and operate the Trout Point Lodge, a for-rent lodge for vacationers and travelers, which was adjacent to Aaron Broussard's property.

On May 6, 2011, plaintiffs, Charles Leary, Vaughn Perret, and Trout Point, served an undated notice of claim on defendants, and on August 9, 2011, plaintiffs filed a defamation claim in Nova Scotia, Canada in response to the written statements of defendant and post commenters. This claim was amended on September 1, 2011 to include an email address cited as belonging to "Jane Doe" and a host of additional allegations related to written statements on the blog.  (See Exhibit 2 – Transcript of Judgment and Oral Reasons for Judgment of Nova Scotia Court).

Defendants, Slabbed and Handshoe, have never subjected themselves to the personal jurisdiction of the Canadian court in the Canadian defamation lawsuit, and they did not defend themselves in said proceedings. (See Exhibit 1). As a result of defendants' failure to defend themselves in the Canadian defamation suit, plaintiffs obtained a final judgment against defendant holding him liable for libel and defamation and, among other things, ordering defendants to pay $275,000 (CAD) in general damages, $100,000 (CAD) in aggravated damages, $50,000 (CAD) in punitive damages, court costs of $2,000 (CAD) as well as issuing a permanent injunction against defendant, Slabbed, from "disseminating, posting on the internet or publishing, in any manner whatsoever, directly or indirectly, any statements or comments about the plaintiffs" and a mandatory injunction requiring that all statements regarding plaintiffs be

removed from Slabbed; the plaintiffs also disseminated the Canadian order of injunctive relief to several of Slabbed's internet service providers, who, rather than question the legitimacy of the Canadian order, simply shut down the Slabbed blog. The judgment against defendants in the Canadian defamation suit was based on the content of writing that was published on the Slabbed blog. (See Exhibits 1 & 2).

On or about March 8, 2012, plaintiffs filed their foreign libel judgment in the Circuit Court for Hancock County, Mississippi in an effort to enroll and, eventually, make executory the Canadian judgment against defendants. (See Record Doc. No. 2). That State Court action was then removed to this Honorable Court on or about March 26, 2012, pursuant to the provisions of 28 U.S.C. §4103; this case is before the Honorable Judge Louis Guirola and the Honorable Magistrate John Roper, bearing Docket No. 1:12CV90. (See Record Doc. No. 1).

Prior to the filing of the foreign judgment in Mississippi State Court, defendants had filed a Complaint for Declaratory Relief arising out of the same operative set of facts. That action was filed invoking the provisions of the SPEECH Act, 28 §§ 4101–4105 as against plaintiffs. Defendants then filed a motion to dismiss without prejudice, which was granted on April 27, 2012.

The parties have essentially agreed that the viability and enforceability of the plaintiffs' foreign libel judgment against defendants is dependent upon this Honorable Court's interpretation of the law, and to a lesser degree the underlying facts, through the prism of the law set forth in the SPEECH Act.  Thus, the disposition of the case need not involve discovery and turns on legal issues which this Honorable Court may resolve by the litigant's respective motions for summary judgment.

<u>*Argument and Law*</u>

**I. The SPEECH Act Precludes the Enforcement of Plaintiffs' Judgment in Domestic Courts Because Canadian Law Provides Less Free Speech Protection Than United States Courts**

Rule 56 of the Federal Rules of Civil Procedure provides that a party may move for summary judgment if the party can demonstrate that there is no genuine dispute as to any material fact, entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56. There is no requirement that the moving party "*negate* the elements of the nonmovant's case," but the moving party must show that a genuine issue of material fact is lacking or that the mover is entitled to dismissal, as a matter of law. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate where the only issue before the court is a pure question of law. <u>Sheline v. Dun & Bradstreet Corp.</u>, 948 F.2d 174, 176 (5th Cir. 1991).

If a genuine issue of fact exists, the "filing by both parties of opposing motions for summary judgment will not warrant a court's granting either party's motion." <u>Schlytter v. Baker</u>, 580 F.2d 848, 849 (5th Cir.1978). When the parties proceed on the same legal theory and on the same material facts, however, the basis for the rule disappears. <u>Id.</u> At least one commentator has suggested that, in the latter situation, unless the parties expressly state to the contrary, the submission of cross-motions for summary judgment "is equivalent to [consent to] a stipulated trial on an agreed statement." <u>John v. State of La. (Bd. of Trustees for State Colleges & Universities)</u>, 757 F.2d 698, 705 (5th Cir. 1985) (quoting Schwarzer, <u>Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact</u>, 99 F.R.D. 465, 484 n. 92).

In the case at bar, the parties have essentially agreed that the underlying facts in this case are not disputed. This case turns, merely, on whether the foreign plaintiffs are entitled, as a matter of law, to enforce a Canadian libel judgment in a Mississippi Federal Court, applying

Mississippi State substantive law as it relates to the standards of free speech and libel law, all as contemplated by the SPEECH Act. Defendants respectfully submit to this Honorable Court that the law of Nova Scotia does not, as a matter of legal interpretation, afford the same free speech concepts that are at the bedrock of our U.S. Constitution, and by extension, the Mississippi Constitution. In light of the complete absence of any genuine issues of fact or law in this regard, the defendants are entitled to a summary dismissal of the plaintiffs' efforts to make a foreign libel judgment executory in the United States. The enforcement of this judgment is prohibited by 28 U.S.C. § 4102, the SPEECH Act.

The SPEECH Act was enacted in 2010 to safeguard First Amendment protections. Specifically, the statute was enacted to prevent defamation plaintiffs from bringing suits in foreign jurisdictions with weaker freedom of speech protections, a practice known as "libel tourism."  Libel tourism, according to the Congressional Research Service, is "the phenomenon whereby a plaintiff brings a defamation suit in a country with plaintiff-friendly libel laws, even though the parties might have had relatively few contacts with the chosen jurisdiction prior to the suit." Stephen Bates, More Speech: Preempting Privacy Tourism, 33 HASTINGS COMM. & ENT. L.J. 379, 380 (2011). In the Congressional findings included with the statute, Congress noted that "[t]hese foreign defamation lawsuits not only suppress the free speech rights of the defendants to the suit, but inhibit other written speech that might otherwise have been written or published but for the fear of a foreign lawsuit."  SPEECH Act, Pub. L. No. 111-223, 124 Stat. 424.  In other words, Congress has made quite clear that without this statute, a defamation plaintiff could circumvent the important First Amendment protections by simply filing suit in a foreign jurisdiction that provides more favorable law and then seek to enforce the judgment in the United States.  This would not only place individuals who have relied on their First Amendment rights

at risk but also have a chilling effect on an individual's future willingness to freely express himself, a right that is at the core of the principles espoused by the Founding Fathers.

