IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TROUT POINT LODGE, LIMITED,
A Nova Scotia Limited Company;
VAUGHN PERRET and
CHARLES LEARY,

                Plaintiff,        Civil Action No.: 1:12-CV-90LG-JMR

v.

DOUG K. HANDSHOE,

                Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM IN OPPOSITION OF MOTION FOR SUMMARY JUDGMENT OF PLAINTIFFS

**MAY IT PLEASE THE COURT**:

This Memorandum in Opposition of Motion for Summary Judgment is submitted on behalf of defendants Slabbed New Media, LLC ("Slabbed") and Douglas Handshoe ("Handshoe").

*Argument and Law*

**I. Canadian Court Did Not Have Personal Jurisdiction over Defendants**

Plaintiffs' assertions that the Nova Scotia court had personal jurisdiction over defendants are unfounded. Contrary to plaintiffs' contentions, Nova Scotia was not the focal point of the story. While plaintiffs live and work in Nova Scotia, the purpose of defendants' blog is to cover issues relating to the Gulf South. The primary purpose of the Slabbed coverage of plaintiffs is to demonstrate their connection to Aaron Broussard; they would not otherwise have been at all relevant to the Slabbed blog. Simply because the plaintiffs happen to live and work in Nova Scotia does not automatically make Nova Scotia the focal point of the story; the focal point is

Louisiana, as they were involved in business operations with a Louisiana politician, and it is those actions that have placed plaintiffs in the spotlight on the Slabbed blog.

Plaintiffs rely on Calder v. Jones, 465 U.S. 783 (1984), a case also discussed in defendants' motion for summary judgment, to support their assertion that the subject matter of the story and the sources relied upon to report it determine whether there is personal jurisdiction. However, Calder is clearly distinguishable from the case at bar. In that case, a Florida-based reporter published a story in a national celebrity gossip magazine, headquartered in Florida, about a California entertainer. Id. at 784-85. California has the highest circulation of this publication of any state. Id. at 785. The entire heart of the story was the actress and her career in California. See id. at 788-89. Here, however, the focal part of the story is the plaintiffs' connection to the Gulf Coast. Their connection to Nova Scotia was not the focal point; it is merely supplemental to the important theme of the story. A connection to the Gulf South is a common thread through all of the stories covered on Slabbed.

Further, in Calder, where the large California readership along with the residency of the subject of the articles was known to the reporter, the Court noted that "[u]nder the circumstances, [the reporter] must 'reasonably anticipate being haled into court there.'" Id. at 790 (quoting World Wide Volswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). In contrast, Slabbed is a publication directed to a population in the Gulf South. Simply because one aspect of a story that defendants cover relates to Nova Scotia does not mean that defendants should be subject to personal jurisdiction there. It is undeniable that the California setting played a more important role in Calder than Nova Scotia does in the instant case, because of the nature of the story reported and the difference in circulation. Therefore, the argument that Calder is controlling precedent in this case is not compelling.

## II. The Canadian Law Applied by the Nova Scotia Court Did Not Afford the Same Protection That Domestic Law Affords

Plaintiffs' memorandum includes a detailed reproduction of Canadian case law relating to damages awarded in a defamation case, quoting several paragraphs from Hill v. Church of Scientology of Toronto, [1995] 2 S.C.R. 1130 (Can.). However, plaintiffs' analysis ignores a fundamental distinction between the Hill case and the substantive libel law of the United States. Before covering damages, an important preliminary analysis would be a comparison of the required burdens of proof in Canada and the United States, yet the plaintiffs have failed to undertake even a facile comparison. As discussed in the defendants' Memorandum in Support of Motion for Summary Judgment, the Canadian burden of proof required of a defamation plaintiff is much easier to meet than that required under Mississippi law. Under Canadian law, the plaintiff must prove:

> (1) that the impugned words were defamatory, in the sense that they would tend to lower the plaintiff's reputation in the eyes of a reasonable person; (2) that the words in fact referred to the plaintiff; and (3) that the words were published, meaning that they were communicated to at least one person other than the plaintiff.

Grant v. Torstar Corp., [2009] 3 S.C.R. 640 (Can.), at ¶ 28. In contrast, Mississippi law requires the plaintiff to establish:

> (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Fulton v. Miss. Publishers Corp., 498 So. 2d 1215, 1216 (Miss. 1986). Under domestic law, public figure plaintiffs must "[prove] actual malice by clear and convincing evidence." Armistead v. Minor, 815 So. 2d 1189, 1193 (Miss. 2002).

