IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TROUT POINT LODGE, LIMITED, A Nova Scotia
Limited Company; VAUGHN PERRET and
CHARLES LEARY                                                                                              PLAINTIFFS

VERSUS                                              CIVIL ACTION NO:  1:12CV00090 LG-JMR

DOUG K. HANDSHOE                                                                                        DEFENDANT

BRIEF OF PLAINTIFFS TROUT POINT LODGE, LTD., A NOVA SCOTIA
LIMITED COMPANY; VAUGHN PERRET; AND CHARLES LEARY
IN REPLY TO DEFENDANT DOUG K. HANDSHOE'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF PLAINTIFFS

I.   DEFENDANT'S RELIANCE UPON *CALDER* IS MISPLACED.

Defendant's reliance upon *Calder v. Jones,* 465 U.S. 783 (1984) is misplaced for at least two reasons.  First, Nova Scotia was the focal point of the barrage of stories of and concerning the Plaintiffs as contained in the unrebutted proof in the two volume Hearing Book 1 of 2 attached as Exhibit "6" to Plaintiffs' Motion for Summary Judgment, such as:

> Ok folks I'm sitting on around 10 posts worth of tips without a lot of time to publish anything but I saw the Times Picayune ran a **correction to yesterday's story** that dealt with former Jefferson parish **President Aaron Broussard's reported ownership of a Nova Scotia luxury vacation lodge that he allegedly rented to parish venders.**
>
> Charles Leary told times Picayune reporter Richard Rainey:
>
> …. Broussard, "does not and has never had any ownership or management involvement with Trout Pont Lodge, Limited."  The message went on to say Broussard owns a "vacation home on the same road."
>
> I'm told Raphael is the kind of guy who looks before he leaps.  Broussard may not own Trout Point but then again I'm not used to seeing such an international twist to owning a simple vacation house.  Stay tuned.

{GP003219.1}                                             1

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 1.

> Leary, Perret and Abel were trying to use the Canadian Libel laws to strong-arm the Picayune and their parent Advance Publications. Now perhaps Advance does not keep up **with changes in Canadian Lible laws** or maybe the fact that Leary and the girls advertised in sister company Conde Nast Johanses guide swung the corporate decision toward retracting factual news story but whatever the calculus Leary and the gang thought they buried the story.
>
> "So who are the investors in Trout Point and what did they invest in? Why is this important? Maybe because of the government assistance Leary, Abel and Perret received in Canada via the **Atlantic Canada Opportunities Agency.** That assistance, **in the form of a "repayable contribution" is the current subject of litigation in Nova Scotia** and one of the major sticking points in discovery was the disclosure of the names of the owners."

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", pp. 4-5.

> This was important enough for Leary to **appeal to the Supreme Court of Nova Scotia** but he did not find much relief there either.

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 5.

> **I've just been informed….**
>
> That the newest chapter of the Slabbed Nation has been formed in Nova Scotia and those good folks are wanting to see a conclusion of some kind of our earlier posts on **Trout Point Lodge** and its connections to the Jefferson Paris Political Corruption Scandal. How can I deny our newest fans such a request? Simple I can't.

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 7.

> Ring --- Ring---- Ring-----  Heloow, yes this is the Mississippi State Police--- you say your name is Dudley Doright of the Royal Canadian Mounted Police--- and you say you want to extradite a Doug Handshoe-------son, do you realize that Mr. Handshoe and family rode out Katrina on his roof a couple of years ago while certain other cowards evacuated entire cities and later cried ---- and son one last thing, when you come with a division or more better look like bringing several thousand plastic bags to take back all

> your horseshit from our clean roads as we have strict laws against shit, especially all the way from Canada.  Dudley--- Oh Dudly--- you still there son.
>
> I couldn't download that particular Dudley Doright video but I viewed it and know it's out there in cyberspace.  Punch in Dudley Doright cartoons in the you tube website and look for "damsel in distress" video.
> If you are successful, better pull down your shades and barricade the door as this area is crawling with the internationally feared RCMP-i.e. Royal Collection of Mounted Pussies.

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 10.

> While Rainey focuses his articles on the curious Nova Scotia connection involving Broussard and the complaint to the Louisiana Ethics Commission, Rainey's articles contained some damning evidence of potential wrongdoing involving Leary and Perret in Canada and it had nothing to do with Broussard per se.  In fact I'd submit to this day neither Rich Rainey or his employer know the real reason why Leary and Perret went postal on them after his story on Trout Point appeared in January, 2012 but that changes today.  Our first stop is **the courts in Nova Scotia** and the suit against one of the girls business misadventures there, La Ferme D'Acadie by the Canadian Government through the Atlantic Canada Opportunities Agency.

