IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TROUT POINT LODGE, LIMITED,
A Nova Scotia Limited Company;
VAUGHN PERRET and
CHARLES LEARY,
Plaintiff, Civil Action No.: 1:12-CV-90LG-JMR

v.

DOUG K. HANDSHOE,
Defendant.

* * * * * * * * * * * * *

**REPLY MEMORANDUM OF DEFENDANT, DOUGLAS K. HANDSHOE**

**MAY IT PLEASE THE COURT**:

This Memorandum is submitted by defendant, Douglas K. Handshoe ("Handshoe"), in reply to the Memorandum in Opposition to Motion for Summary Judgment which was filed by the plaintiffs, Trout Point, Vaughn Perret, and Charles Leary (collectively "Trout Point").

As a prefatory matter, defendant, Handshoe, would point out to this Honorable Court that the parties agreed that the viability of the libel tourism judgment, which the plaintiffs obtained in Canada, was a matter which involved pure questions of law that could be resolved by way of cross-motions for summary judgment. In keeping with that agreement, both plaintiffs and defendant filed Motions for Summary Judgment which are now pending before the Court.

Yet, the plaintiffs, in both their own Motion and in their recently filed Memorandum in Opposition to Motion for Summary Judgment (Record Doc. No. 16), cite a litany of facts which they claim support the granting of their Motion and the denial of defendant's Motion. The logic behind the plaintiffs' fact-intensive argument is confusing given that the issue before the Court is

a simple one – whether Canadian law affords as much free speech protection as the laws of the United States and Mississippi and/or whether the plaintiffs could have prevailed in their libel claim against defendant in a court in this country. Therefore, the underlying facts, to a large degree, are immaterial to the purely legal issue before this Honorable Court.

Initially, the plaintiffs contend that there was jurisdiction over Handshoe in Canada and that the U. S. Supreme Court's decision in Calder v. Jones, 465 U. S. 783 (1984) is inapplicable to this case. The thrust of the plaintiffs' argument is that the comments of Mr. Handshoe on the Slabbed blog regarding the plaintiffs' connection to the indicted, ex-Parish president of Jefferson Parish, Aaron Broussard, had their focus, or focal point in Canada. That argument, though, is shear nonsense and is wholly unsupported by any evidence.

The Slabbed blog has always had, as its emphasis, the political corruption that permeates Jefferson Parish, Louisiana and the Gulf Coast, not Canada. Many of the ex-Parish President's "dirty dealings" with his now-indicted cohort and former Parish Attorney, Tom Wilkinson, and indicted and plead-guilty CAO, Tim Whitmer, were the beginnings of Slabbed's coverage, and this inevitably lead to the connection to the plaintiffs. Aaron Broussard has been accused of using his property at Trout Point, ***which was managed by the plaintiffs***, to launder kickbacks from contractors doing business with Jefferson Parish, which is alluded to in the Factual Basis for the guilty plea of Aaron Broussard's former wife, Karen Parker Broussard (see pg. 7 of Exhibit 1 attached hereto); the involvement of the plaintiffs is a by-product or afterthought to the crux of the Slabbed postings. It is hard to conceive, under these facts, how the focal point of the Slabbed blog could be considered as Nova Scotia, Canada, where the plaintiffs reside. In consideration of

the complete lack of any connection between Handshoe and Nova Scotia, is is abundantly clear that the foreign court did not have jurisdiction to render a libel judgment against defendant.

More to the point, though, Calder clearly supports the conclusion that the Canadian court, which issued a judgment against Handshoe, did not have jurisdiction over Handshoe. In Calder, Shirley Jones (of The Partridge Family fame), sued the National Enquirer, a national tabloid, for a libelous article written about her by the writer and editor of the rag, who were located in Florida. Both the author and editor had connections to California, where the plaintiff, a movie/television star, resided and worked. Furthermore, the Court noted:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California.[9] The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Calder at 788-89.

In this case, there is simply no proof that the Slabbed comments which mentioned the plaintiffs were meant to have their focus in Nova Scotia where the plaintiffs resided and worked, unlike those about Ms. Jones in Calder. And, there can be no proof adduced, unlike the National Enquirer which can be found at just about any grocery store checkout in the United States, that Slabbed has an intended circulation (merely via the internet) beyond Gulf Coast residents. To suggest that all of Nova Scotia was aware of Slabbed and the comments regarding the plaintiffs and their connections to Gulf Coast corruption is a stretch beyond all imagination.

