**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**TROUT POINT LODGE, LIMITED, A Nova Scotia**
**Limited Company; VAUGHN PERRET and**
**CHARLES LEARY**                                                    **PLAINTIFFS**

**VERSUS**                              **CIVIL ACTION NO:  1:12CV00090 LG-JMR**

**DOUG K. HANDSHOE**                                          **DEFENDANT**

---

**BRIEF OF PLAINTIFFS TROUT POINT LODGE, LTD., A NOVA SCOTIA**
**LIMITED COMPANY; VAUGHN PERRET; AND CHARLES LEARY IN**
**RESPONSE TO MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT OF DEFENDANT DOUGLAS K. HANDSHOE**

---

## I.

## INTRODUCTION

Throughout the parties' cross motions for summary judgment, Defendant Handshoe looks past the undisputed facts as if they do not exist.  It is unrebutted that in the Nova Scotia litigation Plaintiffs alleged and proved the elements of a Mississippi defamation claim.  Plaintiffs assumed and met burdens of proof not required by Canadian law such as proof of falsity and proof of reckless disregard for the truth.  Moreover, the Nova Scotia Court's Decision reflects that Plaintiffs met these burdens.  If the case had been brought in a Mississippi court, judgment would have been entered against Defendant Handshoe just as it had been in Nova Scotia.

The SPEECH Act does not require the laws of Canada to be at least as protective of a defamation defendant's right to free speech as the laws of the United States and Mississippi in every defamation case filed in Canada.  28 U.S.C. § 4102(a)(1)(A) requires that the "***law applied***" in the Nova Scotia Court's "***adjudication*** provided at least as much protection for

freedom of speech and press *in that case* ....”  as provided by the laws of the United States and Mississippi. Likewise, 28 U.S.C. § 4102(a)(2) refers to the “Burden of establishing *application* of [foreign] defamation laws.” (Emphasis added.)

Defendant Handshoe’s argument to the contrary leads to the absurd result that no matter how much free speech protection in excess of what Canada law requires and which a Canadian court allowed, no defamation judgment could ever be upheld against an American citizen, not even in a case where the Canadian court afforded the Defendant as much free speech protection as in American court.   Notably, Congress specifically rejected the proposed Free Speech Protection Act (H.R. 1304, 111th Cong. (2009); S. 449, 111th Cong. (2009).), choosing not to totally undo existing comity considerations for foreign defamation judgments.  Since Plaintiffs assumed and met the burdens of proving falsity and reckless disregard for the truth, they complied with this section of the SPEECH Act as “applied” in the “adjudication” “in that case”.

Again, Defendant fails to show that the result would have been any different in a Mississippi court. As we have continued to stress, since Plaintiffs proved falsity and reckless disregard for the truth, judgment would have been likewise entered against him in Mississippi.

It is unrebutted that Defendant Handshoe focused his publications on Canada where Plaintiffs reside.

As Plaintiffs set forth in the briefing of their Motion for Summary Judgment [Docket No. 7], they met their burdens imposed by the SPEECH Act and are therefore entitled to entry of Summary Judgment in their favor.  Accordingly, there exists no genuine issue of material fact precluding denial of Defendant’s Motion for Summary Judgment.

II.

ARGUMENT

Reckless Disregard for the Truth

At page 12 of his Brief in Support of Motion for Summary Judgment, Defendant Handshoe says "actual malice entails that the statement was published with 'knowledge that it was false or with reckless disregard of whether it was false or not.'"  Plaintiffs agree with this definition of actual malice and again point out that is precisely the standard employed by the Nova Scotia Court.   In its Decision, the Nova Scotia Court found "The plaintiffs were erroneously identified as being connected with Mr. Broussard…." (Decision, p. 5., Exhibit "5" to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6].)

The Nova Scotia Court found "The defendant is persistent in his statements that Trout Point Lodge is somehow connected to the Jefferson Parish corruption scandal and has benefitted financially from funds illegally obtained.  The defendant knows that the original story linking Mr. Broussard with Trout Point has been retracted and an apology published.  In the face of this the defamatory comments continued." (Decision, unnumbered p. 46, Exhibit "5" to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6].).

The Nova Scotia Court found "These unfounded statements about the character, business dealings and financial acumen of these business men merit an award of damages for each in the amount of $100,000.00." (Decision, unnumbered p. 48 and p. 49, Exhibit "5" to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6].)

The Nova Scotia Court found "I conclude the following factors in this case call for such an award here. The original story was retracted by the Times-Picayune in New Orleans, nevertheless Mr. Handshoe continued to spread the defamation. ...." (Decision, p. 49, Exhibit "5" to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6].).

The Nova Scotia Court found "He commented on other business ventures of the plaintiffs and other legal matters in which they were involved, *misrepresenting* facts and attacking the reputations with statements that they were dishonest, fraudsters, and liars." (Decision, unnumbered p. 50, Exhibit "5" to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6].) (Emphasis added.) One dictionary defines "misrepresent" as "to give a false or misleading representation ..... with an intent to deceive or to be unfair". *Merriam Webster's Collegiate Dictionary* Tenth Edition.

The Nova Scotia Court also found "All of this is outrageous conduct in the face of *true facts* about the plaintiffs." (Decision, unnumbered p. 50, Exhibit "5" to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6].).

The Nova Scotia Court cited several leading Canadian defamation cases, including *Hill v. Church of Scientology of Toronto,* [1995] 2 S.C.R. 1130 (July 20, 1995) which at ¶ 79 held:

> Malice is commonly understood, in the popular sense, as sprite or ill-will. However, it also includes, as Dickson J. (as he then was) pointed out in dissent in *Cherneskey, supra*, at p. 1099, "any indirect motive or ulterior purpose" that conflicts with the sense of duty or the mutual interest which the occasion created. See, also, *Taylor v. Despard,* [1956] O.R. 963 (CA). **Malice may also be established by showing that the defendant spoke dishonestly, or in knowing or reckless disregard for the truth.** See

> *McLouglin, supra,* at pp. 323-24, and *Netupsky v. Craig,* [1973]
> S.C.R. 55, at pp. 61-62.  (Emphasis added.)

