IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TROUT POINT LODGE, LIMITED,
A Nova Scotia Limited Company;
VAUGHN PERRET and
CHARLES LEARY,

        Plaintiff,    Civil Action No.: 1:12-CV-90LG-JMR

v.

DOUG K. HANDSHOE,

        Defendant.

* * * * * * * * * * * * *

## SUPPLEMENTAL REPLY MEMORANDUM OF DEFENDANT, DOUGLAS K. HANDSHOE

**MAY IT PLEASE THE COURT:**

This Supplemental Memorandum is submitted by defendant, Douglas K. Handshoe ("Handshoe"), in reply to the Memorandum in Opposition to Motion for Summary Judgment, which was filed by the plaintiffs, Trout Point, Vaughn Perret, and Charles Leary (collectively, "Trout Point").

As previously discussed in defendant's Reply Memorandum, the parties agreed that this dispute would focus on pure questions of law, rather than specific facts, and would be resolved solely on motions for summary judgment. Still, as pointed out in defendant's Reply Memorandum, plaintiffs have focused a great deal of their arguments on facts. Because of plaintiffs' harping on the facts, defendant feels compelled to provide the court with factual points as well. Thus, this supplemental memorandum will focus on revealing the factual bases for defendant's allegedly defamatory statements.

Plaintiffs repeatedly point to the assertion that in the Canadian adjudication, they proved that the statements made about them were false. Specifically, they state in their Response to Memorandum in Support of Motion for Summary Judgment that plaintiffs have clearly demonstrated that the statements were false and defamatory. (Record Doc. No. 20 at p. 6). They direct this Honorable Court to pages 3-5 of their Brief in Support of Motion for Summary Judgment. However, upon review of this Brief, it is clear that on pages 3-5 they have not provided the proof for this assertion. They simply point to the findings made by the Supreme Court of Nova Scotia stating that defendant's allegations were false and defamatory. They have provided no support that would pass muster in a domestic court to back their assertions that defendant mistakenly tied them to the Jefferson Parish scandal; that they were not at one point accused of being in default of a repayable contribution generously awarded to them by the Atlantic Canada Opportunities Agency;[1] that plaintiff Charles Leary did not lie to a judge in the ACOA case when he stated that he and Mr. Perret were the sole owners of La Ferme D'Acadie;[2] and that they are not homosexual.[3] The volume of exhibits submitted by plaintiffs consisting of

---

[1] See Exhibit 6 – La Ferme D'Acadie and Charles Leary v. The Atlantic Canada Opportunities Agency. ("In June, 2002 the Atlantic Canada Opportunities Agency ("ACOA") sued La Ferme d'Acadie, Daniel Abel, Dr. Charles Leary and Vaughan Perret. The statement of claim alleges that (1) in June, 1998 ACOA contracted with each defendant that ACOA would advance money, (2) ACOA advanced $126,127, and (3) the defendants breached their contractual obligations to ACOA by altering their business operations, ceasing the operation of La Ferme d'Acadie, and providing misleading information to ACOA. The statement of claim says that on September 5, 2001 ACOA notified the defendants that they were in default. ACOA claimed the amount outstanding, quantified as $104,211.12.")

[2] Defendant based this statement on the resume of New Orleans attorney Daniel Loeb, which includes La Ferme d'Acadie as a business interest. (See Exhibit 7 – Resume of Daniel Loeb).

[3] Mr. Leary himself has admitted that he is a homosexual in an affidavit filed in the ACOA litigation. (See Exhibit 8 – The Atlantic Canada Opportunities Agency v. La Ferme D'Acadie, paragraph 12) "The portion of the affidavit headed 'Unequal Treatment' (at paragraphs 95-100) likewise has no relevance; Mr. Leary's allegation of 'unequal treatment' based on his American

printouts of defendant's blog posts with commentary from plaintiffs suggesting their allegedly defamatory nature does not prove falsity.  Neither does presenting the Louisiana Ethics Board complaint and showing that plaintiffs were not mentioned in it, as demonstrating the absence of this explicit connection does not prove their innocence.  It is not required that defendant prove that the content of each of his statements was true; it is up to plaintiffs to present some kind of solid documentation or evidence to show that the statements were false.  Defendant is simply at a loss as to how plaintiffs believe that this burden has been satisfied.

