In the County of Yarmouth, Nova Scotia, Canada

**Affidavit of Charles L. Leary Sworn on August 21, 2012**

BEFORE ME, personally came and appeared Charles L. Leary, a person of the full age of majority and domiciled in Kemptville, Yarmouth County, Nova Scotia, who, after being duly sworn, did depose and say:

1. I am a Managing Director, chef, and proprietor of Trout Point Lodge, Limited. I have owned and worked in Kemptville, Nova Scotia since 1998. I have personal knowledge of the Lodge's business.

2. I was also a partner in the former Nova Scotia partnership La Ferme d'Acadie and an officer and director of the former Nova Scotia corporation La Ferme d'Acadie, Ltee. I have personal knowledge of those business entities.

3. All of the Slabbed blog posts mentioned below were read by me on or around their original date of publication, and quotations below are taken directly from posts and comments by Sop1_1, who is self-admittedly Doug Handshoe.

4. In the Spring of 1998, after more than 14 months of negotiation and 3 distinct funding applications for new business concepts, my business partners and I reached agreement with the Atlantic Canada Opportunities Agency to fund a dairy processing facility in Yarmouth, Nova Scotia.

5. In May, 1998, Vaughn Perret and I moved to Yarmouth, Nova Scotia, after having made numerous visits to the area.

6. Sometime in 1998, our attorney, Patricia Caldwell, had formed a partnership registered with the Nova Scotia Registry of Joint Stocks consisting solely of Vaughn Perret and I, named La Ferme d'Acadie. The partnership was to act as an initial business entity before the dairy processing facility was built or started to function.

7. We would never have operated a dairy processing facility—which holds substantial potential liability—as a partnership, but only as a corporation. We never intended to actually operate the business as a partnership.

8. We indicated on the final funding application to ACOA in April, 1998 that we intended to

1

incorporate La Ferme d'Acadie, which was a specific question asked by ACOA on the application form.

9. We instructed Ms. Caldwell also in April, 1998 to dissolve the partnership and seek incorporation with Daniel Abel, Charles Leary, and Vaughn Perret as directors and officers.

10. Vaughn Perret and I were always the only two partners in La Ferme d'Acadie while it existed as a partnership. This information was available on public records held by the Nova Scotia Registry of Joint Stocks.

11. ACOA's total awareness of the incorporation & partnership dissolution was an issue in the ACOA litigation.

12. I did not lie to any judge in Nova Scotia about the fact that Vaughn Perret and I were the only partners in the partnership, and it was very clear that incorporation occurred in June, 1998. Dissolution of the partnership was also not a reason for ACOA suing. In a published decision, Justice LeBlanc noted that "The partnership was subsequently dissolved and incorporated by the former partners."

13. An issue in the ACOA proceeding was ACOA's attempt to use a civil procedure rule that allowed a party to get the names and addresses of partners in a Nova Scotia partnership. That Civil Procedure Rule no longer exists as of, I believe, January 1, 2009. The rule said that ACOA could demand the partners' names and addresses as of the date a cause of action involving the partnership accrued. Since the partnership had been dissolved in 1998 with ACOA's knowledge, and since the alleged default occurred in 2001 or 2002, I declined to answer this demand.

14. Doug Handshoe was aware of the Registry of Joint Stocks information on La Ferme d'Acadie and La Ferme d'Acadie, Ltee. when he accused me of perjuring myself about the ownership of La Ferme d'Acadie in a Nova Scotia court. On August 24, 2011 he wrote on Slabbed in a post entitled "The problem with lying is keeping all of them straight. A Jefferson Parish Political Corruption / Trout Point Lodge Scandal Update Part 3":

> I have this bit of research courtesy of several readers but one of our new friends in Nova Scotia sums it up for us:
>
>> I went back to Registry of Joint Stocks Nova Scotia.......I found this:
>>
>> La Ferme D'Acadie (a limited company), was registered two days later, June 25, 1998, again showing all 3 (Abel, Leary and Perret) as partners

