IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TROUT POINT LODGE, LIMITED, A Nova Scotia
Limited Company; VAUGHN PERRET and
CHARLES LEARY                                                                                   PLAINTIFFS

VERSUS                                          CIVIL ACTION NO:  1:12CV00090 LG-JMR

DOUG K. HANDSHOE                                                                            DEFENDANT

RESPONSE OF TROUT POINT LODGE LIMITED, VAUGHAN
PERRET AND CHARLES LEARY TO DEFENDANT DOUG K.
HANDSHOE'S MOTION TO TAX ATTORNEYS FEES

INTRODUCTION.

On December 19, 2012 the Court entered summary judgment in favor of Mr. Handshoe [Docket No. 35], and on September 10, 2013 he filed his Motion to Tax Attorney's Fees [Docket No. 50].[1]

The SPEECH Act creates a possibility of an award of attorney's fees to the United States citizen who successfully resists the enforcement of a defamation judgment from another country, such as the Nova Scotia judgment here; however, the award of attorney's fees is not automatic. The SPEECH Act concerning the award of attorney's fees provides:

> The domestic court shall, absent **exceptional circumstances**, allow the party opposing recognition or enforcement of the judgment a **reasonable** attorney's fee. (Emphasis added.)

28 U.S.C § 4105.

---

[1] On December 27, 2012 Mr. Handshoe field his Motion to Require Cost Bond for Appeal Filed by Plaintiffs [Docket No. 38] which the Court denied on February 25, 2013 [Docket No. 47].

{GP023764.1}                                              1

**RULE 54.**

Mr. Handshoe had fourteen (14) days from the date of the summary judgment's entry on December 19, 2012 [Docket No. 36] to move for attorney's fees, failing in which his claim was time barred. Federal Rule of Civil Procedure 54(d)(2)(B)(i). A motion for attorney's fees "must be filed within fourteen days after entry of judgment. …." *United Industries, Inc. v. Simon-Hartley, Ltd.,* 91 F. 3d 762, 766 (5th Cir. 1996). Mr. Handshoe did not file the motion until September 10, 2013 [Docket No. 50].

The Rule 54 requirement to move for attorney's fees within fourteen days of judgment applies both the application for attorney's fees at the district court level and for attorney's fees to be incurred on appeal. Because Plaintiffs made their request for appellate fees far beyond the fourteen-day deadline provided by Rule 54(d), Plaintiffs' request relating to appellate fees is also untimely and should be denied. *See, e.g., Texas Soil Recycling, Inc. v. Intercargo Ins. Co.*, 73 Fed. Appx. 78, 2003 WL 21756344, at *2 (5th Cir. 2003) (explaining request for appellate fees was untimely because, *inter alia*, "[n]o prospective request for such fees was included in Intercargo's initial fee motions in the district court"); *South Tex. Elec. Coop. v. Dresser-Rand Co.*, No. V-06-28, 2010 WL 1855959, at *2 (S.D. Tex. May 5, 2010) ("[T]he fact that a motion for appellate fees attorneys' fees is not ripe when it must be raised under Rule 54 does not excuse a party from failing to comply with required procedures under the Federal Rules."). The *South Texas Electric Cooperative v. Dresser-Rand Co.,* Slip Opinion V-06-28 (D.C. Texas May 5, 2010), a copy of which is attached as Exhibit "A", ultimately found: "The Could holds that requests for appellate attorneys fees made outside the 14-day window provided for in Rule 54(d) by a prevailing party in the district court, who also prevails on appeal are untimely." *Id.*

Mr. Handshoe is therefore precluded from recovering attorney's fees generated at both the district court and on appeal since he did not file his motion until September 10, 2013.

Mr. Handshoe quotes Rule 54 in his brief but then ignores the clear requirement that he had to move for attorney's fees within fourteen days of entry of summary judgment in his favor. Instead, he merely claims without citing any authorities that the SPEECH Act entitles him to attorney's fees. He cites no authority excusing non-compliance with Rule 54 even though the SPEECH Act *does* allow recovery of attorney's fees in the proper case.

The SPEECH Act does not allow recovery of attorney's fees if, as Trout Point, Leary and Perret say here, the case involves "exceptional circumstances". While the district court entered summary judgment in favor of Mr. Handshoe, in so doing it recognized the injury he inflicted upon Trout Point, Leary and Perret.

- "Handshoe, apparently in reaction to his blog being taken offline, then began an internet campaign to damage Perret and Leary." Summary Judgment Order, pp. 3-4 [Docket No. 35].

