# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### NO: 13-60002

TROUT POINT LODGE, LIMITED, A Nova
Scotia Limited Company; VAUGHN PERRET
and CHARLES LEARY                                    **APPELLANTS**

**VERSUS**

**DOUG K. HANDSHOE**                                **APPELLEE**

---

## FEDERAL RULE OF APPELLATE PROCEDURE 10(e)(3)
## MOTION OF APPELLANTS, TROUT POINT LODGE, LIMITED, A
## NOVA SCOTIA LIMITED COMPANY, VAUGHN PERRET, AND
## CHARLES LEARY, TO MODIFY THE RECORD

---

COME NOW Appellants, Trout Point Lodge, Limited, a Nova Scotia Limited Liability Company, Vaughn Perret and Charles Leary ("Trout Point, Perret and Leary"), and file this their Motion to Modify the Record pursuant to Federal Rule of Appellate Procedure 10(e)(3) and in support would show that on April 8, 2013 the United States District Court for the Southern District of Mississippi Southern Division from which this appeal was taken filed an April 4, 2013 letter from Daniel G. Abel, Esquire to Chief District Judge Louis Guirola, Jr. in which

Mr. Abel says there had been a fraud perpetuated upon the district court. A copy of the letter is attached as Exhibit "A".

Trout Point, Perret, and Leary cannot and do not vouch for the accuracy or inaccuracy of Mr. Abel's fraud charge, however since the charge is so serious, they believe the record on this appeal should be expanded to include Mr. Abel's letter.

The letter claims that the blog known as "Slabbed" operated by Appellee, Doug K. Handshoe" incorrectly reported on the internet that the plaintiffs in the case of *Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC v. Frederick r. Heebe, Albert J. Ward, Jr., River Birch Incorporated and Hwy 90, LLC*, Civil Action No: 2:12cv2596 NJB-KWR (E.D. La.) ("*Concrete Busters*")[1] alleged Mr. Abel and Trout Point were involved in a fraudulent scheme with former Jefferson Parish, Louisiana, President, Aaron Broussard. In his letter to District Judge Louis Guirola, Mr. Abel says '"Concrete Busters" appears to have had some influence on your opinion as language from the Amended Complaint pleading and reference to it appears in your judgment and

---

[1] See the March 29, 2013 letter from Mr. Gelé (Exhibit "A" to this Motion). He tells the district court that any references to Trout Point, Perret, and Leary will be dismissed. Also see the April 4, 2013 letter from Mr. Abel (Exhibit "A" to this Motion) where he tells the district court that Trout Point, Perret, and Leary "were never parties or intended to be parties... and any listing of them as parties on the docket of the United States District Court for the Eastern District of Louisiana was erroneous." "In an even more strange occurrence, the docket of the EDLA [Eastern District of Louisiana] was amended to falsely list Aaron Broussard, as well as Trout Point.... as defendant parties to that litigation, which was never the case. The docket has, subsequent to your judgment, been corrected."

{GP013660.1}

2

certain of the conclusions in your order & reasons appear to have been arrived at from (false) facts gleaned there." (Exhibit "A".)

Mr. Abel also claims that "Doug Handshoe has repeatedly admitted that he tracks very precisely the IP addresses and attendant identities of those perusing Slabbed. As your Order & Reasons make clear that the district court looked at Slabbed after September 1, 2012, I believe it is a reasonable inference that Handshoe may have known the Court was looking at his blog." (Exhibit "A".)

Mr. Abel's letter attaches a March 29, 2013 letter from Stephen M. Gelé, Esquire, the attorney for the plaintiff in *Concrete Busters*. Mr. Gelé says that any implication that Trout Point was involved in "criminal activity or racketeering, or that their principals intended to conceal criminal acts, is and was erroneous." In other words, the attorney for the plaintiff in *Concrete Busters* retract the *Concrete Busters* allegation that Trout Point was involved with Aaron Broussard in some sort of criminal enterprise, and places the blame for such allegations on Appellee Handshoe.

While it is true that the Mississippi district court order and opinion (Exhibit "B") granting the summary judgment in favor of Appellee Handshoe referred to the *Concrete Busters* litigation and that Trout Point and Broussard were mentioned in that litigation, Trout Point, Perret, and Leary cannot know if the district court based its ruling in favor of Mr. Handshoe on the *Concrete Busters* false allegations

{GP013660.1}

3

concerning Trout Point and Aaron Broussard.[2]  The  district court did not explain why it referenced alleged facts outside of the record the parties were briefing on cross motions for summary judgment.  As Trout Point, Perret, and Leary have argued in their principal brief and reply brief, the district court's opinion appears to them to be completely grounded upon the district court's erroneous finding that Trout Point, Perret, and Leary failed to prove falsity in their Nova Scotia defamation action.  In fact, as they have already briefed, Trout Point, Perret, and Leary alleged and proved multiple instances of falsity in the Nova Scotia proceeding.  Likewise, the Nova Scotia Court found multiple instances of falsity even though not required to do so since it proceeded to a decision against Mr. Handshoe in a default judgment proceeding.  However, to the extent that Trout Point, Perret, and Leary are mistaken about the district court's references to the *Concrete Busters* litigation and Mr. Abel being a former law partner of Aaron Broussard being irrelevant to the district court's decision, and the Appellate Court finds otherwise that the district court *did* so rely, Trout Point, Perret, and Leary request that the record on appeal be modified to include Mr. Abel's April 4, 2013 letter which includes the March 29, 2013 letter from Mr. Gelé so that the record

---

[2] The district court erroneously stated that Broussard was a defendant in the *Concrete Busters* litigation.  Trout Point, Perret, and Leary believe the district court opinion's now allegedly erroneous references to Aaron Broussard and Mr. Abel once being law partners and Broussard being a defendant in the *Concrete Busters* litigation are irrelevant to the district court's entry of summary judgment.  (Order Denying Plaintiffs' Motion for Summary Judgment and Granting Defendant's Motion for Summary Judgment, R.E. 3, USCA 1548 Note 15.)

{GP013660.1}

reflects the district court relied on alleged facts: (a) which were false; and (b) which were not in the record for Trout Point, Perret, and Leary to address and deny in their briefing before the district court.

Neither the now retracted *Concrete Busters* untrue allegation that Trout Point, Perret and Leary were involved in a criminal enterprise with Aaron Broussard nor the untrue allegation that Danny Abel, Esquire and Aaron Broussard were law partners were in the record before the district court as it decided to enter summary judgment in favor of Mr. Handshoe and against Trout Point, Perret, and Leary. After the district court entered summary judgment in favor of Mr. Handshoe on December 19, 2012 [District Court Docket No. 35], and after Trout Point, Perret, and Leary noticed their appeal to this Court on December 26, 2012 [District Court Docket No. 35], Trout Point, Perret, and Leary replied to Handshoe's Motion to Require Cost Bond for Appeal [District Court Docket No: 38] and told the district court both those allegations in the opinion supporting Handshoe's summary judgment were false. [Response of Trout Point, Perret and Vaughn's to Motion to Require Cost Bond for Appeal Filed by Plaintiff, District Court Docket No: 43.] These points are therefore not in the record on this appeal.

