IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



TROUT POINT LODGE, LIMITED, A Nova Scotia
Limited Company; VAUGHN PERRET and
CHARLES LEARY                                                                PLAINTIFFS

VERSUS                              CIVIL ACTION NO: 1:12CV00090 LG-JMR

DOUG K. HANDSHOE                                                         DEFENDANT

---

### PRO SE REBUTTAL BRIEF
### ON MOTION FOR ORIGINAL DISCIPLINE UNDER L.U.Civ.R. 83.1(c)(1)

---

MAY IT PLEASE THIS HONORABLE COURT:

Under L.U.Civ.R. plaintiff Dr. Leary requests this Honorable Court to impose original discipline on Jack E. Truiit and G. Gerald Cruthird, and, given facts asserted in Mr. Truitt's reply brief, to order relevant discovery. Plaintiff Dr. Leary makes this request, though it is truly this Honorable Court that has had the integrity of Its process harmed through the acts of omission and commission of Mr. Truitt, Mr. Cruthird, and their client Handshoe. Either Mr. Truitt or Mr. Handshoe can own the judgment debt at issue here, but they cannot represent to this Honorable Court and other courts that one owns it when the other does. This was a material misrepresentation to the court, and the record indicates there has been more than one.

According to Mr. Truitt's reply brief there is no disagreement on the essential facts. His brief's exhibits now make clear that not only Mr. Truitt but also his client Handshoe had full knowledge of the misrepresentation made to this Honorable Court regarding ownership of the $48,000 judgment debt when the garnishment motion was filed.[1] According to Mr. Truitt, the ownership passed back and forth.

---

1   Mr. Truitt complains that instant plaintiff's pleading is difficult to follow. However, it is well-established that "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). In addition, "it is beyond dispute that lawyers are officers of the court and that the courts have the inherent authority to regulate their professional conduct." *In re Gopman*, 531 F.2d 262 (5th Cir. 1976). The preamble to the local rules reads:

So, Handshoe owned the debt in February, 2014, Mr. Truitt in March and throughout the summer of 2014, then Handshoe took it back in October, 2014, but Mr. Truitt owned it again the following Spring, including after having filed his brief with this Court. Dr. Leary asks, Was there yet another "privileged" email rescinding the "rescission" of October 9, 2014?

Contrary to Mr. Truitt's argument, attorney G. Gerald Cruthird's supervisory responsibility over Mr. Truitt cannot be questioned under this Honorable Court's local rules.[2] The following rules are implicated in this motion for original discipline: L.U.Civ.R. 83.1(c)(1), 83.1(d)(3), 83.1(d)(4), 83.5, 83.7(g)(2).

Mr. Truitt asserts at page 5 of his reply brief that "Rule 83.1(c)(1) governs discipline for attorneys, whether Mississippi attorneys or attorneys admitted pro hac vice, who are found to have committed 'flagrant' violations of rules or such conduct." This is untrue, as the district court has discretion as to what conduct merits what kind of original discipline, and this Honorable Court's hands are not bound to discipline only conduct that is "flagrant." "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2D 27 (1991). Indeed, the rule cited by Mr. Truitt in fact states:

---

Attorneys practicing before the district courts of Mississippi are charged with the responsibility of knowing the LOCAL RULES, [ . . . ] and may be sanctioned for failing to comply with them. Posting of the LOCAL RULES on the Internet Websites maintained by the clerks of the district courts is sufficient delivery of the LOCAL RULES to all attorneys and the public.

2  Mr. Cruthird appears to have close ties to the Handshoe family. Michael B. Cruthird is the direct supervisor of Mr. Handshoe's wife, Jennifer Handshoe, at the Mississippi State Department of Health. Sheila Cruthird is an accountant working for Douglas K, Handshoe, CPA. In another action filed in this district court by Handshoe, (Handshoe v. Abel 1:2014-cv-00159), Handshoe very recently filed a motion for relief from a court-ordered deadline to respond to defendant Loyola University Law School's motion to dismiss (1:2014-cv-00159 ECF 39). In that brief, Handshoe represented to this district court that he was victim of a "deprivation of due process rights" and that he appears in that proceeding *pro se* "only with the greatest of reluctance." Handshoe declared to this Honorable Court the "inability of Slabbed New Media to engage counsel." This assertion is belied by the fact that Mr. Handshoe was represented by Mr. Truitt in October, 2014, after that action was filed; he is currently represented by another Louisiana attorney, Connie Sue Montgomery, in the copyright infringement judgment-enrollment proceeding in Hancock County Circuit Court; and court documents show he has been represented by Mr. Cruthird from 2012 to the present day. In fact, Mr. Cruthird is the sponsoring attorney for Ms. Montgomery to appear *pro hac vice* in state circuit court, just as he was in this case. In addition, Ms. Montgomery represents Mr. Handshoe in the defamation action against him in New Orleans Civil District Court. As far as Dr. Leary can tell, Mr. Handshoe actually has three attorneys regularly representing his interests in both federal and state court in two states. Handshoe also states "he has the ability to pay for representation" in yet assigned his judgment debt to Mr. Truitt and has not paid him.

> The court may, after notice and an opportunity to show cause to the contrary, if requested, censure or reprimand any attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with these rules, the MISSISSIPPI RULES OF PROFESSIONAL CONDUCT, or any other rule of the court.