With the First Amendment's expansive protection of speech, the United States "remains a recalcitrant outlier to a growing international understanding of what the freedom of expression entails." Stephen Bates, More Speech: Preempting Privacy Tourism, 33 HASTINGS COMM. & ENT L.J. 379, 382-83 (2011). Accordingly, plaintiffs file libel suits in jurisdictions less protective of speech whenever possible. Id. In fact, Britain is recognized as the "libel tourism capital," and it cannot be said to be a stretch that Canada, which is subject to the Crown, is much different. Id.

The SPEECH Act prohibits the recognition or enforcement of a foreign judgment for defamation unless the domestic court can make one of two determinations. 28 U.S.C. § 4102. First, the judgment may be enforced if:

> The defamation law applied in the foreign court's adjudication provided at least as much protection for freedom of speech and press in that case as would be provided by the first amendment to the Constitution of the United States and by the constitution and law of the State in which the domestic court is located.

Id. Second, even if the domestic court is unable to make the first determination, it may enforce the foreign judgment if the party opposing the enforcement of the judgment "would have been found liable for defamation by a domestic court applying the first amendment to the Constitution of the United States and the constitution and law of the State in which the domestic court is located." Id.

Thus, here, the SPEECH Act will bar enforcement of the Nova Scotia judgment which the plaintiffs obtained against defendants, as the judgment does not fall under either of the exceptions set forth in the statute. As a matter of law, Canadian law provides less stringent constitutional protection of free speech, and under the domestic laws of both the United States and of Mississippi, defendants would not be liable. Plaintiffs therefore will be unable to prove

that there is a genuine issue of material fact or law that would entitle them to enforcement of their Canadian-obtained libel judgment.

Determining the scope of Canadian free speech protection in relation to domestic law is not a fact intensive issue, but strictly an issue of comparison.  At least one other court has held that Canadian law provides less protection of free speech than the First Amendment and domestic law. Investorshub.com, Inc. v. Mina Mar Group, No. 4:11cv9-RH/WS, (N.D. Fla. June 20, 2011). (See Exhibit 3 - Investorshub.com, Inc. v. Mina Mar Group, Inc., slip opinion).  In that case, Mina Mar Group obtained a Canadian defamation judgment against Investorshub.com based on the content of writing posted on the InvestorsHub.com website.  The United States District Court for the Northern District of Florida *declined to enforce the judgment pursuant to the SPEECH Act because Canadian law offers less protection that United States law*. Likewise, in the case at bar, the defamation law applied in the foreign jurisdiction did not provide the same level of protection as domestic law would provide.

Canada's protection of free speech is listed as a "fundamental freedom" in section 2(d) of the Canadian Charter of Rights and Freedoms.  Specifically, the freedom afforded is "freedom of thought, belief, opinion and expression, including freedom of the press and other media of communication." Canadian Charter of Rights and Freedoms, Part I of the Constitution Act, 1982, *being* Schedule B to the Canada Act, 1982, c. 11 (U.K.).  The Supreme Court of Canada articulated the following burden of proof for a defamation plaintiff in order to obtain a judgment and an award of damages:

> (1) that the impugned words were defamatory, in the sense that they would tend to lower the plaintiff's reputation in the eyes of a reasonable person; (2) that the words in fact referred to the plaintiff; and (3) that the words were published, meaning that they were communicated to at least one person other than the plaintiff.

Grant v. Torstar Corp., [2009] 3 S.C.R. 640 (Can.), at ¶ 28 (See Exhibit 4 – Grant v. Torstar

Corp., slip opinion).  Further, that case explains that the plaintiff does not need to demonstrate

intent on the part of the defendant, or even carelessness, classifying the tort as "one of strict

liability." Id.  Once the plaintiff proves the aforementioned elements, falsity and damages are

presumed, and "the onus is then shifted to the defence in order to escape liability." Id. at ¶ 29.

Defenses available include statements that are privileged, fair comment (for statements of

opinion), justification (for statements that are substantially true), and the newly- enacted

responsible communication defense. Id. at ¶ 32, 87-126.

   Albeit a comparison to British libel laws, it is apparent that the laws of Canada are not

much different, yet less protective of free speech than in the United States, as exemplified by the

following:

   Their libel laws require the defendant to prove truth, whereas in the United States
   and most other countries, the plaintiff must generally prove falsity.

   Where a defendant cannot prove the truth of the defamatory assertion, the only
   other broadly applicable defense is the "responsible journalism" defense.

   Foreign libel claims are weighed according to the same standard regardless of the
   plaintiff's status. By contrast, public officials and public figures must meet the
   higher "actual malice" standard to prevail in the United States.

   Unlike American plaintiffs, plaintiffs in foreign countries such as Britain can win
   damages without proving harm to their reputations. British law creates an
   "irrebuttable presumption . . . that the publication of a defamatory article causes
   damage to the reputation of the person defamed."  Indeed, a plaintiff need not
   even have a reputation before the appearance of the publication.

   Britain follows the multiple-publication rule, whereas the United States follows
   the single-publication rule. That means that in Britain, a new libel can arise each
   time an individual accesses an article--potentially rendering the one-year statute
   of limitations meaningless, especially for material in online archives.

Stephen Bates, More Speech: Preempting Privacy Tourism, 33 HASTINGS COMM. & ENT. L.J.

379, 383-85 (2011).  Another commentator has noted that "Canadian common law of defamation

has tended to favor the protection of reputation at the expense of certain aspects of free speech, [while American] laws of defamation have adopted a balance more favorable to freedom of expression." Eugénie Brouillet, <u>Free Speech, Reputation, and the Canadian Balance</u>, 50 N.Y.L. Sch. L. Rev. 33, 52 (2005-2006). By virtue of this comparative analysis, it is without cavil that the defendants were not afforded the same free speech protections as would have been afforded in the United States. Thus, for these reasons, the Court must grant the defendants' Motion for Summary Judgment and dismiss the plaintiffs' claims, as a matter of law.