3

One evident difference between these two burdens of proof is that domestic law requires as part of the plaintiff's prima facie case that the plaintiff prove falsity of the statements. Under Canadian law, however, proving falsity is not a required element of the prima facie case; falsity is a defense that must be raised by the defendant. Grant v. Torstar Corp., [2009] 3 S.C.R. 640 (Can.). This distinction demonstrates the greater protection of free speech afforded by United States law, as the law errs on the side of protection of the speaker by requiring a more burdensome showing on the plaintiff. Plaintiffs' argument that the law applied in the Nova Scotia judgment equaled what would have been applied under domestic law falters under this consideration. A cursory review of the trial court's reasons for judgment reveals that there was no proof adduced to show that any of the defendants' statements were patently false.

Plaintiffs also argue that Canadian and United States law both define malice as knowledge of the falsity of the assertion or reckless disregard of the truth. However, all that plaintiffs establish is that the definition of "malice" is inconsistent under Canadian law depending on the context in which it is used. For example, plaintiffs cited Hill, 2 S.C.R. 1130, where the Supreme Court of Canada stated that, in the context of a discussion of aggravated damages, "malice may be established by intrinsic evidence derived from the libelous statement itself and the circumstances of its publication, or by extrinsic evidence pertaining to the surrounding circumstances which demonstrate that the defendant was motivated by an unjustifiable intention to injure the plaintiff." This definition is clearly not the same as the United States definition of actual malice, which the Court has defined as "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 283 (1964). Proving ill will is not sufficient to meet this burden

4

under United States law. Peter Scalamandre & Sons v. Kaufman, 113 F.3d 556, 560-61 (5th Cir. 1997).

Later in their memorandum, plaintiffs cited another case, Botiuk v. Toronto Free Press, [1995] 3 S.C.R. 3 (Can.), in which the Supreme Court of Canada stated that actual malice "may be established by showing that the defendant either knew that he was telling the truth, or was reckless in that regard."[1]  However, the case reveals that this quote was taken out of context; this definition of malice relates to a completely different issue.  This definition of malice is discussed in that case as one of two instances when the defense of qualified privilege would fail under Canadian law.  Qualified privilege has no relevance to the circumstances in the instant case.  Plaintiffs have come to the erroneous conclusion that based on the language in the Botiuk opinion, Canadian and United States courts define malice identically; in light of the language discussed above in Hill, it is clear that this is not the case.

In consideration of their conclusion that Canadian and United States law have the same definition of malice, plaintiffs have attempted to impute the Botiuk definition of actual malice to a situation to which it does not apply.  Plaintiffs do not have any support for their suggestion that this definition of malice is the one that is used by Canadian courts to determine the award of damages.  The case law quoted by the plaintiffs weakens this conclusion significantly, as in their discussion of damages, they cite language from Hill stating that in order to recover aggravated damages, plaintiff must show that "the defendant was motivated by an unjustifiable intention to injure the plaintiff," and in order to recover punitive damages, the defendant's conduct must be "so malicious, oppressive, and high-handed that it offends the court's sense of decency."  Neither of these standards rises to the level of actual malice embraced in the United States, which

---

[1] Additionally, the court states along with this definition that malice "relates to any indirect motive which conflicts with the sense of duty created by the occasion." Id.

requires the plaintiff to show that the defendant had knowledge that the statement was false or that defendant made the statement with reckless disregard of the truth.  Under United States law, in order to recover punitive damages in a defamation case, a plaintiff, whether a public or private figure, must prove actual malice.  2 Law of Defamation § 9:37 (2d ed.). See also Gertz v. Robert Welch, Inc., 418 U.S. 323, 349 (1974) ("[T]he States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.")  Therefore, plaintiffs have not demonstrated that the Canadian law that was applied in this case afforded the same protection as United States law, which would have required a showing of knowledge of falsity or reckless disregard of the truth in order for plaintiffs to recover punitive damages.