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 11.

> The dispute was the crash and burn of the Nova Scotia boutique farm and rolling over some of the money into Trout Point.  The ACOA wanted their money back because it is clear they feet the girls were less than honest in dealing with them and according to local lore so do the trade venders that originally did business with Team Trout Point.
>
> Then they realize they made a mistake, they failed to register as the all important "limited" corporation that protects their assets, so they fixed that right away, dissolving this and registered Trout Pont Lodge Ltd Dec 14, 1998, and this time they took off Abel's name, and just have Leary and Perret as partners, their address being 189 Trout Point Rd, East Kemptville.  Now note that their address likely changed to Trout Point Road after 1998, likely in 2000 when the Lodge was built.

> None of this is new ground here at Slabbed and in reality Raney was 100% factually correct in his reporting. Now I am open to the possibility Raney's employer is pusillanimous in the way they hung him out to dry but I also suspect Rainey and the gang had no clue as to Leary's testimony before a Canadian court.
>
> Now if I paid taxes in Nova Scotia I think I'd want an explanation and full accounting of the ownership of Trout Point Lodge and it's relationship to the failed venture La Ferme D'Acadie as it appears the shifting of assets and ownership could well indicate that the ACOA was defrauded. to the extent Leary claimed discrimination in a Canadian court for being gay while freely marketing **Trout Point as a Gay Owned Lodge in Kemptville Nova Scotia** illustrates the dishonesty inherent to his dealings with the Nova Scotia court system

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", pp. 12-13.

> "Have I been screwing with them? Of course I have," Doug tells me via phone from Louisiana.
> "I was prepared for this lawsuit. I was warned that I was going to be sued, and I consider this (lawsuit) a gift," he says, adding that he's rep-posted much of the suit's text to his website.
>
> The ballsy blogger says he's been all over the state searching for evidence of nefarious activities on the part of Chuck and Vaughn, and the suit is simply the culmination of his amateur gumshoe work.
> "My blog is the search for the truth," Doug bleats. "This is a constitutional issue, and in this case, the Constitution and the First Amendment are on my side."
> I hear there is more in the pipeline too. If it is true there is no such thing a bad publicity then the girls will be happy to see the latest issue of Frank Magazine.[1]

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 15.

> Obviously the girls at Trout Point lodge do not have a stellar business record folks from their failed Washington Parish Exotic Cheese Farm to the defunct Nova Scotia Dairy farm to the ill fated Cerro Coyote Hotel project, all of which were at least partially paid for with other people's money. After Aaron Broussard's fall from

---

[1] Frank Magazine is published in Halifax, Nova Scotia.

{GP003219.1}                                        4

> grace and the end of pay to play Nova Scotia style things just got plain worser for the girls at Trout Pont who tried everything, from marketing the lodge as gay friendly to rolling out all the PR stops. **Without the ferry service from Portland Maine** it simply isn't worth the very long trip overland to the lodge, which is stuck out in the middle of no where.  And of course once you get there the hidden charges are a real bitch as **this disappointed guest points out at Trip Advisor,** one of the **travel sites where the girls advertise heavily:**

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 16.

> The entire blog is well worth the read folks and frankly the thought of Leary driving around Nova Scotia in a Range Rover telling customers to fuck off after stiffing a multitude of local investors is literally the stuff that makes for a basher's dream as it looks more and more as if Aaron Broussard's market making for the girls business ventures was in reality extortion under the color of law. I'll leave that for the FBI and others to sort out.
>
> As always stay tuned for more on Trout Point Lodge as the connections between the owners of Trout Point and the disgraced Aaron Broussard come into sharper focus here on Slabbed.

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 17.

> Uh Andrew:  Don't you have anything better to than criticize free speech?  You seem perversely interested in the bitchslapping being delivered to the Canadian Queens.  You a little light in your loafers too?  Oh and just in case you are an Officer of the Court attorney type let me lighten up with a lawyer joke:  Why did the sharks no eat the lawyer who fell of his boat?  Professional courtesy.  Hee hee hee.

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 18.