While the plaintiffs contend that they suffered damage in Canada and that this is a part of the inquiry for deciding whether jurisdiction exists, that aspect of the Calder decision has been

significantly called into question.[1] Furthermore, other than the self-serving testimony of the plaintiffs as to any harm that they may have sustained by Slabbed's comments, there is no proof before this Court, nor was there before the Nova Scotia court, that the plaintiffs sustained any harm because of the comments on Slabbed; it is well-established that the threshold question in a defamation suit is whether the published statements are false, and the ***plaintiff*** bears the burden to prove such falsity by persuasive evidence. See, Armistead v. Minor, 815 So. 2d 1189 (Miss. 2002). Necessarily, if one's reputation was harmed by libelous commentary, this would require testimony from people other than the plaintiffs as to the impact and damages which the comments caused to the plaintiffs, but there was no such testimony in this case, either in this Honorable Court or in the Canadian court.

In summary, the incidental comments on the Slabbed blog, which primarily focused on corruption in Jefferson Parish, Louisiana, did not confer any jurisdiction on a Canadian court to render a libel judgment against a defendant at the opposite end of the earth. Therefore, any further attempts by the libel tourists to enforce their Canadian default judgment in the United States must be dismissed with prejudice.

---

[1] ***Calder*** has been characterized as articulating an "effects test," under which the exercise of personal jurisdiction is proper if the defendant's out-of-state conduct has sufficient "effects" in the forum state, resulting in the "brunt of the harm" being felt there. *Air Products & Controls, Inc. v. Safetech International, Inc.,* 503 F.3d 544, 552 (6th Cir.2007) (internal quotation marks and citation omitted); *see also Tamburo v. Dworkin,* 601 F.3d 693, 702 (7th Cir.2010); *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 425 (5th Cir.2005). Yet, the Sixth Circuit has emphasized that it and other appellate courts "have narrowed the application of the ***Calder*** 'effects test,' such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Products & Controls,* 503 F.3d at 552 (citing cases). Rather, beyond ascertaining the effects of the defendant's conduct in the forum state, a court must consider the extent to which a defendant has "expressly aimed [his] tortious conduct at the forum." MLS Nat. Med. Evaluation Services, Inc. v. Templin, 812 F. Supp. 2d 788, 797 (E.D. Mich. 2011)

The plaintiffs next contend, in their Opposition, that the defendant has "misread the SPEECH Act," and in this regard, the plaintiffs argue that the SPEECH Act has its focus on the "Nova Scotia proceedings, rather than the facts of other proceedings." That is a complete misunderstanding of not only the intent of the SPEECH Act, but also the literal words of the Act.

The SPEECH Act, as acknowledged by all litigants, was a reaction by Congress to the increasing practice of "libel tourism" where foreign plaintiffs obtained a libel damage judgment in a favorable foreign court (with much less free speech protection than the United States), then sought to enforce that judgment in the United States. As a result of this growing worldwide practice, and in an effort to ensure the protection of free speech as guaranteed in the United States Constitution, the SPEECH Act mandates very simply that the domestic court ascertain whether the law of the foreign country is equivalent to that of the United States in its "freedom of speech and press." This is not a fact-intensive inquiry, but rather becomes a study in comparative law, ***as a matter of law***.

The plaintiffs incorrectly argue that the rule of law, pertaining to defamation, set forth in the seminal case of New York Times Co. v. Sullivan, 376 U.S. 254 (1964) is irrelevant to this case. Then, amazingly, the ***plaintiffs concede that the "Supreme Court of Canada has not adopted the American New York Times malice standard in public figure cases, which is reckless disregard for the truth or entertaining serious doubts about truth."*** (pg. 8 of Record Doc. No. 16). (Emphasis added). Mississippi has engrafted on to its guarantee of a free press the federal constitutional jurisprudence found in *New York Times Co. v. Sullivan*, and its progeny. 3 MS Prac. Encyclopedia MS Law § 19:44, MSPRAC-ENC § 19:44. A public official or a public figure may recover from a defendant constitutionally clothed with free press rights **only** upon a

showing of "actual malice," and the plaintiff must prove that the publication was false and defamatory and that the defendant knowingly published the false information or acted with reckless disregard for its truth or falsity. Id.