Defendant Handshoe defamed Plaintiffs knowing his publications were false. Consequently, Plaintiffs in Nova Scotia met the American burden of proving reckless disregard for the truth of the Defendant's publicatins.


## 47 U.S.C. § 230


At page 18 of his Brief, Defendant Handshoe argues that the administrator of a blog cannot be held liable for defamatory statements made by bloggers and that Canada has no such law compared to 47 U.S.C. § 230.  This argument is meaningless.  The proof is unrebutted that the defamatory publications about which Plaintiffs complained in Nova Scotia and here were published Defendant Handshoe rather than some readers or bloggers of the Slabbed Nation.


## Elements of a Mississippi Defamation Claim


At page 19 of his Brief, Defendant Handshoe correctly cites *Fulton v. Mississippi Publisher's Corp.*, 498 So. 2d 1215, 1216 (Miss. 1986) for explaining the elements of a Mississippi defamation claim which are:

> A claim of defamation requires that the plaintiff establish:  1) a false and defamatory statement concerning another;   2) an unprivileged publication to a third party;  3) fault amounting to at least negligence on the part of the publisher; and   4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Memorandum in Support of Motion for Summary Judgment of Defendant, p. 19.

As to the first element of the publication being false and defamatory, Plaintiffs have clearly done this in their original Brief in Support of Motion for Summary Judgment and now in opposition to Defendant Handshoe's motion for summary judgment.  Plaintiffs will not here repeat all of their unrebutted proof that the publication at issue were false and defamatory but refer the Court in the interest in time and space to pages 3-5 of that brief.

As to the second element of a Mississippi defamation claim, there is no privilege in favor of Defendant Handshoe, and even if there had been, any conceivable privilege has been abused by his almost never ending stream of publications he knew in advance to be false.  In any event, Handshoe has not pointed and cannot point to any privilege protecting him here.

As to the third element, as Plaintiffs have developed in the brief supporting their Motion for Summary Judgment and in reply to Defendant Handshoe's Motion for Summary Judgment, while Canada law did not require, Plaintiffs assumed and met the burden of proving the *New York Times* actual malice standard by proving that the publications at issue were made in reckless disregard for the truth.  Plaintiffs have therefore not merely met the negligence standard, but they have met the intentional and reckless disregard for the truth standard evidencing actual malice.

As to the fourth and final element of a Mississippi defamation claim, Plaintiffs have already shown in the brief support their motion for summary judgment that pursuant to *Speed v. Scott,* 787 So. 2d 626, 632-34 (Miss. 2001) that the publications at issue are defamatory per se and therefore actionable.   Plaintiffs have additionally proven their aggravated damages (American emotional distress damages) by under oath testimony, volumes of exhibits, and affidavits in the Nova Scotia proceeding explaining how these publications have injured them. Further, as to *Speed*, Plaintiffs have met the Mississippi definition of "defamatory per se" since

the publications at issue not only falsely accused them of crimes of moral turpitude, they also clearly attacked and damaged their business reputations.[1]

## Clear and Convincing Proof

At page 19 of his Brief, Defendant Handshoe cites *Armistead v. Minor,* 815 So. 2d 1189, 1193 (Miss. 2002) for the proposition that Mississippi requires the defamation plaintiff to prove actual malice by clear and convincing evidence.  As already developed in Plaintiffs' Brief in Support of Motion for Summary Judgment and in Reply to Defendant Handshoe's Motion for Summary Judgment, the record is well developed and unrebutted that the publications at issue were uttered in reckless disregard for the truth.  The evidence in the Nova Scotia proceeding is not only clear and convincing that Defendant Handshoe is guilty of actual malice, the evidence is unrebutted.

## Defendant's View of Selected U.S. and Mississippi Law

At page 20 of his Brief, Defendant Handshoe argues incorrectly that Plaintiffs cannot recover because of various laws of the United States and Mississippi.  First, Defendant again

---

[1] Appendix 1. to this Brief is Document 6-12, Page 12 of 30 of the Hearing Book Exhibit for Damages Assessment Hearing Book 2 of 2 which was introduced by Plaintiffs into evidence at the Nova Scotia proceeding (Exhibit "6" to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary.  It is a summary of some of the false and defamatory publications by Defendant Handshoe concerning Plaintiffs.

Also see the transcript of the Nova Scotia hearing attached as Exhibit "C" to Affidavit of Charles L. Leary [Docket No. 17, pp. 1-2.]

argues that Plaintiffs failed to prove the publications at issue were false.  By now, the fallacy of this argument must be obvious.  Second, the Defendant claims Plaintiffs were public figures and that somehow precludes recovery against him.  The argument completely ignores the point that while Plaintiffs were not public figures, had they been, Plaintiffs have met the *New York Times* malice standard by proving Defendant's reckless and intentional disregard for the truth, the standard required to recover against a public figure.  Third, Defendant Handshoe says that some unspecified statements were opinions.  While we are at a loss as to understand precisely which publications he considers to be opinions, that point is irrelevant since an opinion can be as defamatory as a statement of fact.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990). Finally, Defendant Handshoe argues that "at worse, the publications were insults".  Indeed they were insults, but they happen to also be false and defamatory and uttered in reckless disregard for the truth.