The importance of highlighting the factual bases for defendant's statements is that they demonstrate the substantial truth of the statements.  Plaintiffs quote extensively from <u>Zerangue v. TSP Newspapers, Inc.</u>, 814 F.2d 1066 (5th Cir. 1987) in their brief.  As discussed in a section of <u>Zerangue</u> that plaintiffs neglected to include in their lengthy quotation from this case, "[a] publication is also protected if it is 'substantially true,' i.e., if it varies from the truth only in insignificant details or if its 'gist' or 'sting' is true." <u>Id.</u> at 1073.  As previously discussed in the Memorandum in Support of Defendant's Motion for Summary Judgment, Mississippi courts have applied this legal standard as well.  <u>See</u> <u>P.L. Blake v. Gannet Co.</u>, 529 So. 2d 595, 602 (Miss. 1988).  Even if all statements do not have "an adequate basis of fact in the record," the burden of proving the statements rests on the plaintiff, and a plaintiff must do more than "rely on his own denials to serve of proof" to counteract the "bulk" of the articles and reports. <u>Armistead v. Minor</u>, 815 So.2d 1189, 1195 (Miss. 2002).  Plaintiffs simply did not carry this burden in the Nova Scotia court.  If plaintiffs had filed this case in a Mississippi court, their failure to prove

---

nationality or his sexual orientation appears to be speculation."  Further, as covered in defendant's Memorandum in Support of Motion for Summary Judgment, defendant's derogatory comments regarding plaintiffs' sexual orientation are, at worst, insults.  These comments are not actionable as defamatory statements.

falsity in any manner other than by simply stating that the statements were false would not have allowed them to prove their prima facie case.

It is undisputed that Aaron Broussard, former president of Jefferson Parish, is under investigation for his receipt of kickback fees from various venders in Jefferson Parish. This fact has been widely reported in the media. (See Exhibit 1 – Nola.com article entitled "Aaron Broussard used office to secure large sums from Jefferson Parish contractors, prosecutors allege"). Further, it has been reported that this activity includes Broussard's involvement with a property in Canada. As stated in that article reporting on this issue on Nola.com:

> The document alleges Broussard received hundreds of thousands of dollars from 2004-2010 in the form of consulting, retainer and finder fees from unnamed parish contractors and vendors. Broussard also received income from a holding company with investment property in Canada that was partially funded by individuals and firms doing business with the parish while Broussard was president, according to the document.

(See Exhibit 1). The document this news article is referencing is the factual basis for Broussard's ex-wife Karen Parker's plea deal with federal prosecutors in connection to her guilty plea in the Jefferson Parish payroll fraud case. The factual basis states the following:

> Additionally, from approximately 2004-2010, Broussard received monies, totaling hundreds of thousands of dollars, that were characterized as, among other things, "retainers," "consulting fees" or "finder's fees" with various contractors and venders, all of whom were doing business with Jefferson Parish during the period of time Broussard was the President of Jefferson Parish. ***Moveover, Broussard was a majority owner in a holding company which owned an investment property in Canada. Broussard received income from this Canadian property. This property was partially funded by individuals and/or entities who were contractors and/or venders doing business with Jefferson Parish during the period of time Broussard was the Jefferson Parish President.***

(See Exhibit 2 – Karen Parker plea deal factual basis, emphasis added).

Plaintiffs themselves have admitted that they managed Broussard's Canadian property. In a post from January 16, 2012 on the Trout Point blog, which plaintiffs curiously have since removed from the blog, plaintiffs stated the following:

4

> Broussard loved Nova Scotia, vacationed and brought friends there. Never, however, did Mr. Broussard own any part, or have any management role in Trout point Lodge—he was simply a neighbour and someone who visited once or twice a year. ***The Lodge also managed rentals of his property, and has never denied this fact.***

(See Exhibit 3 – January 16, 2012 Trout Point blog post). The fact that plaintiffs now argue that they have no connection with the Jefferson Parish corruption scandal, despite their own admission that they managed Broussard's Canadian property, is simply nonsensical.