2

15. Handshoe was also aware of the published Nova Scotia court decisions, none of which involve allegations of perjury or misleading the court.
16. I have never been accused of perjury by anyone other than Doug Handshoe.
17. Doug Handshoe has no way of know anything regarding the share ownership of La Ferme d'Acadie, Ltee or the inner business workings of that corporation. That corporation has not been in business since 2002, however the company never ceased payments to ACOA.
18. On January 17, 2012, I learned from reading nola.com—the web site of the Times-Picayune—that the New Orleans U.S. Attorney had filed a Factual Basis with the court in relation to a guilty plea from Karen Parker. The story said: "Broussard also received income from a holding company with investment property in Canada that was partially funded by individuals and firms doing business with the parish while Broussard was president, according to the document." The newspaper also published the entire Factual Basis in pdf format.
19. That same day on Slabbed, I read the following headline: "BREAKING: Aaron Broussard Laundered his money through Nova Scotia!!!!! A Trout Point Update"
20. This same headline was republished on www.projectnola.com on the same day.
21. In a post entitled "Slabbed explores former Jefferson Parish President Aaron Broussard's business activities in Nova Scotia Part 2: You own 100% of 2% of nothing" published on January 22, 2012, Handshoe stated:

> this series will illustrate that despite the protestations of Trout Point Lodge proprietors Danny Abel, Charles Leary and Vaughn Perret to the contrary, they are inherently involved in Broussard's <u>alleged use of a Canadian company to launder the proceeds of his illegal activities in Jefferson Parish</u> and in fact they benefited from it. Leary and Perret in particular have repeatedly used archaic Canadian defamation laws coupled with judges possessive of questionable backgrounds to silence journalism in the public interest on their shithouse business dealings and therein lies the appeal of hiding ill-gotten gains in a defamation judicial hellhole for corrupt Louisiana politicians.

22. In a post entitled "The South Coast Today reports on the Fox 8 settlement with the Goatherders wing of Team Abel" dated February 24, 2012, Handshoe quoted from the Trout Point Lodge blog and stated:

> Broussard loved Nova Scotia, vacationed and brought friends there. Never however, did Mr. Broussard own any part, or have any management role in

3

> Trout Point Lodge–he was simply a neighbour and someone who visited once or twice a year. The Lodge also managed rentals of his property, and has never denied this fact. That Aaron Broussard owned a cottage near Trout Point was no secret or mystery–the Times-Picayune newspaper published just this fact in a July, 2001 travel article. Broussard also had friends in the local community. When a privately-owned postage-stamp lot next to his became available sometime around 2007, Broussard bought that also and built a 2nd, smaller cottage there. He called the two cottages "Black Bear" and "Cub."

I am ecstatic to hear that admission, which we broke back in the summer of 2011 when Slabbed solved the mystery on the shores of the Tusket River. What the Goatherders try to minimize is the extent of their involvement with Broussard's property holdings in Nova Scotia, which has now risen to the fore of the federal investigation with Karen Parker Broussard's recent plea deal.

23. On January 10, 2010, I communicated with Peter Kovacs, Managing Editor of the Times-Picayune to correct factual mistakes and misstatements made by the newspaper. I wrote to Kovacs in part: "Trout Point Lodge also manages adjacent vacation properties on private parcels owned by 3rd parties and has the exclusive right to handle any commercial activities, as dictated by restrictive legal covenants." I also made clear in that communication that Aaron Broussard owned private vacation properties off the Trout Point Lodge Road. I wrote: "The Lodge owns land and an 8-room accommodation and restaurant. It also provides property management and rental management services to 3rd parties, including Public Works Investments and others."

24. Aaron Broussard's Nova Scotia partnership was called Public Works Investments.

25. On January 11, 2011, Handshoe published a post entitled "Broussard and Whitmer charged with – surprise – violating state ethics laws." In that post he linked to and quoted from nola.com the web site of the Times-Picayune newspaper. The quotation included the information that the Louisiana Ethics Board had brought 2 charges against Aaron Broussard in December, 2010 to avoid a January, 2011 statute of limitations period. The nola.com article as quoted by Handshoe characterized the charges against Broussard:

4

> The Ethics Board accused him of violating state law when he **accepted** $5,000 for doing "legal work" for Lagniappe Industries in 2009. It also cited him for accepting $4,500 each year from 2007 through 2009 as a holiday gift certificate from his staff.