- "Handshoe has published numerous entries on "Slabbed" about Plaintiffs, many of which may be characterized as derogatory, mean spirited, sexist and homophobic." Summary Judgment Order, p. 4 [Docket No. 35].

- ".... Handshoe has made a number of off-color sexual remarks about Vaughan and Perret, and has published several photo-shopped images of Vaughan and Perret in an apparent attempt to harass or embarrass them." Summary Judgment Order, p. 4, n. 5 [Docket No. 35].

- "Some of these statements seem to be based in fact; others appears to be conspiracy theories that may or may not be substantiated." Summary Judgment Order, p. 15 [Docket No. 35].

- "While many may find Handshoe's publications may be characterized as distasteful or offensive, this court cannot enforce an order by a foreign court that amounts to a prior, and essentially restraint on his speech. Summary Judgment Order, p. 17 [Docket No. 35].

Likewise, in affirming the district court's entry of summary judgment for Mr. Handshoe, the Fifth Circuit found some of Handshoe's publications as grotesque or offensive. Fifth Circuit Panel Opinion, p. 19. In oral argument Judge Walker Elrod referred to some of Handshoe's publications as about the Plaintiffs as "reprehensible homophobic comments" cf. http://www.ca5.uscourts.gov/OralArgRecordings/13/13-60002_8-06-2013.wma.

Indeed, after reviewing the record *de novo*, the Court of Appeal affirmed the district court's fact finding at page 3 of its Opinion:

> The district court determined that Handshoe, "apparently in reaction to his blog being taken offline," found another web host for his site and "began an internet campaign to damage Perret and Leary." Specifically, Handshoe posted several updates about Trout Point, Perret, and Leary, which the district court noted "can be characterized as derogatory, mean spirited, sexist, and homophobic."

While this Court and the Fifth Circuit have found Trout Point, Leary and Perret did not comply with either of the two prongs of the SPEECH Act and are therefore unable to enforce their Canadian judgment in the United States, both courts found at least some of the Handshoe publications giving rise to the Canadian defamation judgment to be extremely offensive and intentionally so, which should be considered as tantamount to being an exceptional circumstance.

Both the district court and the Court of Appeal found that this was a case of first impression, i.e., an exceptional circumstance.

In notes on the legislation, Congress seemed to indicate that it did not anticipate the SPEECH Act would ever apply to a case of purely private figure libel, not involving matters of public concern or public officials or figures. Handshoe never proved there was actually a matter of public concern involved or that the Plaintiffs were "vortex public figures." The presumption that this was a case of private figure libel and that the SPEECH Act was invoked by Mr. Handshoe therefore makes this case exceptional.

The personal plaintiffs are U.S. Citizens who sued in the jurisdiction of their permanent domicile; they were not the "libel tourists" anticipated by the Act, another exceptional circumstance.

The Court of Appeals noted that Trout Point did plead the falsity of Handshoe's publications, however not with the precision required in Mississippi, (cf. Fifth Circuit Court of Appeals Opinion, fn. 4 and 19). The Court also accepted the Plaintiffs' argument that it is not the general law of the foreign jurisdiction, but rather the law as applied "in that case" that must be analyzed under the SPEECH Act. s*upra*, cf. Fn 9. This was a rejection of Handshoe's contrary argument.

Mr. Handshoe made legal arguments at the district court level in his motion for summary judgment on which he did not prevail. These included attempting to add Slabbed New Media, LLC as a defendant, arguing against injunctive relief that the Plaintiffs never sought to have enforced in the United States, arguing about "fighting words" under Mississippi law, arguing that Mr. Handshoe had protection under the Communications Decency Act, and arguing that Handshoe should be treated as a news medium.

Mr. Handshoe also failed to plead facts in his Notice of Removal sufficient to establish the diversity required by 28 U.S.C. section 1441 or the minimum diversity required by the SPEECH Act, something particularly notable since both Perret and Leary are U.S. Citizens domiciled in Canada and without a domicile in a State.

In addition to filing his motion for over eight months late, in this case of first impression under the SPEECH Act, Trout Point, Leary and Perret request the Court to consider these facts as exceptional.

### FAILURE TO PROVE REASONABLENESS OF ATTORNEY'S FEES.

The burden is on Mr. Handshoe's attorney to prove that the number of hours and the hourly rate for the compensation requested is reasonable. *Riley v. City of Jackson,* 99 F. 3d 757, 760 (5th Cir. 1996).