Accordingly, Trout Point, Perret, and Leary move the Court to modify the record on appeal to include the two letters attached to this motion as Exhibit "A" in the event the Court on appeal decides it should analyze the district court's entry of

{GP013660.1}

5

summary judgment in light of Mr. Abel's claims the district court was improperly

influenced.

Respectfully submitted, this the 24th day of April, 2013.

Trout Point Lodge, Limited, Vaughn Perret
and Charles Leary

By:    s/ Henry Laird
       Henry Laird,
       Mississippi Bar No. 1774

Henry Laird (MSB No. 1774)
Email: hlaird@joneswalker.com
JONES WALKER
2510 14th Street, Suite 1125 (39501)
Post Office Drawer 160
Gulfport, MS 39502
Telephone: (228) 864-3094
Facsimile: (228) 864-0516

**5th Cir. R. 27.4 Certificate**

I hereby certify that I have contacted Jack E. Truitt, counsel for Appellee,

Doug K. Handshoe, who advises he opposes this Federal Rule of Appellate

Procedure 10(e)(3) Motion to Modify the Record.

This the 24th day of April, 2013.

s/ Henry Laird
Henry Laird

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion to Modify the Record has been filed in the office of the Clerk for the United States Court of Appeals for the Fifth Circuit via the court's CM/ECF filing system which sent notification of same to the following:

<u>Counsel for Appellee</u>

G. Gerald Cruthird, Esquire
Post Office Box 1050
Picayune, Mississippi  39466
Email:  ggeraldc@bellsouth.net

Jack E. Truitt, Esquire
The Truitt Law Firm, LLC
149 North New Hampshire Street
Covington, LA  70433
Email:  mail@truittlaw.com

This the 24th day of April, 2013.

s/  Henry Laird
Henry Laird

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 9 of 35
Case: 13-60002     Document: 00512219941   Page: 1     Date Filed: 04/24/2013
Case 1:12-cv-00090-LG-JMR   Document 48   Filed 04/08/13   Page 1 of 5

Daniel G. Abel
2421 Clearview Parkway
Legal Department - Suite 106
Metairie, Louisiana 70001
504.284.8521/888.577.8815 [F]
Email: danielpatrickegan@gmail.com

4 April 2013

Chief District Judge Louis Guirola, Jr.
United States District Court
Southern District of Mississippi - Gulfport
Dan M. Russell, Jr., United States Courthouse
2012 15th Street, Suite 403
Gulfport, MS 39501

Re: *Trout Point Lodge et. al. v. Doug K. Handshoe* /Case 1:12-cv- 00090-LG-JMR [12/19/12]
    Fabrication of Evidence Used in Proceeding Now Publicly Retracted by Parties

Dear Judge Guirola:

I am an attorney licensed to practice before the Federal Courts and the State Courts of Louisiana. In
the interests of full disclosure, I currently have pending a defamation lawsuit in the United States
District Court for the Eastern District of Louisiana. The defendants are Doug Handshoe and Slabbed
contributor Anne-Marie Vandenweghe, whose attorney is Jack "Bobby" Truitt.

I am writing to report what I believe to be fraud imposed upon this Court in the above-referenced
matter in your Court. Although Douglas Handshoe and his attorney Truitt have made earlier false
statements about me personally to your Court, this matter is more serious as it involves the
fabrication of a state court pleading (subsequently removed to federal court) created and filed solely
for the purpose of influencing your opinion in this case. Concrete Busters of Louisiana, Inc. and
Waste Remediation of Plaquemines, LLC v. Frederick R. Heebe, et al., No. 2:12cv2596-NJB-KWR
(E.D. La.) was amended [Amend Complaint] at the request of these defendants and counsel for the
sole purpose providing your Court with what appears to be more allegations of fact probative of the
defamatory claims. The judicial machinery itself may have been tainted, and this situation implicates
Federal Rule of Civil Procedure 60(d)(3).

"Concrete Busters" appears to have had some influence on your opinion as language from the
Amended Complaint pleading and reference to it appears in your judgment and certain of the
conclusions in your order & reasons appear to have been arrived at from (false) facts gleaned there.
Please note that the attorneys who filed the amended complaint have now admitted that they did no
independent research and only came into possession of those facts having been given them by
slabbed.org..  As Concrete Busters attorneys now admit that they had no personal contact with
Handshoe, the fabricated facts had to be provided by their attorney Bobby Truitt with whom they did
have contact].

Page 1 of 3

**EXHIBIT**

"A"

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 10 of 35
Case: 13-60002     Document: 00512219941     Page: 2     Date Filed: 04/24/2013
Case 1:12-cv-00090-LG-JMR   Document 48   Filed 04/08/13   Page 2 of 5

Doug Handshoe has repeatedly admitted that he tracks very precisely the IP addresses and attendant identities of those perusing Slabbed. As your Order & Reasons make clear that the district court looked at Slabbed after September 1, 2012, I believe it is a reasonable inference that Handshoe may have known the Court was looking at his blog.

Now the persons and attorneys who prepared and filed the false pleading in the Louisiana courts have retracted those pleadings and have also stated that all information from those pleadings came from Slabbed.org.[See Exhibit A - Letter Retracting All Allegations in Amended Complaint].

As those attorneys only had contact with attorney Bobby Truitt, he appears to be the person behind this fabrication of the Concrete Busters' Amended Complaint for use in your Court. Mr. Truitt's name came up with no prompting from me in my conversations with those attorneys. (In addition, remarkably, the Concrete Buster's suit re-alleges dismissed claims filed by Truitt in Anne-Marie Vandenweghe's federal district lawsuit against Jefferson Parish).

I have attached that retraction which contains very particularly stated facts and admissions. Since Slabbed had put online a copy of this Amended Complaint before or simultaneous to its being filed in Civil District Court for the Parish of Orleans, the purpose of its being filed has become clear.

Even Concrete Busters' attorney cannot contest the fact that the Amended Complaint's allegations about Trout Point Lodge and Cerro Coyote have nothing whatsoever to do with their claims about losing bid for a Jefferson Parish landfill contract.

I believe the evidence, combined with the retraction, leads to the inference that Attorney Jack "Bobby" Truitt and Douglas Handshoe conspired with certain attorneys representing Concrete Busters and Waste Remediation of Plaquemines to file an Amended Complaint to their lawsuit against River Birch, Freddie Heebe, & others, for the purpose of naming companies owned by Vaughn Perret and Charles Leary including Trout Point and Cerro Coyote, and also attacking as fraudulent the SPEECH Act proceeding in your Court. Handshoe also published, at about the same time, the false allegation that I was Aaron Broussard's law partner, a false fact that also appears in Your Honor's Order & Reasons.