Relevant sections of the *Mississippi Rules of Professional Conduct* implicated here include but may not be limited to:

> **Rule 1.2(d)** A lawyer shall not counsel a client to engage, or assist a client, in conduct that a lawyer <u>knows</u> is criminal or <u>fraudulent,</u> but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.
> **Rule 1.8(e)** A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, or administrative proceedings . . .
> **Rule 1.8 (j)** A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client . . .
> **Rule 3.3(a)** A lawyer shall not <u>knowingly</u>:
>> (1) make a false statement of material fact or law to a tribunal; (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or <u>fraudulent</u> act by the client;

**TRUITT AND HANDSHOE ADMIT TO TRANSFER OF THE DEBT VIA NOTARIZED INSTURMENT**

In his reply brief, Mr. Truitt admits to accepting his client Handshoe's written assignment to him of the $48,000 judgment debt on March 5, 2014, three weeks after the Nova Scotia Supreme Court rendered its judgment for $180,000 CAN against Handshoe, a foreign judgment the enforcement of which Handshoe improperly removed to this Honorable Court (Cf. Perret v. Handshoe 1:2014-cv-00241). The transfer document was a legal document notarized in Mississippi, captioned for filing in Louisiana, evidencing a legal contract of substantial value when Handshoe signed it (at that time the U.S. dollar and Canadian dollar were near parity). It is thus Dr. Leary's understanding it and any subsequent agreement would be subject to the *Mississippi Statute of Frauds*. It cannot simply be passed back and forth when it suits the whims of Mr. Truitt and Handshoe, or voided by a vague email.

It it undisputed that Mr. Truitt filed the garnishment motion in the instant closed case, without supervising attorney Cruthird's (required) signature, on October 8, 2014.

The exhibits filed by Mr. Truitt now demonstrate his client's full knowledge of the fraudulent representations made to this Honorable Court and other courts, in particular the purported email from

Handshoe to Mr. Truitt of October 9, 2014.

In his brief, Mr. Truitt admits he used his ownership of the debt in at least three court cases in Louisiana in 2014, evidenced by public filings in those three cases; in the two still-active cases Mr. Truitt's pleadings remain unamended to remove any claims based on the debt, despite and flying in the face of his new representation to this Honorable Court that he now no longer owns the debt. Mr. Truitt's ethical and legal obligation was to abandon any action based on that debt when ownership purportedly left his hands last October. Yet, subsequent communications to instant plaintiffs from Mr. Truitt indicate he still claimed to own the debt after the October 9, 2014, email.

**TRUITT'S ARGUMENT THAT THE DEBT ASSIGNMENT WAS NECESSARY BECAUSE THIS COURT FAILED TO AWARD FEES TO TRUITT DOES NOT COMPORT WITH THE LAW**

Mr. Truitt argues that the assignment of the judgment debt from Handshoe to Mr. Truitt was necessary since this Honorable Court mistakenly made the attorney's fee award to Handshoe and not Mr. Truitt. This is a fallacy. Under nearly all fee-shifting federal statutes, attorney's fee awards are given to the litigant, not to his attorney directly. Such is the case with the SPEECH Act, which reads:

> the domestic court shall, absent exceptional circumstances, allow <u>the party opposing recognition or enforcement of the judgment</u> a reasonable attorney's fee if such party prevails in the action on a ground specified in section 4102 (a), (b), or (c). (emphasis added).

Handshoe, the party opposing enforcement of the instant plaintiffs' judgment, was awarded the fee by this Honorable Court, not Mr. Truitt. "Congress knows how to make fees awards payable directly to attorneys where it desires to do so." *Astrue v. Ratliff*, 130 S. Ct. 2521, 560 U.S. 586, 177 L. Ed. 2D 91 (2010); also *US v. $186,416.00 IN US CURRENCY*, 642 F.3d 753 (9th Cir. 2011). One reason for not paying fees directly to attorneys is to avoid precisely the kind of situation created here, where a lawyer may end up having a direct financial interest in the subject matter of his client's litigation that might cause conflicts or inappropriate conduct, including litigation manoeuvres after the award of fees, such as the garnishment motion at issue here. Mr. Truitt and Handshoe circumvented this protection

anticipated by Congress.[3]

There existed no rational, reasonable, or legal reason for the assignment of the judgment debt other than to shield it from the $180,000 CAN copyright infringement judgment Handshoe owes plaintiffs by transferring it to Mr. Truitt and bringing it to Louisiana, outside Mississippi jurisdiction. On June 3, 2015, Handshoe admitted to this Honorable Court in case 1:14-cv-00159-KS-MTP (ECF document 39) that he "has the ability to pay for representation." Mr. Truitt clearly had the capacity to represent Handshoe in attempting to collect the judgment debt—he did so on October 8, 2014 before this Honorable Court. However, Mr. Truitt and Handshoe chose play free and loose with the debt. Their mixing and mingling of the ownership of the debt, passing it back and forth, has irrefutably caused Mr. Truitt to take an interest in the subject matter of his client's litigation, triggering, among others, *Mississippi Rules of Professional Conduct* Rule 1.8 (j) "A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client . . . ." "The attorney should not take a position in conflict with his client's property." *Tyson v. Moore*, 613 So. 2d 817 (Miss. 1992).

During the time period Mr. Truitt was purportedly owed fees by Handshoe, Mr. Truitt has also made financial contributions to his client to support activity that is and was the subject of litigation. This, again, violates the Mississippi Rules of Professional Conduct.