United States defamation law provides greater freedom of speech protection in various ways, as compared to the Canadian law relied upon by the plaintiffs. For example, as discussed above, in Canada, the plaintiff does not have to prove falsity as part of his <u>prima facie</u> case of defamation. <u>Grant v. Torstar Corp.</u>, [2009] 3 S.C.R. 640 (Can.), at ¶ 28. (See Exhibit 4). Falsity is presumed if the plaintiff proves that the words lowered plaintiff's reputation in the eyes of the public, that the words referred to the plaintiff, and that they were communicated to one person other than the plaintiff. <u>Id</u>. Falsity is not part of the plaintiff's burden of proof. <u>Id</u>. It is the defendant's responsibility to raise falsity as a defense. <u>Id</u>. In the United States, however, proving falsity is required of the plaintiff. <u>Phila. Newspapers, Inc. v. Hepps</u>, 475 U.S. 767, 776 (1986). Under Mississippi law, the first element of a defamation case requires the plaintiff to prove "a false statement that has the capacity to injure the plaintiff's reputation." <u>Speed v. Scott</u>, 787 So. 2d 626, 631 (Miss. 2001). The relevance of this distinction is that the Canadian law creates an easier burden for plaintiffs, as they do not have to prove falsity in order to proceed with their claim, while in the United States, the additional hurdle required of the plaintiff to demonstrate falsity clearly establishes a greater regard for the importance of free speech. In a Canadian case, if a defendant did not raise the truth defense, plaintiff would be able to recover without any

investigation into the truth or falsity of the statements, while in the United States, regardless of what defenses are raised by the defendant, the claim would not proceed unless he first proves falsity.

In the United States, a party classified as a public official may only recover in a defamation lawsuit upon a showing of actual malice. New York Times Co. v. Sullivan, 376 U.S. 254, 283 (1964). This standard of fault was later extended to public figures. Curtis Pub. Co. v. Butts, 388 U.S. 130, 155 (1967). Actual malice entails that the statement was published with "knowledge that it was false or with reckless disregard of whether it was false or not." Sullivan, 376 U.S. at 280. This is a high burden to meet, as proving a reckless disregard of the truth requires a subjective finding that the defendant seriously doubted the truth of his publication and experienced a "high degree of awareness of … probable falsity." Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 688 (1989) (quoting Garrison v. La., 379 U.S. 64, 74 (1964)). The court acknowledged that "no one suggests [the] desirability or further proliferation" of lies or false communications, "[b]ut to insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones." St. Amant v. Thompson, 390 U.S. 727, 732 (1968).

***The Canadian Supreme Court has expressly declined to adopt the venerable legal standards of the United States Supreme Court and other federal and state courts***. Hill v. Church of Scientology of Toronto, [1995] 2 S.C.R. 1130 (Can.). (See Exhibit 5 - Hill v. Church of Scientology of Toronto, slip opinion). In Hill, the judge considered whether it would be appropriate to adopt the actual malice requirement in Canada. Id. In this analysis, the judge included a summary of critiques of the actual malice standard from commentators in the United States, as well as, court opinions from Australia and the United Kingdom rejecting the standard.

Id. at ¶ 122-37.   The judge emphasized that "[i]t has been argued the [Sullivan] decision has shifted the focus of defamation suits away from their original essential purpose. Id. at ¶ 127. Rather than deciding upon the truth of the impugned statement, courts in the U.S. now determine whether the defendant was negligent."   Id.   In summary, the judge stated:

> I can see no reason for adopting [the Sullivan standard of actual malice] in Canada in an action between private litigants.   The law of defamation is essentially aimed at the prohibition of the publication of injurious false statements.   It is the means by which the individual may protect his or her reputation which may well be the most distinguishing feature of his or her character, personality and, perhaps, identity … Surely it is not requiring too much of individuals that they ascertain the truth of the allegations they publish.  The law of defamation provides for the defences of fair comment and of qualified privilege in appropriate cases.   Those who publish statements should assume a reasonable level of responsibility.

Id. at ¶ 137. As United States courts have stated, "proving actual malice is a heavy burden," but it is the accepted standard of proof placed upon U. S. plaintiffs nonetheless. Peter Scalamandre & Sons, Inc. v. Kaufman, 113 F.3d 55, 560-61 (5th Cir. 1997).   Thus, it is a difficult feat for a plaintiff who is a public figure or a public official to prevail in a defamation suit.   By enacting this difficult hurdle for public figures and public officials, the United States courts have upheld the importance of the free speech rights afforded by the First Amendment. In contrast, Canada has expressly declined to extend these First Amendment principles to its laws, increasing the likelihood that a public figure or a public official would be able to prevail in a defamation lawsuit.   Since a Canadian plaintiff, even if found to be a public figure or public official, does not have to prove actual malice in order to prevail in a Canadian defamation lawsuit, Canadian law affords less protection to an individual's free speech rights, placing greater emphasis on determining the truth of the statement, rather than the level of fault of the speaker.   Therefore, in comparison to domestic law, which affords greater First Amendment protection by requiring public figures to show actual malice, Canadian law provides less protection.   This distinction is

particularly important in this case because, as discussed in Section II, the plaintiffs are public figures.

In <u>Grant v. Torstar Corp.</u>, [2009] 3 S.C.R. 640 (Can.), the Supreme Court of Canada slightly increased its protection of free speech by recognizing "responsible communication" as a defense to defamation. (See Exhibit 4).  This defense allows "publishers to escape liability if they can establish that they acted responsibly in attempting to verify the information on a matter of public interest," as distinguished from the American standard which protects "all statements about public figures, unless the plaintiff can show malice." <u>Id.</u> at ¶ 85. In order to assert this defense, the defendant must prove 1) that the publication was on a matter of public interest and 2) that the publisher was responsible—specifically, that the publisher conformed to professional journalistic standards. <u>Id.</u> at ¶ 98. The court provided a number of factors to consider when determining the publisher's responsibility. <u>Id.</u>  For example, a "blow that devastates the target's reputation and career" carries with it a greater responsibility of verification than a "passing irritant." <u>Id.</u> at ¶ 111.  Additionally, courts may explore the status and reliability of the source of information, whether the public's need to know justified publication before taking steps to verify, whether the plaintiff's side of the story was sought and accurately reported, and other considerations. <u>Id.</u> at ¶ 110-22.