      Finally, as plaintiffs concede, unlike in the United States, Canadian law does not require a public figure plaintiff to show actual malice in order to make a claim of defamation.  Plaintiffs claim that this distinction is "moot" because plaintiffs are not public figures, despite not providing any support for this assertion.  Defendants contend that plaintiffs are indeed "vortex public figures," a public figure classification for an individual who "thrusts himself or becomes thrust into the vortex of a matter of legitimate public interest," for the reasons set forth in the defendant's motion for summary judgment. Ferguson v. Watkins, 448 So. 2d 271, 277 (Miss. 1984).

      While plaintiffs point to Bou Malhab v. Diffusion Métromédia CMR Inc., [2011] 1 S.C.R. 214 (Can.), to support their assertion that the Supreme Court of Canada is ***moving in the general direction*** of providing additional free speech protection, this case hardly makes such a suggestion.  It simply includes New York Times v. Sullivan as one of a long list of cases from courts around the world that recognize a balance between protection of reputation and freedom

of expression; there is no comparative analysis that suggests it is adopting protections afforded by the United States. Id.

### III. A Mississippi Court Would Not Have Decided This Case the Way the Nova Scotia Court Decided It

Plaintiffs also contend that defendants' statements are defamatory per se, as the statements suggest that they have committed "crimes of moral turpitude."[2]  Statements that are defamatory per se are simply an exception to the fourth element of Mississippi's defamation burden of proof, requiring that a plaintiff must show special harm in order to prove a prima facie case. See Mayweather v. Isle of Capri Casino, Inc., 996 So. 2d 136, 139 (Miss. Ct. App. 2008). Statements that are defamatory per se do not require a showing of special harm. Id.  The other elements, however, must still be proven. See id.

While plaintiffs emphasize the allegedly harmful nature of defendant's statements, at no point do they offer any proof that the statements are false.  Under Mississippi law, the burden of proving falsity is on the plaintiffs.  P.L. Blake v. Gannet Co., 529 So. 2d 595, 603 (Miss. 1988). This is a burden they have not carried.  Therefore, regardless of whether defendants' statements might fall under a particular category of defamatory per se, this analysis is irrelevant because plaintiff did not prove that the statements were false, which is the first requirement under Mississippi law.

---

[2] While plaintiffs do not specify which statements they are referring to, nor do they provide any analysis as to what qualifies as a crime of moral turpitude in Mississippi, defendant emphasizes that, as discussed in defendant's motion for summary judgment, courts are straying from the obsolete belief that homosexuality is a crime of moral turpitude. Stern v. Cosby, 645 F. Supp. 2d 258, 274 (S.D.N.Y. 2009); see also Yonaty v. Micolla, 2012 N.Y. Slip Op. 04248 (N.Y. App. Div. May 31, 2012) (finding that "prior cases categorizing statements that falsely impute homosexuality as defamatory per se are based upon the flawed premise that it is shameful and disgraceful" to be homosexual and are inconsistent with the reasoning in Lawrence v. Texas, 539 U.S. 558, 584 (2003)).

In sum, the plaintiffs did not prove that the statements were false. They did not prove that they were not public figures. Nor did they provide any support for their assertion that plaintiff acted with knowledge of falsity or reckless disregard of the truth. Without proving these important elements, a claim of defamation would not prevail under Mississippi law.

## *Conclusion*

Under the SPEECH Act, 28 U.S.C. § 4102, international defamation judgments are not enforceable in the United States unless the plaintiffs prove that the foreign law provided at least as much protection as would have been afforded by the First Amendment, or, even without making this first showing, that a United States court would have come to the same decision. Plaintiffs did not successfully prove either of these required elements, nor did they prove that the Canadian court had personal jurisdiction over defendant, as required by 28 U.S.C. § 4102. Therefore, summary judgment must be granted in favor of the defendants, Handshoe and Slabbed, dismissing the plaintiffs' Canadian libel judgment as unenforceable in the United States.

Respectfully submitted June 28, 2012,

**THE TRUITT LAW FIRM**
A Limited Liability Company

S/*Jack E. "Bobby" Truitt*

_____
JACK E. TRUITT, BAR NO. 18476
149 North New Hampshire Street
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com
Counsel for defendants, Slabbed Media, LLC and
Douglas Handshoe

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been duly served on all counsel of record by depositing same into the U.S. Mail, postage pre-paid, and/or by hand and/or by facsimile and/or by electronic means on June 28, 2012.

S/*Jack E. "Bobby" Truitt*
_____