> What can I say folks, he was a grifter in the exotic cheese biz down here and evidently remains the same in Nova Scotia as Slabbed literally trips on all the skeletons in the pasts of the girls at Trout Point Lodge.  He remains a loser because he still doesn't know how to properly serve his frivolous lawsuits:
>
> Stay tuned as disgruntled former employees of Trout Point Lodge are contacting Slabbed with info as Slabbed systematically solves

> the Mystery in Nova Scotia and its connections to the disgraced Aaron Broussard. I'd like to once again thank the good people at West Law for the occasional fair use of their documents.

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 19.

> We got the full scene on tap soon Locke. I'm up late 'cause I literally just got off the phone with a new friend in Canada. The stories about Vaughn Perret and how he despised Aaron Broussard in spite of the fact he mooched off Aaron and Danny Abel. Vaughn is a real special kind of top bitch.

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 20.

> Perret and Leary and all their SLAPP suit threats bother me not one bit. My own opinion is they are cowards but I have some paper for them should they ever crawl out from under their rock in Nova Scotia and set foot back down here or maybe I'll follow the treaty and have them served in Canada. Meantime I have plenty of time to track down every lead and leave no stone unturned. The response from our new friends in Nova Scotia has been fantastic.

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 23.

> This is getting good folks. I highly recommend clicking over the Shelburne County Today post on this topic as it appears the locals in Nova Scotia have become hip to the Mystery on the Shores of the Tusket River.

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 25.

> The more people find out the more people that talk to me, especially the long and distinguished list of people in Nova Scotia the girls have fucked over in the way they conduct business.
> Like I told the guy at Frank Magazine the girls did me a big favor.
> At this point I'd like to add that I am the puppetmaster and the girls are my puppets.

Exhibit "6" to Motion for Summary Judgment, Hearing Book Exhibits for Damages Assessment Hearing "Book 1 of 2", p. 28.

It is therefore clear that the "focal point" of the publications contemplated by *Calder* is, in fact, Nova Scotia.

Secondly, Defendant does not address the focal point of Plaintiffs' injuries, which is clearly Nova Scotia, since Plaintiffs' reputations were damaged there.

The focal point discussed in *Calder* actually has two components: "the focal point both of the allegedly libelous article **and** of the harm suffered." *Calder*, 784. (Emphasis added.)

"An individual in in [Nova Scotia] need not go to [Mississippi] to seek redress from persons who, though remaining in [Mississippi] knowingly cause the injury in [Nova Scotia]." *Calder*, 789.

"… [J]urisdiction over [Handshoe] in [Nova Scotia] is proper because of [his] intentional conduct in [Mississippi] calculated to cause injury to [Plaintiffs] in [Nova Scotia]." *Id.* 791.

Defendant Handshoe's intentional and malicious publications directed to and contacts with Nova Scotia constituted sufficient minimum contacts for the Court there to have jurisdiction.[2] Handshoe was personally served with process, was in Court, and simply refused to resist the default judgment entered against him.

II. THE LAW OF CANADA AS APPLIED TO THE FACTS OF THIS CASE AFFORDED DEFENDANT THE SAME DEGREE OF FIRST AMENDMENT FREE SPEECH PROTECTION AS THE LAWS OF THE UNITED STATES AND MISSISSIPPI.

The Defendant misreads the SPEECH Act, which requires Plaintiffs here to show "the foreign court's adjudication provided at least as much protection for freedom of speech and press

---

[2] In addition to targeting the Nova Scotia activities of Plaintiffs, Defendant Handshoe made extensive use of Nova Scotia sources for his published writings. This included availing himself of the benefits of the forum state, including accessing information from Nova Scotia government entities such as the Registry of Joint Stocks database, decisions published on the Nova Scotia courts web site, and the registration-only Nova Scotia Property Records Database, whose use actually requires registration and contractual agreement. Handshoe also admits to contact with Nova Scotia sources in the person of his Nova Scotia blog readers—who interactively communicated with him—and he republishes from Nova Scotia magazines including the tabloid Frank and the government publication Nova Scotia Open to the World. He also gave an interview to Frank about the plaintiffs before they filed the Amended Statement of Claim.  See Affidavit of Charles Leary filed July 11, 2012 ¶¶27 and 39-53.