As previously pointed out, the SPEECH Act requires a comparative law analysis in order to determine whether a foreign libel judgment may be accorded comity in the United States. It would seem that the plaintiffs' concession that the Canadian courts have refused to adopt the libel standards so well-accepted as the prevailing law throughout the United States and in Mississippi is fatal to their efforts to enforce their Canadian judgment in this country and state. Furthermore, it is hard to ascribe any credibility to the plaintiffs' contention that they are "not public figures," when, at the same time, they protest that their very public reputation in Nova Scotia has been so severely damaged. In addition, their admitted association with such a public figure as ex-Parish President, Aaron Broussard, necessarily paints them with the brush of being, at a minimum, a "vortex public figure" since their association with Mr. Broussard and Trout Point are the subject of a criminal indictment.

Yet again, though, the plaintiffs acknowledge the vast difference in domestic libel law and that applied to their claims in Nova Scotia. In this regard, the plaintiffs admit that there is a stark contrast between who must prove what in a libel claim; "while the law of Canada may be that ***the defamation defendant has the initial burden*** of proving the truth of the publication . . . ***[in] the United States [the] defamation plaintiff [has] the burden*** of proving falsity." (Emphasis added). (pg. 8 of Record Doc. No. 16). The Mississippi Supreme Court has consistently recognized that the burden of proof in a libel case is on the plaintiff, not the defendant. In Reaves v. Foster, 200 So. 2d 453, 458-59 (Miss. 1967), the Supreme Court held as follows:

> The federal courts have preempted the field of libel and slander and have established that hatred, ill will, enmity, intent to harm or negligence are insufficient to establish malice toward those involved in discussions on public issues. That the defendants are protected under the First and Fourteenth Amendments of the United States Constitution, unless the plaintiff shows malice by proving that the defendant when he published the words-(1) either knew they were false, or (2) published them in reckless disregard of whether true or not.
>
> We are required to follow the Supreme Court of the United States.
>
> ***In summary, appellee [the plaintiff] wholly failed to sustain the burden of proof in this case***, for two reasons: The publications by appellants fall within the fair comment rule on public issues, under *Edmonds v. Delta Democrat Pub. Co.*, supra; and, further, appellee's evidence was insufficient to comply with the constitutional requirements of the *New York Times v. Sullivan* rule with reference to statements concerning a public official or one substantially connected with public affairs.

It is evident that the standards of proof in libel cases in the United States, compared to those of other nations, are vastly dissimilar. This stark contrast is no more evident than in Canada:

> The rule in New York Times v Sullivan appears to prevail nowhere except in the United States. Article 19 of the International Covenant is in virtually the same terms as article 10 of the European Convention on Human Rights, but it has never even been argued in the European Court of Human Rights that article 10 requires Member States to adopt the New York Times v Sullivan rule. The Supreme Court of Canada gave it careful consideration in Hill v. Church of Scientology of Toronto but rejected it on a number of grounds, one of which was that it was unduly skewed in favour of people who published defamatory statements and gave too little protection to reputation. David Goldberg, To Dream the Impossible Dream? Towards A Simple, Cheap (and Expression-Friendly) British Libel Law, 4 J. Int'l Media & Ent. L. 31, 46 (2012).

Moreover, Canadian and United States law do not define malice consistently. both define malice as knowledge of the falsity of the assertion or reckless disregard of the truth. In Hill, supra, the Supreme Court of Canada stated that, in the context of a discussion of aggravated damages, "malice may be established by intrinsic evidence derived from the libelous statement itself and the circumstances of its publication, or by extrinsic evidence pertaining to the

surrounding circumstances which demonstrate that the defendant was motivated by an unjustifiable intention to injure the plaintiff." This definition is clearly not the same as the United States definition of actual malice, which the Court has defined as "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." Sullivan, 376 U.S. 254, 283 (1964). Proving ill will is not sufficient to meet this burden under United States law. Peter Scalamandre & Sons v. Kaufman, 113 F.3d 556, 560-61 (5th Cir. 1997).