The Affidavit of Defendant Handshoe

At page 21 of his Brief, Defendant Handshoe cites his affidavit for the proposition that the publications are "either true or widely reported allegations of fact from other media". Defendant Handshoe does not give us the benefit of the basis for that conclusion.  It is wholly unsupported by the record as previously proved by Plaintiffs in their Motion for Summary Judgment, affidavits, unrebutted evidence presented in the Nova Scotia proceeding, and the Nova Scotia Court Decision itself.

Paragraph 3 of Mr. Handshoe's affidavit supporting his Memorandum in Support of Motion for Summary Judgment (Docket No. 10) provides that he has never done anything which might subject him to personal jurisdiction in Canada. He does not have minimum contacts with

Canada.  These are broad, conclusory statements. "[c]onclusory assertions cannot be used in an affidavit on summary judgment." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992) ; *Watts v. Kroger Co.*, 955 F.Supp. 674, 678 (N.D. Miss. 1997). Federal Rule of Civil Procedure Rule 56(c)(4) provides that an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Defendant Handshoe is not competent to make legal conclusions regarding jurisdiction. His conclusory and argumentative opinion regarding minimal contacts and jurisdiction would not be admissible at a trial.

Moreover, facts in evidence and the record contradict Defendant Handshoe's assertions in paragraph 3 of his affidavit.  (Exhibit "1" to Memorandum in Support of Motion for Summary Judgment of Defendant, Docket No. 10).  Handshoe repeatedly published on Nova Scotia subject matter and used Nova Scotia sources from January, 2010 until the present day. This is evidenced by paragraphs 7 & 8 of the Handshoe affidavit, among other sources.  Notably, in paragraph 4, Defendant Handshoe incorrectly states the date of the evidentiary hearing of the Nova Scotia Supreme Court, of which he received notice. The hearing was on January 30, 2012.

Paragraph 5 of the affidavit likewise makes a legal argument and conclusory assertions. Facts in evidence before the Nova Scotia Court contradict the statement that Handshoe did not target Nova Scotia and only targeted the Gulf South. A slogan intentionally placed on the blog after proceedings against him were commenced is not evidence of anything except the Defendant's intention to try to avoid responsibility for his defamatory publications.  (Exhibit "1" to Memorandum in Support of Motion for Summary Judgment of Defendant, Docket No. 10.)

Paragraph 6 of the affidavit is broad, sweeping, and conclusory; and it fails to state any facts on which the assertion is based. Handshoe does not identify "other media," and he points to no specific publications or evidence to show that his multitudinous defamatory statements about the plaintiffs are either true or that "other media" made them.  Again, facts in evidence disprove Handshoe's allegations. (Exhibit "1" to Memorandum in Support of Motion for Summary Judgment of Defendant, Docket No. 10.)  The mainstream media who initially misidentified the plaintiffs' business as belonging to Aaron Broussard have retracted on more than one occasion.

The  Nova Scotia Court found that Defendant Handshoe persisted in his defamation despite true facts to the contrary, and this included allegations of perjury by Charles Leary in testimony before the of Nova Scotia Court. (Exhibit "5" to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6].)

Paragraph 7 provides that "plaintiffs are public figures," and then goes on to say why. This is a conclusory statement and not a statement of material fact. Mr. Handshoe is not the trier of fact or an expert on the issue of whether the plaintiffs are public figures. In addition, this paragraph is prejudicial, inflammatory, and defamatory, accusing the plaintiffs once again of "unethical business practices." Defendant Handshoe also makes conclusory statements about the malice standard and is making another legal argument. Defendant Handshoe has pointed to no specific evidence of the Plaintiff's business practices, association with Aaron Broussard, "failed" business ventures, or the status of any litigation with the Atlantic Canada Opportunities Agency.

Material facts in evidence also contradict statements made in paragraph 7 of the Affidavit.  Defendant Handshoe is attempting to retry the issues using an affirmative defense of truth and justification at an inappropriate and unallowable time and place. This issue is *res*

*judicata*. In addition, the Defendant has presented no evidence to support any of his claims made in paragraph 7 of the Affidavit.  For instance, the litigation with the Atlantic Canada Opportunities Agency ("ACOA") was settled before any of Handshoe's publications about the plaintiffs mentioning ACOA. It was a matter in which there were both claims and counterclaims. (Exhibit "1" to Memorandum in Support of Motion for Summary Judgment of Defendant, Docket No. 10.)  In addition, under Rule 56(e) Handshoe has failed to "properly support an assertion of fact."

Paragraph 7 does, however, form an admission by Defendant Handshoe that he was publishing on the Nova Scotia activities of the Nova Scotia plaintiffs using Nova Scotia sources.

The article referred to in paragraph 8 of the Affidavit was retracted by *Rural Delivery*. (Affidavit of Charles Leary, filed July 25, 2012.)  Handshoe fails to mention this fact. (Exhibit "1" to Memorandum in Support of Motion for Summary Judgment of Defendant, [Docket No. 10].)  Under Rule 56(e) Handshoe has failed to "properly support an assertion of fact."  More importantly, there is no dispute over Mr. Handshoe's republication of a 2002 *Rural Delivery* article—it was not a factual issue in either the amended claim or the evidentiary hearing. On this issue, the Defendant has simply created a straw man to argue against.

Paragraph 9 of the Handshoe Affidavit makes conclusory statements and is argumentative. This paragraph makes legal conclusions and is also frivolous as the Plaintiffs have never raised the issue of fighting words under Mississippi statute. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 106 S.Ct. 2505, (1986).

As to Paragraph 10 of the Affidavit, Mr. Handshoe has no personal knowledge of the plaintiff's sexual relationships. He fails to cite any source for his assertion regarding what the plaintiffs are "engaged in." Whether or not the Plaintiff's real or perceived sexual orientation was a "secret" is not at issue in this proceeding.