Further, defendant's publication of a letter that was uncovered as part of the lawsuit filed by the plaintiffs against Fox 8 provided additional support for his statements connecting plaintiffs to the Jefferson Parish scandal. The letter, sent to plaintiffs by Broussard's partner Roy D'Aquila, suggested that discussions had taken place between Broussard and the plaintiffs regarding placing Broussard's property on the main insurance policy of Trout Point Lodge. (See Exhibit 4 – May 24, 2010 letter from Roy D'Aquila to plaintiffs). Again, defendant's posting of this letter provided him with additional fodder for his fair commentary on the plaintiffs and their alleged connection with Broussard.

The extent of plaintiffs' actual involvement in the Broussard scandal is unknown. At one end of the spectrum, plaintiffs may have been entirely involved in Broussard's activities; on the other, they may have had no knowledge of the corruption at all. In his coverage of Trout Point, defendant has taken a stance that is somewhere in the middle. Defendant has never stated that Aaron Broussard owned Trout Point Lodge. He made his position clear on his April 2, 2012 post on Slabbed.org, when he stated the following: "I'll add that Slabbed has never asserted that Broussard owns Trout Point Lodge, not that it would surprise me if it turned out that he did, but to this point I've seen no evidence of such . . . ." (See Exhibit 5 – "Gone but not forgotten: Trout Point figure fingered for expensive vacations on public's dime"). Handshoe explicitly stated here that he is not suggesting that Aaron Broussard owned Trout Point Lodge. His statement that

5

he would not be surprised if this was the case is also true, as it reflects his personal reaction to the matter. What is indisputable in this case, however, is that by managing Broussard's property, plaintiffs were involved in his activities, and as managers of the property, they benefited to some extent—whether they were aware of Broussard's wrongdoings or not.

The aforementioned matters are important to plaintiffs' arguments that they proved falsity and actual malice in the Canadian court. In light of all of this support for defendant's statements, it is clear that plaintiffs' assertion that defendant acted with actual malice is flawed. As discussed numerous times in the various filings by both parties in this case, a plaintiff proves actual malice by demonstrating that defendant was aware of the probable falsity of the statements, or he published them with reckless disregard of the truth. If the statements were false, which defendant does not concede, it is clear that based on the legitimate support defendant had in making these statements that they were not made with knowledge of probable falsity or with reckless disregard of the truth. At most, they were made with ill will; however, it is incontestable that under domestic law, this does not rise to the level of actual malice. See Peter Scalamandre & Sons, Inc. v. Kaufman, 113 F.3d 556, 560-61 (5th Cir. 1997) (stating that demonstrating that "the defendant spoke out of dislike, or with ill will towards another," does not prove actual malice); see also Armistead v. Minor, 815 So. 2d 1189, 1196 (Miss 2002) ("While it may be evident that [defendant] does not hold [plaintiff] in high regard, such feelings do not amount to actual malice."); Zerangue, 814 F.2d at 1070 (stating that "actual malice cannot be shown by showing only ill will or negligence, even gross negligence, on the part of the defendant"). Thus, the tone of defendant's statements is irrelevant in making this determination.

As further quoted from Zerangue in plaintiffs' Memorandum, "the Supreme Court has stated in dicta that reckless disregard could be found where, for example, a reporter fabricated a

story out of his imagination, based it on an 'unverified anonymous telephone call,' published 'inherently improbable' statements, or had 'obvious reasons to doubt the veracity of the informant.'" Id.  Comparing these situations to the case at hand, it is clear that defendant did not "fabricate a story out of his imagination," nor did he do anything the likes of basing his statements on an anonymous telephone call, publishing statements that are inherently improbable, or have obvious reasons to doubt the truth of the statements.  Defendant supported the statements on his blog by including links to these reliable and legitimate newspaper articles, documents, and even statements published by the plaintiffs themselves, as demonstrated above.  In light of this, it is clear that a U.S. court would not have found actual malice.

The importance of plaintiffs' failure to prove actual malice is twofold.  First, as public figures, plaintiffs' are required to prove actual malice to prevail in a defamation case.[4]  Plaintiffs are indeed public figures, as they fit into the "vortex public figure" classification that has been embraced by Mississippi law for an individual who "thrusts himself or becomes thrust into the vortex of matter of legitimate public interest." See Ferguson v. Watkins, 448 So. 2d 271, 277 (Miss. 1984).  Through their connections with Aaron Broussard, a public official who is under investigation by authorities for allegedly illicit activities, they have indeed thrust themselves or become thrust into the vortex of a legitimate public interest—Aaron Broussard's alleged kickback scheme.  Plaintiffs have been featured in publications other than Slabbed, including but not limited to *South Coast Today* and *Frank* magazine (See exhibit 9 – *Frank* magazine, p. 18).