26. In the post "The problem with lying is keeping all of them straight. A Jefferson Parish Political Corruption / Trout Point Lodge Scandal Update Part 3," August 24, 2011, Handshoe made clear that he had looked up the published judicial decisions regarding the ACOA litigation on the Nova Scotia courts web site. He wrote: "Our first stop is the courts in Nova Scotia and the suit against one of the girls business misadventures there, La Ferme D'Acadie by the Canadian Government through the Atlantic Canada Opportunities Agency." The words "the courts in Nova Scotia" linked to the Nova Scotia court system web site, were decisions are available.

27. There are 3 published decisions with ACOA and me as parties available at that web site: 1 from the Supreme Court and 2 from the Court of Appeal. Handshoe omits information from the final Court of Appeal decision.

28. Attached hereto as Exhibit "A" is true copy of a Notice of Discontinuance in the ACOA litigation. The date ACOA's lawyer signed is May 4, 2010.

29. In the post entitled "Slabbed takes a look at the Trout Point business venture: Let's start at the end and work back," dated April 26, 2011, Handshoe stated:

> because of the government assistance Leary, Abel and Perret received in Canada via the Atlantic Canada Opportunities Agency. That assistance, in the form of a "repayable contribution" is the current subject of litigation in Nova Scotia and one of the major sticking points in discovery was the disclosure of the names of the owners. Let's let the Nova Scotia Courts tell this hard luck story"

30. In the post entitled "The problem with lying is keeping all of them straight. A Jefferson Parish Political Corruption / Trout Point Lodge Scandal Update Part 3," August 24, 2011. Handshoe stated:

> At this point Leary has lost at every point of the proceedings in Nova Scotia. He was compelled to disclose the names of the owners in La Ferme d'Acadie and produce records in the Canadian equivalent of discovery.

31. On August 24, 2011 in the post entitled "The problem with lying is keeping all of them straight. A Jefferson Parish Political Corruption / Trout Point Lodge Scandal Update Part 3" in discussing the ACOA court case Handshoe stated:

5

> So it is clear that just as we saw later with Leary going postal with the Times Picayune the subject of ownership in the various girly business ventures is a touchy subject with Team Trout Point. A step further translating the court record the ACOA is trying to sue Perret and Abel but they are dodging service of process. The dispute was the crash and burn of the Nova Scotia boutique farm and rolling over some of the money into Trout Point. The ACOA wanted their money back because it is clear they feet the girls were less than honest in dealing with them and according to local lore so do the trade venders that originally did business with Team Trout Point.

32. I am very familiar with the claims made by ACOA against me in its law suit. I represented myself in the litigation. Rolling over of federal money from La Ferme d'Acadie to Trout Point Lodge was never an allegation of ACOA or anyone else.

33. In the post entitled "Slabbed explores former Jefferson Parish President Aaron Broussard's business activities in Nova Scotia Part 2: You own 100% of 2% of nothing." January 24, 2012, Handshoe stated:

    > In part 1 of this series <u>I covered the genesis of Trout Point development</u> and the associated fleecing of the ACOA by our three amigos Danny Abel, Vaughn Perret and Charles Leary. The fallout was slow in developing though as certain employees at the ACOA that were involved with the La Farme D'Acadie disaster actually died in the interim and the ACOA was not especially diligent in pursuing repayment of the tax money given to the 3 American partners. When the ACOA filed suit Trout Point did not contest it and a default judgment was entered.

34. I have personal knowledge of the fact that Trout Point Lodge was not a party to the ACOA litigation. The published judicial decisions also make this clear. Trout Point Lodge was never declared in default in this or any other litigation.