*Louisiana Power & Light Co. v. Kellstrom*, 50 F. 3d 319, 325 (5th Cir. 1995) held:

> …. the documentation must be sufficient for the court to verify that the applicant has met its burden. *Id.* "In determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Id.*; *see also Hensley,* 461 U.S. at 433, 103 S. Ct. at 1939 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."). Thus a district court may reduce the number of hours awarded if the documentation is *vague* or *incomplete. See Alberti,* 896 F. 2d at 937 (refusing to accept incomplete documentation "at face value"); *Leroy v. City of Houston (Leroy I),* 831 F. 2d 576, 585-86 (5th Cir. 1987) (finding clear error and abuse of discretion when district court accept "faulty records" without making reduction); *cf. Hensely,* 461 U.S. at 433, 103 S. Cr. at 1939 (counseling that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly").

Moreover, in determining the reasonableness of the requested attorney's fees, the court employs the "lodestar" method. *Nobach v. Woodland Village Nursing Home Center, Inc.,* 2013 WL 2145728 (S.D. Miss.) citing with approval *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983). *Nobach* held:

> …. In determining whether a fee award is reasonable, courts employ the "lodestar" method, which is a two step procedure delineated by the United States Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983). The lodestar is presumptively reasonable ….
>
> The first step of this method requires the Court to calculate the "lodestar" which is equal to the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate for the participating lawyers. ….
>
> …. The Supreme Court has explained that:
>
>> [c]ases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.
>>
>> *Id.,* at 434.
>
> Once the lodestar figure is determined, the Court can accept it or adjust it upwards or downwards based upon the twelve factors announced in *Johnson v. Georgia Highway Express, Inc.,* 488 F. 2d 714, 717-19 (5th Cir. 1974). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley,* 461 U.S. at 430 n. 3 (1983)(citing *Johnson,* 488 F. 2d at 717-19). ….

> Here, Plaintiff bears the burden of demonstrating the reasonableness of the amount of her attorneys' fees, including any adjustments or enhancements. *Blum v. Stenson,* 465 U.S. 886, 901-02 (1984). To obtain an enhancement, Plaintiff must produce "specific evidence" which supports the award. *Perdue,* 130 S.Ct. 1673. "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan v. Delta Concrete Prods. Co.,* 448 F. 3d 795, 800 (5th Circ. 2006). ….
>
> "Reasonable hourly rates are determined by looking to the prevailing market rates in the relevant legal community." …. The relevant legal community is the community in which the district court sits. …. The burden of demonstrating the hourly rate lies with the party seeking attorneys' fees. …. "Generally the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." [2] ….

"Reasonable hourly rates are determined by looking to the prevailing market rates in the relevant legal community". *Id.*

"The relevant legal community is the community in which the district court sits." *Id.*

"The burden of demonstrating the hourly rate lies with the party seeking attorneys' fees. *Id.*

"Generally the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Id.*

### MR. TRUITT'S BILLING INCLUDES TIME FOR UNNECESSARY WORK. HIS BILLING IS INCOMPLETE AND INACCURATE.

There are obvious errors in the dates on which certain events occurred that cast doubt on whether the billing represents data taken from contemporaneous time records. There is also the fact that Mr. Handshoe has presented one single invoice dated September 10, 2013, covering the

---

[2] Trout Point, Leary and Perret concede affidavits are recommended and not required, but Mr. Handshoe made no attempt to prove any of the *Johnson* factors other than to submit a billing.

entire period from March, 2012 to nearly the present day. There are no copies of monthly billing statements, for example.

In his motion for an appeal bond, counsel for Mr. Handshoe unequivocally represented to the Court that as of the end of the district court proceeding, Handshoe had incurred $50,000 in attorney's fees. Upon examining the September 10, 2013, billing, however, the fees accrued to December 19, 2012, were about $39,050.00. This is a substantial difference, and the disparity between current representations and those made in December, 2012, are significant and unexplained.

As stated, the Court entered summary judgment for Mr. Handshoe on December 19, 2012, and yet Mr. Truitt has billed on page 8 of the invoice for reviewing and analyzing the Court's judgment on December 18, 2012, one day too early. Mr. Truitt also bills for sending correspondence to his client about the decision and for reviewing correspondence received from his client all on the same day, December 18, 2012.