The point was to convince Your Honor that they and I [who also have an interest in these companies] were involved in organized crime and had committed a variety of criminal acts, or at the very least that there might be some truth to those allegations. In an even more strange occurrence, the docket of the EDLA was amended to falsely list Aaron Broussard, as well as Trout Point Lodge and Cerro Coyote as defendant parties to that litigation, which was never the case. The docket has, subsequent to your judgment, been corrected.

Contrary to false allegations, I have been a sole practitioner since 2002. I have never been a law partner with Aaron Broussard or lawyer in the same firm. Nor have Aaron Broussard and I ever shared a law office. The Louisiana Bar Association records and those of the Louisiana Secretary of State's records prove these facts, as you have already seen from my affidavit submitted with relation

Case 1:12-cv-00090-LG-JMR Document 60-1 Filed 05/27/14 Page 11 of 35
Case: 13-60002 Document: 00512219941 Page: 3 Date Filed: 04/24/2013
Case 1:12-cv-00090-LG-JMR Document 48 Filed 04/08/13 Page 3 of 5

to Handshoe's appeal bond motion. I have also never been involved in criminal activity or ever accused of such. Well, never been accused of such except by slabbed and its associates.

As a result of my private investigation and presentation of its conclusions to the attorneys for Concrete Busters and having meet with them on several occasions, they have retracted every fact and allegation in the Amended Complaint. Their letter of retraction presented to me further confirms that they had not conducted any investigation of the facts but had obtained everything used in the Amended Complaint from slabbed.org. and had no contact with anyone at slabbed other than slabbed's Attorney Bobby Truitt.

At a minimum, to the extent that there was a complex scheme to influence the Court, I believe this bizarre turn of events requires an investigation or Your Honor's consideration of some action under Rule 60—such that the Judgment be Amended because of this fraud.

While I knew that the crimes alleged against Trout Point, Leary, Perret, and me were false and made in the Amended Complaint for the purpose of influencing this litigation, I waited until the retraction was made before presenting this to Your Honor. I have conducted an extensive investigation of Handshoe and slabbed over the last two years not only for the purpose of, but certainly in compliance with the requirements of FRCP Rule 11.


Respectfully submitted,

DANIEL ABEL

Daniel G. Abel
[LSB No. 8348]

Case 1:12-cv-00090-LG-JMR  Document 60-1  Filed 05/27/14  Page 12 of 35
Case: 13-60002    Document: 00512219941    Page: 4    Date Filed: 04/24/2013
Case 1:12-cv-00090-LG-JMR  Document 48  Filed 04/08/13  Page 4 of 5



## SMITH & FAWER LLC

### ATTORNEYS AT LAW

201 St. Charles Avenue, Suite 3702 • New Orleans, Louisiana 70170
Telephone: (504) 525-2200 • Facsimile: (504) 525-2205

March 29, 2013

**File No. 3094**

Daniel G. Abel
2421 Clearview Parkway
Legal Department – Suite 106
Metairie, LA 70001

RE:   *Concrete Busters, et al. v. Heebe, et al.*
      **USDC Eastern District 12-cv-2596**

Dear Mr. Abel:

In October of 2012, an Amended Petition was filed in the matter entitled *Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC vs. Frederick R. Heebe, Albert J. Ward, Jr., River Birch Incorporated and HWY 90, LLC* and numbered 11-2129 on the docket of the Civil District Court for the Parish of Orleans and later numbered 12-cv-2596 on the docket of the United States District Court for the Eastern District of Louisiana. Certain allegations were made relating to Trout Point Lodge, Ltd. and Cerro Coyote, S.A. based on information obtained from the blog Slabbed.com. The Amended Petition was not intended to be interpreted to imply that Trout Point Lodge, Ltd. or Cerro Coyote, S.A. were shell companies, or that Trout Point Lodge, Ltd., Cerro Coyote, S.A., or their principals were involved in criminal activity or racketeering, or that their principals intended to conceal criminal acts. Any implication that Trout Point Lodge, Ltd. or Cerro Coyote, S.A. were shell companies, or that Trout Point Lodge, Ltd., Cerro Coyote, S.A., or their principals were involved in criminal activity or racketeering, or that their principals intended to conceal criminal acts, is and was erroneous.

None of the allegations made in the Amended Petition filed in the matter entitled *Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC vs. Frederick R. Heebe, Albert J. Ward, Jr., River Birch Incorporated and HWY 90, LLC* stated, implied, or were intended to imply, that any of the contentions made by Trout Point Lodge, Ltd., Charles Leary, and Vaughn Perret in the matter entitled *Trout Point Lodge Limited, A Nova Scotia Limited Company, Vaughn Perret, and Charles Leary v. Doug K. Handshoe* and numbered 12-cv-90 on the docket of the United States District Court for the Southern District of Mississippi were frivolous or without basis. It is also acknowledged that the United States District Court for the Southern District of Mississippi has stated that said allegations were not frivolous or without basis.

Additionally, Trout Point Lodge, Ltd., Cerro Coyote, S.A., Charles Leary and Vaughn Perret were never parties or intended to be parties to the matter entitled *Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC vs. Frederick R. Heebe, Albert J. Ward, Jr., River*

**Exhibit A**
**Page 1 of 2**

Case 1:12-cv-00090-LG-JMR  Document 60-1  Filed 05/27/14  Page 13 of 35
Case: 13-60002    Document: 00512219941   Page: 5   Date Filed: 04/24/2013
Case 1:12-cv-00090-LG-JMR  Document 48  Filed 04/08/13  Page 5 of 5

Daniel G. Abel
March 29, 2013
Page -2-

_____

*Birch Incorporated and HWY 90, LLC,* and any listing of them as parties on the docket of the United States District Court for the Eastern District of Louisiana was erroneous.

Also, it is acknowledged that the lawsuits against the Times-Picayune and Louisiana Media, referenced in the *Amended Petition,* were amicably settled, and retractions were made by the Times-Picayune and Louisiana Media.

It is regrettable that the allegations of the *Amended Petition* were apparently misinterpreted or mischaracterized by others, including the blog Slabbed.com.

Any references to Trout Point Lodge, Ltd., Cerro Coyote, S.A., Charles Leary and Vaughn Perret in the *Amended Petition* filed in the matter entitled *Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC vs. Frederick R. Heebe, Albert J. Ward, Jr., River Birch Incorporated and HWY 90, LLC* shall be dismissed.