**MR. TRUITT DISTORTS TIMELINE; PURPORTED HANDSHOE EMAIL CAME AFTER GARNISHMENT MOTION WAS FILED**

In his reply brief, Mr. Truitt represents to this Court that "the assignment of the fee award was rescinded and thereby transferred back to Handshoe, who then filed the motion for garnishment on October 8, 2014." On the face of Mr. Truitt's exhibit, the problem with this representation to this Honorable Court is that the email purportedly evidencing the "rescission" and "thereby" the "transfer back to Handshoe" was dated October 9, 2014, and thus self-servingly occurred only after filing the motion for garnishment. The email (Truitt Exhibit "2"), refers to undated "discussions regarding the

---
[3] From Mr. Truitt's instant brief, it is quite clear that Mr. Handshoe has never paid Mr. Truitt for his services. Plaintiff does not know what, if any, fee agreement existed or exists between Mr. Truitt and Handshoe.

assignment of attorney's fees," bears no reference to consideration, and is at best vague. Simply put, the documents Mr. Truitt and Mr. Handshoe filed with this Honorable Court are *demonstrably false*. In fact, Mr. Truitt filed the motion, not Handshoe. The email is not fit as an agreement voiding a previous contract, as attorney Mr. Truitt and forensic accountant Handshoe should reasonable know. It does, however, evidence that both Mr. Truitt and Handshoe knew about the misrepresentation to this Honorable Court made in the garnishment motion.

## "RESCISSION" ARGUMENT

In March, 2014, Handshoe purportedly transferred the debt for unnamed valuable consideration to Mr. Truitt, and Mr. Truitt subsequently registered that transfer instrument with three Louisiana courts, in one action involving the instant plaintiffs (now dismissed based on peremption), in one action initiated by Mr. Truitt against the instant plaintiffs and Daniel Abel (in which instant plaintiff has never been served), and in one action in which the plaintiffs are not parties.[4] The latter two cases are, on information and belief, still active. Therefore, Mr. Truitt was asking a Louisiana state court for a remedy based on his ownership of the judgment debt <u>at the same time</u> as he asked this Honorable Court to garnish Trout Point Lodge's earnings for the same debt, but the name of the owner in this case was "Handshoe" not "Truitt"; Mr. Truitt was the *pro hac vice* attorney, acting without any apparent supervision.

Dr. Leary respectfully urges that discovery of the purported debt transfers between Mr. Truitt and Handshoe be ordered by this Honorable Court to better inform this Court.

There was no consideration whatsoever, valuable or otherwise, indicated in the Handshoe "rescission" email that would place the two contracting parties back in the positions they occupied before the contract was made. When that legal instrument is tendered across state lines and filed in foreign courts, as part of public record, the requirements for proper handling and resolution of the contract transferring the debt, and representing ownership of the debt, become stringent, subject to the

---

[4] How Mr. Truitt can justify seeking payment of the judgment debt from a third-party (Mr. Yount) who is not one of the plaintiffs in this case remains unknown.

Statute of Frauds.

Notably, Handshoe was not truly as a matter of law rescinding his offer, but was, after a final contract had been created and used in court proceedings, purportedly trying to void it or make it a nullity. The notarized transfer instrument cannot be undone with a self-serving email sent <u>after</u> Mr. Truitt filed his garnishment motion on behalf of Handshoe with this Honorable Court fraudulently representing that Handshoe owned the debt, when this was not the case. Mr. Truitt as sometime owner of the debt obviously knew the papers he was filing with this Honorable Court were untrue. He cannot plausibly claim otherwise. The same goes for Mr. Handshoe.

The "rescission" email is more than anything evidence of the vexatious litigation tactics used by Handshoe and Mr. Truitt to achieve their ends no matter what the cost.

## "ONGOING & COLLATERAL LITIGATION BETWEEN THESE PARTIES"; "FILING TO HARASS DEFENDANT AND HIS COUNSEL"

Mr. Truitt accuses Dr. Leary of filing this motion for original discipline to "harass" Mr. Truitt *and* Handshoe as part of a pattern of conduct. Mr. Truitt also alleges there is "ongoing & collateral litigation between these parties."

Mr. Truitt goes to the extent of (mis)representing to this Court that <u>instant plaintiff is a party in "two separate, frivolous State court suits" one of which he claims "has been recently dismissed by the trial court."</u> However, Mr. Truitt presents no evidence of instant plaintiffs being parties to such lawsuits, and this statement is <u>not true</u>. In fact, Mr. Truitt, in an appalling lack of candor, also failed to inform this Court of the appeals of the Louisiana trial court's decisions of both Mr. Truitt & Handshoe's special motions to strike under La CCP Art 971, that state's anti-SLAPP law. In fact, the Louisiana Fifth Circuit Court of Appeal on May 28, 2015, reversed the Handshoe dismissal order and remanded the case to the trial court to be prosecuted; as Mr. Truitt's dismissal came after Handshoe's and was based upon it, the reasonable inference is that Mr. Truitt dismissal will be reversed as well in the pending appeal by Mr. Yount.

There is no harassment motive in the instant motion. This motion for discipline was filed

because Mr. Truitt made substantive, factual misrepresentations to this Court and has become financially involved with his client Handshoe, while appearing before this court in this case, in ways not permitted by the *Mississippi Rules of Professional Conduct*. It was also filed because attorney Cruthird did not fulfill his obligations as supervising attorney under L.U.Civ.R.. Good faith reporting of such conduct by Dr. Leary to this Honorable Court is not harassment.

Dr, Leary is <u>not</u> a party in the State court lawsuits referred to by Mr. Truitt, one of which is a defamation suit against him and Handshoe by Daniel Abel; and the other a defamation, invasion of privacy, and intentional infliction of emotional distress suit by Plaintiff Chris Yount also against Mr. Truitt and Handshoe. Try as he might to make it otherwise by making textual representations to this Honorable Court, those lawsuits are "unrelated" to instant Plaintiffs Nova Scotia actions, as found by the Louisiana Fifth Circuit Court of Appeal in the fact finding of its recent decision.[5]

The fact that Chris Yount was the process server hired by Dr. Leary to serve Handshoe with civil process; and the fact that Daniel Abel is associated with Trout Point Lodge does not mean that Mr. Truitt can conflate instant plaintiffs with these third parties. There is no "conspiracy" to "harass" through litigation involving the plaintiffs; recent court decisions make clear that both Mr. Yount's and Mr. Abel's claims against Mr. Truitt and Handshoe have merit, whatever the ultimate outcome of those cases.