However, while the recognition of the responsible communication defense does lend additional free speech protection to the media, it does not rise to the level of protection afforded by the First Amendment.  United States courts have specifically noted that "the failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless regard [of the falsity of the matter]." <u>Harte-Hanks Commc'ns, Inc.</u> <u>v. Connaughton</u>, 491 U.S. 657, 688 (1989). See also <u>Peter Scalamandre</u>, 113 F.3d at 561 (stating

that "[i]if a publication is undertaken in good faith, failure to investigate the subject of that publication will not in itself establish actual malice").

For example, in <u>St. Amant</u>, 390 U.S. at 733, the U.S. Supreme Court did not find actual malice when a candidate for public office made statements in a televised speech accusing a deputy sheriff of gross misconduct.  The decision reversed that of the Louisiana Supreme Court, which had found actual malice because 1) the speaker did not have personal knowledge of the sheriff's activities, 2) he relied on an affidavit from a source without knowing the source's veracity, 3) he failed to verify the information with individuals who "might have known" the facts, 4) he gave no consideration as to whether the statements were defamatory, and 5) he believed he had no responsibility for the broadcast because he was merely quoting someone else's words. <u>Id.</u> at 730.  The U.S. Supreme Court found that these facts did not rise to the standard of actual malice. <u>Id.</u>  The statements did not demonstrate reckless disregard because there were not "obvious reasons to doubt the veracity of the informant or the accuracy of his reports." <u>Id.</u> at 732.

In <u>Harte-Hanks Communications</u>, 491 U.S. at 668, the U. S. Supreme Court clarified that a departure from professional standards may be discussed in a determination of actual malice, but it is insufficient on its own to establish actual malice. <u>Id.</u> at 667-68.  It is merely a single factor in the analysis, and the Court specifically stated that "courts must be careful not to place too much reliance on such factors." <u>Id.</u>  The Court cited <u>Curtis Publishing</u>, where the majority of the Court "emphatically rejected" Justice Harlan's proposed standard that would have allowed a public figure to make a less difficult showing of an extreme departure from the standards of investigation. <u>Id.</u> (citing <u>Curtis Publishing</u>, 388 U.S. at 153). While the Court did find actual malice in this case, the facts yielded a determination that there was "purposeful avoidance of the

45

truth." Id. at 692.  In this case, a reporter had knowledge of a key witness whom she failed to interview, and recordings that disproved the allegations were provided to the newspaper, but the reporter actively chose not to listen to them. Id.

Thus, Canadian law requires very diligent investigation by its reporters in order to qualify for protection, but domestic protection falters only if the plaintiff can prove that the defendant "entertained serious doubts as to the truth of his publication" and "had a high degree of awareness of probably falsity." Harte-Hanks, 491 U.S. 657 at 688. Canada's media protection is much narrower.  In Harte-Hanks, the court found actual malice because of a failure to investigate when the reporter knew there was likely to be information that disproved the allegations.  Under Canadian law, the court would have likely denied protection under much less egregious facts. While Canadian law would have entertained a more lenient showing that the journalist failed to investigate whether there might be information that disproved the allegations, domestic protection was denied only because the court found that there was active, purposeful avoidance of the truth. See Grant [2009] 3 S.C.R. 640, at ¶ 116 (suggesting that a journalist has a responsibility to contact the target of the statement and stating that "in most cases, it is inherently unfair to publish defamatory allegations of fact without giving the target an opportunity to respond").  On the other hand, a Canadian court would have likely determined that the speaker was not protected in St. Amant, because the speaker did not consider the veracity of the source from whom he received the information, and he did not consult with other sources who "might have known" the facts. See id. (suggesting that in cases of serious allegations, the speaker has a greater duty to verify the truth and that the reliability of the source is an important consideration).  In light of a comparison of the facts of St. Amant and Harte-Hanks to the factors

Case 1:12-cv-00090-LG-JMR   Document 10   Filed 06/28/12   Page 15 of 31

discussed in Grant, it is clear that Canada's protection of the media is much narrower than that of the United States.

Further, Canadian law is less stringent than domestic law in its allowance of punitive damages. In the United States, a court may not award punitive damages unless the plaintiff, whether a public or a private figure, proves actual malice. 2 Law of Defamation § 9:37 (2d ed.). See also Gertz v. Robert Welch, Inc., 418 U.S. 323, 349 (1974) ("[T]he States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.") However, Canadian law applies a much more lenient standard for determining when punitive damages may be awarded. In Hill, [1995] 2 S.C.R. 1130 (Can.), at ¶ 196, the court stated that "[p]unitive damages may be awarded in situations where the defendant's misconduct is so malicious, oppressive and high handed that it offends the Court's sense of decency." (See Exhibit 5). It is clear that United States law provides greater free speech protection in this regard as well.

Canadian law treats injunctive relief more favorably than domestic law. In the United States, injunctions in defamation cases are highly disfavored. See Nebraska Press Ass'n. v. Stuart, 427 U.S. 539, 559 (1976) ("[p]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.") See also Bernard v. Gulf Oil Co., 619 F.2d 459, 467 (5th Cir. 1980) ("While a prior restraint is not unconstitutional per se, there is a heavy presumption against its constitutionality.") However, as exemplified by the Nova Scotia judgment here, Canadian courts freely grant injunctive relief in defamation cases without any showing of damage or harm, which cannot be remedied by ordinary proceedings and monetary damages. In the case at bar, it is highly unlikely that any domestic court would have

granted the plaintiffs the extraordinary remedy of injunctive relief effectively silencing Slabbed and Handshoe, given the nature and content of the comments on the blog.

Finally, the United States has enacted legislation to protect providers or users of an "interactive computer service" from liability for publishing information provided by others. 47 U.S.C. § 230 (2006).   For example, an administrator of a blog cannot be held liable for defamatory statements made by his readers in the comments section of his blog, and Canada has no comparable law. Investorshub.com, Inc. v. Mina Mar Group, No. 4:11cv9-RH/WS, (N.D. Fla. June 20, 2011). (See Exhibit 3).