**in that case** as would be provided by the first amendment to the Constitution of the United States and by the constitution and law of the State in which the domestic court is located…" 28 U.S.C. § 4102(a)(1)(A). (Emphasis added.)  Notwithstanding what Mr. Handshoe argues, the SPEECH ACT is directed to the law applied to the facts of a particular case, i.e., the Nova Scotia proceedings, rather than the facts of other proceedings.  The facts of the instant case are that Plaintiffs were defamed and they recovered a default judgment in a hearing where they assumed the burdens of proving falsity and Defendant's reckless disregard for the truth of his publications whether Canadian law required them to meet those burdens or not.

It is irrelevant that the Supreme Court of Canada has not adopted the American *New York Times* malice standard in public figure cases, which is reckless disregard for the truth or entertaining serious doubts about truth.  Even though Plaintiffs are not public figures they proved Defendant defamed them in reckless disregard for the truth of those publications.

Furthermore, while the law of Canada may be that the defamation defendant has the initial burden of proving the truth of the publication at issue as opposed to the United States defamation plaintiff having the burden of proving falsity, it bears repetition that that point is also irrelevant since Plaintiffs also assumed the burden of proving falsity and met that burden in unrebutted fashion.  The evidence presented by Plaintiffs at the default judgment hearing in Nova Scotia included the following overwhelming proof of falsity[3]:

In the First Amended Complaint Plaintiffs alleged they had been misidentified in the Jefferson Parish, Louisiana political corruption scandal and misidentified as Aaron Broussard's business partner and were involved in "fraud, kickback schemes, and money laundering". Exhibit "1" to Motion for Summary Judgment, First Amended Statement of Claim, ¶12.

---

[3] See Affidavit of Charles Leary filed July 11, 2012 with attached Transcription of Supreme Court of Nova Scotia Proceeding Trout Point Lodge et al v. Doug K. Handshoe January 30, 2012 and January 31, 2012.

{GP003219.1}                                           8

In paragraph 18 Plaintiffs again alleged the publications were defamatory and false. Exhibit "1" to Motion for Summary Judgment, First Amended Statement of Claim, ¶18.

The Richard Rainey story reported on by Defendant concerning the Canadian Ethics Board was false. Exhibit "1" to Motion for Summary Judgment, First Amended Statement of Claim, ¶33.

At paragraph 113 the Plaintiffs allege "Defendant's publication were replete with inaccuracies and an apparent inattention to basic ethics and duties to check facts before publishing". Exhibit "1" to Motion for Summary Judgment, First Amended Statement of Claim, ¶113.

At paragraph 115 of the First Amended Statement of Claim, Plaintiffs alleged that "Defendant's false publications held them up to public contempt and ridicule". Exhibit "1" to Motion for Summary Judgment, First Amended Statement of Claim, ¶115.

At paragraph 116 of their First Amended Statement of Claim, Plaintiffs alleged Defendant published his defamatory statements "without caring if the content…. was true or false." Exhibit "1" to Motion for Summary Judgment, First Amended Statement of Claim, ¶116.

At paragraph 130 of the First Amended Statement of Claim, Plaintiffs alleged the publications at issue were " falsehoods". Exhibit "1" to Motion for Summary Judgment, First Amended Statement of Claim, ¶130.

At paragraph 143 of their First Amended Statement of Claim, Plaintiffs went so far as to allege the Defendant had lied about them. Exhibit "1" to Motion for Summary Judgment, First Amended Statement of Claim, ¶143.

The Nova Scotia Court found "the Plaintiffs were erroneously identified as being connected with Mr. Broussard in a business venture and Mr. Broussard was named in error as

owning Trout Point Lodge." (Exhibit "5", p. 5 to Motion for Summary Judgment.) The Nova Scotia Court also found "Mr. Leary made an oral submissions [sic] to the Court outlining the principles the Court should consider in deciding the quantum of damages for defamation, aggravated damages [emotional distress] and punitive damages." (Exhibit "5", unnumbered page 14 to Motion for Summary Judgment.) The Nova Scotia Court also held "Default judgment is conclusive of a claim set out in the statement of claim…. (Exhibit "5", unnumbered page 4 to Motion for Summary Judgment.)