Yet, the plaintiffs seemingly ignore the disconnect between libel law in Canada versus that in the United States and focus on the "overwhelming proof of falsity" that they adduced in the Canadian proceeding. The plaintiffs also assert that they took on the "burdens of proving the falsity of the publications in issue and the burden of proving reckless disregard for the truth" by defendant. However, whether the Trout Point plaintiffs did or did not produce sufficient proof to establish their claims or whether they "took on" burdens which they may not have otherwise had under Canadian law is not the salient test, under the SPEECH Act. Rather, the sole inquiry in determining the validity of the judgment which they obtained is whether the laws of Canada afford as much free speech protection as those of the United States - the resounding answer to this question is "no."

Next, the plaintiffs assert that Handshoe would have been found liable for his publications about the plaintiffs even if the case had been tried in Mississippi. Then, rather than assess the evidence adduced in the Canadian court through the lens of Mississippi substantive law relating to libel, the plaintiffs launch into a comparative analysis of the procedural rules regarding default judgments in Canada and Mississippi; perhaps this is, once again, a misdirection on the part of plaintiffs to obfuscate the shortcomings of their case. The rules

regarding default judgments, quite plainly, have nothing at all to do with the SPEECH Act and the validity of a foreign libel judgment which a litigant is seeking to enforce in this country. In fact, based on the lengthy comparison of default proceedings in Canada and Mississippi, defendant, Handshoe, would concede the similarities, but that is not the test for whether the plaintiffs have a valid judgment that this Honorable Court can enforce.

The critical, alternative analysis under the SPEECH Act is whether the defendant would have been found liable under the domestic laws:

> (B) even if the defamation law applied in the foreign court's adjudication did not provide as much protection for freedom of speech and press as the first amendment[1] to the Constitution of the United States and the constitution and law of the State, the party opposing recognition or enforcement of that foreign judgment would have been found liable for defamation by a domestic court applying the first amendment to the Constitution of the United States and the constitution and law of the State in which the domestic court is located. 28 U.S.C.A. § 4102.

The crux of the plaintiffs' defamation claims is that Handshoe repeatedly associated them with indicted ex-Parish President Aaron Broussard. This association was well-documented in the local mainstream media (The Times Picayune and the local Fox TV affiliate), though, as even the plaintiffs acknowledge. To a large degree, what Handshoe wrote on the Slabbed blog was nothing more than a repetition of the reporting on these media outlets or information which the plaintiffs now have acknowledged as being true - that they have a long-standing relationship with the indicted ex-Parish President and, ***amazingly***, that they managed Aaron Broussard's Trout Point property, which is ex-wife, Karen Parker Broussard, has now affirmed, in the United State District Court for the Eastern District of Louisiana, was a conduit for bribes and kickbacks from Jefferson Parish contractors. (See Exhibit 2 - Internet Posting for Trout Point Lodge dated January 16, 2012). It is hard to conceive of how any blogging on this subject could be untruthful

or made with any reckless disregard of the truth, when the plaintiffs recently acknowledged that they had a connection with Broussard.

One who repeats a statement attributed to another cannot avoid liability merely by showing that the statement was made by the other person because, under the republication rule of defamation, one who repeats slander or libel from another endorses it. Pittman v. Gannett River States Pub. Corp., 836 F. Supp. 377, 382 (S.D. Miss. 1993). An exception to this republication rule is the official proceedings privilege, under which the "publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." Brocato v. Mississippi Publishers Corp., 503 So.2d 241, 244 (Miss.1987) (quoting *Restatement 2d: Torts,* § 611). It has been recognized that literal adherence to the republication rule might sap the vigor from public debate, and dissuade the press from reporting important information due to the threat of legal action. Id. To eliminate this chilling effect, virtually every jurisdiction recognizes a privilege for fair and accurate media accounts. The privilege is not intended as merely a convenient method of shielding the press from tort liability, but instead is intended to ensure that information is made available to the public concerning what occurs in official proceedings.

A review of the applicable Mississippi jurisprudence on libel and defamation reveals that the plaintiffs could not have prevailed in their claims against Handshoe here. His comments on Slabbed were. as previously noted, mere repetition of those allegations and facts set forth in other mainstream media. More importantly, the Slabbed comments pertained to the plaintiffs' relationship to a corrupt scheme in Jefferson Parish, which involved an acknowledged

acquaintance and business partner of the plaintiffs, Aaron Broussard. Under Pittman and its progeny, it would be impossible to hold the defendant liable in defamation for his comments on a blog.