Paragraph 11 of the Affidavit fails to state any basis for Defendant Handshoe's assertions. He has no personal knowledge of the plaintiffs' activities vis-a-vis internet service providers. He does not state any knowledge of what, if anything, Plaintiffs used in communications with service providers. He does not name those service providers or provide evidence from those alleged service providers.

Failure to Heed Retractions as Evidence of Actual Malice

Defendant Handshoe saw media coverage of leaked allegations made to the Louisiana Ethics Board regarding Aaron Broussard simultaneous with their first publication, around the morning of January 7, 2010. The very same day, he published a belief that Broussard would be "going down" and would be doing a "perp walk" (Affidavit of Charles Leary dated July 10, 2012 [Docket No. 17].) The New Orleans *Times-Picayune* had misidentified Trout Point Lodge, closely managed by the personal plaintiffs, as really being Broussard's property and as being the subject of a Metropolitan Crime Commission complaint to the Board.  (Exhibit "5" to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6] and Affidavit of Charles Leary dated July 10, 2012 [Docket No. 17].)

Within two weeks, the *Times-Picayune* had issued a correction and then a full, front-page retraction and apology to the plaintiffs. The *Times-Picayune* retracted again in early April, 2011, before the vast majority of the Defendant's defamatory publications. Handshoe published about the correction and the two retractions but consciously chose to disbelieve them. The plaintiffs were thereby removed from any public controversy by the same media who made the original erroneous identification. Notably, the plaintiffs never entered the Broussard controversy in any way, other than privately seeking retractions from media who were investigating Broussard's assailed administration. (Affidavit of Charles Leary [Docket No. 17] and Affidavit of Charles Leary filed July 25, 2012, § 57.)

Handshoe repeatedly published that the retractions were somehow coerced and untrue. He referred to the correction as bald faced lies and assured his readers that the *Times-Picayune* reporter's retracted stories were actually newsworthy. He had no evidence of this, but he did launch a vendetta since he mistakenly blamed the plaintiffs with ultimate responsibility for shutting down his Go Daddy web hosting. He also published statements blaming the "powers that be" and generally demonstrated a penchant for conspiracy theories involving the plaintiffs and their imagined social group strong-arming the press and being part of the Jefferson Parish political mafia. Each time the Plaintiffs have involved Handshoe in civil process in Nova Scotia or Mississippi, Handshoe has intensified his defamatory publications in an attempt at intimidation and extra-judicial influence (Affidavit of Charles Leary filed July 25, 2012, ¶¶ 6-7, 19 and Exhibit "6", Hearing Book Exhibits for Damages Assessment Hearing *Book 1 of 1; and Hearing Book Exhibits for Damages Assessment Hearing *Book 2 of 2 to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6].)

The Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332, 94 S.Ct. 2997, 3003, 41 L.Ed.2d 789 (1974) noted that "The first remedy of any victim of defamation is self-help—using available opportunities to contradict the lie or correct the error and thereby to minimize its adverse impact on reputation." The plaintiffs did this in seeking and getting major media retractions.

In early May, 2011, the Plaintiffs tried the same with Handshoe. They served on the Defendant at his home in Bay St. Louis, Mississippi, a Notice of Intended Action, which is a notice described in the Nova Scotia Defamation Act, as amended:

**Notice of action**

> 18 (1) No action shall lie unless the plaintiff has, within three months after the publication of the defamatory matter has come to his notice or knowledge, given to the defendant, in the case of a daily newpaper [newspaper], seven, and in the case of any other newspaper or where the defamatory matter was broadcast, fourteen days notice in writing of his intention to bring action, specifying the defamatory matter complained of.[2]

While flatly denying in the Notice that Handshoe and Slabbed were news media, the Plaintiffs were in good faith giving Handshoe a chance to cease publication, make amends, retract, apologize, and otherwise mitigate before they filed any law suit in their home jurisdiction, Nova Scotia. Defendant Handshoe acknowledged receiving the notice in his interview with *Frank* magazine and in other places, including submissions to this court. (Affidavit of Charles Leary Exhibit "7" to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6] and Affidavit of Charles Leary filed July 11, 2012 (Docket No. 17].)

---

[2] This Notice of Action was personally served on Defendant's wife at their home in Mississippi. Affidavit of Charles Leary dated July 25, 2012, Sections 17, 24 and 33.

Handshoe did nothing in response to the Notice, except continue and expand his defamatory publications. Thus, in the face of a correction and two retractions from the *Times-Picayune* as well as Notice from the plaintiffs, Handshoe continued to expand the defamation into Canada and failed to retract.

The Nova Scotia Court made particular note of Handshoe's defamatory publications of criminal accusations made after the retractions at pages 9, 45, and 47 of the Decision (Exhibit "5" to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6].) As importantly, he then went far beyond the retracted mistruths of the *Times-Picayune* to make new defamatory allegations never published or contemplated by New Orleans media, including intentionally misrepresenting a 2002 litigation in Nova Scotia as the plaintiffs defrauding the Canadian government and illegally moving monies to Trout Point Lodge, including perjury on the part of Charles Leary before the Nova Scotia Supreme Court in that litigation, scamming and bilking investors, participation in organized crime, and finally, running a money laundering scheme involving Aaron Broussard. (Decision in the Supreme Court of Nova Scotia, Exhibit "5" and Exhibit "6", Hearing Book Exhibits for Damages Assessment Hearing *Book 1 of 1; and Hearing Book Exhibits for Damages Assessment Hearing *Book 2 of 2 to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6].)