---

[4] Defendant also notes that the Nova Scotia court never made a determination as to whether plaintiffs were public or private figures.  Because this issue is so central to United States defamation law, this casts additional doubt on the validity of the Nova Scotia decision in relation to the SPEECH Act's requirement that the foreign judgment be made in a manner that is consistent with how the case would have been adjudicated in a domestic court.

7

Further, they were mentioned in initial coverage of the Aaron Broussard public controversy by the *Times-Picayune* and Fox 8.

Plaintiffs argue in their Response Brief that once the *Times-Picayune* retracted the story, "they were thereby removed from any public controversy by the same media who made the original erroneous identification." They present no legal support for this assertion. In fact, the United States Supreme Court has noted the concept of an "involuntary public figure" as an individual who achieves public figure status "through no purposeful action of his own." Griffin v. Delta Democrat Times Pub. Co., 815 So. 2d 1246, 1253 (Miss. Ct. App. 2002) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 345 (1974)). One court applying this concept has gone so far as to hold that even if an individual who is involuntarily embedded in a public controversy is then cleared of responsibility, he may still be considered a public figure because of the public nature of the controversy. Dameron v. Wash. Magazine, Inc., 779 F.2d 736 (D.C. Cir. 1985). In Dameron, the plaintiff sued a publication that ran a statement implying that as the only airport controller working at the time of a plane crash in which ninety-two people died, he was partially responsible for the accident. Id. at 738. In actuality, while in the days following the accident plaintiff was connected to the controversy due to the nature of his job, his name was eventually cleared. Id. However, the court reasoned that while the plaintiff did not thrust himself into the public eye, he still played a role in the controversy and was relevant to the debate. Id. at 742. The court stated that "persons can become involved in public controversies and affairs without their consent or will. [Plaintiff], who had the misfortune to have a tragedy occur on his watch, is such a person." Id. at 741. Thus, plaintiff was an involuntary public figure who was required to prove actual malice in order to prevail in a defamation action. Id. at 743.

Defendant remains confident in the truth of his reporting. However, even if it were later discovered that plaintiffs in fact were not involved in any of Broussard's alleged wrongdoings, they were at one point involved in the controversy due to the connections between Trout Point Lodge and Broussard's alleged ties to Nova Scotia. Like the plaintiff in Dameron, who was still a public figure after his innocence was discovered and his name cleared, plaintiffs would still be public figures because of their ties, legitimate or not, to the Broussard corruption scandal. The fact that their names were "cleared" upon retraction of the Fox 8 and *Times-Picayune* stories does not mean that they were removed from the controversy.

Second, the plaintiffs' failure to prove actual malice impedes their ability to recover punitive damages in a U.S. court. Under domestic law, a plaintiff may not recover punitive damages in a defamation case unless liability "is based on a showing of knowledge of falsity or reckless disregard for the truth." Gertz, 418 U.S. at 349. While the nature of defendant's comments may have been sufficient for plaintiffs to recover punitive damages in Canada, under Mississippi defamation law, defendant would not have been liable for these damages.

Plaintiffs have failed to show that they satisfied the burdens of proof required by U.S. defamation law in their Canadian lawsuit. While their showings may have been sufficient for a Canadian judge to find that they have proven falsity and actual malice, it is clear that U.S. law affords more free speech protection, and thus, more would have been required of the plaintiffs had this action been litigated in a domestic court. As defendant has demonstrated in each of his filings, plaintiffs therefore did not meet either of the First Amendment Considerations, nor did they meet the jurisdictional showing, of 28 U.S.C. § 4102. Defendant prays this Honorable Court will grant summary judgment in his favor.

Respectfully submitted this 6th day of August, 2012,

**THE TRUITT LAW FIRM**
A Limited Liability Company

S/*Jack E. "Bobby" Truitt*
_____
JACK E. TRUITT, BAR NO. 18476
149 North New Hampshire Street
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com
Counsel for defendant, Douglas Handshoe

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been duly served on all counsel of record by depositing same into the U.S. Mail, postage pre-paid, and/or by hand and/or by facsimile and/or by electronic means on August 6, 2012.

S/*Jack E. "Bobby" Truitt*
_____