35. In the post entitled "Sop gets a cyber first: Behavioral finance/economics intersects with Slabbed. An Aaron Broussard/Trout Point Lodge Update," January 15, 2012, Handshoe writes about Time-Picayune reporter Richard Rainey. As I have previously stated, Rainey was author or co-author of the retracted Times-Picayune articles. Handshoe referred to "Rich Rainey's factual reporting on Trout Point Lodge"

36. In the post entitled "Slabbed takes a look at the Trout Point business venture: Let's start at the end and work back," April 26, 2011, Handshoe again referred to Richard Rainey's article. He

6

stated:

> In researching this story what I have found is a pattern of Leary, Abel and the girls being first class bitches and I think it is safe to assume based upon the retractions they made the Times Picayune and its corporate parent their bitch in this fiasco because Rainey was onto something big, albeit a bit dated in the fleecing of several local individuals that were marketed and sold ownership in the Trout Point by Aaron Broussard, who had close personal and business ties to Abel, Leary and the girls.

37. In that self-same post, Handshoe stated:

> I roll out this series of posts on Aaron Broussard's connections to Trout Point Lodge and its purported owners, Charles Leary, Danny Abel and Vaughn Perret. I say purported because others were sold 2% ownership interests in the Trout Point development as touted by Broussard and those folks are the bagholders in this deal.

38. In the post entitled "Slabbed solves the mystery on the shores of the Tusket River in Nova Scotia as we reveal the Trout Point connection to the Jefferson Parish political Corruption Scandal," September 8, 2011, Handshoe quoted from a "correction" issued by the Times-Picayune on January 12, 2010 and then called the correction a lie. He stated:

> Simple right? Evidently Rich Rainey began researching this matter and he found that the Nova Scotia property known as Trout Point had several local, politically connected owners but that didn't stop Perret from sending his bottom bitch Charles Leary out to mislead and threaten. For that we <u>circle back to my post on the topic from January, 2010 which excerpted one of Rainey's reports</u>:
>
>> A photo caption in some Thursday editions of The Times-Picayune said that former Jefferson Parish President Aaron Broussard owns a stake in a luxury development centered around Trout Point Lodge in Nova Scotia. An accompanying story quoted Bennett Powell, owner of a Metairie insurance claims adjusting firm that does business with Jefferson Parish, as saying that Broussard's property was Trout Point Lodge. Charles Leary, managing director of Trout Point, said Broussard has no "ownership or management involvement with Trout Point Lodge, Limited." Corporate records in Canada do not list Broussard as an officer of Trout Point Lodge Limited.

7

>Broussard, "does not and has never had any ownership or management involvement with Trout Point Lodge, Limited." The message went on to say Broussard owns a "vacation home on the same road."

Those assertions are bald face lies.

39. In his April 26, 2011 and August 24, 2011 posts mentioning me, Handshoe stated that Vaughn Perret and I had no connection to the Jefferson Parish scandal. He stated:
   >This much is true, Trout Point Lodge nor its purported owners are involved in what we call the Jefferson Parish Political Corruption Scandal and the newspaper is right in saying there is no basis to make that implications. April 26, 2011

   >While Rainey focuses his articles on the curious Nova Scotia connection involving Broussard and the complaint to the Louisiana Ethics Commission, Rainey's articles contained some damning evidence of potential wrongdoing involving Leary and Perret in Canada and it had nothing to do with Broussard per se. August 24, 2011

40. Justice Hood specifically referred to the August 24, 2011, publication about "Broussard per se" in her decision.

41. On January 25, 2012 Handshoe published: "I am now able to roll outs parts 3 and 4 of my series on Aaron Broussard's business activities in Nova Scotia including Broussard's use of his straw men at Trout Point Lodge to obtain personal data on those who posted about his dirty deeds here on Slabbed."

42. As stated in my Statement of Claim, on August 17, 2011, Handshoe published a post entitled "Laissez les bons temps rouler! Slabbed travels back in time with the girls and ties a few things together. A Trout Point Lodge / Jefferson Parish Political Corruption Scandal Update Part 2" in which he said: "as I continue to meticulously lay down the trail of scams and political corruption that leads to Nova Scotia and Trout Point Lodge."

43. On August 18, 2011, Handshoe published a pdf document containing my Notice of Action and Statement of Claim against him. In this post he wrote:
   >Click the pic to get the latest screed from the girls while I prepare the next installment connecting Trout Point Lodge to the Jefferson Parish Political Corrutpion Scandal. ~ sop

44. On July 26, 2012, Handshoe published a post that began with the following:
    > First the disclaimer. Attorney Bobby Truitt represents Slabbed in its free speech fight against <u>Aaron Broussard's former business associates at Trout Point Lodge</u>. Second I contacted Mr. Truitt for comment on the following documents, which my Gabby cousin Slabb O'Leak laid on me yesterday and he declined.
    >
    > So folks to understand the significance of these documents and my post title above you have to understand Slabbed's coverage of the political corruption scandal in Jefferson Parish, which began with <u>this</u> post back on January 12, 2010.