On page 1 of the invoice, Mr. Truitt starts billing on March 2, 2012: "initial meeting to discuss case." He then bills on March 8 for reviewing "various pleadings filed" and communication with his client about "the case." Yet the Defendant's Notice of Removal, which bears Mr. Truitt's name alongside that of Handshoe's Mississippi counsel, states that Handshoe was served with notice of the enrollment of the Plaintiffs' foreign money judgment on March 9, 2013, and that the enrollment itself only took place on March 8, 2013.

Mr. Truitt cannot bill for time spent on Handshoe's *pro se* declaratory judgment action, which was dismissed by consent.

On April 6, 2012, Mr. Truitt bills for researching "consolidation of both Federal Court actions."

On April 18, 2012, Mr. Truitt bills for travel to New Orleans. Neither Mr. Truitt nor his client reside in New Orleans. Plaintiffs should not bear responsibility for Handshoe's choice of out-of-state counsel or for a trip to New Orleans.

On May 22, 2012 Truitt bills for research on "Mississippi defamation law." The Plaintiffs should not bear the burden for Mr. Truitt's unfamiliarity with Mississippi law, particularly as Handshoe had other Mississippi counsel enrolled.

On May 23, 2012 Mr. Truitt bills for "review of the Slabbed blog." The Plaintiffs should not bear this cost.

Mr. Truitt's May 24, 2012 billing of 6 hours for research including "burden of proof in a defamation case" appears unreasonable, particularly, again, if it stems from his unfamiliarity with Mississippi law.

On May 25, 2012 Mr. Truitt bills for research into legal issues never raised by the Plaintiffs including injunctive relief and "prior restraint." Plaintiffs never sought to enforce their Nova Scotia injunction or to give effect to any prior restraint.

On May 29, 2012 Mr. Truitt likewise bills for research into "fighting words," something never at issue in this case.

On June 28, 2012, Mr. Truitt bills for communicating with the Clerk of Court about "error messages" and proper filing procedure.

On August 2, 2012, Mr. Truitt again bills for meeting with his client in New Orleans, including travel time.

In November, 2012, Mr. Truitt bills extensively for the court-mandated settlement conference, in which the Plaintiffs made a good faith settlement offer. Handshoe broke the confidentiality of the settlement conference by publishing about it on Slabbed.

On November 5, 2012, Mr. Truitt bills for drafting an offer of amicable settlement. counsel cannot recall such an offer.

On December 3, 2012, Mr. Truitt bills for consulting with his client about "new lawsuit filed." This is irrelevant to the instant proceeding.

On December 27, 2012, and the days following, as well as on January 25, 2013, Mr. Truitt bills for time spent working on applying for an appeal bond. Defendant's motion for an appeal bond was denied, and Plaintiffs should not have to pay for his work on this issue.

On February 13, 2013, Mr. Truitt bills for communicating in house about, and researching the Federal Rules of Appellate Procedure.

On February 25 and March 22, 2013, Mr. Truitt again bills for researching procedural issues.

Finally, Mr. Truitt bills, in general and on numerous occasions, for updating his client on the status of the case. While it may be reasonable to bill for meeting with his client to learn relevant information or discuss strategy, billing for mere status updates or to communicate the existence of court orders or decisions is not reasonable.

## CONCLUSION

Trout Point, Leary and Perret request the Court to deny Plaintiff's Motion for Attorney's Fees since it is untimely filed pursuant to Rule 54, the billing is unproved and/or undocumented and in large degree unreasonable, and if the Court considers the facts of this case exceptional, the SPEECH Act disallows the fees.

Respectfully submitted, this the 25th day of September, 2013.

                Trout Point Lodge, Limited, Vaughan Perret and Charles Leary

                By:   s/ Henry Laird
                       Henry Laird, Mississippi Bar No. 1774

## CERTIFICATE OF SERVICE

I, Henry Laird, do hereby certify that I have sent a true and correct copy of the foregoing Response to Tax Attorney's Fees by using the ECF system to the following:

G. Gerald Cruthird, Esquire
Post Office Box 1050
Picayune, Mississippi 39466
Email: ggeraldc@bellsouth.net

Jack E. Truitt, Esquire
The Truitt Law Firm, LLC
149 North New Hampshire Street
Covington, LA 70433
Email: mail@truittlaw.com

This the 25th day of September, 2013.

s/ Henry Laird
Henry Laird

Henry Laird (MSB No. 1774)
Email: hlaird@joneswalker.com
JONES WALKER LLP
2510 14th Street, Suite 1125 (39501)
Post Office Drawer 160
Gulfport, MS 39502
Telephone: (228) 864-3094
Facsimile: (228) 864-0516