Sincerely,

Stephen M. Gelé

Case 1:12-cv-00090-LG-JMR Document 60-1 Filed 05/27/14 Page 14 of 35
Case: 13-60002 Document: 00512219942 Page: 1 Date Filed: 04/24/2013
Case 1:12-cv-0009 LG-JMR Document 35 Filed 12/19/12 Page 1 of 19

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

TROUT POINT LODGE LIMITED,
A Nova Scotia Limited Company;
VAUGHN PERRET, and CHARLES                          **PLAINTIFFS**
LEARY

V.                                          CAUSE NO. 1:12CV90-LG-JMR

DOUG K. HANDSHOE                                      **DEFENDANT**

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the [6] Motion for Summary Judgment filed by

Plaintiffs Trout Point Lodge Limited, a Nova Scotia Limited Company ("Trout Point

Lodge"), Vaughn Perret, and Charles Leary, and the [8] Motion for Summary

Judgment filed by Defendant Doug K. Handshoe. This action seeks to enforce a

judgment issued by the Supreme Court of Nova Scotia, Canada, in a defamation

action. Defendant Handshoe has published, via the Internet, various statements

about Plaintiffs. Plaintiffs are Nova Scotia residents, and they sued Handshoe in

the Supreme Court Nova Scotia, alleging defamation and other claims. The

Supreme Court of Nova Scotia issued a judgment awarding monetary and

injunctive relief to Plaintiffs. The parties' motions seek summary judgment with

respect to whether a judgment issued by the Supreme Court of Nova Scotia may be

enforced in this jurisdiction. The parties have filed a total of five (5) briefs [11, 16,

19, 27, 29] with respect to Plaintiffs' Motion for Summary Judgment, and two with

respect to Defendant's Motion for Summary Judgment [10, 20]. The parties have

also submitted several affidavits and exhibits. The Court has reviewed the parties'

**EXHIBIT**

"B"

Case 1:12-cv-00090-LG-JMR Document 60-1 Filed 05/27/14 Page 15 of 35
Case: 13-60002 Document: 00512219942 Page: 2 Date Filed: 04/24/2013
Case 1:12-cv-000°°-LG-JMR Document 35 Filed 12/19/12 Page 2 of 19

submissions and the applicable law. For the reasons set forth below, the Court

finds that under the provisions of The SPEECH Act, 28 U.S.C. 4101 *et seq.*, it may

not enforce the judgment of the Supreme Court of Nova Scotia. Accordingly,

Plaintiffs' Motion for Summary Judgment is denied, and Defendant's Motion for

Summary Judgment is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are Trout Point Lodge, a vacation lodge in Nova Scotia, and

Vaughn Perret and Charles Leary, who serve as Managing Directors, chefs, and

proprietors at Trout Point Lodge.[1] Plaintiffs filed a complaint in the Nova Scotia

court in 2011 against Defendant Doug Handshoe, alleging, *inter alia*, defamation

claims. Handshoe, who is a resident of this judicial district, owns and publishes an

Internet website (or blog) entitled "Slabbed."[2] Handshoe submits that "Slabbed" is

a "forum for local residents and other interested parties to gather and share

information regarding various political and legal issues that impact the Gulf Coast."

(Def.'s Mem. 1, ECF No. 10). Handshoe has published numerous statements on

"Slabbed" about Trout Point Lodge, Perret, and Leary. Handshoe's publications

allege, among other things, that the plaintiffs are connected to Aaron Broussard,

former Parish President of Jefferson Parish, Louisiana, who recently pleaded guilty

---

[1] Perret also serves as President of Trout Point Lodge.

[2] Handshoe's pleadings refer to "Slabbed New Media, LLC" as a defendant, but Doug Handshoe is the only named defendant. Slabbed New Media, LLC is not a party to this action.

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 16 of 35
Case: 13-60002     Document: 00512219942     Page: 3     Date Filed: 04/24/2013
Case 1:12-cv-00090-LG-JMR   Document 35   Filed 12/19/12   Page 3 of 19

to engaging in criminal activity while in office.  Broussard was indicted in the United States District Court for the Eastern District of Louisiana, and pleaded guilty to charges of bribery and theft in September of this year.

According to the parties' briefs, Broussard had, or has, some ownership interest in property in Nova Scotia, Canada.  The record demonstrates that in January 2010, the *Times-Picayune*, a New Orleans publication, published articles regarding the Broussard corruption scandal.  Those articles mentioned Trout Point Lodge, and identified Broussard as having an ownership interest in Trout Point Lodge.[3]  Plaintiffs then contacted the *Times-Picayune* and "pointed out factual errors in [its] reporting."  (Leary Aff. 2, ECF No. 17).  Subsequently, the *Times-Picayune* issued a retraction of its identification of Broussard as an owner of Trout Point Lodge, and apologized for publishing that material. (Leary Aff. Ex. 1, ECF No. 17-1).

Defendant Handshoe also began publishing on "Slabbed" about Broussard and his alleged connection to Trout Point Lodge, Perret, and Leary in or about January 2010.  The time line is not entirely clear from the record, but it appears that after Plaintiffs demanded the retraction from the *Times-Picayune*, the "Slabbed" blog was taken offline by the *Times-Picayune*'s corporate parent, Advance Publications.  Handshoe, apparently in reaction to his blog being taken offline, then

---

[3]According to the record, Broussard's Nova Scotia property is located on Trout Point Road, in close proximity to Trout Point Lodge.

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 17 of 35
Case: 13-60002   Document: 00512219942   Page: 4   Date Filed: 04/24/2013
Case 1:12-cv-0009~ LG-JMR   Document 35   Filed 12/19/12   Page 4 of 19

began an internet campaign to damage Perret and Leary.[4]  Handshoe has published

numerous entries on "Slabbed" about Plaintiffs, many of which may be

characterized as derogatory, mean spirited, sexist and homophobic.[5]  Handshoe has

continued to use his reporting on "Slabbed" as a platform from which to allege a

connection between Broussard's crimes and Trout Point Lodge.[6]  Among other

things, Handshoe has accused Perret and Leary of being involved in a scheme in

which Broussard used a Canadian company to launder money proceeds of illegal

activities in Jefferson Parish.[7]

Handshoe has also published material about Leary and Perret that is

unrelated to the Broussard scandal.  For example, Handshoe has published

statements regarding litigation involving Perret's and Leary's former business

venture and the Atlantic Canada Opportunities Agency (ACOA).  Handshoe has

---

[4] Handshoe subsequently found another web host for the "Slabbed" blog.

[5] For example, Handshoe has made a number of off-color sexual remarks about Vaughn and Perret, and has published several photo-shopped images of Vaughn and Perret in an apparent attempt to harass or embarrass them. Handshoe repeatedly refers to Vaughn and Leary, both of whom are male, as "the girls."

[6] Handshoe also publishes his "Slabbed" entries on Twitter.

[7] For example, Handshoe has stated on "Slabbed" that he spoke with a former Trout Point Lodge employee, and "[i]n answer to the question as to who handled the money for Aaron's property? Definitely Trout Point . . . This makes sense and confirms a long-held suspicion that he girls were the fiscal agents for all the cabins owned by Louisianians close to the Lodge including Aaron Broussard.  That said the Lodge's financial records would certainly contain evidence to either support the pay-to-Trout Point to play in Jefferson Parish allegations that are at the heart of this story." (Leary Aff. 5, ECF No. 17).

4

Case 1:13-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 18 of 35
Case: 13-60002   Document: 00512219942   Page: 5   Date Filed: 04/24/2013
Case 1:12-cv-0009° LG-JMR   Document 35   Filed 12/19/12   Page 5 of 19

alleged that Plaintiffs were dishonest in dealing with the Canadian agency, and

suggested that Leary committed perjury during that proceeding.[8]

"Slabbed" contains numerous entries about, or that Handshoe relates to, the

plaintiffs.  Some of the entries are simply links to articles by other publications.