The fact that Abel and Yount are associated with Plaintiffs is significant, but not for the reason articulated by Mr. Truitt. That Mr. Truitt and Handshoe are being pursued through civil legal means by Abel and Yount has more to do with their targeting of these individuals for harassment and embarrassment on Slabbed and in other places like the "Concrete Busters" lawsuit; not visa versa.

The only active litigation Dr. Leary has against Handshoe is the enrollment of a copyright infringement judgment from Nova Scotia Supreme Court in Hancock County Circuit Court. That judgment has already been reviewed by this Honorable Court, was remanded, and is not frivolous or

---

[5] This does not mean that Mr. Truitt should not have informed this Honorable Court of the pendency of related actions in Louisiana involving Mr. Truitt and/or Mr. Handshoe when the garnishment motion was filed.

vexatious. Instant plaintiffs have no Louisiana actions against Mr. Truitt.

**RELATIONSHIP BETWEEN TRUITT AND HANDSHOE**

Mr. Truitt has raised his continuing relationship with and representation of Handshoe in his reply brief. To appreciate the context of the conduct that has lead to this motion for original discipline and to rectify conduct by both Mr. Truitt and Handshoe during this proceeding, this Honorable Court must review the relationship between Handshoe and Mr. Truitt leading up to the garnishment motion, which is far from the typical attorney-client relationship.

It is now clear that Mr. Truitt provided his legal services in the instant case without receiving payment from Handshoe, and he was prior to the garnishment motion also a Handshoe financial supporter and fundraiser. On May 28, 2015, during the pendency of this motion, the Louisiana Fifth Circuit Court of Appeal released its decision in a case involving Mr. Truitt and Handshoe as defendants (Exhibit "A"). The plaintiff is the process server (Chris Yount) who served Handshoe with civil legal process in the original Nova Scotia Supreme Court proceeding underlying the instant case.

In a *de novo* review of a special motion to strike under Louisiana's anti-SLAPP statute, the court of appeal made numerous findings of fact. Under Louisiana CCP Art. 971 "In making its determination, the court shall consider the pleadings and <u>supporting and opposing affidavits</u> stating the facts upon which the liability or defense is based." Both the plaintiffs and the defendants submitted the relevant Handshoe & Mr. Truitt blog posts into evidence before the court. Salient findings of fact by the court of appeal include:

- [the] case arises from a series of posts and comments authored by Mr. Handshoe and codefendant Jack E. Truitt on www.slabbed.org an internet website owned and operated by Mr. Handshoe and his company, New Slabbed Media, LLC
- On February 13, 2014, Mr. Handshoe published on www.slabbed.org a pornographic drawing authored by Mr. Yount's 13-year-old son that had previously been filed with the court as part of Mr. Yount's divorce proceedings in the 24th Judicial District Court. Captions and comments authored by Mr. Handshoe and Mr. Truitt underneath the drawing described its graphic nature and clearly identified the author as a minor child and the divorce proceedings in which he was involved.
- Mr. Yount is a paralegal and process server who had served Mr. Handshoe process in other defamation suits <u>unrelated</u> to the instant case. (emphasis added)

Defamation is a tort of joint liability, and Mr. Truitt is alleged to have intentionally participated with Handshoe in the defaming; he clearly published within the impugned blog post in a way that led to identification of Mr. Yount's minor child as the author of the pornographic drawing.

The three judges of the appeal court clearly found there was no public interest in Mr. Truitt and Handshoe publishing about Mr. Yount and his minor child on Slabbed. "Like the trial court, we find Mr. Yount's divorce proceedings to be a private domestic matter, not a matter of public significance for purposes of applying the Louisiana anti-SLAPP protections. Mr. Handshoe has not met his burden of proving that his publication of the pornographic drawing and evidence under seal is an act in furtherance of his right of petition or freedom of speech in connection with a public issue." In conclusion, the Louisiana Court of Appeal found of Mr. Truitt and Handshoe's conduct:

> While information may be made available to the public for purposes of ensuring fairness in our judicial proceedings, there may be legal consequences should that same information be published and distributed as clickbait to millions of people on the internet in a manner that defames or invades the privacy of another. "The right to inspect judicial records should not trump the individual's privacy rights, especially where the purpose is to gratify spite, promote public scandal, or to publicize the embarrassing details of a divorce case." Copeland v. Copeland, 07-0177 (La. 10/16/07), 966 So.2d 1040, 1052.

In addition, Mr. Truitt and Handshoe are also indeed co-defendants in another Louisiana proceeding, this one in New Orleans Civil District Court, for defamation, again for publications both Mr. Truitt and Handshoe made on Slabbed, as well as false criminal allegations about instant plaintiffs and Daniel Abel they placed in the "Concrete Busters" lawsuit of which this Court took judicial notice in Its decision on cross-motions for summary judgment, and of which the instant plaintiffs had no notice, already referenced in instant plaintiff's initial brief. This Honorable Court noted in Its decision:

> the Court is aware that there is a civil action pending in the United States District Court for the Eastern District of Louisiana against Broussard and others in which it is alleged that Trout Point Lodge, Ltd. was one of many "co-conspirators" in a criminal scheme involving various public officials. See Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC v. Frederick R. Heebe, et al., No. 2:12cv2596-NJB-KWR (E.D. La.). It has also been alleged that another business of Vaughn's and Perret's, Cerro Coyote, SA, is another "co-conspirator."