Again, in this instance, the Canadian plaintiffs obtained an order of injunctive relief which improperly prohibited Slabbed and Handshoe from making any comments about the plaintiffs and actually mandated removal of prior comments on the blog. These foreign plaintiffs then took their injunctive order issued by the Canadian court and "shopped" it to several of Slabbed's internet service providers ("ISP's"). Rather than wrangle with these litigious plaintiffs, the ISP's simply acquiesced and terminated the defendants' services requiring herculean efforts to maintain Slabbed's presence on the internet and the defendants' free speech rights.   The conduct of the Canadian court, and the plaintiffs, in this "libel terrorism" against the defendants' free speech rights is yet more evidence that the Canadian libel judgment should not be accorded legitimacy by this Honorable Court.

In light of the discussion above, there is no genuine issue of material fact or law as to whether Canadian law provides the same protection of freedom of speech as domestic law.   In this case, the Canadian court ruled upon a libel claim brought by the plaintiffs for blogs and comments published by the defendants in the United States. While the defendants were dubiously cited and served with that foreign litigation and did not appear to defend themselves,

the Canadian court found for the plaintiffs and awarded substantial damages on scant proof, and these damages included punitive damages. As a matter of law, it is unquestionable that the Canadian law applied to the underlying dispute did not afford equal free speech protections to the defendants as they would have enjoyed under United States law. Comparative analysis of Canadian libel law to that flowing from our United State Constitution yields the inescapable conclusion that the judgment which the plaintiffs seek to enforce here is invalid as a matter of law. Thus, it is entirely appropriate for this Honorable Court to grant summary judgment dismissing their claims with prejudice.

## II. The SPEECH Act Precludes the Enforcement of Plaintiffs' Judgment in Domestic Courts Because Plaintiffs Cannot Prove a <u>Prima Facie</u> Case of Defamation Under United States Law

The plaintiffs also will be unable to show that under domestic, State law, they would have been able to recover.  Mississippi law provides for the burden of proof in libel cases:

> A claim of defamation requires that the plaintiff establish: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault amounting to at least negligence on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

<u>Fulton v. Miss. Publishers Corp.</u>, 498 So. 2d 1215, 1216 (Miss. 1986).  A defamatory statement is one that "tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community." <u>Id.</u> at 1217.  Public figure plaintiffs have the "additional burden of proving actual malice by ***clear and convincing evidence***." <u>Armistead v. Minor</u>, 815 So. 2d 1189, 1193 (Miss. 2002). (Emphasis added).

Plaintiffs claimed four defamatory themes in the series of blog posts written by defendants.  First, they claimed that defendants identified and linked the plaintiffs with the Jefferson Parish political corruption scandal involving ex-Parish President, Aaron Broussard.  Second, they claimed that defendants accused them of "[misleading] investors and court officials in litigation with the Atlantic Canada Opportunities Agency."  Third, they claimed that defendants stated that the Trout Point Lodge "is actively failing, near bankruptcy, having once relied on the good graces of Aaron Broussard."  Finally, they claimed that defendants' remarks about their admitted homosexual lifestyle are defamatory.

Plaintiffs would not have recovered under domestic law for several reasons.  First, they would have been unable to prove that defendants' statements were false.  Second, had the statements been false, as public figures, they would have been unable to prove that defendant acted with actual malice.  Third, many of the statements claimed to be defamatory were opinion statements that are protected.  Finally, many of the statements claimed to be defamatory were, at worst, arguably only insults protected by the First Amendment.

Mississippi law states that the "threshold question" in a defamation case is whether the material presented is false, as truth is an "absolute defense." P.L. Blake v. Gannet Co., 529 So. 2d 595, 602 (Miss. 1988).  In fact, Mississippi law recognizes truth as a defense as long as the statement was "substantially true." Id. at 603.  The burden of proving falsity is on the plaintiff. Id. See also Phila. Newspapers, 475 U.S. at 776 ("We believe that the common law's rule on falsity—that the defendant must bear the burden of proving truth—must similarly fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages.")

For example, in <u>Armistead</u>, 815 So. 2d at 1196, the Mississippi Supreme Court held that a newspaper columnist who reported on a former town sheriff's involvement in several Mississippi scandals was not liable for defamation because the statements were substantially true.  The court found after reviewing the record that while not all of the statements had "an adequate basis of fact in the record," the burden of disproving the statements rested on the plaintiff, and he was unable to carry this burden. <u>Id.</u> at 1195. While the plaintiff "[relied] on his own denials to serve as proof" of falsity, this was insufficient to counteract the "bulk" of the articles and reports. <u>Id.</u>  The Supreme Court affirmed the trial court's holding that the truth of the statements barred recovery for defamation. <u>Id.</u> at 1196.

As in <u>Armistead</u>, defendants' statements relating to the plaintiffs' involvement with Aaron Broussard, their lawsuit with the Atlantic Canada Opportunities Agency, and the financial viability of Trout Point Lodge are not actionable.  The attached affidavit demonstrates that as a matter of fact, these statements were truthful, and more importantly, in the trial in the Canadian court, the plaintiffs obviously offered no proof that the statements made by Slabbed or Handshoe were substantially false and made with a reckless disregard of the truth.  Defendants' statements relating to the plaintiffs' sexual orientation were also factual statements, as plaintiffs are avowed homosexuals engaged in a relationship.  Under Mississippi law, this is an absolute defense.

Many of the statements claimed by plaintiffs to be defamatory are opinion statements, which are protected by the First Amendment.  Under Mississippi law, a statement is protected if it cannot "'be reasonably understood as declaring or implying a provable assertion of fact.'" <u>Roussel v. Robbins</u>, 688 So. 2d 714, 723 (Miss. 1996) (quoting <u>Keohane v. Wilkerson</u>, 859 P.2d 291, 296 (Colo. App. 1993).  While a statement phrased as an opinion is not automatically protected, it will receive protection as long as the court concludes that "its substance or gist"

51

would not be reasonably interpreted as "declaring or implying an assertion of fact." Id.  For example, defendants' alleged statement referring to the plaintiffs as "first class bitches" would not be actionable, as it is not declaring a provable assertion of fact; it merely reflects defendant's personal intrinsic reaction to the nature of plaintiffs' behavior—an assertion that cannot be proven true or false.  Further, [o]pinion statements are actionable only if they clearly and unmistakably imply the allegation of undisclosed false and defamatory facts as the basis for the opinion. Ferguson v. Watkins, 448 So. 2d 271, 276 (Miss. 1984). Defendants' alleged statement that the plaintiffs "had Champagne taste on a beer budget" is an opinion that is based on true facts regarding plaintiffs' businesses practices that are discussed throughout defendants' reporting.