Since Plaintiffs assumed the burdens of proving falsity of the publications in issue and the burden of proving reckless disregard for the truth by Defendant Handshoe, the laws of Canada relating to the Nova Scotia proceeding were identical to U.S. and Mississippi. If Plaintiff here had sued Defendant Handshoe in Mississippi, alleged and proved falsity and reckless disregard for the truth, judgment would have been entered here just as in a Canadian court under Canadian law.[4]

### III. A MISSISSIPPI COURT WOULD HAVE DECIDED THIS DEFAMATION CASE PRECISELY AS DID THE NOVA SCOTIA COURT.

After being personally served with process in Mississippi, Defendant chose not to make an appearance to defend the allegations against him in Canada. Had Plaintiffs sued Mr. Handshoe in Mississippi, the price he would have paid here is just what he paid in Canada. Default judgment was entered against him. At that point the facts of this case were resolved against him, including the facts concerning liability, falsity, reckless disregard for truth, injury to Plaintiffs' reputations, and the extent and amount of Plaintiffs' damages.

---

[4] Defendant Handshoe also claims Plaintiffs are vortex public figures. He does not explain how or why that is so, and he therefore fails on that claim. The point is moot, however, since the Plaintiffs proved Defendant was guilty of reckless disregard for the truth, which is what any public figure plaintiff must do to prevail on his defamation claim.

For the convenience of the Court, Plaintiffs attach a copy of Nova Scotia Annotated Civil Procedure Rules Part 3, Rule 8 and Part 7, Rule 31 concerning default judgments as an appendix to this brief. They are strikingly similar to Federal Rule of Civil Procedure and Mississippi Rule of Civil Procedure 55. One difference is that the Canadian rules require forty-five business days notice of default before default judgment can be entered while the Federal and the Mississippi rule require only seven and three days, respectively.

If Defendant were defending this defamation case in a Mississippi court, the procedure here would have been as follows:

> (b) Judgment. In all cases the party entitled to a judgment by default shall apply to the court therefor. If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing of such application; however, judgment by default may be entered by the court on the day the case is set for trial without such three days' notice. **If in order to enable the court to enter judgment or to carry it into effect it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearing with our without a jury, in the court's discretion, or order such references as it deems necessary and proper.**

Mississippi Rule of Civil Procedure 55(b). (Emphasis added.)

A review of the Nova Scotia Decision in this case quickly shows that Court conducted the default judgment hearing very similar to how a Mississippi court would have conducted one pursuant to Rule 55. (Exhibit "5" to Motion for Summary Judgment.) On January 30, 2012 the Court found it had jurisdiction, heard testimony, and retired until the next morning to consider the evidence. (See Affidavits of Charles Leary and Vaughn Perret filed July 11, 2012 with attached Nova Scotia transcript; Exhibit "5" to Motion for Summary Judgment.) On January 31, 2012 the Court announced it had reviewed the proof, including the two volume Hearing Book

Exhibits for Damages Assessment Hearing (Books 1 and 2, Exhibit "6" to Motion for Summary Judgment) until 11:00 p.m. the night of the hearing but needed more time to consider all of the evidence. (Affidavit of Charles Leary filed July 11, 2012 with attached Exhibit "C", Transcription of Supreme Court of Nova Scotia Proceeding Trout Point Lodge et al v. Doug K. Handshoe January 30, 2012 and January 31, 2012.) On February 1, 2012 the Court dictated into the Record its fifty-nine page Decision, which analyzed numerous landmark Canadian defamation cases against the unrebutted proof in the record, including *Hill v. Church of Scientology of Toronto,* [1995] 2 S.C.R. 1130 (July 20, 1995) which held:

> Malice is commonly understood, in the popular sense, as sprite or ill-will. However, it also includes, as Dickson J. (as he then was) pointed out in dissent in *Cherneskey, supra*, at p. 1099, "any indirect motive or ulterior purpose" that conflicts with the sense of duty or the mutual interest which the occasion created. See, also, *Taylor v. Despard,* [1956] O.R. 963 (CA). **Malice may also be established by showing that the defendant spoke dishonestly, or in knowing or reckless disregard for the truth.** See *McLouglin, supra,* at pp. 323-24, and *Netupsky v. Craig,* [1973] S.C.R. 55, at pp. 61-62. (Emphasis added.)

The Nova Scotia Court found the publications at issue to be false, "unfounded" and defamatory from one end of the Opinion to the other and that Defendant knew they were false. (Exhibit "6" to Motion for Summary Judgment, pp. 5, unnumbered 20, and unnumbered 46-51).

Handshoe also argues at page 7, footnote 2 of his reply brief that Plaintiffs do not explain what a crime of moral turpitude is. The case of *Speed v. Scott,* 787 So. 2d 626, 632-34 (Miss. 2001) cited at page 17 of Plaintiffs' original brief does that. It is a crime of "major and a serious character". *Speed,* 633.[5] There can be no doubt that Mr. Handshoe has accused Plaintiffs of committing crimes of major and serious character.