To be actionable as defamation, the statements made must be false and must be clearly directed toward and be "of and concerning [the] plaintiff ." Ferguson v. Watkins, 448 So.2d 271, 275 (Miss.1984). Moreover, to state a claim for defamation, it is necessary that the defamation be "clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture." Ferguson, 448 So.2d at 275. Both the Fifth Circuit and the Mississippi Supreme Court have emphasized that these requirements must be "strictly enforced." Mize v. Harvey Shapiro Enterprises, Inc., 714 F.Supp. 220, 224 (N.D.Miss.1989);Gales v. CBS Broad., Inc., CIV.A.5:03-CV-35(BR), 2004 WL 1961680 (S.D. Miss. July 9, 2004) aff'd, 124 F. App'x 275 (5th Cir. 2005).

Here, there is no showing by the plaintiffs that the statements which Handshoe made about them were false - their association with Aaron Broussard; his ownership of property which they managed in Trout Point; the settled lawsuit against the plaintiffs by the Atlantic Canada Opportunities Agency; or the fact that they are homosexual. Any surrounding innuendo or speculation that defendant may have made with reference to any of the aforementioned factual bases is simply not actionable in defamation under Mississippi law, when viewed with strict scrutiny. Moreover, the statements relating to the plaintiffs were made in more of an indirect manner, with relation to the growing political corruption scandal in Jefferson Parish, Louisiana, as opposed to "of and concerning the plaintiffs." Thus, in the absence of any showing that the

plaintiffs could prevail in their claims against Handshoe under Mississippi law, the plaintiffs have not proven their claims, under the SPEECH Act, as a matter of law.

Finally, even is all of the defendant's statements were taken as true and were made with direct reference to the plaintiffs, as opposed to obliquely in relation to their association with the scandal in Jefferson Parish, the comments of the defendant, Handshoe, clearly fall within the scope of "fair comment," which would insulate defendant from any liability when applying Mississippi law. In this regard, the substantive law of this state provides that "any person who becomes involved, voluntarily or involuntarily, in any matter of legitimate public interest-and this certainly includes the method of administration of any program of services financed in whole or in substantial part by public monies,- becomes in that context a vortex public figure who is subject to fair comment." Ferguson v. Watkins, 448 So. 2d 271, 278 (Miss. 1984).

It is internally inconsistent for the plaintiffs to claim, on the one hand, that they had a lengthy association with a now-indicted politician and owned an eco-lodge of international repute whose reputation has been harmed by defendant, yet claim, at the same time, that they are not public figures or even vortex public figures. Necessarily, the admitted association and business relationship with Aaron Broussard would make it extremely difficult for the plaintiffs to escape the cloak of public figures. That being the case, any reasonable commentary by Handshoe would be protected by the Mississippi "fair comment" doctrine. In the context of the application of that doctrine, it is abundantly clear that the plaintiffs could not prove their claims against defendant under the laws of Mississippi, an alternative requirement under the SPEECH Act. That being the case, this Honorable Court should grant the Motion for Summary Judgment filed by

defendant and preclude the plaintiffs from further efforts to execute on their libel tourism judgment.

***Conclusion***

Under the SPEECH Act, 28 U.S.C. § 4102, international defamation judgments are not enforceable in the United States unless the plaintiffs prove that the foreign law provided at least as much protection as would have been afforded by the First Amendment, or, even without making this first showing, that a United States court would have come to the same decision. Plaintiffs did not successfully prove either of these required elements, nor did they prove that the Canadian court had personal jurisdiction over defendant, as required by 28 U.S.C. § 4102. Therefore, summary judgment must be granted in favor of the defendants, Handshoe and Slabbed, dismissing the plaintiffs' Canadian libel judgment as unenforceable in the United States.

Respectfully submitted July 21, 2012,

**THE TRUITT LAW FIRM**
A Limited Liability Company

S/Jack E. "Bobby" Truitt

______________________________
JACK E. TRUITT, BAR NO. 18476
149 North New Hampshire Street
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com
Counsel for defendants, Slabbed Media, LLC and Douglas Handshoe

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been duly served on all counsel of record by depositing same into the U.S. Mail, postage pre-paid, and/or by hand and/or by facsimile and/or by electronic means on July 21, 2012.

S/Jack E. "Bobby" Truitt