In December, 2011, Defendant published braggadocios posts on Slabbed concerning the money and time he had caused the plaintiffs (referred to as "the girls") to spend:

> Along those lines I am pleased to report that since I turned the girls on to the concept of the US SPEECH act they have lost their ardor to SLAPP Slabbed, even after I ran them on a 2 month service of process fools errand that cost them at least $1K in Canadian court

> costs. Curiously the local Canadian press, which had me "bleating" about my first amendment rights as an American Citizen like I was a lamb headed for th [sic] chop shop have also lost their interest since the Canadian defamation scam is at an end thanks to SPEECH. The topic of the Canadian court system as a judicial hell hole for defamation, libel and slander is ripe for publicity and I plan on providing it. My personal experience with the people in Nova Scotia has been universally positive except for the American grifter/interlopers that exploit the Canadian judicial system to their personal benefit.

(Affidavit of Charles Leary, § 50, dated July 25, 2012.)

Defendant Handshoe even went so far as to publish bald-faced misrepresentations of a yet unchallenged 2012 Factual Basis filed by the New Orleans U.S. Attorney in an as yet untried Grand Jury indictment of Aaron Broussard, falsely stating that the plaintiffs were named by a co-defendant, were under investigation in that case, and were guilty of money laundering. Plaintiffs testified to this in the Nova Scotia proceeding  and provided a copy of the Factual Basis in court to rebut Handshoe's published statements.  (Exhibit "6", Hearing Book Exhibits for Damages Assessment Hearing *Book 1 of 1; and Hearing Book Exhibits for Damages Assessment Hearing *Book 2 of 2 to Motion for Summary Judgment of Plaintiffs Trout Point Lodge, Ltd., a Nova Scotia Limited Company; Vaughn Perret; and Charles Leary [Docket No. 6] and Exhibit "C"" to Affidavit of Charles Leary [Docket No. 17].)

 In the instant case, counsel has permitted Defendant Handshoe to make essentially the same outrageous and inflammatory misrepresentations to this Court retracted by the *Times-Picayune* and again refer to the Factual Basis as proof of illicit activities by the plaintiffs, though this time alleging specifically the funnelling of kickbacks. The Defendant's assertions in its brief for this court are prima facie defamatory, made with conscious and intentional disregard for verifiable facts:

> Broussard owned a lodge in Nova Scotia, Canada, which he used
> to funnel kickbacks from contractors doing business with Jefferson

> Parish, facts set forth in the factual basis of an indicted co-defendant. Media reports have revealed that plaintiffs, Charles Leary and Vaughn Perret, co-owned and/or managed this property.

At page 21 of Defendant's brief supporting his Motion for Summary Judgment, Handshoe again asserts the truth of this allegation, offering as evidence the affidavit of Doug Handshoe. At page 26, Handshoe again states that the "Plaintiffs engaged in questionable business operations with Aaron Broussard." The Plaintiffs have never co-owned property with Broussard. (Affidavit of Charles Leary [Docket No. 17].)

There is no evidence for these allegations aside from Handshoe's own sworn conclusory statements, which are contradicted by numerous material facts. Broussard, in fact, does not even face federal charges of money laundering or receiving kickbacks, and the Factual Basis remains unproven. The Factual Basis also does not state that the Broussard codefendant is the one making the assertions contained in the relevant paragraph that mentions Canada (not Nova Scotia), as asserted in the brief. Handshoe's assertions are simply more lies and further examples of defamatory publications.

As in Canada a retraction in and of itself can be used to infer malice or lack of malice. As in Canada, the lack of such a retraction is weighed in the granting of punitive damages. In Mississippi, retractions and their promptness also are probative of existence of actual malice. *Stegall v. WTWV, Inc.*, 609 So.2d 348, 351 (Miss. 1992) "This factual dispute could also influence an award of damages because the promptness of the retraction may be a factual issue at trial."

In *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1070 (5th Cir. 1987) the Fifth Circuit summarized the law on intentional or reckless disregard for the truth by media defendants publishing on public officials or public figures:

In *New York Times*, the Supreme Court defined "actual malice" as "knowledge that [the publication] was false or ... reckless disregard of whether it was false or not." 376 U.S. at 280, 84 S.Ct. at 726. That Court has further defined "reckless disregard" as a "high degree of awareness of probable falsity." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332, 94 S.Ct. 2997, 3003, 41 L.Ed.2d 789 (1974). A defendant will have such awareness if he "in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731, 88 S.Ct. at 1325. Despite a confusing use of the words "malice" and "reckless," "actual malice" cannot be proven by showing only ill will or negligence, even gross negligence, on the part of the defendant. *Garrison v. Louisiana*, 379 U.S. 64, 79, 85 S.Ct. 209, 218, 13 L.Ed.2d 125 (1964); *Time, Inc. v. Hill*, 385 U.S. 374, 387-88, 87 S.Ct. 534, 542, 17 L.Ed.2d 456 (1967). Instead, the inquiry focuses on the actual state of mind of the defendants. *Herbert v. Lando*, 441 U.S. 153, 170, 99 S.Ct. 1635, 1645, 60 L.Ed.2d 115 (1979); *New York Times*, 376 U.S. at 287, 84 S.Ct. at 730; *McKinley*, 777 F.2d at 1021. Although the defendant's state of mind is a subjective fact, it can be shown by indirect or circumstantial evidence. *Herbert*, 441 U.S. at 165, 99 S.Ct. at 1643. Sufficient indirect evidence of actual malice can defeat a defendant's unsupported statement that he did act in good faith. *St. Amant*, 390 U.S. at 732, 88 S.Ct. at 1326; *Carson v. Allied News Co.*, 529 F.2d 206, 213 (7th Cir.1976). The Supreme Court has stated in dicta that reckless disregard could be found where, for example, a reporter fabricated a story out of his imagination, based it on an "unverified anonymous telephone call," published "inherently improbable" statements, or had "obvious reasons to doubt the veracity of the informant." *St. Amant*, 390 U.S. at 732, 88 S.Ct. at 1326. Turning to the fact patterns of the cases, we find courts refusing to find "actual malice" where the plaintiff has proved only that the defendant erred in interpreting its source (*Time, Inc. v. Pape*, 401 U.S. 279, 290, 91 S.Ct. 633, 639, 28 L.Ed.2d 45 (1971); *Long v. Arcell*, 618 F.2d 1145, 1148 (5th Cir.1980), cert. denied, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981)); where the defendant failed to investigate an apparently reliable source (*New York Times*, 376 U.S. at 287, 84 S.Ct. at 730; *Beckley Newspaper Corp. v. Hanks*, 389 U.S. 81, 84, 88 S.Ct. 197, 200, 19 L.Ed.2d 248 (1967); *Herbert v. Lando*, 781 F.2d 298, 308 (2d Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986); *Bartimo v. Horsemen's Benev. and Protective Ass'n*, 771 F.2d 894, 898 (5th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986); *Wattigny v. Lambert*, 453 So.2d 1272, 1279 (La.App.3d Cir.1984)); and where the defendant disregarded apparently unreliable counter-evidence (*Long*, 618 F.2d at 1148; *Dougherty v. Capitol Cities*