45. The words "this post" were hyperlinked to a January 12, 2010 post entitled "About Aaron Broussard purported ownership of Trout Point Lodge."

46. Doug Handshoe has published on Slabbed the reasons he states we sued him.

47. On October 11, 2011, in a post called "Congratulations you found Slabbed. What's next?" he wrote:
    > Along those lines I'd like to point out one of <u>my early bell cow posts on Jefferson Parish Political Corruption included Camp Dresser along with Aaron Broussard's legal sidekick Danny Abel</u> who sometimes also claims to own part <u>Trout Point Lodge</u>. We also more recently saw both Abel and Broussard in connection with <u>coastal shoring</u>. That post was the last straw for Abel, who tried his hand at <u>Libel Tourism</u> by suing us via his straw girl puppets at the Lodge in Nova Scotia.

48. On November 17, 2011, he wrote:
    > Given a bunch of grifting gay men in Jefferson Parish/Nova Scotia tried venue shopping a defamation case against me to a judicial hellhole in Nova Scotia because I called them girls and busted their ass for lying to Canadian courts . . .

49. On January 15, 2012, he wrote: "At this point I'll disclose Leary and Perret evidently went postal when <u>I disclosed that counter letters do not evidence ownership in Nova Scotia</u>."

50. On January 25, 2012, he published the post headline: "Aaron Broussard never had any management involvement with Trout Point Lodge no siree. You say any different and we'll sue your ass in Nova Scotia."

9

51. On January 27, 2012, he published: "We're to the point where Broussard and his henchmen are balls deep in a heap of trouble but they ultimately succeeded in silencing those they dubbed their worst critics, except one person that is. ☺"

52. Attached hereto as Exhibit "B" are true screen shots taken from the comment section of the post "Poor Roy D'Aquila got butterflies on his tummy tum tum when he saw Val Bracy's reports on the Trout Point Development" on Slabbed, with comments from January 26, 2012.

53. Attached hereto as Exhibit "C" are 2 tables I prepared in helping myself analyze Handshoe's publications and their consistency, as well as how what he published compared with sources he relied upon and cited. Most if not all quotations are in this affidavit or in documents filed with the court.

Sworn to and subscribed before me, a Commissioner of Oaths of the Supreme Court of Nova Scotia, this 21st day of August, 2012.

_____
NANCY TYNDALL-BULLERWELL
Commissioner of The Supreme
Court of Nova Scotia

_____
Charles L. Leary

10

Exhibit "A"

**Form 9.02**

2002                                                                                  SK No. 180846

## SUPREME COURT OF NOVA SCOTIA

<u>BETWEEN</u>:

**The Atlantic Canada Opportunities Agency**, an agency established under the Atlantic Canada Opportunities Agency Act pursuant to the Government Organization Act, Atlantic Canada, 1987

> PLAINTIFF
> (Defendant by Counterclaim)

- and –

**La Ferme D'Acadie, Daniel Abel, Charles Leary and Vaughn Perret**

> DEFENDANTS
> (Charles Leary, La Ferme D'Acadie, Plaintiffs by Counterclaim)

## NOTICE OF DISCONTINUANCE

The Plaintiff discontinues this proceeding against the Defendants.

The Defendants La Ferme D'Acadie, Charles Leary and Vaughn Perret discontinue their Counter-claims against the Plaintiff.

No costs to any party will arise as a result of this Notice of Discontinuance.

_____May 4_____, 2010

_____
Randall P. H. Balcome
Solicitor for the Plaintiff and
Defendant by Counter-claim
Print name:

20 12  No. _____
This is Exhibit " A " referred to
in the affidavit of Charles Leary
(sworn/affirmed) before me
on August 21st 20 12

_____
Signature

NANCY TYNDALL-BULLERWELL
Commissioner of The Supreme
Court of Nova Scotia

**sop81 1**

January 27, 2012 at 7:54 am

FYI I can tell you Pres is I received two frantic emails from Tele both of which strongly indicated the person behind those handles was in fear for their life.