Some of the blog entries discuss Vaughn and Perret directly.[9]  In others, the content

of the entry does not mention the plaintiffs, but Handshoe relates the title of the

post to the plaintiffs.  For example, Handshoe posted an entry about a factual basis

filed in the criminal proceeding against Aaron Broussard's ex-wife, Karen Parker

Broussard.  The factual basis, filed by the United States Attorney's Office, stated:

> Additionally, from approximately 2004 through 2010,
> Broussard received monies, totaling hundreds of
> thousands of dollars, that were characterized as, among
> other things, "retainers," "consulting fees" or "finder's
> fees" with various contractors and vendors, all of whom
> were doing business with Jefferson Parish during the
> period of time Broussard was the President of Jefferson

---

[8] For example, Handshoe stated on "Slabbed:" "You see the girls have left a
trail of financial wreckage in Canada reportedly screwing over trade venders [sic]
and others building the Lodge and that harebrained exotic cheese farm La Ferme
D'Acadie where they shafted the Atlantic Canada Opportunities Agency." (Leary
Aff. 5-6, ECF No. 17).

[9] During 2012 alone, there have been approximately sixty publications on
"Slabbed" that reference the plaintiffs.  The record indicates that there may be
hundreds of posts regarding the plaintiffs.  Some of his posts were entitled, among
other things: "Slabbed travels back in time with the girls and ties a few things
together.  A Trout Point Lodge / Jefferson PARISH Political Corruption Scandal
Update Part 1;" (this was followed by "Part 2") and "First class bitches, common
thugs or plain ol' morons: The Girls at Trout Point Lodge sue Fox 8 and Slabbed. A
Trout Point Lodge / Jefferson Parish Political Corruption Scandal Update."
Handshoe claimed he would "meticulously lay down the trail of scams and political
corruption that leads to Nova Scotia and Trout Point Lodge."

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 19 of 35
Case: 13-60002   Document: 00512219942   Page: 6   Date Filed: 04/24/2013
Case 1:12-cv-000⌐⌐-LG-JMR   Document 35   Filed 12/19/12   Page 6 of 19

> Parish. Moreover, Broussard was a majority owner in a holding company which owned an investment property in Canada. Broussard received income from this Canadian property. This property was partially funded by individuals and/or entities who were contractors and/or vendors doing business with Jefferson Parish during the period of time Broussard was the Jefferson Parish President.

(Def.'s Reply, Ex. 2 at 7, ECF No. 27-2). The factual basis says that Broussard was "a majority owner in a holding company that had investment property in Canada." It says nothing about Trout Point Lodge, Leary, Perret, or even Daniel Abel. However, Handshoe entitled his blog entry, "BREAKING: Aaron Broussard Laundered his money through Nova Scotia!!!!! A Trout Point update." In that entry, he references Leary and Perret and addresses them, stating, "So girls . . . rest assured I have a complete series of posts coming that will explore both Karen Parker's latest revelations and soooo much more."

Other blog entries contain no content about Vaughn or Perret or Trout Point Lodge, but Handshoe links the entries to their names with "tags." For example, on October 6, 2012, Handshoe posted a blog entry entitled "How I Spent My Summer Vacation," which essentially states that Handshoe examined "thousands" of public documents from Aaron Broussard's office. The blog entry does not mention Perret or Leary; it does not claim that the plaintiffs were mentioned in any of the documents Handshoe examined. However, Handshoe provides "tags" for Vaughn, Perret, and Trout Point Lodge at the bottom of the entry, therefore linking their names to the entry about Broussard's files. Moreover, Handshoe characterizes

6

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 20 of 35
Case: 13-60002   Document: 00512219942   Page: 7   Date Filed: 04/24/2013
Case 1:12-cv-000?? LG-JMR   Document 35   Filed 12/19/12   Page 7 of 19

posts about the Broussard scandal as "Trout Point development(s)," whether or not the substance of the entry actually relates to Nova Scotia.

In response to the publications on "Slabbed," the Plaintiffs filed a complaint (their First Amended Statement of Claim) in the Supreme Court of Nova Scotia against Handshoe for "defamation, invasion of privacy, injurious falsehood, intentional interference with contractual relations, intentional interference with economic relations, intentional infliction of emotional and mental distress and assault." (Pls.' Mot. Ex. 5 at 3, ECF No. 6-5). Defendant Handshoe was served with process in Wiggins, Mississippi. (Pls.' Mot. Ex. 1, ECF No. 6-1). Handshoe never appeared in the Supreme Court of Nova Scotia, and that court entered a default judgment against him. As the Nova Scotia court explained, the effect of the default judgment is that "the claims against Mr. Handshoe are . . . to be treated . . . as proven," and that Handshoe had admitted the claims against him. (Pls.' Mot. Ex. 5 at 5, ECF No. 6-5; Pls.' Mot. Ex. 3, ECF No. 6-3). The Nova Scotia court held a hearing on the assessment of damages and heard evidence from Perret and Leary. The court issued an Oral Decision following the hearing.

The court's decision summarized the evidence put forth by Perret and Leary about the harm they suffered as a result of Handshoe's publications. This included testimony about emotional distress and physical manifestations of stress they experienced. The plaintiffs stated that they believed the publications on "Slabbed"

7

Case 1:12-cv-00090-LG-JMR Document 60-1 Filed 05/27/14 Page 21 of 35
Case: 13-60002 Document: 00512219942 Page: 8 Date Filed: 04/24/2013
Case 1:12-cv-000⌐⌐-LG-JMR Document 35 Filed 12/19/12 Page 8 of 19

were harmful to their business, but admitted that this was very difficult to prove.[10]
The court discussed the content of Handshoe's publications about the plaintiffs,
noting that Handshoe had made accusations of fraud and criminal activity against
the plaintiffs, as well as a number of anti-gay, personal attacks on them. The court
entered a judgment in which it awarded Trout Point Lodge general damages in the
amount of $75,000, and Perret and Leary each $100,000 in general damages,
$50,000 in aggravated damages,[11] and $25,000 in punitive damages. The court also
issued injunctive relief, stating:

> In addition, I order a permanent injunction to issue
> against the defendant, Douglas K. Handshoe, restraining
> him from disseminating, posting on the Internet or
> publishing, in any manner whatsoever, directly or
> indirectly, any statements or comments about the
> plaintiffs, Trout Point Lodge, Charles L. Leary, and
> Vaughn J. Perret. This injunction shall include the
> publication, circulation and promotion on the blog named
> Slabbed, and any similar or other publications. For
> further particularity, the defendant shall not publish or
> cause to be published or otherwise disseminate or
> distribute in any manner whatsoever, whether by way of
> the Internet or other medium, any statements or other
> communications which refer to the plaintiffs by name,
> depiction or description.
>
> I also order a mandatory injunction to issue against the

---

[10] Plaintiffs submitted that occupancy rates at Trout Point Lodge were three percent (3%) lower in 2011 than in 2010. (Pls.' Mot. Ex. 5 at 8, ECF No. 6-5).