In the Abel v. Truitt defamation case in New Orleans, as well, the allegations have survived

four special motions to strike (one filed by Mr. Truitt, one filed by Truitt-client Anne-Marie Vandenweghe, and two filed by Handshoe), as well as review of the denial of Mr. Truitt's dismissal motion by the Louisiana Fourth Circuit Court of Appeal (unanimous) and the Louisiana Supreme Court (writ denied, unanimous). The Court of Appeal found: "the trial court made a proper determination under article 971 that the alleged statements [by Mr. Truitt on Slabbed and in the Concrete Busters amended petition] <u>did not concern a public issue</u>." (Exhibit "L" to plaintiff's original brief).

Clearly, while the ultimate outcome of these proceedings is not yet known, it has been conclusively demonstrated that Mr. Truitt joined Handshoe as a blogger on Slabbed, publishing about <u>private</u> matters of persons perceived to be in instant plaintiffs' social group, while also representing Handshoe as counsel before this Honorable Court.

The Louisiana Fourth and Fifth Circuit Court of Appeal' findings beg the question as to why, then, Mr. Truitt and Handshoe would publish about the <u>private</u> lives of Louisiana process server Mr. Yount or Louisiana attorney Mr. Abel. An answer lies in a statement published and republished by Handshoe on Slabbed when his website was taken offline by his webhost, as noted in fact finding by two published decisions by the Nova Scotia Supreme Court previously referred to by this Honorable Court (*Trout Point Lodge v. Handshoe 2012 NS SC 245* & *Trout Point Lodge v. Handshoe 2014 NS SC 62*).

> I'll add here in case it is not self evident that I have built complete dossiers on all the players in this social group and I intend through time to roll out each and every one in excruciating detail as long as the lawsuit in Canada is an outstanding issue for Slabbed. The reason for this is that this band of gay men act as a unit that will also scatter like cockroaches when the heat is applied. This is especially true of Carl Finley for example as his role in *Paulsen* illustrates.

This Honorable Court's fact finding in Its decision on cross motions for summary judgment in the instant case further elucidates Handshoe's reaction to being taken offline, including his publication of visual materials to cause injury. This Honorable Court's findings are remarkably similar to the Louisiana Fifth Circuit Court of Appeal decision regarding publication of embarrassing private information (including the pornographic drawing) by Handshoe & Mr. Truitt:

> The time line is not entirely clear from the record, but it appears that after Plaintiffs demanded the retraction from the Times-Picayune, the "Slabbed" blog was taken offline by the Times-Picayune's corporate parent, Advance Publications. Handshoe, apparently in reaction to his blog being taken offline, then began <u>an internet campaign to damage Perret and Leary</u>. Handshoe has published numerous entries on "Slabbed" about Plaintiffs, many of which may be characterized as derogatory, mean spirited, sexist and homophobic.
>
> . . .
>
> Handshoe has made a number of off-color sexual remarks about Vaughn [sic] and Perret, and has <u>published several photo-shopped images of Vaughn [sic] and Perret in an apparent attempt to harass or embarrass them</u>. Handshoe repeatedly refers to Vaughn and Leary, both of whom are male, as "the girls."

Mr. Truitt had joined the "internet campaign to damage," "harass," and "embarrass" instant plaintiffs by attacking not only the process server they had used on several occasions to serve Handshoe, but also his minor child, an act designed to deter Mr. Yount from providing further service to plaintiffs and possibly to affect his testimony. Handshoe and Mr. Truitt also attacked their business associate Mr. Abel. Notably, the United States has recognized a public policy that process servers should remain free from interference in *18 U.S. Code § 1501 - Assault on process server*. Blog publications on private matters, particularly of the extreme pornographic type described in the Louisiana Fifth Circuit decision, is a type of harassment, whose motive is to injure.

At the time Mr. Truitt was representing Handshoe before this Honourable Court in October, 2014, Mr. Truitt had also admitted making financial contributions to Handshoe to continue his blogging activities, and acted as a public fundraiser for Handshoe, not to pay his legal bills, but to continue his blogging and "investigation" of the plaintiffs.

> ***Bobby Truitt*** September 19, 2013 at 10:43 am
> I can attest that this endeavor is not free. <u>I have spent an inordinate amount of time and money on behalf of Doug</u>, because it is the right thing to do. I don't always see eye to eye with Doug on many issues, but where would we all be without his forum?
>
> Doug has broken stories that the MSM would not touch with a ten foot pole. Then, when the stories have exploded, they have come crawling back and actually sourced Doug's stories.
>
> So, it is a worthwhile cause. I would liken this to a Kickstarter campaign, and the "quid pro quo" is the protection of free speech and more honest government. <u>Contribute what you can. I personally kicked in $100 today</u>. So, I am sure that any amount would be appreciated.

Cf. http://www.slabbed.org/slabbed-at-the-crossroads-how-much-is-independent-news-and-commentary-worth/comment-page-1/#comment-339030. Mr. Truitt has not rebutted Dr. Leary's

assertion and exhibit demonstrating Mr. Truitt making this publication on Slabbed.org.

This is not conduct becoming of an attorney practicing before this Court, or in Mississippi. This special relationship between Mr. Truitt and Handshoe has led to conduct violating the local rules of this Court and the Mississippi Rules of Professional Conduct.