The First Amendment protects defendants' commentary about the plaintiffs' sexual orientation.  The Supreme Court has stated that "[a]t the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern." Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50 (1988).  The First Amendment protects "[a]ll ideas having even the slightest redeeming social importance," including "unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion," unless they are "excludable because they encroach upon the limited area of more important interests." Roth v. United States, 354 U.S. 476, 484 (1957).  Moreover, the Supreme Court of Mississippi has explicitly stated that "nothing in life or our law guarantees a person from immunity from occasional sharp criticism . . . . *Caustic commentary is simply not actionable libel*." Ferguson, 448 So. 2d at 276.  (Emphasis added).

The U. S. Supreme Court has deemed certain speech unprotected; for example, speech that is obscene because it "deals with sex in a manner appealing to prurient interests" is not

protected.  Roth v. United States, 354 U.S. 476, 487 (1957).  Fighting words, "personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction," are also not protected.  Cohen v. California, 403 U.S. 15, 20 (1971).  Additionally, true threats, statements conveying "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," receive no protection.  Virginia v. Black, 538 U.S. 343, 359 (2003).   Other categories of unprotected speech include defamation of private individuals, as discussed in Gertz v. Robert Welch, Inc., 418 U.S. at 342-43, and misleading commercial speech, as the Court explained in Central Hudson Gas & Electricity Corp. v. Public Service Commission of New York, 447 U.S. 557, 563 (1980).

Defendants' commentary about plaintiffs' sexual orientation, most frequently manifested in his referrals to plaintiffs as "the girls," simply does not fall into any of these aforementioned categories.  He has never used "fighting words" to incite a breach of the peace, nor has he ever threatened them with physical violence.  Further, his statements are not obscene because they do not appeal to a prurient interest, unlike in Roth v. United States, where the Court held that a statute that criminalized a publisher's mail distribution of obscene advertisements did not violate the publisher's First Amendment rights. Roth, 354 U.S. at 492.

The Supreme Court also held in F.C.C. v. Pacifica Foundation, 438 U.S. 726, 747 (1978), that offensive speech that is considered "vulgar, offensive, and shocking" may not be protected by the First Amendment depending on the context in which it is used.  In that case, the Court held that the F.C.C. did not violate a radio broadcaster's First Amendment rights when it determined that a monologue performed on the air entitled "Filthy Words," which contained a number of "patently offensive words dealing with sex and excretion," was indecent and

prohibited by statute. Id. at 750-51.  The Court highlighted the Commission's emphasis on the time of day of the broadcast, which was in the middle of the afternoon when many children were likely to be listening. Id. at 731-32.  Further, the Court discussed children's unique access to radio broadcasts as opposed to the written word, stating that "[w]hile the written message might have been incomprehensible to a first grader,  Pacifica's broadcast could have enlarged a child's vocabulary in an instant." Id. at 749.  The Court additionally considered that in the case of broadcast media, warnings on the air are insufficient to give listeners advance notice of offensive material, as listeners are tuning in and out, and due to the "pervasive presence" of broadcast media in people's lives, "indecent material presented over the airwaves confronts the citizen." Id. at 748-49.

However, this case is clearly distinguishable from the facts of the case before this Honorable Court.  First, defendants' references to plaintiffs as "the girls" and his comparisons to gay stereotypes in movies and pop culture are not shocking, vulgar, or offensive.  Second, even if these statements were found to be "patently offensive," there is a significant difference between using offensive language on the Internet and broadcasting it on the radio.  Readers have to actively seek out the Slabbed website, while the immediacy of a radio broadcast leads to the inevitable "confrontation" discussed in Pacifica.  Individuals reading Slabbed are doing so because they choose to read defendants' reporting, and there is a clear distinction between airing a monologue of offensive language in the middle of the afternoon and posting it on a website unlikely to be accessible by young children.

Not only are the statements true and protected by the First Amendment, but they are not defamatory.  Plaintiffs cannot possibly prove that defendants' statements were defamatory to the point that they injure reputation, expose them to public hatred, or lessen them in public esteem,

as required by the standard set by Mississippi law, because plaintiffs' sexual orientation was not

a secret prior to defendants' discussion on Slabbed.  Since their sexuality was already public, any

statements made by defendants could not have changed public perception of the plaintiffs in

regard to their sexual orientation.

     Further, speaking to the defamatory nature of the statements, stating that an individual is

homosexual was considered defamation per se in the past, but courts have recently strayed from

this view.  A statement is defamatory per se when it is found to be so egregious that it does not

require a plaintiff to show special harm. Speed, 787 So. 2d at 632.  Mississippi recognizes five

categories of statements that are defamatory per se:

> (1) Words imputing the guilt or commission of some criminal offense involving
> moral turpitude and infamous punishment. (2) Words imputing the existence of
> some contagious disease. (3) Words imputing unfitness in an officer who holds an
> office of profit or emolument, either in respect of morals or inability to discharge
> the duties thereof. (4) Words imputing a want of integrity or capacity, whether
> mental or pecuniary, in the conduct of a profession, trade or business; and … (5)
> words imputing to a female a want of chastity.

Id.  Some courts in the past found that stating that an individual was homosexual fit into the first

category because homosexuality implies the crime of sodomy. Robinson v. Radio One, Inc., 695

F. Supp. 2d 425, 428 (N.D. Tex. 2010).  However, in light of the holding in Lawrence v. Texas,

539 U.S. 558, 584 (2003), where the Supreme Court invalidated laws criminalizing homosexual

conduct, courts are beginning to find that this is no longer appropriate logic. Stern v. Cosby, 645

F. Supp. 2d 258, 274 (S.D.N.Y. 2009); see also Yonaty v. Micolla, 2012 N.Y. Slip Op. 04248

(N.Y. App. Div. May 31, 2012) (finding that "prior cases categorizing statements that falsely

impute homosexuality as defamatory per se are based upon the flawed premise that it is shameful

and disgraceful" to be homosexual and are inconsistent with the reasoning in Lawrence").