---

[5] *Speed*, at 632 explains Mississippi law that defamation per se is reporting the Plaintiff committed a crime of moral turpitude or "words imputing the existence of some contagious disease", "words imputing unfitness in an officer who holds an office of profit or emolument, either in respect of morals or inability to discharge the duties

The Court found that the publications at issue damaged Plaintiffs' reputations and awarded Trout Point Lodge $75,000.00 in general damages; Vaughn Perret $100,000.00 in general damages, $50,000.00 in aggravated damages and $25,000.00 in punitive damages; and Charles Leary $100,000.00 in general damages, $50,000.00 in aggravated damages, and $25,000.00 in punitive damages, with costs in favor of Plaintiffs in the amount of $2,000.00 (Exhibit "2" to Motion for Summary Judgment) due to Handshoe's malice.

## CONCLUSION

The law of Canada afforded Defendant Handshoe the same degree of freedom of expression as the laws of the United States and Mississippi as those laws pertain to the facts of the case filed in Nova Scotia. The Plaintiffs swore the allegations in their First Amended Statement of Claim were true, including the allegations that the publications at issue defamed them and were false. The Plaintiffs even went so far to allege that Mr. Handshoe had lied about Plaintiffs in his publications. The *Hill* case is perhaps the leading defamation case from the Canada Supreme Court , and it held malice to be the same sort of malice required by *New York Times v. Sullivan,* 376 U.S. 254 (1964), that is "knowing or reckless disregard for the truth". *Hill*, ¶145.

The Nova Scotia court cited and followed the holdings in several Canadian decisions, including *Hill*, and specifically found that the publications at issue were false and that Handshoe knew they were false when he published them.

Any differences in Canadian, U.S. and Mississippi defamation law in another case where a plaintiff there proved neither falsity and reckless disregard for the truth are irrelevant to the

---

thereof", **"words imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business"**, "and in this and some other jurisdictions words imputing to a female want of chastity". (Emphasis added.)

instant case. The Plaintiffs here assumed the burden of proving falsity and reckless disregard for the truth. The Nova Scotia Court found they met those burdens.

Mr. Handshoe unquestionably intended to injure Plaintiffs in Nova Scotia and thought he could do so without liability since he published those words from Mississippi into Canada. Since Mr. Handshoe chose not to appear or defend the case against him in Nova Scotia, the Court there handled the case exactly as a Mississippi court would have on default judgment pursuant to Mississippi Rule of Civil Procedure 55.

In conclusion, Plaintiffs have met their burden under the SPEECH Act. The Nova Scotia Court had jurisdiction, Canadian law in this case and under this set of facts is the same as U.S. and Mississippi defamation law, and this case was decided in Nova Scotia just as it would have been decided by a Mississippi court. The publications are defamatory. As a matter of law there is no genuine issue of material fact precluding summary judgment in favor of Plaintiffs. As a matter of law Plaintiffs should be able to execute on their judgment enrolled in the Hancock County Mississippi Circuit Court or in any Mississippi jurisdiction in which Defendant has assets.

Respectfully submitted, this the 11th day of July, 2012.

                Trout Point Lodge, Limited, Vaughn Perret and Charles Leary

                By:  <u>s/ Henry Laird</u>
                    Henry Laird, Mississippi Bar No. 1774

## CERTIFICATE OF SERVICE

I, Henry Laird, do hereby certify that I have sent a true and correct copy of the foregoing Reply to Memorandum in Opposition to Motion for Summary Judgment by using the ECF system to the following:

G. Gerald Cruthird, Esquire
Post Office Box 1050
Picayune, Mississippi 39466
Email: ggeraldc@bellsouth.net

Jack E. Truitt, Esquire
The Truitt Law Firm, LLC
149 North New Hampshire Street
Covington, LA 70433
Email: mail@truittlaw.com

This the 11th day of July, 2012.

s/ Henry Laird
Henry Laird

Henry Laird (MSB No. 1774)
Email: hlaird@joneswalker.com
Jaklyn Wrigley (MSB No. 103773)
Email: jwrigley@joneswalker.com
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, LLP
2510 14th Street, Suite 1125 (39501)
Post Office Drawer 160
Gulfport, MS 39502
Telephone: (228) 864-3094
Facsimile: (228) 864-0516