*Communications, Inc.*, 631 F.Supp. 1566, 1573-74 (E.D.Mich.1986)). On the other hand, the courts have upheld findings of actual malice when a defendant failed to investigate a story weakened by inherent improbability, internal inconsistency, or apparently reliable contrary information. *Curtis Publishing Co. v. Butts*, 388 U.S. 130,87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *McHale v. Lake Charles American Press*, 390 So.2d 556, 566 (La.App.3d Cir.1980), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981). A verdict for the plaintiff has been upheld when a reporter's own notes showed that she was aware of facts contradicting her story. *Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.*, 708 F.2d 944, 950 (5th Cir.1983). Similarly, plaintiffs have prevailed after demonstrating that the author of a story knew facts disproving it (*McHale*, 390 So.2d at 561), or that the supposed source of the story disclaimed giving the information (*Batson v. Time, Inc.*, 298 So.2d 100 (La.App. 1st Cir.), writ denied, 299 So.2d 803 (La.1974)). When the only "source" of a story did not contain the statements supposedly derived from it, the courts have inferred that defendant recklessly fa bricated the story. *Carson*, 529 F.2d 206 . Refusal to retract an exposed error tends to support a finding of actual malice. *Golden Bear Distributing Systems*, 708 F.2d at 950. Conversely, a readiness to retract tends to negate "actual malice." *Hoffman v. Washington Post*, 433 F.Supp. 600, 605 (D.D.C.1977), aff'd, 578 F.2d 442 (D.C.Cir.1978). In a first amendment case, the appellate court must independently review the record. *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *McKinley*, 777 F.2d at 1021. However, the factfinder retains its traditional role in the determination of facts, such as the credibility of witnesses. *Bartimo*, 771 F.2d at 898. The plaintiff must prove actual malice with "convincing clarity" (*New York Times*, 376 U.S. at 285-86, 84 S.Ct. at 729), and the Supreme Court has recently held that the plaintiff must sustain this burden to defeat a motion for summary judgment as well. *Anderson v. Liberty Lobby, Inc.*, ---U.S. ----, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). While the public figure plaintiff in a libel case must meet the "clear and convincing" standard of proof in order to defeat summary judgment, all of the other summary judgment rules still apply. *Anderson*, 106 S.Ct. at 2514. This means that the judge must deny summary judgment if the opponent shows any "genuine issue" of "material fact," and must draw all possible inferences in the opponent's favor. Fed.R.Civ.P. 56(c); *Anderson*, 106 S.Ct. at 2513. Generally, determinations of state of mind and of witness credibility are for the factfinder. *Anderson*, 106 S.Ct. at 2513-14; *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 2680 n. 9, 61

L.Ed.2d 411 (1979) (proof of actual malice "does not readily lend itself to summary disposition"). The moving party must demonstrate the absence of genuine issues, but, as to issues on which his opponent would bear the burden of proof, the movant may obtain summary judgment by pointing to his opponent's failure to produce evidence. *Celotex Corp. v. Catrett*, --- U.S. ----, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);Fontenot v. Upjohn Co., 780 F.2d 1190 (5th Cir.1986). (emphasis added)

*Zerangue* follows a long line of common law defamation cases dealing with retractions as well as evidence of actual malice. It is clear that retracted material is a source for disclaiming an original publication. It is also clear that a refusal to retract, as evidenced by Handshoe's lack of response to Plaintiffs' Notice of Intended Action, evidences actual malice on the part of a non-media Defendant:

- "a number of courts have discussed a refusal to retract or a defendant's publication of a retraction in bad faith as evidence of actual malice" ( Schafer v. Time, Inc., 142 F.3d 1361 (C.A.11 (Ga.), 1998) at footnote 8);

- A refusal by the publisher of a newspaper to correct a false publication in the newspaper concerning another person is relevant as tending to show malice or bad faith on the part of the publisher in making the publication (*Augusta Chronicle Pub. Co v. Arrington*, 157 S.E. 394, 42 Ga.App. 746 (Ga. App., 1931);

- "appellant, with full knowledge of its error, the falsity of the ad, and the propensity for damage to appellees, made a conscious decision to continue distribution of the false advertising with conscious indifference to the consequences that could befall appellees and without any attempt to minimize or diminish the possible adverse effect of its error." (*Southern Bell Tel. and Tel. Co. v. Coastal Transmission Service, Inc*., 307 S.E.2d 83, 167 Ga.App. 611 (Ga. App., 1983); also:

- *Hoffman v. Washington Post Co*., 433 F.Supp. 600, 604 (D.D.C.1977) (Publication of a retraction of the indisputably inaccurate statement is "significant and tends to negate any inference of actual malice."), aff'd, 578 F.2d 442 (D.C.Cir.1978);

- *Trans World Accounts, Inc . v. Associated Press*, 425 F.Supp. 814, 823 n.6 (N.D.Cal.1977) (Publication of a retraction "may create a large obstacle to plaintiff's efforts to prove actual malice.");

- *Gonzales v. Hearst Corp*.,930 S.W.2d 275 (Tex.Ct.App.1996) ("Refusal to print a retraction is evidence of an action after the publication, but it can lend support to a claim that reckless disregard of knowledge existed at the time of publication.") (emphasis in original).