This isn't a loss just for Slabbed either. Tele, under different handles has made substantial contributions to YRHT, AZ and The Lens. The connection of the Lens to Fox 8 is especially troubling in light of what we are learning about the doings up north.

And while I agree the myopic focus on internet commenters proves beyond the shadow of a doubt that Theriot, Broussard and the rest are complete cyber morons, it does not change the effect, which is to silence those that helped expose publicly the wrong doing.

We're to the point where Broussard and his henchmen are balls deep in a heap of trouble but they ultimately succeeded in silencing those they dubbed their worst critics, except one person that is. ☺

sop
Reply

Exhibit "3"

No. _____ 20 ___
This is Exhibit " 3 " referred to
in the affidavit of Charles Leary
(sworn/affirmed) before me
on August 21st, 20 12

_Signature_

NANCY TYNDALL-BULLERWELL
Commissioner of The Supreme
Court of Nova Scotia

Their fraudulent actions in Canada cross over into more torts than what AMV has described in her civil rights case against the Parish and that does not count criminal implications. I'll add that Telemachus has sent me email indicating that he/she is in fear for her life as a result of the actions perpetrated by Leary, who I think we've demonstrated is clearly acting as Aaron Broussard's straw man in Canada.

When Charles Leary, while denying Broussard was involved managing the Lodge, began threatening former employee Joyce Case Harlow after she spoke with me, I advised her, both via email and publicly on this blog to contact the FBI. After she called the NOLA office of the FBI I'll add the harassment stopped, except for an occasional defamatory comment such as the one they left about her on the Trout Point Blog recently.

I have yet to meet or even speak with the good guys but given the latest turn of events my advice to Whitmergate, Unslabbed and Telemachus is to go pay the FBI a visit.

Judge Pierre Mulse should be proud he signed off on court orders that had the impact of putting people's lives at risk and impeded a major FBI investigation down here in NOLA. Keep that Mulse surname circled folks.

sop

Reply



**sop81_1**
January 26, 2012 at 11:29 pm

Pardon me for being obtuse, but while I can comprehend, and put my arms around, "curatorships" awarded to Aaron Broussard in Jefferson Parish by upstanding Members of the State Judiciary, like "The Honorable" Glen Ansardi (and others). And while I can understane the Judge's benevolent bestowing of undeserved financial benefits on Mr. Broussard because of illicit relationships between and among Mr. Broussard and the Judge's family, I have some TROUBLE connecting the dots to Nova Scotia. Will someone enlighten me, please. Thank you. Ashton O'Dwyer.

Reply

**Ashton O'Dwyer**
January 26, 2012 at 1:39 pm

Mainly because D'quilla was benefitting from them Ashton. He is also has enough stroke to tell Charles and Vaughn what to do at Broussard's request. The original allegation was Broussard was making Parish venders rent his property at Trout Point. I think D'Aquilla's letter proves not only that Leary and Perret were Aaron Broussard's strawmen but they were also complicit in the alleged criminal activity.

**sop811 1**
January 26, 2012 at 2:02 pm

sop

Reply

Exhibit "C"