[11] Under Canadian law, "[a]ggravated damages may be awarded in circumstances where the defendant's conduct has been particularly high handed or oppressive thereby increasing the plaintiffs' humiliation and anxiety arising from the libellous statement." *Hill v. Church of Scientology of Toronto* (1995), S.C.R. 1130, para. 188 (Can.).

above-named Defendant regarding continued publication
in any manner whatsoever, whether by way of the
Internet or other medium, any statements or other
communications which refer to the plaintiffs by name,
depiction or description. All such material is hereby
ordered to be immediately removed from publication.

Pls.' Mot. Ex. 2, ECF No. 6-2.

Plaintiffs now seek to enforce the judgment of the Supreme Court of Nova Scotia in this Court. Plaintiffs filed a Motion to Enroll Foreign Judgment in the Circuit Court of Hancock County, Mississippi, and Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441. Defendant Handshoe argues that under the SPEECH Act, 28 U.S.C. 4101 *et seq.*, the judgment of the Canadian court is unenforceable in the United States because (1) Canadian law provides less stringent protections for freedom of speech than United States laws and (2) Handshoe would not have been found liable for defamation in a domestic court. Plaintiffs Trout Point Lodge, Perret, and Leary argue they are entitled to summary judgment, and execution of the Nova Scotia judgment, because the requirements of the SPEECH Act have been satisfied. They submit that Canadian law afforded Defendant Handshoe "as much free speech protection as he would have received in a state or federal district court of the United States." (Pls.' Mem. 11, ECF No. 7). They also argue that had Defendant Handshoe been sued in a court in Mississippi, he would have been liable for defamation.

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 23 of 35
Case: 13-60002     Document: 00512219942     Page: 10     Date Filed: 04/24/2013
Case 1:12-cv-0009⌐ LG-JMR   Document 35   Filed 12/19/12   Page 10 of 19

### DISCUSSION

#### The SPEECH Act

The question before the Court is whether the judgment of the Supreme Court of Nova Scotia is enforceable as a matter of law.  The Securing the Protecting of Our Enduring and Established Constitutional Heritage Act, or the SPEECH Act, was passed by the United States Congress in 2010.  The Act governs recognition of foreign defamation judgments in courts in the United States.  The SPEECH Act was passed in an attempt to counteract "libel tourism," or the practice of "circumventing First Amendment protections" by filing lawsuits in foreign jurisdictions that lack similar protections.  See H.R. Rep. No. 111-154, at 2 (2009). Congress was concerned that such forum-shopping could have a chilling effect on free speech here in the United States, and undermine the First Amendment protections provided by our Constitution.[12]  The SPEECH Act intended to "provide a single, uniform standard for addressing . . . foreign libel judgments." (S. Rep. No. 111-224 at 4 (2010).  It provides for removal to federal courts where, as here, an

_____

[12] In passing the SPEECH Act, Congress reacted, at least in part, to defamation actions brought in Britain, which has a plaintiff-friendly approach to defamation law and allows injunctions that would be prohibited in the United States.  One example of these British libel actions was the lawsuit brought by Saudi billionaire Khalid Bin Mahfouz against author and United States citizen Rachel Ehrenfeld, who accused Bin Mahfouz of providing financial support for terrorism in her book, _Funding Evil: How Terrorism is Financed and How to Stop It._  Bin Mahfouz, who was not a British citizen, successfully sued Ehrenfeld in a British court and received monetary damages and injunctive relief prohibiting publication of the book in Britain and ordering its removal from public libraries.  See S. Rep. No. 111-224 at 3 (2010).

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 24 of 35
Case: 13-60002   Document: 00512219942   Page: 11   Date Filed: 04/24/2013
Case 1:12-cv-00090-LG-JMR   Document 35   Filed 12/19/12   Page 11 of 19

enforcement action has been filed in state court.  *See* 28 U.S.C. § 4103.

The Act essentially provides that an American court shall not enforce a foreign defamation judgment unless the plaintiff has demonstrated that the foreign court provided at least as much protection for freedom of speech as a court in the United States would have, **or** that the defendant would have been found liable for defamation in a domestic court applying state and federal law.  The statute provides, in pertinent part:

> (a) First Amendment considerations.--
>
> (1) In general.--Notwithstanding any other provision of Federal or State law, a domestic court shall not recognize or enforce a foreign judgment for defamation unless the domestic court determines that--
>
> (A) the defamation law applied in the foreign court's adjudication provided at least as much protection for freedom of speech and press in that case as would be provided by the first amendment to the Constitution of the United States and by the constitution and law of the State in which the domestic court is located; or
>
> (B) even if the defamation law applied in the foreign court's adjudication did not provide as much protection for freedom of speech and press as the first amendment to the Constitution of the United States and the constitution and law of the State, the party opposing recognition or enforcement of that foreign judgment would have been found liable for defamation by a domestic court applying the first amendment to the Constitution of the United States and the constitution and law of the State in which the domestic court is located.
>
> (2) Burden of establishing application of defamation laws.--The party seeking recognition or enforcement of the foreign judgment shall bear the burden of making the showings required under subparagraph (A) or (B).

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 25 of 35
Case: 13-60002    Document: 00512219942   Page: 12   Date Filed: 04/24/2013
Case 1:12-cv-00090 LG-JMR   Document 35   Filed 12/19/12   Page 12 of 19

28 U.S.C. § 4102.[13]

The Court finds that Plaintiffs have not demonstrated that either (A) that the Supreme Court of Nova Scotia provided the level of protection for freedom of speech in this case as an American court, or (B) that Handshoe would have been found liable for defamation in a court in this state.

It is well-established under the law of the United States and Mississippi that in order to hold a defendant liable for defamation, the plaintiff must demonstrate that the statement complained of is false. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986); *P.L. Blake v. Gannet Co.*, 529 So. 2d 595, 602 (Miss. 1988). Truth is an "absolute defense" to a claim of defamation under Mississippi law. *Blake*, 529 So.2d at 602 (citing *Fulton v. Miss. Publishers Corp.*, 498 So. 2d 1215, 1217 (Miss. 1986); *Prescott v. Bay St. Louis Newspapers, Inc.*, 497 So. 2d 77 (Miss. 1986) (citation omitted); *Smith v. Byrd*, 225 Miss. 331, 83 So. 2d 172, 174 (1955); *Conroy v. Breland*, 185 Miss. 787, 189 So. 814, 816 (1939); and Miss. Const. Art. 3, § 13 (1890)). The Mississippi Supreme Court has held that even statements that are only "substantially true" are not an adequate basis to establish defamation. *See Armistead v. Minor*, 815 So. 2d 1189, 1194 (Miss. 2002).

---

[13]Section (c) of the SPEECH Act addresses foreign defamation judgments against providers of interactive computer services, as defined by section 230 of the Communications Act of 1934, 47 U.S.C. 230, and requires that the judgment be consistent with the Communications Act. There is no suggestion that Handshoe qualifies as a provider of an interactive computer service.