Mr. Truitt equivocally denies any connection to misrepresentations or acts of omission Handshoe made to courts, calling them "spurious" and stating that these "claims do not bear on Truitt in any form or substance;" but then stating "To the extent that they do, though, Mr. Truitt denies any wrongdoing, misrepresentations to the Court, or unethical conduct." This includes prominently denying any salient contact with Smith & Fawer, LLC, attorneys for Concrete Busters of Louisiana and Waste Remediation of Plaquemines relevant to false criminal allegations about instant plaintiffs placed in an Eastern District of Louisiana federal lawsuit referenced by this Honorable Court in its final decision on summary judgment. Daniel Abel has alerted this Honorable Court to facts pointing to contact between Mr. Truitt and Randall Smith, and the confection of false allegations in that lawsuit intended to extrajudicially influence this Court while It was deliberating a final determination in the instant case. Not only did allegations related to Truitt-client Handshoe appear in the amended Concrete Busters complaint filed by Randall Smith and simultaneously published on Slabbed at the same time this Honorable Court was perusing the site, so too did (dismissed) allegations contained in Truitt-client Anne-Marie Vandenweghe's federal lawsuit against Jefferson Parish. Plaintiff submits this was not a simple coincidence. The Concrete Busters allegations were completely baseless, and were retracted and dismissed, but only after the false allegations influenced this Honorable Court in rendering its decision in the instant case.

Mr. Truitt says that Handshoe's misrepresentations about Smith & Fawer have nothing to do with him; yet it was precisely while Mr. Truitt was representing Handshoe before this Honorable Court and the U.S. Court of Appeal for the Fifth Circuit that Handshoe was, at the very least, fraudulently

publicly denying any contacts with Smith & Fawer.[6] Given the established special relationship between Mr. Truitt and Handshoe, this begs the question of what Mr. Truitt knew about the contacts, and his own acts of commission or omission. Given that two of Mr Truitt's clients' interests were represented in that amended Concrete Busters pleading, there is strong circumstantial evidence pointing to a complex scheme to influence the trier of fact in this case. Dr. Leary therefore urges this Honorable Court to allow discovery of Mr. Truitt and Handshoe regarding the Concrete Busters lawsuit and their relationship to Smith & Fawer, LLC relevant to the filing of that amended complaint in the Eastern District of Louisiana, and the subsequent publicity about it.

Fraud upon the court under Federal Rule of Civil Procedure Rule 60(d)(3) is a serious allegation; it was made against Mr. Truitt by attorney Abel in a letter to this Honorable Court. Mr. Truitt did not rebut or refute it at the time, and declined to do so again with any specificity whatsoever in his current reply brief. Pending discovery in Mr. Abel's Louisiana defamation case against Mr. Truitt and Handshoe may lead to the truth. The instant Plaintiff is not currently making a motion for fraud upon the court. However, Dr. Leary urges this Honorable Court to reflect on the matter and allow discovery.

First, there is strong circumstantial evidence of a complex scheme to extra-judicially influence this Honorable Court as represented in the letter Dr. Leary transmitted to this Court on March 11, 2015 (Exhibit "B").[7] Second, to preserve the integrity of the judicial and adversarial process of the federal

---

6 Notably, this was also contemporaneous with the Fifth Circuit Court of Appeal considering an expanded record on appeal that included the Sith & Fawer retraction letter as well as the letter from Mr. Abel suggesting fraud upon the court. As shown in Dr. Leary's initial brief, Handshoe later admitted to contact with Smith & Fawer.

7 Since that letter was written, Dr. Leary has consulted court filings in the Concrete Busters case. Argument presented by Smith & Fawer to the district court shows that the litigation strategy behind naming various Louisiana corporations in the amended complaint without making them parties was to facilitate discovery of corporate records, which could not be protected by 5th Amendment concerns about self incrimination, an issue effectively used by defendant Heebe. Naming Trout Point Lodge, Limited (Canada), and Cerro Coyote, S.A. (Costa Rica), Dr. Leary's businesses, was materially useless under this strategy however, since neither company was subject to Louisiana court jurisdiction or subpoena power. Why then were Trout Point Lodge and Cerro Coyote named in the amended complaint? There was obviously another motive for naming Trout Point and Cerro Coyote, which was to extra-judicially influence this Honorable Court, as argued here. Notably, despite the retraction by Smith & Fawer, the dismissal by the district court of the complaints naming Trout Point Lodge (and the later dismissal with prejudice of the entire case), Mr. Handshoe has just represented to this district court in the case Handshoe v. Abel (1:14-cv-00159, ECF 39) that Trout Point Lodge is actually a "shell company."

courts, the Court can use its inherent power to order investigation of the apparent and reported fraud. Notably, the Supreme Court of the United States has found that fraud upon the court need not involve fraud that would have affected the ultimate outcome of a decision; only that it be a complex scheme to influence the trier of fact, most often extrinsic to the court process itself, and thus unlike, say, perjury. That is what is alleged here with the Concrete Busters case: an extremely complex scheme involving attorneys in two states and practicing in two federal district courts to influence the judgment of this Honorable Court in this case. That the influence was effective is undeniable, given the decision of the United States Fifth Circuit Court of Appeal. It is indisputable that this Court was influenced by evidence not in the record after the close of submissions by all parties. In a *de-novo* review, the U.S. Court of Appeal stated on the topic of judicial notice, "The district court did refer to [. . .] Slabbed.org in 2012 and a separately-filed case pending in the Eastern District of Louisiana, in which the plaintiffs alleged a connection between Trout Point and Broussard." *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481 (5th Cir. 2013) fn 12. The misrepresentation Mr. Truitt and Handshoe made to this Court in October of last year is but a continuation of the same disregard for the adversarial process evidenced in the Concrete Busters example.