Additionally, several courts have found that derogatory slurs are not defamatory. See Ledsigner

v. Burmeister, 318 N.W.2d 558, 564 (Mich. Ct. App. 1982) (stating that the term "nigger," although offensive, revealed about plaintiff only that he was black; see also Lovings v. Thomas, 805 N.E.2d 442, 447 (Ind. Ct. App. 2004) ("[i]t is well-settled throughout this country that obnoxious remarks … are not defamatory per se").  In the case at bar, the truth of the allegation about plaintiffs' sexuality, the fact that their sexual orientation was not private before defendants' discussion of it on his blog, and the non-defamatory nature of the statements will bar plaintiffs from successfully asserting a defamation claim on this issue in the State of Mississippi or in any Federal Court applying the relevant state substantive law.

It is also worth nothing that regardless of the nature of the statements claimed to be defamatory, the plaintiffs would have to prove actual malice in order to assert a prima facie case of defamation, as they are indisputably public figures.  Mississippi law recognizes the concept of a "vortex public figure" – one who is otherwise a private figure but who thrusts himself or becomes thrust into a matter of legitimate public interest.  Ferguson, 448 So. 2d at 277.  If an individual "becomes involved, voluntarily or involuntarily, in any matter of legitimate public interest," that individual "becomes in that context a vortex public figure who is subject to fair comment."  Id. at 278.  In fact, the Mississippi Supreme Court has gone as far as to clarify that "the actual malice standard [applies] to private individuals if the offending speech involved a matter of public concern or general public interest."  Straheli v. Smith, 548 So. 2d 1299, 1304 (Miss. 1989) (citing Dun & Bradstreet v. Greenmoss Builders, 473 U.S. 749 (1985)).

The plaintiffs fit into this classification of vortex public figures.  Plaintiffs engaged in questionable business operations with Aaron Broussard—an elected public official who is charged with kickback schemes and other corruption—relating to Broussard's misdeeds.  They were the subjects of media reports and blogs, by their own admissions, in the mainstream and

56

secondary media.  It is clear that plaintiffs have become involved in a matter of legitimate public interest.  Additionally, the Atlantic Canada Opportunities Agency took action against the plaintiffs to recover $100,000 loaned to them for a failed prior business venture, and a feature story that ran in the March 2002 issue of *Rural Delivery Magazine* revealed their unethical business practices with Canadian milk producers.  It is the plaintiffs' own actions which have led them to become public figures involved in matters of public interest; they are thus subject to fair comment.

To prove actual malice, a public figure plaintiff carries a "heavy burden." <u>Peter Scalamandre</u>, 113 F.3d at 560-61.  It is insufficient to simply prove that "the defendant spoke out of dislike, or with ill will towards another." <u>Id.</u>  A public figure plaintiff must show that "the defendant either a) knew clearly that the utterance was false, defamatory and otherwise actionable, or b) acted in reckless disregard of whether it was false, defamatory and otherwise actionable." <u>Ferguson</u>, 448 So. 2d at 279.  Further, the Court has clarified that:

> [r]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.  There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

<u>St. Amant</u>, 390 U.S. at 731. Therefore, if plaintiffs would ever be able to recover for defamation, they would have to meet this high fault standard, as opposed to simply negligence. In this case, the record of the Canadian proceedings does not evidence any proof of the falsity of the defendants' statements, but more importantly, that the defendants acted with reckless disregard of the truth. In the absence of such evidence which might support a state court libel judgment, it is apparent that the plaintiffs could not have prevailed on their libel claims in the United States.

Finally, it is worth noting that the transcript of the Nova Scotia decision contains no discussion of the SPEECH Act, and the judge made no preliminary findings relating to the validity of her decision in United States courts.  Because of the requirements of the SPEECH Act, the failure of the Canadian court to make prefatory findings regarding the comparability of United States and Canadian free speech protection renders the judgment which the plaintiffs now seek to enforce in Mississippi, on its face, unenforceable in domestic courts. In other words, had the Canadian judge made a preliminary finding that Canadian laws were equal in their protection of United States citizens under the laws of our nation, then an argument against enforceability might be lessened. However, the lack of any discussion of the comparative analysis of Canadian and United States libel laws is fatal to the attempts to enroll and execute on the judgment in this Honorable Court, as a matter of law.

## III. The Canadian Court Did Not Have Personal Jurisdiction Over Defendants

The SPEECH Act states that "a domestic court shall not recognize or enforce a foreign judgment for defamation unless the domestic court determines that the exercise of personal jurisdiction by the foreign court comported with the due process requirements that are imposed on domestic courts by the Constitution of the United States." 28 U.S.C. § 4102 (2006).  The statute specifies that the party seeking enforcement of the judgment has the burden of proof. Id.

Additionally, under Mississippi law, "the enforcement of a judgment entered in a foreign nation is governed by state law and the principle of comity." Dep't of Human Servs. State of Miss. v. Shelnut, 772 So. 2d 1041, 1044 (Miss. 2000).  Principles of international comity have established that the judgment of a foreign court will be recognized as conclusive in a federal court if five requirements are satisfied. Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV, 347 F.3d 589, 594 (5th Cir. 2003) (citing Hilton v. Guyot, 159 U.S.

113 (1895)).  First, the foreign judgment must have been rendered by a court of competent jurisdiction over the cause and parties. Id.  Second, the judgment must be supported by due allegations and proof. Id.  Third, the relevant parties must have had an opportunity to be heard. Id.  Fourth, the foreign court must have followed procedural rules. Id.  Finally, the foreign proceedings must have been stated in a clear and formal record. Id.

The Canadian judgment is simply not enforceable in Mississippi because the Canadian court did not have personal jurisdiction over defendants.  Personal jurisdiction must be determined by a "two-step inquiry:  (1) the defendant must be amenable to service of process under the forum state's long-arm statute; and (2) the exercise of jurisdiction under the state statute must comport with the dictates of the Due Process Clause of the Fourteenth Amendment." Brown v. Bob Tyler Suzuki, Inc., 1:11CV116HSO-JMR, 2012 WL 293486, at *2 (S.D. Miss. Jan. 31, 2012).  In order to satisfy Due Process requirements, the court must find that "(1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with that state; and (2) the exercise of personal jurisdiction does not offend traditional fair play and substantial justice." Id.  Further, in regard to minimum contacts, it must be determined whether there is specific jurisdiction, which occurs when defendant's "contacts with the forum state arise from, or are directly related to, the cause of action," or general jurisdiction, which occurs when the contacts are not directly related to the cause of action, but "the defendant's contacts with the forum state are both continuous and systematic." Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994).