In addition, "Courts have found actual malice when the only source for a story does not contain statements supposedly derived from it." *Zerangue, supra.*  Mr. Handshoe has made numerous statements completely unsupported by the source he cited.

The Nova Scotia Proceedings' Reference to the SPEECH Act

At page 28 of his Brief, Defendant Handshoe incorrectly argues that the Nova Scotia Court made no reference to the SPEECH Act.  That is simply untrue.  Handshoe's publications submitted in evidence were replete with assertions about how the Act would protect him from any Nova Scotia judgment.   Near the end of the Nova Scotia proceeding, the Plaintiffs specifically mentioned the SPEECH Act:

> LEARY:  Mr. Handshoe's publications are full of references to the United States SPEECH which was enacted just last year [sic].  The SPEECH Act does make it more difficult for those holding foreign defamation judgments to have them enforced in the United States. Mr. Handshoe, as is his penchant, misrepresents what the Act actually says.  The Act has 2 parts, stating in part "A" that if the jurisdiction of the foreign judgment does not have the same constitutionally protected free speech rights as in the United States, that the judgment will not be enforced.  But it also has a provision. "B" which states that even if that were the case in the jurisdiction, if the behavior and conduct, and the defamatory statements of the defendant would have been deemed to libellous under the standards of the state and the federal law in the United States where the defendant resides, then that judgment can be enforced. but still, there is another hurdle for us to go through.

(Exhibit "C" to Affidavit of Charles L. Leary, Docket No. 17-3, p. 8.)

While not referring to the SPEECH Act by name, the Nova Scotia Court did consider that legislation as it entered judgment against Defendant Handshoe.   (Exhibit "5" to Plaintiff's Motion for Summary Judgment [Docket No. 6-5, p. 52 of 59]).

*Investorshub.com, Inc.*

At page 9 of his Brief, Defendant Handshoe cites *Investorshub.com, Inc. v. Mina Mar Group*, No. 4:11cv9-RH/WS, (N.D. Fla. June 20, 2011) in support of the proposition that the Plaintiffs in this case have not met the burdens imposed by the SPEECH Act.  See Exhibit "3" to Defendant's Motion for Summary Judgment.  *Investorshub.com* is a decision based upon the parties' Stipulated Motion for Final Judgment.  (See the preamble in the Stipulated Final Judgment.)  It has no precedential value as a result.  "The way in which a consent judgment or consent decree resolves, between the parties, a dispute over a legal issue is not a ruling on the merits of the legal issue that either (1) becomes precedent applicable to any other proceedings under the law of stare decisis or (2) applies to others under the law of claim preclusion or issue preclusion." *Langton v. Hogan*, 71 F.3d 930, 935 (1ˢᵗ Cir. Mass. 1995).

While it is true that the Florida district court did find that Canadian law was not as protective of free speech as American and Florida law, the Stipulated Final Judgment is silent upon whether it is based on the facts of the Canadian proceeding "in that case" as required by the SPEECH Act.  28 U.S.C. § 4102(a)(1)(A).  We do know that Congress rejected the proposed Free Speech Protection Act (FSPA), *supra*, in an accommodation to the longstanding legal principle of comity. The SPEECH Act also rejected punitive provisions of the FSPA, including treble damages upon finding that the plaintiff in the foreign libel suit "engaged in a scheme to suppress First Amendment rights . . . ."

As Andrew R. Klein notes in the *Pepperdine Law Review*, "judicial interpretation of the legislation [SPEECH Act], should explicitly focus on the core First Amendment policy of fostering robust and unfettered public debate, rather than tying itself to every particular detail of

First Amendment doctrine." And: "there should be no general presumption that it is inherently wrong to sue an American in another country." (Andrew R. Klein, "Some Thoughts on Libel Tourism," Pepperdine Law Review, No. 38, 2010).

Since the Florida proceeding ended in a Stipulated Final Judgment and since that Stipulated Judgment did not reveal what proof the plaintiffs in that case put on in the Canadian proceeding, we cannot know whether the plaintiffs there assumed and met the burdens of the Plaintiffs in this case assumed and met in Nova Scotia clearly proving falsity and reckless disregard for the truth as supported in the instant case by a voluminous record, exhibits, briefs, a lengthy hearing, and a 59 page Decision by the Nova Scotia Court.

In addition, the facts of the *Investorshub.com* case, *supra*, involved third party publications on a publicly-available investor web site. CDA protections reinforced by the SPEECH ACT may have given the defendant an instant refuge against enforcement of the Canadian judgment; the facts in the instant case where Handshoe is the admitted author of the defamatory words are clearly distinguishable from *Investorshub.com*.


Sufficient Minimum Contacts


At page 29 of his Brief, Defendant Handshoe argues that he did not have the requisite minimum contact with Canada to be subject to either specific or general jurisdiction of that country.  The Plaintiffs have addressed this argument in great detail in their Brief in Reply to Defendant Doug K. Handshoe's Memorandum in Opposition to Motion for Summary Judgment of Plaintiff, § I.  [Docket No. 16.]   Plaintiffs will only briefly revisit this issue here.