| Handshoe's publication | Original Source |
|---|---|
| "BREAKING: Aaron Broussard Laundered his money through Nova Scotia!!!!! A Trout Point Update" January 17, 2012<br><br>"During his time in office, Broussard owned a lodge in Nova Scotia, Canada, which he used to funnel kickbacks from contractors doing business with Jefferson Parish, facts set forth in the Factual basis of an indicted co-defendant. Media reports have revealed that plaintiffs, Charles Leary and Vaughn Perret, co-owned and/or managed this property." Defendant's brief on his Motion for Summary Judgment. | "Broussard was a majority owner in a holding company which owned an investment property in Canada. Broussard received income from this Canadian property. This property was partially funded by individuals and/or entities who were contractors and/or vendors doing business with Jefferson Parish during the period of time Broussard was the Jefferson Parish President." Factual Basis, New Orleans U.S. Attorney, January 17, 2012 |
| "Broussard and Whitmer charged with – surprise – violating state ethics laws" January 11, 2011— linking to and quoting verbatim from the Times-Picayune.<br><br>"I'll again state I have promised anonymity due to the hostile reaction of Aaron and the girls to any line of inquiry into the current State Ethics Board investigation into a pay to play scheme involving the development at Trout Point, large parts of which <u>were owned by Aaron Broussard and certain politically connected parish contractors</u>." January 15, 2012. (affidavit of Charles Leary, paragraph 43; see also transcription of evidentiary hearing) | Louisiana Ethics Board brought 2 charges against Aaron Broussard in December, 2010 to avoid a January, 2011 statute of limitations period: "The Ethics Board accused him of violating state law when he **accepted** $5,000 for doing "legal work" for Lagniappe Industries in 2009. It also cited him for accepting $4,500 each year from 2007 through 2009 as a holiday gift certificate from his staff." Times-Picayune article, January 11, 2011. |
| "because of the government assistance Leary, Abel and Perret received in Canada via the <u>Atlantic Canada Opportunities Agency</u>. That assistance, <u>in the form of a "repayable contribution" is the current subject of litigation in Nova Scotia</u> and one of the major sticking points in discovery was the disclosure of the names of the owners. Let's let the <u>Nova Scotia Courts tell this hard luck story</u>." From: Slabbed takes a look at the Trout Point business venture: Let's start at the end and work back. April 26, 2011<br><br>"At this point Leary has lost at every point of the proceedings in Nova Scotia. He was compelled to disclose the names of the owners in La Ferme d'Acadie and produce records in the Canadian equivalent of discovery." From: The problem with lying is keeping all of them straight. A Jefferson Parish Political Corruption / Trout Point Lodge Scandal Update Part 3. August 24, | --Courts of Nova Scotia: Notice of Discontinuance: "The Plaintiff discontinues this proceeding against the Defendants. . . . The Defendants La Ferme d'Acadie, Charles Leary, and Vaughn Perret discontinue their Counter-claims against the Plaintiff." May 4, 2010.<br><br>--"Despite the stay being denied, the appellants did not provide Mr. Perret's address."<br>--"On April 17, 2009 Justice LeBlanc granted the second order under appeal, the Production Order. He ordered ACOA to produce all documents "relating to any matter in question in the proceeding not already produced in [ACOA's] List of Documents dated May 9, 2008, in [ACOA's] possession, custody or control", including "all further documents...relating to any applications made for funding, to [ACOA], by any of the Defendants from 1997 to the date of this order."<br>-- "In November 2008 ACOA notified the |

| | |
|---|---|
| 2011. | appellants and the judge that virtually all of the documents relating to the appellants' earlier funding applications had been destroyed as part of ACOA's "routine" document destruction policy." -- "it is not necessary to deal with the judge's unfortunate failure to give reasons. In these particular circumstances and, in the interests of judicial efficiency, I am satisfied that it is in the interests of justice that the Disclosure Order be set aside in total to the effect that ACOA cannot rely on it to obtain any information from the appellants and the appellants may proceed to prosecute their crossclaim." |
| "Obviously there is a huge problem here – that of a liar or in this case a perjurer keeping his lies straight." April 26, 2011. | "Dr. Leary's excellent submissions make it clear that the appellants' complaints are hardly frivolous and deserve a hearing." Nova Scotia Court of Appeal, October 21, 2009. |
| "The dispute was the crash and burn of the Nova Scotia boutique farm and rolling over some of the money into Trout Point." August 24, 2011 | In June, 2002 the Atlantic Canada Opportunities Agency ("ACOA") sued La Ferme d'Acadie, Daniel Abel, Dr. Charles Leary and Vaughan Perret. The statement of claim alleges that (1) in June, 1998 ACOA contracted with each defendant that ACOA would advance money, (2) ACOA advanced $126,127, and (3) the defendants breached their contractual obligations to ACOA by altering their business operations, ceasing the operation of La Ferme d'Acadie and providing misleading information to ACOA. The statement of claim says that on September 5, 2001 ACOA notified the defendants that they were in default. ACOA claimed the amount outstanding, quantified as $104,211.12. . . . On November 22, 2002 Dr. Leary filed a defence which denied the claim and said that La Ferme d'Acadie was a dissolved partnership, and counterclaimed that ACOA failed to act in good faith and committed negligent misrepresentation. |
| "plaintiff Leary" lied "to a judge in the ACOA case when he stated that he and Mr. Perret were the sole owners of La Ferme d'Acadie." Supplemental Reply Memorandum of Defendant, July 7, 2012. | No Nova Scotia Court or anyone else has ever accused Charles Leary of perjury, except Defendant. The Court of Appeal said: Dr. Leary's signed memorandum of December 19, 2008, filed with the court and served on ACOA for this application says: 5. On April 27, 1998 the Appellant and Vaughan Perret-the sole members of the partnership-gave instructions and |