In contrast, under Canadian law, falsity is not an element of defamation; rather, truth may be raised as a defense. *See Grant v. Torstar* (2009) 3 S.C.R. 640, para. 28-32 (Can.). In *Grant v. Torstar*, the Supreme Court of Canada stated:

> A plaintiff in a defamation action is required to prove three things to obtain a judgment and an award of damages: (1) that the impugned words were defamatory, in the sense that they would tend to lower the plaintiff's reputation in the eyes of a reasonable person; (2) that the words in fact referred to the plaintiff; and (3) that the words were published, meaning that they were communicated to at least one person other than the plaintiff. If these elements are established on a blaance of probabilities, **falsity and damages are presumed . . . [t]he tort is thus one of strict liability.** If the plaintiff proves the required elements, the onus then shifts to the defendant to advance a defence in order to escape liability.

*Id.* at para. 28-29 (emphasis added).

According to the record before this Court, the decision of the Supreme Court of Nova Scotia does not contain specific findings of fact with respect to the falsity of Handshoe's statements. Because Handshoe did not defend against the plaintiffs' claims, the Nova Scotia court entered a default judgment, and then focused solely on damages. A Mississippi court would require proof of damages only if the plaintiff first proved the statements at issue were false. To establish a *prima facie* claim of defamation in Mississippi, the plaintiff has the burden to prove the following:

> (1) a false and defamatory statement concerning plaintiff;
> (2) unprivileged publication to third party;
> (3) fault amounting at least to negligence on part of publisher;
> (4) and either actionability of statement irrespective of special harm or existence of special harm caused by

Case 1:12-cv-00090-LG-JMR  Document 60-1  Filed 05/27/14  Page 27 of 35
Case: 13-60002   Document: 00512219942   Page: 14   Date Filed: 04/24/2013
Case 1:12-cv-00090 LG-JMR  Document 35   Filed 12/19/12  Page 14 of 19

publication.

*Armistead v. Minor*, 815 So. 2d 1189, 1193 (Miss. 2002)(citing *Franklin v. Thompson*, 722 So. 2d 688, 692 (Miss. 1998). The "threshold question in a defamation suit is whether the published statements are false." *Id.* Thus, without a showing of falsity, a court in this jurisdiction would never reach the question of damages.

In addition, if the plaintiff is deemed to be a public figure, he or she must prove that the defendant acted not with mere negligence, but with "actual malice" under the familiar standard set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), and must do so with 'clear and convincing proof.' *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974). Defendant Handshoe argues that plaintiffs are "vortex public figures" under Mississippi law, and therefore the "actual malice" requirement applies to their claims of defamation. The Court need not determine, at this point, whether the plaintiffs are public figures for the purposes of the *New York Times v. Sullivan* standard. The Court finds that it is sufficient that, in this case, the plaintiffs have not demonstrated that they were required to prove the falsity of Handshoe's statements, and therefore have not established they are entitled to enforcement of the Nova Scotia judgment under the SPEECH Act.[14]

---

[14] The Court does note, however, that Canada has declined to adopt the *New York Times Co. v. Sullivan* standard. *See Hill v. Church of Scientology of Toronto* (1995), S.C.R. 1130, para. 137 (Can.). The Supreme Court of Nova Scotia describes *Hill v. Church of Scientology* as "[t]he leading case on defamation in Canada." (Pls.' Mot. Ex. 5 at 16, ECF No. 6-5). *See also Investorshub.com, Inc. v. Mina Mar Group*, No. 4:11cv9-RH-WS (N.D. Fla. 2011) (where, in a Stipulated Final Judgment, the

Case 1:12-cv-00090-LG-JMR Document 60-1 Filed 05/27/14 Page 28 of 35
Case: 13-60002 Document: 00512219942 Page: 15 Date Filed: 04/24/2013
Case 1:12-cv-0009^ LG-JMR Document 35 Filed 12/19/12 Page 15 of 19

Under our well-established First Amendment principles, truthful speech is

protected, and it is the plaintiff's burden to prove falsity in a defamation action.

This is not the case in Canada, and it does not appear from the record that the Nova

Scotia court conducted an inquiry into the truth of Handshoe's assertions.

Likewise, had the Plaintiffs filed their defamation action in Mississippi, they would

be required to prove falsity before they would be entitled to damages. Handshoe

has not published any specific allegations about what role he believes Leary and

Perret played in Broussard's crimes. It is possible this is because Handshoe does

not have any information indicating Plaintiffs were involved in Broussard's

criminal activity. Handshoe, has, however, made numerous more generalized

allegations about connections between Leary, Perret, Abel, and Broussard. Some of

these statements seem to be based in fact; others appears to be conspiracy theories

that may or may not be substantiated.[15] As noted above, under the law of

_____

United States District Court for the Northern District of Florida found that
Canadian law did not provide the same protections for freedom of speech as United
States laws).

[15] The record indicates that Vaughn and Perret lived in Louisiana prior to
establishing their business in Nova Scotia. A New Orleans attorney, Daniel Abel,
was (or is) a long-time business partner of Vaughn's and Perret's, and he is also a
former law partner of Aaron Broussard's. The plaintiffs have admitted that they, or
their company, helped manage Broussard's property in Nova Scotia, which is
located very close to Trout Point Lodge. The record contains a letter to Leary and
Perret from Roy D'Aquila, a New Orleans attorney connected to Broussard, that
discusses the possibility of placing Mr. Broussard's property on an insurance policy
held by Trout Point Lodge. (Pls.' Mot. Ex. 10 at 24, ECF No. 6-10). Moreover, the
Court is aware that there is a civil action pending in the United States District
Court for the Eastern District of Louisiana against Broussard and others in which it
is alleged that Trout Point Lodge, Ltd. was one of many "co-conspirators" in a

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 29 of 35
Case: 13-60002     Document: 00512219942     Page: 16     Date Filed: 04/24/2013
Case 1:12-cv-0009○ ᴸG-JMR   Document 35   Filed 12/19/12   Page 16 of 19

Mississippi, even those statements that are "substantially true" are protected

speech. And this Court cannot determine, based on the record before it, the truth or

falsity of Handshoe's claims that the Plaintiffs are connected to Aaron Broussard's

criminal activities. Nor should it enforce a judgment in an action that, if brought in

this Court, would depend upon the plaintiffs' proof that the statements at issue are

false.

Moreover, it significant to note that the Supreme Court of Nova Scotia issued

a broadly worded, permanent injunction against Handshoe. The injunction

prohibits Handshoe from "disseminating, posting on the Internet or publishing, in

any manner whatsoever, directly or indirectly, any statements or comments about

the plaintiffs[.]"  He may not circulate or publish "any statements or other

communications which refer to the plaintiffs by name, depiction or description."