As stated in *First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554 (5th Cir. 1996): "To establish fraud on the court, "'it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir.1978) (quoting England v. Doyle, 281 F.2d 304, 309 (9th Cir.1960))." Notably, actually influencing the outcome of the decision is not a requirement, the plan or scheme must simply be designed to do so. That any alleged extra-judicial fraud played a role in altering the outcome of the final judgments of this Honorable Court and the Court of Appeal is not the standard that must be applied. In *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), the Circuit Court had determined "that the spurious publication, though quoted in the 1932 opinion, was not the primary basis of the 1932 decision [of the Circuit Court]." The Supreme Court rejected this reasoning in

determining fraud upon the court existed.

> The Circuit Court also rested denial of relief upon the conclusion that the Clarke article was not "basic" to the Court's 1932 decision. Whether or not it was the primary basis for that ruling, <u>the article did impress the Court, as shown by the Court's opinion</u>. Doubtless it is wholly impossible accurately to appraise the influence that the article exerted on the judges. <u>But we do not think the circumstances call for such an attempted appraisal.</u> (emphasis added)

To paraphrase, the (false) criminal allegations contained in the amended Concrete Busters complaint; the (false) fact that Mr. Abel was Mr. Broussard's law partner; and the (false) fact that Mr. Broussard was a defendant in the Concrete Busters litigation alongside the Plaintiffs "did impress the Court, as shown by the Court's opinion", "whether or not it was the primary basis for that ruling." "It is wholly impossible accurately to appraise the influence that the [false evidence] exerted."

In fact, this conduct alleged amounted to "the fabrication of evidence by a party in which an attorney is implicated," which has repeatedly been cited as fraud on the court under Rule 60(d) both by the Court of Appeal for the Fifth Circuit and the United States Supreme Court. This is an obvious and transparent attempt to influence the judiciary through extra-judicial communication and making up "facts" in so-called "media" as well as federal court pleadings that were demonstrably untrue.

As part of any action taken on original discipline, this Honorable Court has the inherent power to order discovery or an independent investigation, using a Master if necessary. "The inherent power of a federal court to investigate whether a judgment was obtained by fraud is beyond question. *Hazel-Atlas Co. v. Hartford Empire Co.,* 322 U. S. 238. "The power to unearth such a fraud is the power to unearth it effectively. Accordingly, a federal court may bring before it by appropriate means all those who may be affected by the outcome of its investigation." *Universal Oil Products Co. v. Root Refining Co.* 328 U.S. 575 (1946). In the alternative to Its own investigation, Dr. Leary urges this Honorable Court to issue an Order allowing the plaintiffs to conduct discovery mentioned above. Discovery serves the Court.

It remains unrebutted that Mr. Truitt has never vacated or amended his claims in Louisiana that are based on his ownership of the debt, and in March, 2015 (after the purported rescission email of

October 9, 2014), Mr. Truitt represented to Daniel Abel that he owned the debt, and could negotiate with it (Exhibit "C").[8] Again, two days after the Louisiana Fifth Circuit Court of Appeal rendered its decision, Mr. Truitt contacted instant Plaintiffs by email proposing a meeting to discuss settlement of "my claims against Mr. Abel and Trout Point, Mr. Leary, and Mr. Perret" (Exhibit "D"). Mr. Truitt's state court claims against Perret, Trout Point, and instant plaintiff arise out of his purported ownership of the $48,000 judgment debt, which, again, Handshoe purportedly rescinded on October 9 of last year.

Mr. Truitt and Mr. Handshoe are shopping the debt to whatever court in two states they think might possibly grant an award based on this Honorable Court's attorney's fees Order, and passing it back and forth across state lines to suit their own collective agenda. In doing so, they have by both acts of commission and omission misled this Court in making the garnishment motion.

## PLAINTIFFS RECEIVED NO NOTICE OF GARNISHMENT MOTION

Mr. Truitt argues that plaintiffs had notice of the garnishment motion. Instant plaintiff had no knowledge of the motion, and written inquiries with attorney M. Judith Barnett show that she reports receiving no notice of the motion (Exhibit "E" emails between Dr. Leary and Ms. Barnett).[9] This question was asked before plaintiff filed the instant motion.

It was <u>never</u> Ms. Barnett's mandate to represent the plaintiffs in a <u>closed</u> proceeding with no live issues, i.e. the instant case. Ms. Barnett's only mandate was to represent plaintiffs in enrolling a Canadian copyright infringement judgment in Hancock County, which is now proceeding.

She has performed no work on the instant proceeding, and has never billed for doing so.

If Ms. Barnett's name was somehow put on the docket of the closed proceeding, the plaintiffs are at a complete loss to explain how or why, other than inadvertence. It is a reasonable if not unmistakable inference that had plaintiffs known of the garnishment motion, they would have responded to oppose it and to expose potential fraud on the court.

---

8   While reportedly Mr. Abel may be suspended from the practice of law in Louisiana state courts, The U.S. Court of Appeal for the Fifth Circuit has specifically exempted Mr. Abel for any suspension in the federal courts of the Fifth Circuit (Exhibit "F").

9   By making these emails available, Dr. Leary is not relinquishing any attorney-client privilege with regards to litigation involving Douglas K. Handshoe.

**PURPORTED ATTORNEY-CLIENT PRIVILEGE**

Mr. Truitt claims the email and any other document or communication regarding "rescission" of the judgement debt was subject to attorney-client privilege, and this is the reason he did not divulge it to this Honorable Court in his garnishment motion. As the U.S. Court of Appeal for the Fifth Circuit stated in *US v. Robinson*, 121 F.3d 971 (5th Cir. 1997):

> The assertor of the lawyer-client privilege must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding. *Neal, 27 F.3d at 1048*; *In re Grand Jury Proceedings, 517 F.2d at 670*.