Defendants do not have the requisite minimum contacts with Canada to be subject to either specific or general jurisdiction in Canada.  Handshoe resides in Mississippi and has never traveled to Canada, and Slabbed has its principal place of business in Mississippi.  While

defendants may have recently posted about plaintiffs and their Nova Scotia property, he has not

conducted business in Canada, and his posts on Slabbed are not targeted to Canadian readers.  In

Revell v. Lidov, 317 F.3d 467, 475 (5th Cir. 2002), the United States Court of Appeals for the

Fifth Circuit held that a Texas court did not have personal jurisdiction over a nonresident author

who published defamatory statements about a Texas resident because "the post to the bulletin

board … was presumably directed at the entire world," and "not specifically directed at Texas . .

. ." Similarly, Healix Infusion Therapy, Inc. v. Helix Health, LLC, H-08-0337, 2008 WL

1883546, at *7 (April 25, 2008), the United States District Court for the Southern District of

Texas held that the author of a health blog visited by many Texas residents was not subject to

personal jurisdiction in Texas, as his blog was not specifically geared towards Texas readers.

     Similarly, Slabbed is not written for readers in Canada.  The tagline on the Slabbed

website is "Alternative New Media for the Gulf South."  The subject matter of the blog is

entirely focused on exposing local corruption and exploring local political issues.  Plaintiffs have

only received coverage on this blog because of their connection with Aaron Broussard, a former

Louisiana politician.  While the blog may have attracted a small readership in Nova Scotia, the

posts are in no way targeted at those readers.  Following the reasoning in Revell and Healix,

defendants' blog maintenance does not establish minimum contacts sufficient to subject them to

specific jurisdiction in Canada.

     The Court has held that in order for a forum state to have jurisdiction over a member of

the media who publishes defamatory statements about an individual and does not otherwise have

contacts with that state, the forum state must be the "focal point" of both the story and the

harmed suffered. See Calder v. Jones, 465 U.S. 783, 789 (1984).  In Calder, the court found that

two Florida residents who were employees of the National Enquirer, a Hollywood gossip

publication which has its principal place of business in Florida, were subject to personal jurisdiction in California after they published defamatory statements about a California entertainer. Id. at 791.  In that case, one of the defendants was a reporter who frequently traveled to California on business; the other was an editor who had traveled to California twice, one time to testify in an unrelated trial. Id. at 785-86.  The plaintiff was an actress who lived and worked in California. Id. at 785.   The Court found that because the focal point of the story was California—"they knew that the brunt of the injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation"— jurisdiction was proper there. Id. at 789-90.

The "focal point" of the story in the instant case is not Nova Scotia.  While the plaintiffs live there and have engaged in questionable business activities there, the focal point of this story is Louisiana and the plaintiffs' association with an indicted former high-profile politician.  The only reason why plaintiffs are relevant at all to the Slabbed blog, which is focused on political corruption in the Gulf region, is because of their connections to Aaron Broussard. Defendant did not arbitrarily select the plaintiffs with the goal of directing a foreign country's attention to the misdeeds to two of its residents; he exposed their connections to Louisiana as a part of his coverage of the Aaron Broussard scandal.   Their activities in Nova Scotia have received coverage on the blog, but they are supplemental to the heart of the controversy, which is that they have business connections to a local former politician who has allegedly engaged in illegal activities.

The Canadian court did not have personal jurisdiction over defendants when issuing its judgment; therefore, the Due Process requirements were not satisfied.  Therefore, this Honorable

Court should decline to enforce this judgment for lack of personal jurisdiction and failure to satisfy Due Process, as it not a conclusive judgment under the principles of comity.

### *Conclusion*

Congress enacted the SPEECH Act to ensure that situations such as this one would not occur and result in the infringement of the free speech that is the cornerstone of our Founding Fathers' notions of freedom.  In this instance, Doug Handshoe, through Slabbed, commented on the plaintiffs and their association with an indicted ex-politician from Jefferson Parish regarding matters widely reported in the media. The commentary of the defendants was not libelous.

Yet, a Canadian court, without making any prefatory finding that Canadian law affords equal free speech protections, and overlooking any due process flaws in the service upon defendants, rushed headlong into awarding the plaintiffs substantial sums in damages for the innocuous comments on Slabbed. As a matter of fact and law, though, Canadian substantive law is nowhere near equal to that of the United States and Mississippi in its encouragement and protection of free and open speech. In fact, Canadian law merely allows damages upon the utterance of words against another which "lower the plaintiff's reputation in the eyes of a reasonable person;" the standard of libelous language in the United States is much more exacting.  Further, given the more stringent standard of proof required to be shown by a plaintiff under domestic law, plaintiffs would not have been able to prove a prima facie case of defamation in the United States.  As a matter of law, the defendants are entitled to a summary judgment dismissing the claims of the plaintiffs as unenforceable under the SPEECH Act.

Furthermore, the validity of the Canadian judgment cannot pass due process muster. In this case, the defendants were not properly served with any citation in a manner that comports with fairness and equitable considerations protected by the laws of our country. Additionally,

there was no proof adduced by the plaintiffs in the Canadian court that would allow for the court to take personal jurisdiction over the defendants, as they have not conducted any activities in Canada nor did they have any expectation of being haled into that court. In the absence of any evidence that minimal due process standards were met by the plaintiffs in their showing in Canada, this Honorable Court must grant summary judgment dismissing the plaintiffs' claims with prejudice.

Respectfully submitted,

**THE TRUITT LAW FIRM**
A Limited Liability Company

S/*Jack E. "Bobby" Truitt*
_____
JACK E. TRUITT, BAR NO. 18476
149 North New Hampshire Street
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com
Counsel for defendants, Slabbed Media, LLC and
Douglas Handshoe

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been duly served on all counsel of record by depositing same into the U.S. Mail, postage pre-paid, and/or by hand and/or by facsimile and/or by electronic means on June 28, 2012.

S/*Jack E. "Bobby" Truitt*
_____