A single act by the tortfeasor can support a finding of known contacts.  *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 211 (5th Cir. 1999).  As we have previously argued in great detail, Defendant Handshoe not only focused his publications on Nova Scotia but he did so repeatedly, on numerous occasions, both before and during the Nova Scotia judicial proceeding.  The Defendant had a Nova Scotia audience beyond the plaintiffs, who read the injurious publications (Affidavits of Charles Leary and Daniel Gillis). He started using Nova Scotia sources as early as January, 2010, and continued unabated into 2012. This included using sources such as the Nova Scotia Courts web site, the Billy's Hill Trail Society web site, and the Nova Scotia Registry of Joint Stocks online database.  (Affidavit of Charles Leary date July 25, 2012, ¶¶ 10-15.)

It is undisputed and clearly established in the Nova Scotia Court's record that Defendant Handshoe knew the Plaintiffs were Canadian residents since he published that fact multiple times.  "Knowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test."  *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002) citing with approval *Calder v. Jones,* 465 U.S. 783, 785, 104 S.Ct. 1482 (1984) "…. In the main pragmatic account of reasonable expectations – if you are going to pick a fight in [Nova Scotia] it is reasonable to expect that it be settled there.  It is not fairness calibrated by the likelihood of success on the merits of relative fault.  Rather, we look to the geographical focus of the article, not the bite of the defamation, the blackness of the calumny, or who provoked the fight."  *Id.*, 476.  Despite Defendant's weak assertions to the contrary, the publications focused on Plaintiffs in Canada, therefore as we  have previously argued, pursuant to *Calder*, the Nova Scotia Court had specific jurisdiction over Defendant Handshoe.

## CONCLUSION

Since Plaintiffs are entitled to entry of summary judgment in their favor, they are likewise entitled to a denial of the Defendant's cross-motion for summary judgment. There are no genuine issues of material fact precluding the entry of summary judgment in favor of Plaintiffs and against Defendant.

The purpose of the SPEECH Act is to prevent libel tourism and to assure that American citizens being sued in foreign courts will have defamation judgments collected against them only when those foreign judgments are obtained in a way which assures recognition of the American defendants' rights of free of speech enjoyed in the United States.

The SPEECH Act requires Plaintiffs to prove the Nova Scotia Court had personal jurisdiction over Defendant Handshoe. Plaintiffs have proved that. Defendant Handshoe repeatedly directed streams of false and defamatory publications into Canada including Nova Scotia. The focus of Defendant's publications was Nova Scotia. The injury to Plaintiffs was in Nova Scotia. While only one contact with Canada would give the Nova Scotia Court jurisdiction, there were multiple such minimum contacts with Nova Scotia. For instance, Defendant Handshoe developed a readership there by defaming Plaintiffs. He used Canadian sources for his stories. He was personally served with process. These facts are not in dispute as Defendant Handshoe admits them on the face of his publications. He should have reasonably expected to be sued in Nova Scotia with all the attention he gave to that jurisdiction.

Secondly, the SPEECH Act requires Plaintiffs to prove that the laws of Canada as applied in the foreign adjudication are at least as protective of Defendant Handshoe's right to free speech as he enjoys in the United States and as American citizen, or in the alternative, he would have had a judgment entered against him in Mississippi under the same set of facts. Plaintiffs proved both.

Section 4102 of the SPEECH Act requires that the law applied in the Nova Scotia Court's "adjudication provided at least as much protection for freedom of speech and press in that case…" as provided by the laws of the United States and Mississippi. The evidence in this regard against Defendant Handshoe in the Nova Scotia proceeding is overwhelming. The testimony, documentary evidence, affidavits , and Decision of the Nova Scotia Court clearly and convincingly indicate that while Canadian law may not require a defamation plaintiff to prove falsity or fault on the part of the defamation defendant, both were done in that Nova Scotia proceeding. The record is absolutely clear that the Plaintiffs assumed the burdens of proving the publications at issue were false and that they were published in reckless disregard for truth, that is, by the standard established in *New York Times v. Sullivan.*

Since Defendant Handshoe chose not to appear and contest the defamation case against him in Nova Scotia, that Court proceeded exactly as a Mississippi and  American federal district court would have pursuant to Rule 55 default judgment procedure.

In conclusion, as a matter of law the Court should enter summary judgment in favor of Plaintiffs and dismiss Defendant's cross-motion with prejudice.

Respectfully submitted, this the 25th day of July, 2012.

Trout Point Lodge, Limited, Vaughn Perret and Charles Leary


By:     s/  Henry Laird
        Henry Laird, Mississippi Bar No. 1774

## CERTIFICATE OF SERVICE

I, Henry Laird, do hereby certify that I have sent a true and correct copy of the foregoing Plaintiffs' Response to Memorandum in Support of Motion for Summary Judgment of Defendant Douglas K. Handshoe by using the ECF system to the following:

G. Gerald Cruthird, Esquire
Post Office Box 1050
Picayune, Mississippi  39466
Email:  ggeraldc@bellsouth.net

Jack E. Truitt, Esquire
The Truitt Law Firm, LLC
149 North New Hampshire Street
Covington, LA  70433
Email:  mail@truittlaw.com

This the 25th day of July, 2012.

s/  Henry Laird
Henry Laird

Henry Laird (MSB No. 1774)
Email:  hlaird@joneswalker.com
Jaklyn Wrigley (MSB No. 103773)
Email:  jwrigley@joneswalker.com
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, LLP
2510 14th Street, Suite 1125 (39501)
Post Office Drawer 160
Gulfport, MS  39502
Telephone: (228) 864-3094
Facsimile: (228) 864-0516