| | |
|---|---|
| | notice to the firm's attorney, Patricia Caldwell, Q.C. to dissolve the partnership in question. <br><br> ... <br><br> 32. The Respondent would like have [sic] it that Mr. Abel was a partner, and seeks his address while Mr. Abel never was a partner. <br><br> [18] At the hearing of this application, Dr. Leary said that, if he were to comply with the disclosure order under appeal, he would repeat the information in these paragraphs - i.e. the only partners were Dr. Leary and Mr. Perret, not Mr. Abel. ACOA already has this information in Dr. Leary's memorandum of December 19, 2008. <br> La Ferme D'Acadie v. Atlantic Canada Opportunities Agency, 2009 NSCA 5 |
| "When the ACOA filed suit Trout Point did not contest it and a default judgment was entered." January 24, 2012 | "I note that Mr. Leary acts both for himself and for the partnership on these applications; when Mr. Leary is referred to, the reference includes the partnership, La Ferme D'Acadie, where appropriate. <br><br> ... Mr. Leary filed a defence and counterclaim, in reply to which the plaintiff served a demand for particulars. This demand went unanswered. The partnership [La Ferme d'Acadie] did not file a defence and the plaintiff obtained default judgment in November 2003. ... Mr. Leary and his former solicitor were unaware of the default judgment and the issue was never discussed or raised by any party until more than one year later. The plaintiff agreed to set aside the default judgment in March 2005." <br> Atlantic Canada Opportunity Agency v. La Ferme D'Acadie, 2008 NSSC 334 <br><br> Trout Point Lodge was simply not a party in the ACOA litigation. |
| "I'll add Slabbed has never asserted that Broussard owns Trout Point Lodge, not that it would surprise me if it turned out that he did, but | ""I roll out this series of posts on Aaron Broussard's connections to Trout Point Lodge and its purported owners, Charles Leary, Danny Abel |

| | |
|---|---|
| to this point I've seen no evidence of such but I doubt Leary nor Perret had a problem with that part." April 2, 2012 | and Vaughn Perret. I say purported because others were sold 2% ownership interests in the Trout Point development as touted by Broussard and those folks are the bagholders in this deal." April 26, 2011 |
| | D'quilla [sic] was benefitting from them Ashton. <u>He is also has enough stroke to tell Charles and Vaughn what to do at Broussard's request.</u> The original allegation was Broussard was making Parish venders rent his property at Trout Point. I think <u>D'Aquilla's letter proves not only that Leary and Perret were Aaron Broussard's strawmen but they were also complicit in the alleged criminal activity.</u> January 26, 2012 |
| This much is true, Trout Point Lodge nor its purported owners are involved in what we call the Jefferson Parish Political Corruption Scandal and the newspaper is right in saying there is no basis to make that implications. April 26, 2011 | "They have provided no support that would pass muster in a domestic court to back their assertions that defendant mistakenly tied them to the Jefferson Parish scandal" Defendant's Supplemental Reply Memorandum |

_May 14_, 2010

Charles Leary
Representative for the Defendants
and Plaintiffs by Counter-claim,
La Ferme D'Acadie and Charles Leary
**Print name: Charles Leary**

_May 14_, 2010

Vaughn Perret representing himself
As Defendant and Plaintiff by Counterclaim
**Print name: Vaughn Perret**