(Pls.' Mot. Ex. 2, ECF No. 6-2). Such an injunction could not conceivably pass

constitutional muster in United States courts, where restraints on speech and the

press are strongly disfavored. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559

(1976). There is a heavy presumption that a prior restraint on expression is

---

criminal scheme involving various public officials. *See Concrete Busters of
Louisiana, Inc. and Waste Remediation of Plaquemines, LLC v. Frederick R. Heebe,
et al.*, No. 2:12cv2596-NJB-KWR (E.D. La.). It has also been alleged that another
business of Vaughn's and Perret's, Cerro Coyote, SA, is another "co-conspirator."
According to the record, Daniel Abel was also an owner of Cerro Coyote. None of
this proves that the plaintiffs were involved in Broussard's criminal activities.
However, the plaintiffs have not proved that Handshoe's publications regarding
their connection to Broussard are false, and under the defamation law of this
country, they are required to do so.

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 30 of 35
Case: 13-60002   Document: 00512219942   Page: 17   Date Filed: 04/24/2013
Case 1:12-cv-0009° LG-JMR   Document 35   Filed 12/19/12   Page 17 of 19

unconstitutional. *Id.* (citing *Carroll v. Princess Anne*, 393 U.S. 175, 181, (1968);

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)). "An 'order' issued in 'the

area of First Amendment rights' must be 'precis[e]' and narrowly 'tailored' to

achieve the 'pin-pointed objective' of the 'needs of the case.'" *Carroll*, 393 U.S. 175,

183–184. This broadly worded injunction, which forbids Handshoe from making

*any* comments regarding the plaintiffs, defamatory or otherwise, would not be

issued in a domestic court. While many may find Handshoe's publications may be

characterized as distasteful or offensive, this Court cannot enforce an order by a

foreign court that amounts to a prior, and essentially total restraint on his speech.

*See Cohen v. California*, 403 U.S. 15, 26 (1971) (holding that "verbal tumult,

discord, and even offensive utterance" are "necessary side effects of ... the process of

open debate,"and noting that "'(o)ne of the prerogatives of American citizenship is

the right to criticize public men and measures—and that means not only informed

and responsible criticism but the freedom to speak foolishly and without

moderation.'")(quoting *Baumgartner v. United States*, 322 U.S. 665, 673-674 (1944)).

The House Report on the SPEECH Act described the limits the First

Amendment places on the liability of publishers as follows:

> The First Amendment to the Constitution limits the
> liability of authors and publishers under state defamation
> law by *prohibiting injunctions against defamatory
> statements in nearly all instances,* and by restricting the
> circumstances under which a plaintiff may recover
> damages for defamation. The First Amendment limits
> liability in three key respects. First, it renders non-
> actionable a defamatory statement of opinion that 'does

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 31 of 35
Case: 13-60002   Document: 00512219942   Page: 18   Date Filed: 04/24/2013
Case 1:12-cv-00090-LG-JMR   Document 35   Filed 12/19/12   Page 18 of 19

> not contain a provably false factual connotation.' Second,
> it requires the plaintiff to prove the falsity of a
> defamatory statement.  Third, it requires the plaintiff to
> prove fault, with clear and convincing evidence, by
> showing actual malice or negligence, depending on the
> subject matter of the statement and whether the
> defendant is a public figure.

H.R. Rep. 111-154 at 2 (2009) (citations omitted) (emphasis added).  In light of these

principles, this Court may not enforce the judgment of the Supreme Court of Nova

Scotia.  The Court finds that to do so would contradict the letter and purpose of the

SPEECH Act.

### CONCLUSION

As set forth above, in order to enforce this foreign defamation judgment, the

Plaintiffs must demonstrate that Defendant Handshoe was afforded at least as

much protection for freedom of speech in that action as he would have in a domestic

proceeding, or, alternatively, that Handshoe would have been found liable for

defamation by a domestic court.  They have not met their burden under the

SPEECH Act to establish at least one of these requirements.  Therefore, the Court

may not enforce the judgment of the Supreme Court of Nova Scotia.  Accordingly,

Defendant's Motion for Summary Judgment is granted, and Plaintiffs' Motion for

Summary Judgment is denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [6] Motion for

Summary Judgment filed by Plaintiffs Trout Point Lodge Limited, a Nova Scotia

Limited Company ("Trout Point Lodge"), Vaughn Perret, and Charles Leary is

**DENIED**, and the [8] Motion for Summary Judgment filed by Defendant Doug K.

Handshoe is **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 19th day of December, 2012.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE

19

Case 1:12-cv-00090-LG-JMR   Document 60-1   Filed 05/27/14   Page 33 of 35
Case: 13-60002     Document: 00512219942   Page: 20   Date Filed: 04/24/2013
Case 1:12-cv-000⁀ ⸱LG-JMR   Document 36   Filed 12/19/12   Page 1 of 1

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**TROUT POINT LODGE LIMITED,**
**A Nova Scotia Limited Company;**
**VAUGHN PERRET, and CHARLES**
**LEARY**

                                        **PLAINTIFFS**

**V.**                                  **CAUSE NO. 1:12CV90-LG-JMR**

**DOUG K. HANDSHOE**                     **DEFENDANT**

## JUDGMENT

This matter having come on to be heard on the [6] Motion for Summary Judgment filed by Plaintiffs Trout Point Lodge Limited, a Nova Scotia Limited Company, Vaughn Perret, and Charles Leary, and the [8] Motion for Summary Judgment filed by Defendant Doug K. Handshoe, the Court, after a full review and consideration of the Motions, the pleadings on file and the relevant legal authority, finds that in accordance with the Order entered herewith,

**IT IS ORDERED AND ADJUDGED** that judgment is rendered in favor of Defendant Doug Handshoe, pursuant to FED. R. CIV. P. 56. This case is hereby **DISMISSED WITH PREJUDICE.**

**SO ORDERED AND ADJUDGED** this the 19th day of December, 2012.

                          *s/ Louis Guirola, Jr.*
                          **LOUIS GUIROLA, JR.**
                          **CHIEF U.S. DISTRICT JUDGE**

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

May 31, 2013

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 13-60002,   Trout Point Lodge, Limited, et al v. Doug Handshoe
                USDC No. 1:12-CV-90

Enclosed is an order entered in this case.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    *Misty Lisotta*

                    By: _____
                    Misty L. Lisotta, Deputy Clerk
                    504-310-7716

Mr. Henry F. Laird Jr.
Mr. J. T. Noblin
Mr. Jack Etherton Truitt

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

No. 13-60002

---

TROUT POINT LODGE, LIMITED, a Nova Scotia limited Company;
VAUGHN PERRET; CHARLES LEARY,

        Plaintiffs - Appellants

v.

DOUG K. HANDSHOE,

        Defendant - Appellee

---

Appeal from the United States District Court for the
Southern District of Mississippi, Biloxi

---

O R D E R :

    IT IS ORDERED that appellants' motion for reconsideration of the clerk's order of April 25, 2013, denying appellants' motion to supplement the record on appeal, to which there has been no response filed, is GRANTED.


                /s/ Jennifer Walker Elrod

                ---

                JENNIFER WALKER ELROD
                UNITED STATES CIRCUIT JUDGE