The Court of Appeal further observed: "It goes without saying that documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer."

In *In re Grand Jury Subpoenas*, 906 F.2d 1485 (10th Cir. 1990)., the court summarized the common law understanding of privilege related to attorney's fee issues:

> The purpose behind the attorney-client privilege is to preserve *confidential communications* between attorney and client. *In re Grand Jury Investigation, 723 F.2d 447, 453-54 (6th Cir.1983)*; *In re Osterhoudt, 722 F.2d 591, 593 (9th Cir.1983)*; *In re Shargel, 742 F.2d 61, 64-65 (2d Cir.1984)*. Information regarding the fee arrangement is not normally part of the professional consultation and therefore it is not privileged even if it would incriminate the client in wrongdoing. *In re Osterhoudt, 722 F.2d at 593*. In other words, while payment of a fee to an attorney is necessary to obtain legal advice, disclosure of the fee arrangement does not inhibit the normal communications necessary for the attorney to act effectively in representing the client. *In re Grand Jury Subpoena Served Upon Doe, 781 F.2d 238, 247-48 (2d Cir.1985)*. Absent one of those rare circumstances in which the payment of the fee itself is unlawful or where an actual client paid the fee and sought advice concerning the actual case under investigation as in *Baird*, we hold that fee arrangements are not protected by the attorney-client privilege.

Mr. Truitt's assertion also flies in the face of his public and un-privileged use of the assignment document in court proceedings in Louisiana. Communications regarding the purported contractual relations and the related business relationship between Mr. Truitt and Handshoe was not subject to any privilege, especially in the case of misrepresentations made to this Court about the $48,000 judgment debt. It was Mr. Truitt's obligation to divulge any instrument regarding transfer of the judgment debt to this Honorable Court when the garnishment motion was filed. Again, discovery of the alleged transfer

agreements would be enlightening to this Honorable Court.

**GERALD CRUTHIRD WAS RESPONSIBLE FOR TRUITT'S CONDUCT BEFORE THIS COURT**

Mr. Truitt argues that Dr. Leary has provided no substantiation for the inclusion of G. Gerald Cruthird in this motion for original discipline. Such an assertion simply points to Mr. Truitt's ignorance of the local rules of court, to which the instant plaintiff has referred in making this motion.

> The resident attorney remains responsible to the client and <u>responsible for the conduct of the proceeding before the court</u>. It is the duty of the resident attorney to advise the client of the resident attorney's independent judgment on contemplated actions in the proceedings if that judgment differs from that of the non-resident attorney. At least one resident attorney <u>must</u> sign every submission filed with the court and <u>must</u> personally appear and participate in all trials, in all pretrial conferences, case management conferences and settlement conferences, hearings and other proceedings conducted in open court, and all depositions or other proceedings in which testimony is given. (emphasis added)

Dr. Leary respectfully suggests that this Honorable Court review of the court record of this case, including the motion for garnishment, which evidences the fact that Cruthird utterly failed to exercise his required responsibility for Mr. Truitt's conduct in this proceeding and submissions made to this Honorable Court. Cruthird's signature never appears on numerous court submissions filed by Mr. Truitt, made <u>mandatory</u> ("must") by local rules. Had he exercised his supervisory responsibility, perhaps the misrepresentation to the Court throughout this proceeding would have never occurred. This includes documents filed as long ago as Handshoe's motion for summary judgment (ECF 8) and continues all the way to Handshoe's motion for garnishment (ECF 61) at the heart of the instant motion. Mr. Cruthird also did not appear at the pre-trial settlement conference in November, 2012, with Magistrate Walker, as required, and in which Mr. Handshoe admits to have made allegations of criminal conduct against the instant Plaintiffs, breaking the required confidentiality of the conference by immediately publishing its contents on Slabbed.

Notably, the Supreme Court of Mississippi has taken violation of civil procedure rules involving *pro hac vice* practice very seriously, including dismissal. This is because lack of Mississippi counsel affects not only the client, but the entire judicial process, in this case including instant

plaintiffs' rights. "Our enforcement of Rule 46 goes not only toward protecting clients' rights, but toward enforcing both society's and the profession's respect for this Court and the processes that have been established for seeking redress." "this Court will take very seriously *pro hac vice* violations that involve the absence of local counsel." *Newberry v. State*, 145 So. 3d 652 (Miss. 2014) and cases cited therein. For all intents and purposes, Cruthird was apparently *absent* from the instant proceeding, including the filing of the garnishment motion.

Mr. Cruthird is equally responsible with Mr. Truitt for any violation of the local rules and the Rules of Professional Conduct. That Mr. Truitt makes another intentional misrepresentation of fact in his instant reply brief—stating instant plaintiffs are suing him in Louisiana state court when the simple fact is they are not—is indicative of his tendency to not heed what must be mandatory conduct for an attorney.

Dr. Leary therefore respectfully requests original discipline of attorney Truitt and Cruthird as prescribed by the local rules, as well as an Order allowing discovery of Mr. Truitt and Mr Handshoe regarding: (1) all the transfers of the $48,000 judgment debt between and betwixt Mr. Truitt and Handshoe; (2) the relationship and communications between Mr. Truitt, Handshoe, Concrete Busters of Louisiana, Waste Remediation of Plaquemines, and Smith & Fawer, LLC, including all of its attorneys and staff, between September 1, 2012, and the present day.

Respectfully submitted, this the 6th day of June, 2015.

Charles Leary

By: *[signature]*
Charles L. Leary, PhD
*Pro se*