**Charles L. Leary**
**140 Trout Point Road**
**E. Kemptville, Nova Scotia B5A 5X9**
**foodvacation@gmail.com**


March 11, 2015

**Federal District Court for the Southern District of Mississippi**
**Clerk to Judge Guirola**
**Chambers of Chief Judge Louis Guirola**
**Gulfport, MS**

**For the attention of the Chief Judge**

*By email and post*

**Re: 1:2012-cv-00090 and other cases listed below**

Your Honor:

I am no longer represented by counsel in this proceeding, and am writing this letter to express serious concern over a pattern of misrepresentation and abuse that I believe requires Court attention. I apologize in advance for its length, but ask that it be filed in the record as was the letter to Your Honor by Daniel Abel.

In October, 2014, inveterate blogger Douglas Handshoe and his attorney Jack "Bobby" Truitt filed documents with two Mississippi courts, on three separate occasions, that contradicted previous sworn statements or intentionally misrepresented facts to this Court to advantage themselves. Facts indicate Mr. Truitt, in violation of *Mississippi Rules of Professional Conduct* 3.3(a)(2) earlier failed to disclose a material fact to this Court and the Fifth Circuit Court of Appeal when disclosure was necessary to avoid assisting a criminal or fraudulent act by the client. That is, if further investigation does not disclose that Mr. Truitt participated in the fraud. On two occasions in 2014, both Mr. Handshoe and Mr. Truitt have knowingly misrepresented to this Court the real ownership of a $48,000 judgment debt ordered by Your Honor.

One sworn statement by Handshoe not only confuted a previous signed assertion, it strongly suggests his involvement in the egregious act of placing false allegations in a third-party lawsuit and then publishing that lawsuit in order to extrinsically influence this district court, while he was a defendant in 2012.

One could argue that the Court of Appeal for the Fifth Circuit has already determined that any judicial notice of this Court in the 2012 Trout Point case was not consequential to its ultimate, correct decision. Therefore the external scheme to influence the Court is not important. However, this is not the standard articulated by The Supreme Court in what remains the pre-eminent case on **fraud upon the court**, *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944). The issue is *any* infection of the judicial process by extrinsic fraud, particularly by a complex scheme to defraud involving officers of the court, which the instant case strongly suggests. How more "extrinsic" could a fraud perpetuated on the court be than the intentional manipulation, involving the Defendant's attorney and ot[...]

**EXHIBIT**

**B**

attorneys, of allegations intentionally placed in a prominent lawsuit in a neighbouring state? How more extrinsic could a fraud be than false publications made on the impugned web site in an Internet defamation case of which the court took judicial notice <u>after</u> the close of submissions?

I am writing this letter in reference to Local Rule 83.1(c) as well as this Court's inherent power to control its own process, FRCP 60(d)3, and 53, requesting that this Court order an investigation by a Special Master of fraud upon the court and order original discipline of attorney Jack Etherton "Bobby" Truitt, admitted *pro hac vice*.

Below is a table briefly summarizing a pattern of misrepresentation involving court process:

| <u>Date</u> | <u>Court/Case No.</u> | <u>(Mis)Representation</u> | <u>Person Signed/Made By</u> |
|---|---|---|---|
| 04/08/13 | Southern District Mississippi 1:2012-cv-00090 | Failure to disclose under MRPC Rule 3.3(a)(2) & Mississippi law in response to letter of Daniel Abel alleging connection between Concrete Busters lawsuit allegations and Defendant Handshoe/Attorney Truitt | Bobby Truitt |
| 4/24/13 | U.S. 5th Circuit Court of Appeal Court of Appeals Docket #: 13-60002 | Failure to disclose on OPPOSED MOTION filed by Appellants to supplement the record on appeal with Letter of 04/04/13 from Daniel Abel to U.S. District Judge Guirola which is attached to the Motion as Exhibit A [7348653-2]. Date of service: 04/24/2013 | Bobby Truitt |
| 4/29/13 | U.S. 5th Circuit Court of Appeal Court of Appeals Docket #: 13-60002 | Failure to Disclose or Respond on OPPOSED MOTION for reconsideration of the 04/25/2013 clerk order denying motion to supplement the record on appeal filed by Appellants 13-60002 [7348653-2] [7351763-2]. Date of service: 04/29/2013 Response/Opposition due on 05/13/2013. No response filed. | Bobby Truitt |
| 6/24/13 | Nova Scotia Supreme Court, Halifax, No. 411345 | "Such tweet establishes no connection between the Respondent [Handshoe] and the Attorneys for Concrete Busters and any allegation of a connection is both fanciful and concocted from whole cloth" | Douglas Handshoe |
| 8/20/13 | Southern District Mississippi 1:13-cv-00251 | Handshoe's Complaint makes no reference to punitive damages, and in affidavits filed one month after removal of the case to the Court, Handshoe stated that his damages totalled $25,000. In his brief concerning subject matter jurisdiction, Handshoe itemized those damages and specifically stated that the damages he sought at the time of removal totalled $25,000. He also | Douglas Handshoe |

| | | submitted an affidavit in which he specifically disavowed his right to recover any damages in excess of $74,999.99 in this lawsuit. | |
|---|---|---|---|
| 03/05/14 | Hancock County Circuit Court, Mississippi | Assignment of Rights & Claims over $48,000 judgment debt to Jack E. Truitt and the Truitt Law Firm, signed by Douglas Handshoe, notarized by Clerk of Hancock County Circuit Court (Mississippi) on March 5, 2014 | Douglas Handshoe |
| 3/24/14 | Civil District Court, Parish of Orleans, Louisiana 14-2631 | "interest in that judgment awarding attorney's fees in the sum of $48,000 was assigned by Douglas Handshoe to intervenors" | Bobby Truitt (and Truitt Law Firm) |
| 4/24/14 | 24th Judicial District Court, Parish of Jefferson, Louisiana 736,680 | "interest in that judgment awarding attorney's fees in the amount of $48,000 was assigned by Douglas Handshoe to plaintiff-in-reconvention, Truitt." | Bobby Truitt |
| 05/03/14 | 22nd Judicial District Court, Parish of St. Tammany, Louisiana | "interest in that judgment awarding attorney's fees in the amount of $48,000 was assigned by Douglas Handshoe to petitioner, Truitt." -- "lawsuits were filed solely in an effort to defeat or prevent the execution of the judgment in favor of petitioners for the sum of $48,000 . . ." | Bobby Truitt |
| 06/13/14 | S. District Mississippi 1:2014-cv-00241 | "It is undisputed . . . that Plaintiffs remain judgment debtors to Defendant [Handshoe] in the amount of $48,000 in the case Trout Point et. al. v. Handshoe 729 F. 3D 481." | Douglas Handshoe |
| 10/01/14 | S. District Mississippi 1:2014-cv-00241 | Handshoe swears he had direct contact with attorney for Concrete Busters of Louisiana, Inc. on October 4, 2012 (affidavit, ECF 21) | Douglas Handshoe |
| 10/08/14 | S. District Mississippi 1:2012-cv-00090 | Writ of Garnishment motion representing that Douglas Handshoe remained the owner of the $48,000 judgment debt for attorney's fees, filed by Truitt on behalf of Handshoe. "The undersigned Jack E. Truitt, attorney for defendant, Doug K. Handshoe . . . respectfully shows that on December 11, 2013, a final judgment granting attorney's fees was rendered in said case in favor of said defendant . . . the following portion of said final judgment remains due and unpaid: $48,000." | Bobby Truitt & Douglas Handshoe |
| 10/31/14 | Hancock County Circuit | Prayer for damages changed to "$817,000, | Douglas Handshoe |

| | Court, 13-0186, having been remanded from MSSD 1:13-cv-00251 | to be trebled according to the law and for all other damages including punitive, exemplary and other damages . . ." | |
|---|---|---|---|
| 03/07/15 | | Truitt represents in a litigation settlement offer to Daniel Abel that he owns the $48,000 judgment debt | Bobby Truitt |

Table of Representations and Failures to Disclose involving
Douglas Handshoe and Jack "Bobby" Truitt

**Factual & Litigation Background**

On **September 1, 2011**, the Plaintiffs herein filed suit against Douglas K. Handshoe and a Jane Doe defendant identified by an email address in Nova Scotia Supreme Court (Canada) with a First Amended Statement of Claim, amended September 1, 2011. Causes of action included defamation, intentional infliction of mental distress, and civil assault, among other claims. Handshoe was personally served with the Notice of Action. Handshoe later identified that "Jane Doe" defendant as being former Asst. Parish Attorney for Jefferson Parish (Louisiana) Anne-Marie Vandenweghe.[1] (The First Amended Statement of Claim from Nova Scotia is in the record of the instant proceeding).

Plaintiffs won default judgment in the amount of CAN $427,000 against Defendant Handshoe (not against Vandenweghe), with the Canadian Court issuing an Order in February, 2012 (Trout Point Lodge et. al. v. Handshoe et. al., 2012 NS SC 245). Under the Nova Scotia Limitation of Actions Act, the plaintiffs have 6 years to prosecute the causes of action against "Jane Doe."

Appearing *pro se*, Defendant Handshoe immediately (**February 8, 2012**) filed an action for a declaratory order under the SPEECH Act with this Court (1:12-cv-00038-HSO-RHW, Slabbed New Media, LLC et al v. Trout Point Lodge, Limited et al.). Mississippi attorney Thomas Vaughn then enrolled in the case and issued summons in March, 2012. Attorney Vaughn then almost immediately stepped down from the case.

Also in **March, 2012**, Plaintiffs sought to enroll the Canadian judgment in Hancock County Circuit Court. Handshoe removed that enrolment to this Court citing the SPEECH Act. Apparently unable to find local counsel, shortly thereafter Louisiana attorney Jack E. "Bobby" Truitt made his appearance for Handshoe, having been admitted *pro hac vice*.[2] According to the local rules of the Court, Mr. Truitt had to sign,

> an affirmative statement that the applicant has read and is familiar with the LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE NORTHERN AND SOUTHERN DISTRICT OF MISSISSIPPI and the ethics, principles, practices, customs and usages of the

---

1  Under the Broussard administration, Vandenweghe was the Assistant Parish Attorney in charge of public record requests, including from federal criminal investigators and the media.

2  In the Plaintiffs' opinion, Handshoe's Mississippi attorney Gerald Cruthird failed to exercise any required supervisory responsibility over Mr. Truitt's filings with this Court. Mr. Cruthird, for example, did not sign pleadings. He also did not participate in the court-mandated settlement conference, the contents of which Mr. Handshoe immediately published on the Internet in violation of local rules. According to those local rules of this Court, Mr. Cruthird as resident attorney was obliged to be "responsible for the conduct of the proceeding before the court. It is the duty of the resident attorney to advise the client of the resident attorney's independent judgment on contemplated actions in the proceedings if that judgment differs from that of the non-resident attorney. At least one resident attorney must sign every submission filed with the court and must personally appear and participate in all trials, in all pretrial conferences, case management conferences and settlement conferences, hearings and other proceedings conducted in open court, and all depositions or other proceedings in which testimony is given."

legal profession in the State of Mississippi, including but not limited to the MISSISSIPPI RULES OF PROFESSIONAL CONDUCT required of the members of the Mississippi Bar as well as the procedures of this court . . .

Handshoe then dismissed his declaratory judgment action, and the parties agreed to proceed by way of cross motions for summary judgment, with the evidentiary record to be limited to the trial court record from Nova Scotia.

In **February, 2010**, according to her own lawsuit, interim Jefferson Parish President Steve Theriot had suspended Vandenweghe as assistant parish attorney, accusing her of blogging while at work. In May, 2010, Theriot and Jefferson Parish filed a lawsuit in Louisiana state court seeking the identities of anonymous online bloggers publishing words they claimed were defamatory on Defendant Handshoe's blog "Slabbed" and at nola.com (Exhibit "A"). That lawsuit was soon thereafter withdrawn by Theriot and Jefferson Parish. In November, 2010, Vandenweghe was fired from her government position by new Parish President Young (Exhibit "B").

On **August 25, 2011**, Vandenweghe filed a lawsuit against Theriot and her former employer Jefferson Parish, Louisiana. Counsel of record was Jack E. "Bobby" Truitt (Cf. the docket of EDLA 2:11-cv-02128-CJB-ALC Vandenweghe v. Jefferson Parish et al). She alleged labor violations, defamation, and other causes of action. On October 1, 2012, many of Vandenweghe's claims, including those for defamation, were dismissed with prejudice. The case was ultimately settled out of court.

Submissions by the parties to this Court in the present case closed in **late August, 2012**.

During most of 2012, former Jefferson Parish President Aaron Broussard was under indictment for federal wire fraud and other charges. As Your Honor knows, it was in the context of the criminal and media investigation of Broussard leading up to those indictments that Defendant Handshoe had defamed the Plaintiffs. The Government was contemporaneously pursuing an investigation into Frederick Heebe and others related to a waste disposal contract granted to River Birch Landfill by Broussard's administration purportedly worth hundreds of millions of dollars. On **August 31, 2012**, the Government in the Broussard case filed a motion to introduce intrinsic evidence or "other act" evidence under Federal Rules of Evidence 404(b) (ECF 146, USA v. Broussard, Case 2:11-cr-00299-HH-FHS, EDLA). (ECF 33)

In that brief, the Government alleged that Broussard had used a Louisiana LLC named "Nova Scotia Enterprises" as a vehicle by which Jefferson Parish vendors or contractors had funnelled money to Broussard in violation of criminal law while he was in office. Though the instant plaintiffs were never mentioned or referred to anywhere in the brief, Handshoe immediately published on Slabbed the falsehood that prosecutors had "revealed" the Plaintiffs' direct involvement in the alleged criminal scheme. Nothing was further from the truth, as the brief clarified exactly why Nova Scotia had previously been alluded to during the investigation.

In the Plaintiffs view, the juxtaposition of the Government's brief with Handshoe's published misrepresentations about it clearly illustrated for the Court the kind of defamatory falsehoods Handshoe had been publishing about the Plaintiffs since January, 2010, including his blatant misrepresentation of underlying sources. These were filed with this Court as Exhibits "A" & "B" to the Plaintiffs' emergency motion to this Court demonstrating the falsehoods (ECF 33). The Plaintiffs argued:

> When reading Exhibits "A" and "B" together, there is absolutely no way that the defamation published by Defendant can in any way be based upon the contents of Exhibit "B"; and in fact, the opposite is true. The U.S. Attorney's filing set forth in Exhibit "B" proves that Plaintiffs are not involved with the corrupt practices Defendant alleges in today's publication set forth in Exhibit "A". Plaintiffs are nowhere mentioned in that pleading.

The Plaintiffs also complained of Handshoe's continued false publications about the plaintiffs while this Court was deliberating. The Court took no action on the motion to expedite, but did look at the Slabbed blog in October, 2012, taking judicial notice of certain facts as demonstrated by the Court's decision on summary judgment.

Handshoe had repeatedly argued before this court under the SPEECH Act that his statements about the Plaintiffs were true or substantially true under Mississippi law.

On **October 4, 2012**, attorneys at Smith & Fawer, LLC, a Louisiana law firm, filed an amended complaint in the lawsuit by Waste Remediation of Plaquemines, LLC. and Concrete Busters, of Louisiana, Inc. against Frederick Heebe and others involving the same Jefferson Parish waste disposal contract that was subject of the federal criminal investigation, hereafter the "Concrete Busters" complaint (Exhibit "C").[3] In that amended complaint, the plaintiffs alleged that Plaintiff Trout Point Lodge, Limited, and another of the instant personal plaintiffs' businesses, Cerro Coyote, S.A., were "shell companies" used in a criminal racketeering conspiracy involving Aaron Broussard, Frederick Heebe, and others. Such allegations closely paralleled defamatory allegations about the Plaintiffs published on the Slabbed blog, as reflected in the 2011 Nova Scotia First Amended Statement of Claim and the Nova Scotia court's 2012 decision, which noted Handshoe's defamatory allegations that the Plaintiffs were involved with "organized crime." Justice Hood found Handshoe had published the instant Plaintiffs were "part of a money laundering scheme involving Mr. Broussard and part of a political corruption scandal involving Mr. Broussard, which is now the subject of FBI investigation" (2012 NS SC 245).

In addition, the amended Concrete Busters complaint contained allegations that the instant plaintiffs' lawsuits were part of a conspiracy including the Plaintiffs to silence legitimate investigation of corruption involving Broussard and his administration by, among others, the Defendant. Again, such allegations closely paralleled defamatory utterances published by Handshoe on the Slabbed blog. The amended complaint was signed by attorney Randall Smith.

The amended Concrete Busters complaint also re-stated and adopted verbatim the allegations of Vandenweghe's federal lawsuit filed by Bobby Truitt, including the causes of action that had been dismissed with prejudice by the federal district court.

From Mississippi, Handshoe published the entire amended complaint in PDF format on Slabbed within hours of it being filed in New Orleans, which was at 10:54 a.m., according to the stamp.

That Slabbed PDF file's metadata shows the the original PDF file was both created and produced on a Savin MP C5502A office machine at a specific date and time: "2012-10-04T11:11:41." It was later modified: "2012-10-04T16:45:36." The Smith & Fawer law firm uses a Savin MP C5502A according to another PDF of a document scanned by Smith & Fawer in the possession of Daniel Abel (Exhibits

---

3   It may or may not be relevant, subject to further investigation, that Anne-Marie Vandenweghe, who lives in Harahan, Louisiana, is a family friend of the Lauricella's, who in turn are the beneficial owners of Plaintiff Waste Remediation of Plaquemines. "Sugar" Lauricella was cited by Vandenweghe as a witness in her federal district court lawsuit.

"E" & "D").

On **October 5, 2012**, Handshoe published a lengthy post on the Concrete Busters allegations entitled "Civil District Court lawsuit filed by Concrete Busters against River Birch terms Trout Point Lodge Ltd. of Nova Scotia a 'shell company'." He published: "I have an outstanding matter in United States Federal District Court in Gulfport before Judge Louis Guirola that my lawyer, Bobby Truitt has me barred from commenting upon. But that does not mean that we can't let Concrete Busters tell part of that story . . ." (Exhibit "F").

Handshoe did more: He published the false allegation on Slabbed that the co-owner of Trout Point Lodge, Louisiana attorney Daniel G. Abel, was Aaron Broussard's law partner. He also published that the Federal Bureau of Investigation had visited him as part of their investigation into Nova Scotia Enterprises.

On **December 19, 2012**, this Court rendered its final decision and included reference in its reasons to the false allegations within the Concrete Busters complaint, to the false fact that Aaron Broussard was a defendant in that lawsuit, and to the false fact that Daniel Abel was Aaron Broussard's law partner.[4]

On **January 21, 2013**, one month after this Court issued its final Order on summary judgment, Handshoe published on Slabbed:

---

[4]     In reaching its final judgment on cross motions for summary judgment in the instant case, this Honourable Court took judicial notice of certain facts not in the record. In footnote 9, the Court wrote that "During 2012 alone, there have been approximately sixty publications on "Slabbed" that reference the plaintiffs." On page 6, the Court notes that "Other blog entries contain no content about Vaughn [sic] or Perret or Trout PointLodge, but Handshoe links the entries to their names with "tags."" The Court then references an October 6, 2012 blog post by Handshoe. October 6, 2012 was long after the close of submissions from the parties in this proceeding and just 2 days after the Concrete Busters amended complaint was published on Slabbed. At footnote 15, the Court noted the (incorrect) fact that Plaintiff's business partner Daniel Abel was convicted-felon Aaron Broussard's former law partner, a false fact that was only ever published on Slabbed. The Court went on to find:

> Moreover, the Court is aware that there is a civil action pending in the United States District Court for the Eastern District of Louisiana against Broussard and others in which it is alleged that Trout Point Lodge, Ltd. was one of many "co-conspirators" in a criminal scheme involving various public officials. See Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC v. Frederick R. Heebe, et al., No. 2:12cv2596-NJB-KWR (E.D. La.). It has also been alleged that another business of Vaughn's [sic] and Perret's, Cerro Coyote, SA, is another "co-conspirator." According to the record, Daniel Abel was also an owner of Cerro Coyote.

None of the above material was in the record, and judicial notice was taken of material facts without the Plaintiffs being afforded the right to confront the evidence so noticed, in line with the Federal Rules of Evidence. The Concrete Busters amended complaint was filed on October 4, 2012 and published on Slabbed the same day. The Court was looking at and taking judicial notice of Slabbed in October, 2012, if not earlier. It is reasonable to presume that the Court learned of the Concrete Busters lawsuit and its false allegations via the Slabbed blog. It is a reasonable inference that Douglas Handshoe can and does monitor who is looking at his blog.

Unfortunately for the instant Plaintiffs, the allegation that Daniel Abel was Aaron Broussard's former law partner, and the criminal allegations contained in the Concrete Buster's lawsuit proved to be false and unfounded. The Concrete Busters lawsuit was, in March, 2013, amended by consent by Smith & Fawer to remove all allegations relating to the Plaintiffs. It was shortly thereafter dismissed in its entirety by consent.

Why was this Court examining Slabbed? According to its decision, the answer lies in the SPEECH Act itself. Handshoe had presented repeated arguments in his briefs to the Court that his allegations, found defamatory by the Nova Scotia court, were either true or substantially true. This Court was applying prong B of the SPEECH Act:

> (B) even if the defamation law applied in the foreign court's adjudication did not provide as much protection for freedom of speech and press as the [F]irst [A]mendment to the Constitution of the United States and the constitution and law of the State, the party opposing recognition or enforcement of that foreign judgment would have been found liable for defamation by a domestic court applying the [F]irst [A]mendment to the Constitution of the United States and the constitution and law of the State in which the domestic court is located. § 4102(a)(1).

For lack of a better term we've gotten feedback from the federal judiciary twice during the last 5 plus years. First time was from an article 3 judge via a former law clerk who wanted to know some about my and Nowdy's background as this person was a fan of our insurance coverage.[5] (Exhibit "G").

The Plaintiffs were extremely suspicious about the origins of the Concrete Busters false claims, but had no evidence of the Defendants' involvement in a scheme to concoct those claims, and did not realize the gravity of the false complaints until this court's final decision on December 19, 2012.[6]

In **early 2013**, the within plaintiffs filed a second lawsuit in Nova Scotia Supreme Court against Handshoe for four instances of copyright infringement under the *Canada Copyright Act* involving his web site Slabbed (Halifax No. 411345); that claim was subsequently amplified to include defamation claims for publications made in Nova Scotia during the court proceeding. Handshoe filed a defence, sought a judge's recusal, filed a motion seeking to be excused from cross-examination on his own affidavit, filed a motion opposing conversion of an Application in Court to an Action, and filed a summary judgment motion. The latter was rejected by the court. He was determined by the Prothonotary to have violated a judge's direction to be civil in his communication with the court and the Plaintiffs (Cf., generally Trout Point Lodge v. Handshoe 2014 NS SC 62). When the Nova Scotia court ruled Handshoe would have to submit to cross-examination on his affidavit, he withdrew it as evidence, leaving his motion without any evidence on which the court could proceed.

In **early March, 2013**, the chief of the Justice Department's Public Integrity Section and its criminal division, filed motions abruptly ending the long and costly federal investigation against Frederick Heebe and River Birch landfill. In June 2012, the New Orleans U.S. attorney's office of James Letten had recused itself from all matters relating to River Birch after AUSAs Sal Perricone and Jan Mann were exposed as anonymous authors of provocative comments on NOLA.com about open federal investigations.[7] Frederick Heebe had exposed Perricone as an online blogger in an earlier Louisiana lawsuit.

On **April 4, 2013**, Daniel G. Abel wrote a letter to this Court stating that, among other things, during his recent discussions with attorney Stepehn Gele of the Smith & Fawer law firm over the false allegations contained in the Concrete Busters lawsuit, Bobby Truitt's "name came up with no prompting from me" and the Smith & Fawer attorney had "contact with attorney Bobby Truitt." (ECF 48). He alleged "fabrication of a state court pleading . . . created & filed solely for the purpose of influencing your opinion in this case." He cited FRCP 60(d)3. Mr. Abel made these assertions stating that he did so as an attorney practicing in the federal Fifth Circuit aware of Rule 11 of the Federal Rules of Civil Procedure. Smith & Fawer also retracted all allegations in a letter to Abel, which was included as an exhibit. Both Mr. Abel's letter and the letter from Smith & Fawer were filed in the record of the instant case by the Court. No response was filed by Mr. Truitt or Mr. Handshoe.

---

5   It is common public knowledge that judges of this Court had their property "slabbed" in Hurricane Katrina and were involved in insurance litigation covered by Handshoe's blog, according to an article in the *Wall Street Journal*. Liam Pleven "The Gulf Coast, Still Wrecked, Grapples With Insurance Suits," August 17, 2006.

6   In a bizarre turn of events worthy of further investigation, when the Concrete Busters lawsuit was removed to federal district court, the docket was amended so that Trout Point Lodge, Cerro Coyote, S.A., and Aaron Broussard all appeared as named Defendants even though this was not the case.

7   It may or may not be relevant that Vandenweghe attended Tulane University Law School with Letten and Mann, and also that the Plaintiffs received a phone call to the Trout Point business number in Canada from the New Orleans U.S. Attorney's Office in March, 2012, where the caller pretended to have misdialed. AUSA Sal Perricone also posted a comment about Vandenweghe's lawsuit on nola.com suggesting that Vandenweghe was the "alter ego" of Slabbed.

On **April 23, 2013**, the federal district court in the Concrete Busters case dismissed all the allegations concerning the instant plaintiffs (Exhibit "H"). In May, 2013, the entire lawsuit was dismissed by consent. It is trite analysis to say that the Concrete Busters civil lawsuit paralleled and relied upon the federal criminal investigation of River Birch, Heebe, and Broussard, and that when the federal investigation ended due to the blogging scandal, so did the Concrete Busters litigation.

In late April, the Clerk of Court of Appeal denied Plaintiffs' motion to expand the record on appeal. The motion was opposed by Handshoe/Truitt, but they filed no brief in opposition. The Plaintiffs on **April 29, 2013,** moved for reconsideration by a judge, which Handshoe/Truitt again opposed, and the court directed "Response/Opposition due on 05/13/2013." Again, no response was filed. Judge Walker-Elrod ultimately approved the motion. The record on appeal was expanded to include the letter of Mr. Abel to this Court as well as the letter to Abel from Stephen Gele of Smith & Fawer. The instant Plaintiffs' attorney, however, failed to include as instructed an affidavit from Mr. Abel also filed with this Court stating and documenting that the allegation by Handshoe that he was Aaron Broussard's law partner was false (ECF 44).

Handshoe/Truitt also did not respond to this Court when Mr. Abel's letter was filed in the record, and did not comment on his affidavit evidencing he was never Aaron Broussard's law partner.

On **June 24, 2013**, while the Court of Appeal was deliberating including considering the expanded record on appeal, Handshoe filed a brief within the copyright infringement proceeding in Nova Scotia. Mr. Handshoe unequivocally stated in his signed submission to that court that any suggestion of "a connection" between "attorneys for Concrete Busters" and himself was "both fanciful and concocted from whole cloth" (Exhibit "I", paragraph 41). Mr. Handshoe subsequently withdrew from that proceeding before discovery commenced, and as previously indicated, would not consent to be cross-examined on his own affidavit, which he subsequently withdrew when the court denied his motion.

In **August, 2013**, the Court of Appeal heard oral argument in Houston, Texas.

In **September, 2013**, the instant Plaintiffs lost on appeal. In **December, 2013**, this Court ordered $48,000 in attorney's fees in favor of Defendant Handshoe. To the Plaintiffs' knowledge, Handshoe never made that Order executory.

In **May, 2013**, this Court will recall that Handshoe had sued Aaron Broussard, Nova Scotia Enterprises, Daniel Abel, Chris Yount and the instant plaintiffs in Hancock County Circuit Court. Causes of action include alleged "conspiracy," abuse of process, and malicious prosecution. Handshoe did not state an amount in controversy. The instant Plaintiffs and their co-defendants had the case removed to this Court (1:2013-cv-00251), arguing that the amount in controversy was truly more than $75,000 and that punitive damages would likely be involved. They also sought dismissal on various grounds. On August 20, 2013, Handshoe filed an affidavit stating that his damages were less than $25,000, that he would not claim punitive damages, and he would never sue for more than $74,999.99. In a reasoned decision based in large part on that affidavit, Your Honor remanded the case back to state court, where it has largely stagnated.

In **late 2013**, Handshoe notified the Nova Scotia court of his intention to not participate further in that copyright infringement proceeding, but demanding notice of all subsequent steps taken in the proceeding. A damages assessment hearing was held, including 2 days of presentation of evidence and testimony. Handshoe chose not to participate. In late February, 2014, the Nova Scotia court issued its

orders, including sending them instantly to Defendant Handshoe. The Court issued a component judgment for copyright infringement. The copyright infringement judgment was for $180,000.00.

In **late February, 2014**, Handshoe published on Slabbed that he had learned the Plaintiffs were seeking an attorney to enforce the copyright infringement judgment in Mississippi, which was true. On **March 5, 2014**, Handshoe in writing **assigned to Bobby Truitt the judgment debt of $48,000** ordered by this Court. The transfer was brought by Handshoe to the Chancery Clerk of Hancock County, where it was notarized (Exhibit "J"). That debt instrument was subsequently filed by Truitt with three state courts in Louisiana, including in a March 24, 2014, intervention in the instant plaintiffs lawsuit against the Jones Walker law firm in New Orleans Civil District Court. That case has now been dismissed with prejudice with no counterclaims filed.

Regarding their Canadian copyright judgment, Plaintiffs filed a Petition to Enroll Foreign Judgment in the Circuit Court of Hancock County, Mississippi, on **June 2, 2014**. Defendant Handshoe removed the state court action to this Court on June 11, 2014. He argued that Plaintiffs were actually trying to enforce a foreign defamation judgment, and, thus, this Court once again had jurisdiction over Plaintiffs' action pursuant to the SPEECH Act. That case was subsequently remanded to Hancock County on motion by the Plaintiffs, and a motion to compel Mr. Handshoe to cooperate in discovery is slated for May, 2015.

On **October 1, 2014**, Defendant filed a motion with this Court in the Canadian copyright judgment case (1:2014-cv-00241) seeking an anti-suit injunction against New Orleans Civil District Court in the matter of Mr. Abel's defamation lawsuit against Mr. Handshoe, Bobby Truitt, and Anne-Marie Vandenweghe related to publications all three had made on the Slabbed blog and on YouTube. At that point, Chief Judge Griffin had twice denied motions by Defendant Handshoe to dismiss the lawsuit as a La CCP Art. 971 "strategic lawsuit against public participation." In the second motion, Handshoe pretended to the court that he had not already filed an Art. 971 motion, though he was in court on the day the court denied that first motion.

A similar motion by Mr. Truitt has been denied by Judge Griffin, by the 4th Circuit Court of Appeal, and unanimously by seven justices of the Louisiana Supreme Court (on **February 13, 2015**) (Exhibits "L" & "K"). Both the trial court and the court of appeal found that allegedly defamatory publications about Mr. Abel and Trout Point Lodge made by Truitt were not on a matter of public interest. The Louisiana Supreme Court agreed.

In the context of that motion for injunction filed with this Court in 1:2014-cv-00241, Defendant Handshoe on **October 1, 2014**, filed a sworn affidavit in which he **admitted to contact with attorney Stephen Gele of Smith & Fawer contemporaneous with the filing of the amendment to the Concrete Busters lawsuit in Louisiana**. He also demonstrated insider knowledge of the drafting of the amended complaint, which as already shown contained false criminal allegations about the Plaintiffs. (Exhibit "M").

On **October 8, 2014**, in the instant proceeding, Bobby Truitt filed a motion on behalf of Douglas Handshoe for a writ of garnishment against Plaintiff Trout Point Lodge related to the judgment debt for $48,000 in attorney's fees (ECF 61). **No notice of the motion was served on the instant plaintiffs.** The Plaintiffs did not learn of the motion until November 24, 2014, when this Court denied the motion (ECF 62).

On **October 31, 2014**, Handshoe filed a "First Amended Complaint and Request for Injunctive Relief"

with Hancock County Circuit Court. Handshoe never received leave to amend the complaint and has not served the instant Plaintiffs with it. In that amendment, Handshoe altered the prayer for damages to **"$817,000, to be trebled according to the law and for all other damages including punitive, exemplary and other damages . . ."** (Exhibit "N").

On **March 6, 2015**, after his loss in Louisiana Supreme Court, attorney Truitt sent an unsolicited offer to Daniel Abel, which included his willingness to "forego execution of the attorney's fee award in the Trout Point litigation" (Exhibit "Q"). This was despite the fact that Mr. Abel was not a party to the instant litigation, and has nothing to do with the attorney's fee award.

## Fraud Upon the Court and a Pattern of Fraud
## Involving the Defendant and Officers of the Court

This Court's filing of the letters of Daniel Abel and Stephen Gele in the public record of this proceeding **put Defendant Handshoe and his counsel Bobby Truitt on notice of a serious and material allegation of fraud upon the court under FRCP 60(d)3**. Truitt, practicing in this Court, was and is bound by an obligation under Mississippi law, the local rules of this Court, and the Rules of Professional Conduct, to disclose any fraudulent activity of his client. Not doing so is equivalent to an intentional misrepresentation under Mississippi law.

To say that Mr. Truitt was bound to not participate in a scheme to commit fraud on the court goes without saying.

The burden on Handshoe and Truitt to disclose their relationship to Smith & Fawer increased in April, 2013, when they opposed the Plaintiffs' motion to expand the record on appeal to include the Abel & Gele letters, and when Circuit Judge Walker-Elrod set a deadline to file an opposition.

Silence, in these circumstances, was not only inappropriate, it was in fact part of an attempt to cover up the truth regarding a scheme between the attorneys for Concrete Busters and Handshoe/Truitt to extra-judicially influence this Court, as specifically alleged by attorney Abel.

The coverup took a further step far beyond mere non-disclosure to a positive statement to the instant Plaintiffs by Handshoe in June, 2013, that he had no connection whatsoever to the attorneys who had filed the Concrete Busters amended complaint. The timing was designed to insulate himself against any allegations that might be made to the Court of Appeal based on the expanded record.

Handshoe waited until long beyond a year since the Court of Appeal decision to make new revelations (just as he did later that month in Handshoe v. Broussard et. al. by altering his prayer for damages).

Until October, 2014, Handshoe never admitted to contact with Smith & Fawer attorneys. On the contrary, he explicitly denied such contact in subsequent court filings he made in Nova Scotia Supreme Court as well as on Slabbed. Both Truitt and Handshoe remained silent, an act of omission, when filings both to this Court and the U.S. Court of Appeal for the Fifth Circuit were made by the Plaintiffs concerning the false Concrete Busters allegations. Notably, "Mississippi recognizes that failure to disclose a material fact may constitute a knowing misrepresentation" *Blackwell v. Metropolitan Life Ins. Co.*, 190 F. Supp. 2d 911 (S.D. Miss. 2001) citing *Mississippi Bar v. Mathis*, 620 So. 2d 1213 (Miss. 1993).

Indeed, in October of last year, a pattern of fraud, manipulation, and coverup involving Handshoe and Truitt came to light. Not only did Handshoe

- admit to contact with Smith & Fawer contemporaneous with filing the amended Concrete Busters complaint,
- Truitt also intentionally misrepresented the ownership of a $48,000 judgment debt issued by this court to this court without giving notice to the Plaintiffs of his motion,
- and Handshoe amended a Hancock County Circuit Court lawsuit once removed to this Court to claim damages exceeding $2 million, whereas he had filed an affidavit with this Court stating that he would never sue for more than $74,999, which this Court relied upon in its reasons to remand.

That fact pattern does not include, of course, Handshoe's signed intentional (mis)representations to this Court in June, 2014, that he still owned the judgment debt when he did not, and what appears to be suspect transfer of the $48,000 judgment debt from Handshoe to Truitt in anticipation of litigation over the $180,000 Canadian copyright infringement judgment.

My letter is thus about "far more than an injury to a single litigant," it is about "**a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society**." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944). Handshoe and Truitt are smearing the good name of the court and making a mockery of its institutions, as Handshoe has previously done in Canada.[8] The fraud practiced by Handshoe was not like perjury or fraudulent evidence presented in the course of the proceeding, that is, "intrinsic fraud." Rather this was "extrinsic fraud, that is, fraud that was not the subject of the litigation, that infects the actual judicial process, [and] is grounds to set aside a judgment as procured by fraud." *Browning v. Navarro*, 826 F.2d 335 (5th Cir. 1987).

The interest of this Court and the public in remedying and investigating this fraud is clear: officers of the court were involved (whether those include attorneys at Smith & Fawer or also Bobby Truitt as suggested by attorney Abel awaits discovery), in a coordinated attempt by Defendant Handshoe to extra-judicially shore up his position before this Court. Reprehensibly, court process in Louisiana was manipulated to achieve a cross-border purpose in Mississippi. Like in Hazel-Atlas, *supra*, as the fraud went up the chain, there was intentional non-disclosure not only to this Honorable Court but also to the U.S. Court of Appeal for the Fifth Circuit. Intentional misrepresentations were then made to the Plaintiffs to silence their inquiries. As every move Mr. Handshoe ever makes in litigation appears published on Slabbed, and Mr. Truitt is an avid reader, supporter, and contributor, of Slabbed, he cannot now claim ignorance of his client's actions.

This letter thus asks this Court to consider utilizing its "historic power of equity to set aside [a] fraudulently begotten judgment[]" in order to uphold the "preservation of the integrity of the judicial process." Hazel-Atlas, *supra*; see also Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) ("[This] inherent power [...] allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. [...] Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud."). As the Supreme Court commanded in Hazel-Atlas, "the public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." *Hazel-Atlas* at 246.

In the alternative, I respectfully request the Court to order such an independent investigation, using a

---

8   Handshoe has recently (February 12, 2015) sued Loyola University Law School and its legal clinic for alleged malicious prosecution and abuse of process (mssdce 1:2014-cv-00159).

Master if necessary. "The inherent power of a federal court to investigate whether a judgment was obtained by fraud is beyond question. *Hazel-Atlas Co. v. Hartford Empire Co.*, 322 U. S. 238. "The power to unearth such a fraud is the power to unearth it effectively. Accordingly, a federal court may bring before it by appropriate means all those who may be affected by the outcome of its investigation." *Universal Oil Products Co. v. Root Refining Co.* 328 U.S. 575 (1946). This letter also asks for original discipline against attorney Truitt, and any other relief the Court may wish to grant.

**Indicia of a Scheme to Fraudulently Influence the Trier of Fact**
On April 8, 2013, Plaintiffs' then-Louisiana counsel, Daniel G. Abel, wrote to this Court with concerns about Douglas Handshoe's attorney, Jack "Bobby" Truitt, and fraud on the court under FRCP 60(d)(3) (ECF 48). This Rule reads:

> (d) Other Powers to Grant Relief. This rule does not limit a court's power to:
> . . .
> (3) set aside a judgment for fraud on the court.

As stated in *First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554 (5th Cir. 1996): "To establish fraud on the court, "`it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision."' Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir.1978) (quoting England v. Doyle, 281 F.2d 304, 309 (9th Cir.1960))." Notably, actually influencing the outcome of the decision is not a requirement, the plan or scheme must simply be designed to do so.

This was a serious allegation, filed in the public record; in yet Truitt and Handshoe remained completely silent and offered no response or opposition. The allegation remains un-rebutted.

Attorney Abel's concerns particularly centred on judicial notice by this Court, after submissions had closed, of (a) the false and defamatory fact that Mr. Abel was convicted-felon Aaron Broussard's former law partner while also being a business partner of the Plaintiffs (a false fact that only appeared on Defendant Handshoe's Slabbed blog, and was not in evidence);[9] and (b) of false allegations contained in the lawsuit Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC v. Frederick R. Heebe, et al., No. 2:12cv2596-NJB-KWR (E.D. La.).[10] Those allegations—which included Plaintiffs' participation with Aaron Broussard in criminal racketeering and the use of shell corporations-- were subsequently dismissed at the request of the Smith & Fawer law firm, however only *after* this Court reached its final decision.

Far from being a typical attorney-client relationship, Mr. Truitt has frequently published comments on Mr. Handshoe's blog, Slabbed, and conducted public Twitter exchanges with him. This has included publishing disparaging comments about the Plaintiffs. Mr. Truitt has also admitted to financing Mr. Handshoe's publishing endeavors (in September, 2013), and has acted as a public fund-raiser for Mr. Handshoe's blogging activities (for one example, Exhibit "O"). Mr. Truitt has taken a stake in Mr. Handshoe's enterprise, hence his status as co-defendant in Mr. Abel's defamation lawsuit, and the decision of Judge Griffin, upheld by the Louisiana Supreme Court, that Mr. Abel's action is not a "strategic lawsuit on a matter of public interest."

It is furthermore a fact that during the time Bobby Truitt represented Mr. Handshoe, he simultaneously

---

9 Mr. Abel submitted a sworn affidavit to this Court detailing how he was never Mr. Broussard's law partner.

10 Purportedly due to clerical error, Aaron Broussard, Trout Point Lodge, and Cerro Coyote were all listed as defendants on the docket of the federal district court; this error was only corrected after this Court issued its judgment on the cross-motions for summary judgment. None were ever actually named defendants in that proceeding.

represented Anne-Marie Vandenweghe in federal district court in Louisiana, and that allegations made by Vandenweghe against her former employer Jefferson Parish ended up pleaded verbatim as allegations in the amended Concrete Busters petition. Mr. Truitt, Mr. Handshoe, and Ms. Vandenweghe are all self-acknowledged "friends" who all publish on Slabbed. They all hold a belief that there are no limitations on their "free speech" (Exhibits "R" & "S").[11]

Ms. Vandenweghe filed her petition against Theriot and Jefferson Parish in federal court based on her purported residence in Pass Christian, Mississippi, a vacation home. In yet when Mr. Abel began his defamation lawsuit against Handshoe, Truitt, and Vandenweghe in the Eastern District of Louisiana based on her purported residence, Ms. Vandenweghe suddenly filed her response, *in propia persona*, from River Ridge, Louisiana. Judge Morgan dismissed the suit on motion from Abel, and denied the defendants' motions for attorneys' fees under La. CCP Art. 971. *Abel v. Handshoe*, Civil Action No. 13-88 (E.D. La. May 20, 2013). Abel then filed suit in New Orleans Civil District Court. Truitt, Handshoe, and Vandenweghe appear to have a penchant for taking advantage of manipulating cross-border Louisiana-Mississippi "facts" to suit their current interests.

Notably, Vandenweghe worked in the administration of Aaron Broussard. Vandenweghe was a contributor to Slabbed and an associate of Handshoe, as well a family friend of the Lauricellas, owners of the Plaintiff in the Eastern District of Louisiana "Concrete Busters" lawsuit, Waste Remediation of Plaquemines, LLC.[12]

**"Jane Doe" Had Acute Interest in the Outcome of the Handshoe Proceeding**
When the instant Plaintiffs amended their 2011 complaint in Nova Scotia, they did not know the true identity of the "Jane Doe" defendant (Vandenweghe), and only had an email address provided by Defendant Handshoe's web host in voluntary response to a Canadian court order. It quickly became apparent, through statements published on Slabbed, that "Jane Doe" was Anne-Marie Vandeweghe *aka* Anne-Marie Boudreaux, aka Anne Marie Boudreaux-Vandenweghe, a central figure and federal informant in former U.S. Attorney James Letten's criminal investigation of Aaron Broussard's administration, including the River Birch landfill contract. Indeed, Vandenwege's civil complaint against Jefferson Parish prominently included allegations that she was suspended and then fired as payback for her acting as an informant for the U.S. Attorney's Office and the Federal Bureau of Investigation in the pursuit of Frederick Heebe. Vandenweghe was also a contributor to Slabbed, both under her own name and, according to the lawsuit of Daniel Abel and public statements by Steve Theriot, various aliases.

---

11 As Justice Scalia stated in *RAV v. St. Paul*, 505 U.S. 377, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992): "From 1791 to the present, however, our society, like other free but civilized societies, has permitted restrictions upon the content of speech in a few limited areas, which are "of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky, supra, at 572*. We have recognized that "the freedom of speech" referred to by the First Amendment does not include a freedom to disregard these traditional limitations. See, *e. g., Roth v. United States,354 U. S. 476 (1957)* (obscenity); *Beauharnais v. Illinois, 343 U. S. 250 (1952)*(defamation); *Chaplinsky v. New Hampshire, supra* ("'fighting' words"); see generally *Simon & Schuster, supra, at 124* (Kennedy, J., concurring in judgment). Our decisions since the 1960's have narrowed the scope of the traditional categorical exceptions for defamation, see *New York Times Co. v. Sullivan, 376 U. S. 254 (1964)*; *Gertz v. Robert Welch, Inc., 418 U. S. 323 (1974)*; see generally*Milkovich v. Lorain Journal Co., 497 U. S. 1, 13-17 (1990)*, and for obscenity, see*Miller v. California, 413 U. S. 15 (1973)*, but a limited categorical approach has remained an important part of our First Amendment jurisprudence."

12 Mr. Abel has sued Mr. Handshoe, Ms. Vandenweghe, and Mr. Truitt for defamation involving Slabbed in Civil District Court for the Parish of Orleans (Louisiana). All three defendants filed anti-SLAPP (strategic lawsuit against public participation) motions. Mr. Handshoe filed anti-SLAPP motions twice. All were denied by Chief Judge Piper Griffin. Mr. Abel alleges that Ms. Vandenweghe takes on multiple anonymous personae while publishing on the blog.

Thus it was not only in Handshoe's interest to seek to concoct an extrajudicial scheme to alter the outcome of the SPEECH Act litigation. It was also in Vandenweghe's interest as well. Both defendants had Bobby Truitt as counsel at the same time. This nexus between Vandenweghe, Handshoe, and Truitt was not a coincidence.

**Handshoe Closely Monitored the Viewership of Slabbed**
Handshoe makes a habit of securing the identity of everyone who visits Slabbed. He did so, for example, in October, 2014, when he published about how persons at the New Orleans Civil District Court had visited his blog. See Exhibit "P". He also "welcomed" the Royal Canadian Mounted Police to Slabbed when that police force examined his web site at the same time the personal plaintiffs complained to the Mounties about Handshoe's publishing activities in 2011.

Mr. Abel also claimed in his letter to the Court that during his conversation with Smith & Fawer attorneys in March, 2013, there was a connection between Mr. Truitt and the Concrete Busters' attorneys (Smith & Fawer). Mr. Abel suggested a scheme existed to place false criminal allegations about the Plaintiffs in the lawsuit in order to influence the judgment of this Court, which was examining (taking judicial notice of) Slabbed at the time the amended complaint was published in its entirety on that blog as well as by reporter Manuel Torres on the Times-Picayune web site, nola.com (cf. http://www.nola.com/politics/index.ssf/2012/10/river_birch_bribed_former_jeff.html).

Handshoe's published statement on October 5, 2012, is notable: "I have an outstanding matter in United States Federal District Court in Gulfport before Judge Louis Guirola that my lawyer, Bobby Truitt has me barred from commenting upon. But that does not mean that <u>we</u> can't let Concrete Busters tell part of that story . . ." In fact, Mr. Handshoe never ceased from commenting upon the proceeding before this court in 2012 as evidenced by the instant Plaintiffs' motion to expedite (September, 2012). Thus his purported reference to Mr. Truitt 'barring" him from commenting publicly on the case is frankly, farcical, as the December 19, 2012 decision of this Court itself makes plain. His mention of Your Honor Judge Guirola's name in combination with the use of the third person, including Mr. Truitt and himself, is tell-tale. Mr. Handshoe and Mr. Truitt wanted to have the false allegations in the Concrete Busters lawsuit "tell the story" to this Court through extrajudicial means.

At the time when confronted by Mr. Abel's allegations, neither Mr. Handshoe nor Mr. Truitt stated anything to this Court regarding the alleged relationship between them and the Concrete Busters attorneys (Smith & Fawer, LLC). In our adversarial system, there is an obligation to rebut or refute allegations; not doing so may lead the trier of fact to the reasonable inference that the allegations are true.

When Plaintiffs sought to expand the record on appeal to include Mr. Abel's letter and the letter from Smith & Fawer, Defendant Handshoe through attorney Truitt opposed the motion, but then did nothing to brief the court or submit any evidence to refute the evidence. They again opposed a motion for reconsideration, but failed to file a response by a court-mandated deadline for doing so. Likewise, the letter from Smith & Fawer produced by Daniel Abel remained silent on contacts between the Defendant and the law firm, except to say that the allegations contained in the amended complaint originated with "Slabbed.com." The true URL for Slabbed is "slabbed.org," leading one to question if Stephen Gele had truly used Slabbed for information in the way the letter represented.

As noted by the court in *Rhodes v. LaSalle Bank*, No. 02 C 2059 (N.D. Ill. Feb. 1, 2005) (in the context of discussing FRCP 37):

litigants are presumed to know that deceptive conduct is unacceptable, and parties should know that they "must not engage in such abusive litigation practices as coercing witness testimony, lying to the court, and tampering with the integrity of the judicial system." Quela, 2000 WL 656681, at *6. See also Hal Commodity Cycles Management v. Kirsh, 825 F.2d 1136, 1139 (7th Cir. 1987) ("The Federal Rules of Civil Procedure, as well as local rules of court, give ample notice to litigants of how to properly conduct themselves"). Therefore, litigants who play by their own rules "will find that the game cannot be won." United States v. Golden Elevator, Inc., 27 F.3d 301, 302 (7th Cir. 1994).

Such silence, an act of omission, reasonably lead this Court, the Court of Appeal, and the Plaintiffs to the conclusion that there was no relationship between the Defendant and the attorneys for Concrete Busters and Waste Remediation of Plaquemines. Notably, in Mississippi a lawyer shall not "fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client" (*Mississippi Rules of Professional Conduct*). There is no limitation of this rule to the discovery process. The Mississippi Supreme Court has held such conduct, even though its is an omission, to to be a "knowing misrepresentation." As the commentary to the Rules states: "Rule 3.3(a)(2) is implicit in DR 7-102(A)(3), which provides that "a lawyer shall not ... knowingly fail to disclose that which he is required by law to reveal.""

This situation is thus distinguishable from the situation in *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978). In that and many other cases, the non-disclosure was during discovery, and thus constituted a kind of intrinsic fraud. In the present case, as noted by this court, "The record indicates that there has been no discovery in this action" *TROUT POINT LODGE LIMITED v. Handshoe*, Cause No. 1: 12CV90-LG-JMR (S.D. Miss. Feb. 25, 2013). Moreover, as Your Honor noted in the same footnote in that decision,

> In his Memorandum in Support of his Motion for Summary Judgment, Handshoe represented to the Court that "disposition of the case need not involve discovery and turns on legal issues which [the] Court [could] resolve by the litigants' respective motions for summary judgment." (Def.'s Mem. 35, ECF No. 10).

The Plaintiffs did not have the benefit of discovering Mr. Handshoe, and his attempt to influence this Court by confecting false allegations in a third-party lawsuit was completely extrinsic to the judicial and adversarial process anticipated by the Plaintiffs and this Court. It is one thing to not disclose in discovery, to hold back evidence, it is completely another thing to succeed in extra-judicially influencing a court in its decision, and then when it becomes clear the court included reference to that extra-judicial evidence it its decision, to fail to disclose that the evidence was part of a scheme involving the defendant and court officers. Whether those attorneys included Mr. Truitt or just lawyers for Smith & Fawer is immaterial to the conclusion that there was extrinsic fraud.

Moreover, in an effort to steer the Plaintiffs away from the allegation made by attorney Abel in his letter to this Court, both on Slabbed and in signed submissions later made to the Supreme Court of Nova Scotia in the 2013 copyright infringement case, Mr. Handshoe flatly denied any connection to the attorneys for Concrete Busters. It is no coincidence this was exactly the time period in which the U.S. Court of Appeal for the Fifth Circuit was considering submissions from the parties, including the expanded record on appeal.

This has now proven to be yet another false statement by Handhsoe made to a court of law, this time based on Mr. Handshoe's own sworn testimony. In an affidavit filed with this Court on October 1, 2014, Handshoe now says "Attorney Steve Gele of Smith Fawer leaked this [Concrete Busters] lawsuit

to Slabbed New Media simultaneously with leaking it to the Times-Picayune." Manuel Torres of the Times-Picayune published the amended complaint on nola.com the same day it was filed, October 4, 2012, the same general time during which this Court was taking judicial notice of Slabbed.

Handshoe also testifies in the affidavit filed with this Court that the lawsuit was "drafted, signed and filed by Louisiana attorney Steve Gele of the Smith Fawer law firm." In fact, to anyone perusing the public court record, the amended complaint was signed and filed by attorney Randall Smith, not Stephen "Steve" Gelé. Manuel Torres reported on nola.com, the amended complaint was a "54-page document filed by attorney Randy Smith on behalf of Concrete Busters of Louisiana -- whose bid to dispose of 'woody waste' in Jefferson Parish was rejected in favor of a much broader deal proposed by River Birch -- and Waste Remediation of Plaquemines."

If Mr. Gelé did actually write the amended complaint this would be indicative of an insider relationship between Handshoe and Gele. His reference to Gele as "Steve" suggests this. It is an open question probative of Mr. Handshoe's knowledge of the amended complaint's contents prior to it being filed. Mr. Gelé was indeed the person who wrote the letter to Mr. Abel about the contents of the amended complaint, suggesting he was intimately familiar with how it was composed.

In his October 1, 2014, affidavit, Handshoe also made the sworn statement of fact that Gele's letter was "part of a litigation settlement between Smith, Fawer, Abel, and Trout Point Lodge." There is no record of any litigation between or involving Trout Point Lodge, Daniel Abel, Smith & Fawer, LLC, or any members of that law firm. Any knowledge of any threatened litigation or a confidential settlement agreement between Smith & Fawer or its clients and Abel or Trout Point Lodge would directly evidence a continued insider relationship between Handshoe and the law firm. Handshoe did not gain insider knowledge from Abel or the instant Plaintiffs.

In a bizarre turn of events, purportedly due to clerical error at the district court, Aaron Broussard was incorrectly listed as a named defendant on the docket of Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC v. Frederick R. Heebe, et al., No. 2:12cv2596-NJB-KWR (E.D. La.), when that case was removed to federal district court. The instant Court noted in its judgment (the false fact) that Broussard was a named defendant: "the Court is aware that there is a civil action pending in the United States District Court for the Eastern District of Louisiana <u>against Broussard and others</u> . . ." (emphasis added). Trout Point Lodge and Cerro Coyote were also incorrectly listed as defendants on the docket. In fact, not being a defendant, Broussard (like Plaintiffs' businesses Trout Point Lodge & Cerro Coyote) were never served with any process in that proceeding.

In sum, all of the above point to an attitude and pattern of extreme deception, acts of omission, gaming of process, and misrepresentation involving the Court's process evidencing Mr. Handshoe's and Mr Truitt's win-at-all-costs attitude towards litigation involving the Plaintiffs. "[T]he Court is unaware of any case which supports the proposition that fraud may not be inferred or that it may not be established clearly and convincingly by circumstantial evidence." *Federal Sav. & Loan Ins. Co. v. Williams*, 622 F. Supp. 132 (D. Md. 1985).

**Other Fraud & Misrepresentation to this Court**
As noted by this Court in *Handshoe v. Broussard*, Cause No. 1: 13CV251-LG-JMR (S.D. Miss. Sept. 23, 2013), Mr. Handshoe wanted remand of his "abuse of process" case against the Plaintiffs back to state court. This Court summarized representations and sworn testimony submitted by Handshoe:

> The Court is not persuaded by the defendants' arguments that Handshoe may later seek damages

exceeding $75,000. Handshoe's Complaint makes no reference to punitive damages, and in affidavits filed one month after removal of the case to this Court, Handshoe stated that his damages totalled $25,000. (*Handshoe* II, ECF Nos. 19-1, 20-1, 24-1). In his brief concerning subject matter jurisdiction, Handshoe itemized those damages and specifically stated that the damages he sought at the time of removal totalled $25,000. He also submitted an affidavit in which he specifically disavowed his right to recover any damages in excess of $74,999.99 in this lawsuit.

This Court remanded the case to Hancock County Circuit Court with that decision. Then, on October 31, 2014, Mr. Handshoe filed an amended complaint with that court in which he seeks treble damages based on the $817,000 in judgments the instant Plaintiffs have against Handshoe in Canada, as well as punitive and exemplary damages. That would make the claim's value well in excess of $2 million for jurisdictional purposes. How Mr. Handshoe's damages rose from $25,000 to $2 million is not explained in the complaint, nor is his decision to toss to the side his sworn avowal to this Court that he would not seek any damages in excess of $74,999.99.

As noted in *Lewis v. CHARLEY CARRIERS, INC.*, Civil Action No. 5: 09-CV-170-DCB (S.D. Miss. Mar. 31, 2010). at footnote 2:

> If the plaintiff later attempts to amend the complaint to seek damages in excess of $75,000, exclusive of interest and costs, this Court may entertain removal under Tedford v. Warner-Lambert Co., 327 F.3d 423, 428-29 (5th Cir. 2003). See also Lee v. State Farm Mutual Automobile Ins. Co., 360 F. Supp. 2d 825, 832-33 (S.D. Miss. 2005)(stating that under Mississippi rules a plaintiff may amend as late as the close of evidence at trial, however "the Court presumes that the state trial judge would prohibit such an amendment as it would be allowing the Plaintiff to **perpetrate a fraud on this Court**").

The Court of Appeal for the Fifth Circuit has already stated that taking judicial notice of allegations contained in the Concrete Busters case was acceptable and "careful review of the district court opinion demonstrates that it did not use these sources to reach any conclusion" (*Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481 (5th Cir. 2013) at fn. 12). (The Court of Appeal was not provided with Daniel Abel's affidavit concerning Aaron Broussard in the expanded record on appeal due to an error made by Plaintiffs' counsel).

The Court and the Defendant may therefore say that any complex scheme to influence the trier of fact, and to place the false criminal allegations about the Plaintiffs in the amended Concrete Busters complaint was inconsequential to the judgments of this Court and the Court of Appeal. The same might be said about the false allegation that Daniel Abel was convicted-felon Broussard's law partner while Abel was also the Plaintiffs' business partner.

However, as articulated by The Supreme Court of the United States, the standard to be applied in cases of fraud involving extrinsic manipulation of the judicial process and the adversarial system does not turn on the outcome. The Plaintiffs did not know about the now-admitted relationship between Handshoe and Stephen Gelé, who according to Handshoe's sworn testimony, "drafted" and "filed" the amended complaint containing the false and now-dismissed criminal allegations about the Plaintiffs and Aaron Broussard. They only learned of the contact in October of 2014.

The Plaintiffs have pointed to evidence of both intrinsic and extrinsic fraud involving this Court's process over a lengthy period of time (2012-2014). This Court has found Handshoe was on a "campaign to damage" the Plaintiffs since (incorrectly) blaming them for loosing his web host in April,

2011. I now suggest, in line with Mr. Abel, that from day one of this litigation up to November 24, 2014, there was an ongoing "deliberately planned and carefully executed scheme to defraud." This is convincingly evidenced despite the fact that the Plaintiffs have never had the opportunity to conduct discovery.

Finally, the suggestion that none of this evidence played a role in altering the outcome of the final judgments of this Honorable Court and the Court of Appeal is, again, not the standard that must be applied. In *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), the Circuit Court had determined "that the spurious publication, though quoted in the 1932 opinion, was not the primary basis of the 1932 decision [of the Circuit Court]." The Supreme Court rejected this in determining fraud upon the court existed.

> The Circuit Court also rested denial of relief upon the conclusion that the Clarke article was not "basic" to the Court's 1932 decision. Whether or not it was the primary basis for that ruling, the article did impress the Court, as shown by the Court's opinion. Doubtless it is wholly impossible accurately to appraise the influence that the article exerted on the judges. But we do not think the circumstances call for such an attempted appraisal.  (emphasis added)

To paraphrase, the (false) criminal allegations contained in the amended Concrete Busters complaint; the (false) fact that Mr. Abel was Mr. Broussard's law partner; and the (false) fact that Mr. Broussard was a defendant in the Concrete Busters litigation alongside the Plaintiffs "did impress the Court, as shown by the Court's opinion", "whether or not it was the primary basis for that ruling." "It is wholly impossible accurately to appraise the influence that the [false evidence] exerted."

> tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. *Hazel-Atlas, supra.*

In fact, this conduct amounted to "the fabrication of evidence by a party in which an attorney is implicated," which has repeatedly been cited as fraud on the court under Rule 60(d).

> Cases in other Circuits make clear that "fraud upon the court" under the saving clause is distinguishable from "fraud . . . misrepresentation, or other misconduct" under subsection (3). As the district court explained in *United States v. International Telephone & Telegraph Corp.*, 349 F.Supp. 22, 29 (D.Conn.1972), aff'd without opinion, 410 U.S. 919, 93 S.Ct. 1363, 35 L.Ed.2d 582 (1973):
> > Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *Root Refin. Co. v. Universal Oil Products*, 169 F.2d 514 (3d Cir. 1948) 7 J. Moore, Federal Practice, ¶ 60.33 at 510-11.

*Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978).

Moreover, the pattern of fraud and misrepresentation by Handshoe and Truitt evidenced above makes a fraud upon the court allegation distinctly credible. They approached this litigation with a take-no-prisoners attitude in which ethics and the law fell by the wayside. Compounding this was a purported

clerical error in the Federal District Court for the Eastern District of Louisiana, in which Aaron Broussard, Trout Point Lodge and Cerro Coyote were named in error as parties (defendants) on the Concrete Busters lawsuit federal docket. Neither Broussard nor Trout Point & Cerro Coyote were ever defendants in that proceeding. That error in the docket was only corrected after this honourable Court issued its judgment.

**Intentional Misrepresentations to this Court Regarding Ownership of Judgment Debt: Violation of Mississippi Rules of Professional Conduct, local rules, and FRCP 11**
On December 11, 2013, this Court had issued a judgment awarding Defendant Handshoe $48,000 in attorney's fees, purportedly representing the reasonable cost of litigation in a SPEECH Act case (the instant case) (ECF 56). (At that time, though ruling in favor of Defendant Handshoe, this Court "admonished" the Defendant "to adhere to the Federal Rules of Civil Procedure in the future . . ." due to "failure to file a timely motion pursuant to Rule 54"). As recounted above, in October of last year, Handshoe and Truitt sought a garnishment order from this Court based on that judgment debt in a signed submission. No notice was given to the Plaintiffs by Truitt and Handshoe; it is a reasonable inference that this was due to the fact that if Plaintiffs had received notice of the motion, they would have immediately proved to this Court that the judgment debt was no longer owned by Handshoe and that a misrepresentation was being made.

It is well established that Rule 11 imposes the following affirmative duties with which an attorney or litigant certifies he has complied by signing a pleading, motion, or other document.

> (1) that the attorney has conducted a reasonable inquiry into the facts which support the document;

> (2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument "for the extension, modification, or reversal of existing law;" and

> (3) that the motion is not interposed for purposes of delay, harassment, or increasing costs of litigation.

In *Elliott v. M/V LOIS B*, 980 F.2d 1001 (5th Cir. 1993), a party engaged in intentional misrepresentations to the Court similar to the case here:
> The district court found that Elliott and Ross "filed documents that are misleading and border on perjury, particularly in violation of Rule 11." For example, the court found that Elliott's complaint falsely pleaded that Elliott had acquired title to the vessel from Martin Snead in 1987.

The court awarded $35,000 in sanctions against the party involved, which the appellate court upheld.

Attorney Truitt made clear to this Court in the garnishment motion that he was filing the motion on behalf of Mr. Handshoe, as the judgment creditor: "The undersigned Jack E. Truitt, attorney for defendant, Doug K. Handshoe"; "a final judgment granting attorney's fees was rendered in said case in favor of said defendant . . ." (page 1 of motion). He also swore that he provided notice to the plaintiffs: "I hereby certify that a copy of the above and foregoing has been duly served on all counsel of record by depositing same into the U.S. Mail, postage pre-paid, and/or by hand and/or by facsimile and/or by electronic means on October 8, 2014." To the knowledge of the Plaintiffs and current Mississippi counsel M. Judith Barnett, such a statement was untrue. The motion was filed in the instant case, which was long closed. This deprived the Plaintiffs of the chance to respond to the motion and expose the

fraud being perpetrated on the court. (Fortunately, the Court denied the motion despite the lack of response from the Plaintiffs).

In fact, on March 5, 2014, Defendant Handshoe had transferred all rights in that judgment to Jack Truitt and the Truitt Law Firm, LLC, for unnamed valuable consideration in a document notarized by the Chancery Clerk of Hancock County, Mississippi. That document was given to Mr. Truitt so that he could file it in Louisiana courts, which he proceeded to do.

Thus both Mr. Truitt and Mr. Handshoe knew that the representations made to this Court were false when they were made, and in fact Mr. Handshoe no longer had any standing to petition this Court for a garnishment order as he no longer owned the debt. Had Mr. Truitt wanted to seek a garnishment order, he should have started an action seeking such an Order as a creditor in an appropriate forum. He chose not to do so. Instead, Handshoe and Truitt tried to use court process for an unintended end, again, with no notice to the instant Plaintiffs.

At the same time, across the border in Louisiana, Truitt has repeatedly sought to use his ownership of the judgment debt in court proceedings. On the face of the document it is apparent that Mr. Truitt registered that transfer document with the court for the "Parish of St. Tammany, State of Louisiana." On March 24, Mr. Truitt filed an Intervention in the instant Plaintiffs' lawsuit against the Jones Walker law firm in New Orleans Civil District Court (which proceeding is now terminated), seeking recovery of the $48,000 based on that transfer document (Exhibit "T"). On April 24, 2014, Mr. Truitt filed a Reconventional Demand in a civil lawsuit filed against him and Douglas Handshoe by Louisiana resident Chris Yount alleging defamation amidst the publication on Slabbed of a sexually-explicit drawing belonging to Mr. Yount's son and (false) allegations of sodomy (Exhibit "U").[13] In that petition, Mr. Truitt affirmed to the Louisiana court the fact that interest in the $48,000 attorney fee judgment had been assigned to him by Mr. Handshoe. That litigation is ongoing. (Mr. Truitt included the outrageous allegation that the true motive for Mr. Yount suing him was Daniel Abel's "litigation terrorism" to somehow defeat the $48,000 judgment, even though Mr. Abel was not a party to the instant litigation). Mr. Truitt reaffirmed his ownership of the debt on March 6, 2015, in an unsolicited "offer" sent to Daniel Abel in which he offered to extinguish the debt if Mr. Abel would drop his lawsuit against Mr. Truitt. Mr. Abel has no authority to speak for the instant Plaintiffs, so he forwarded the email to us.

Finally, I am aware that Mr. Truitt filed a lawsuit against the instant Plaintiffs and Daniel Abel in the 22nd Judicial District for the Parish of St. Tammany, though the instant Plaintiffs have never been served with the complaint. Handshoe published a PDF copy of the lawsuit before it was filed on Slabbed. In that petition, Truitt again claims ownership of the same judgment debt he was representing to Your Honor still belonged to Handshoe (Exhibit "V").

Mr. Handshoe himself, as well, represented in a signed submission to this Court in 1:14-cv-00241-LG-JCG Perret et al v. Handshoe, on June 13, 2014 (ECF 4), that he still owned the judgment debt, which was at that time a material false statement to Your Honor. Handshoe stated to this Court in a signed submission: "It is undisputed . . . that Plaintiffs remain judgment debtors to Defendant in the amount of $48,000 in the case Trout Point et. al. v. Handshoe 729 F. 3D 481" (emphasis added). Handshoe repeated that assertion again to this Court on page 6 of that document.

Thus, when making signed written representation to this Court and other courts, both Handshoe and

13 Mr. Yount is a process server who had served Mr. Handshoe with civil process on several occasions, including the 2011 Nova Scotia Supreme Court Notice of Action.

Truitt knew they were making false assertions: Mr. Truitt (purportedly) owned that judgment in Louisiana court proceedings, while at the same time across the border in Mississippi Mr. Handshoe (purportedly) still owned that judgment when representations were made to this Court in the summer of 2014. Both facts cannot be true at the same time—either the debt was transferred or it was not. Then, both Mr. Truitt and Mr. Handshoe asserted that Handshoe still owned the debt on October 8, 2014, seeking a garnishment order on behalf of someone who was, according to the sworn transfer document, no longer a creditor. Mr. Handshoe and Mr. Truitt want to have their cake and eat it too, and are apparently willing to make false representations to this Court and other courts to achieve their goals whenever it suits their convenience, infecting the integrity of court process at the same time.

**Badges of Fraudulent Conveyance**
The Plaintiffs also urge that there was likely fraud under federal and state law in the transfer of the debt, and that this is another act evidencing how both Mr. Truitt and Mr. Handshoe actually engage in a pattern of misrepresentation involving the courts and legal documents.

Very notably, on February 14, 2014, the Plaintiffs had obtained an award of CAN $180,000 against Douglas Handshoe for copyright infringement in an Order issued by the Supreme Court of Nova Scotia (cf., generally, Case 1:14-cv-00241-LG-JCG). Mr. Handshoe received notice of the decision and award directly from the Canadian Court the same day, as he had filed a Demand for Notice motion with the Supreme Court of Nova Scotia, following Nova Scotia Civil Procedure Rule 4.06. Mr. Handshoe had previously made a general appearance in the Nova Scotia court proceeding by filing a defence and various motions, including a motion for summary judgment on evidence (as noted in the decision of Justice Coady). By February 18, 2014, Mr. Handshoe had become aware of the fact that the Plaintiffs were seeking Mississippi counsel to enrol that judgment in Mississippi state court. He published this fact on his blog, Slabbed in a post entitled "Deadbeat Judgment Debtors: They still owe me for the first try" (cf. http://slabbed.org/2014/02/18/deadbeat-judgment-debtors-they-still-owe-me-for-the-first-try/).

With a $180,000 debt, Handshoe was arguably insolvent.

**Badges of Fraud**
Thus, the conveyance from Mr. Handshoe to Mr. Truitt and his law firm was done in anticipation of the Nova Scotia copyright infringement judgment being enforced in Mississippi, in anticipation of litigation.

As noted in *In re Acequia, Inc.*, 34 F.3d 800 (9th Cir. 1994), citing the Court of Appeal for the First Circuit:

> It is often impracticable, on direct evidence, to demonstrate an actual intent to hinder, delay or defraud creditors. Therefore, <u>as is the case under the common law of fraudulent conveyance</u>, courts applying Bankruptcy Code § 548(a)(1) frequently infer fraudulent intent from the circumstances surrounding the transfer, taking particular note of certain recognized indicia or badges of fraud.

> Among the more common circumstantial indicia of fraudulent intent at the time of the transfer are: (1) *actual or threatened litigation against the debtor;* (2) a purported transfer of all or substantially all of the debtor's property; (3) *insolvency or other unmanageable indebtedness on the part of the debtor;* (4) *a special relationship between the debtor and the transferee;* and, after the transfer, (5) retention by the debtor of the property involved in the putative transfer.

> The presence of a single badge of fraud may spur mere suspicion; the confluence of
> several can constitute conclusive evidence of actual intent to defraud, absent
> "significantly clear" evidence of a legitimate supervening purpose.

Max Sugarman, 926 F.2d at 1254-55 (emphasis added) (citations and additional emphasis
omitted).

The transfer of the debt would (illegally) shield this property (the judgment debt) from the Plaintiffs as
judgment creditors.

Truitt and Handshoe maintain a close or special relationship.

Both Handshoe (in 1:14-cv-00241-LG-JCG) and Truitt (in the instant case) said and sought benefit
from the (false fact) that Handshoe retained ownership of this property, despite and after the transfer
took place.

The valuable consideration purportedly exchanged between Handshoe and Truitt is not identified in the
transfer document.

In *Dickey v. Turner*, 49 F.2d 998 (6th Cir. 1931), there was also a fraudulent transfer of a judgment
debt:

> The gravamen of the bill is an alleged conspiracy between Dickey and Taliaferro to use not only
> . . . a fraudulent assignment to Taliaferro but also the processes of the court as instrumentalities
> wherewith to compel appellee to pay and satisfy a judgment which he did not equitably owe.

The appellate court found: "The power of the [district] court was amply sufficient to prevent its process
from becoming an instrument of wrongdoing."

**Legal Standard**

Final judgments, including on summary judgment, are generally considered binding and are accorded a
degree of finality. However, Rule 60 of the Federal Rules of Civil Procedure provides various
mechanisms for a court to set aside a final judgment or order. Rule 60(b) provides that "[o]n motion
and just terms, the court may relieve a party or its legal representative from a final judgment, order, or
proceeding" for various reasons, including "fraud (whether previously called intrinsic or extrinsic),
misrepresentation, or misconduct by the opposing party." Fed. R. Civ. P. 60(b)(3). Although also
addressing fraud, Rule 60(d) provides a separate and distinct avenue for relief by recognizing and
codifying the inherent power of the court to "set aside a judgment for fraud on the court." Id. 60(d)(3);
see also Hazel-Atlas, 322 U.S. at 244. While most motions under Rule 60(b), including those for fraud,
must be made no more than a year after the entry of a judgment, there are no such time restrictions
when filing a motion for fraud upon the court under Rule 60(d).86 See id. 60(c)(1); Stonehill, 660 F.3d
at 443-44.

There exists in the district court an "unrestricted power to set aside judgments secured through "fraud
upon the court" under Rule 60. *Kerwit Med. Products v. N. & H. INSTRUMENTS*, 616 F.2d 833 (5th
Cir. 1980). According to the 5th Circuit in *Browning v. Navarro*, 826 F.2d 335 (5th Cir. 1987)., "in
*Dankese*, the court held that the fraud must be a deliberately planned and executed scheme, a factor of
significance in *Hazel-Glass.*" The fullest interpretation of Hazel-Atlas and previous Supreme Court
case law was reviewed in *Fierro v. Johnson*, 197 F.3d 147 (5th Cir. 1999):

> Our decision in *Browning v. Navarro, 826 F.2d 335 (5th Cir.1987),* provides further guidance
> on the standard for considering fraud upon the court. In *Browning,* this court analyzed two
> Supreme Court cases dealing with "fraud on the court" actions: *United States v.*

*Throckmorton*, 98 U.S. 61, 25 L.Ed. 93 (1878), and *Hazel-Atlas*. The court summarized the lessons of these two cases:

> *Throckmorton* stands clearly for the proposition that intrinsic fraud, that is, fraudulent evidence upon which a judgment is based, is not grounds to set aside a judgment. It also makes clear that extrinsic fraud, that is, <u>fraud that was not the subject of the litigation, that infects the actual judicial process,</u> is grounds to set aside a judgment as procured by fraud.[14] . . . *Hazel-Atlas* is to be read as an expansion of the limits set by *Throckmorton* in attacking judgments generally . . .*Hazel-Atlas* allows a judgment to be attacked on the basis of intrinsic fraud that results from corrupt conduct by officers of the court.

*Browning*, 826 F.2d at 344 (footnotes omitted). (emphasis added)

There exist numerous factual similarities between the present case and those in Hazel-Atlas, *supra*. To wit:

- the fraudulent, purportedly third-party evidence was actually created by one of the parties to the lawsuit and intentionally placed in the public realm through publication: in the instant case, the Concrete Busters amended petition as well as publications of the petition and other false facts on Slabbed, and in Hazel-Atlas, *supra*, the Clarke journal article;
- there was a scheme afoot to influence the trier of fact in order to win in court;
- normal time limits to seek to set aside a judgment have passed;
- officers of the court were involved in creating and disseminating the spurious evidence;
- as the fraudulent evidence passed from one level of federal court to another, no one disclosed the fraud, allowing it to fester, and admissions pointing to the fraud only occurred years later: "fraud, hidden for years but now admitted, had its genesis in the plan to publish an article for the deliberate purpose of deceiving the Patent Office. The plan was executed, and the article was put to fraudulent use in the Patent Office, contrary to law. U.S.C., Title 35, § 69; *United States* v. *American Bell Telephone Co.*, 128 U.S. 315. From there the trail of fraud continued without break through the District Court and up to the Circuit Court of Appeals."
- the spurious evidence was not necessarily critical to the court's ultimate decision, but it was mentioned in the decision.

I respectfully suggest that court action for the conduct evidenced here is necessary as part of this Court's inherent power to control its own process. The likelihood that a complex scheme to perpetrate extrinsic fraud on the court, as suggested by Mr Abel, actually exists has been substantially amplified by fresh evidence in the last two years. The Plaintiffs therefore also suggests that an Order for discovery or for an appropriate investigation be issued and that a Master be appointed. If that investigation produces further clear & convincing evidence of extrinsic fraud, I request that Your Honor's Order on cross-motions for summary judgment also be vacated. I also suggest the Court take up original disciple based on Mr. Truitt's conduct in Mississippi.

Sincerely,

Dr. Charles L. Leary

Cc: Jack Etherton Truitt; Gerald Cruthird; Connie Sue Montgomer (via email)

U.S. Attorney's Office, New Orleans, LA (by post)
U.S. Attorney's Office, Jackson, MS (by post)
Chief Judge Piper Griffin, New Orleans Civil District Court

**March 11, letter for Judge Guirola: Summary & Preliminary Statement of Facts**

In February, 2012, Plaintiffs Trout Point Lodge, Leary, and Perret secured a $427,000 award against Defendant blogger Handshoe in a Canadian provincial Supreme Court. In December, 2012, the Federal District Court for the Southern District of Mississippi issued its final Order granting Handshoe's motion for summary judgment under the SPEECH Act, U.S. legislation designed to block foreign defamation judgments like the one from Nova Scotia. In its decision, the Court made reference to allegations contained in a recently-amended Louisiana lawsuit, as well as certain false facts published on the blog, "Slabbed," while the court was deliberating. The parties never presented these "facts" into evidence; they appeared in the decision through judicial notice.

A federal district court has the power, under its inherent authority and FRCP 60(d)(3) to vacate or investigate fraud upon the court at anytime. The October 4, 2012, amendments to the Louisiana legal complaint were intentionally designed to substantiate numerous allegedly false & defamatory statements published by Handshoe on his blog, thus extra-judicially shoring up his argument with this Court that his defamatory publications were substantially true and therefore worthy of protection under prong B of the Act. Under the law, it is immaterial if the Court based its decision on the fraudulent material, it is the existence of the extrinsic scheme to influence the trier of fact that is at issue here.

Most egregious was a subsequent coverup involving Handshoe and his attorney. In an April 4, 2013, letter Plaintiffs Louisiana counsel wrote to this Court alleging "fabrication of a state court pleading . . . created & filed solely for the purpose of influencing your opinion in this case." Abel cited FRCP 60(d)(3), based on his discussions with the law firm that had amended the Louisiana complaint, wherein the name of Handshoe's attorney, Jack "Bobby" Truitt, arose with no prompting from him. That letter and a retraction letter from the other attorneys was filed in the record. Handshoe and Truitt filed no response or denial. Under Mississippi law and Rules of Professional Conduct, any failure to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a fraudulent act is a "knowing misrepresentation." When the case was appealed and the Plaintiffs sought to expand the record to include the two letters, again, Truitt and Handshoe remained completely silent; when the Plaintiffs asked for reconsideration by a judge after a clerk's denial, and the judge set a deadline by which Truitt and Handshoe had to respond, they again refused to respond in any way to the issue of the alleged fraud on the court. Such silence amounting to a knowing misrepresentation equals an intentional act to deceive the court. But it went further. While the appeal court was deliberating in June, 2013, Handshoe made affirmative statements to a court and the plaintiffs that "any connection" between him and the Louisiana attorneys who fabricated the false complaint was both "fanciful" and "concocted from whole cloth." The Plaintiffs, with no further evidence to rely upon, could not press the fraud claim further.

Then, in October, 2014, attempting to get an anti-suit injunction from this Court, Handshoe filed an affidavit completely contradicting his previous statement, and his and Truitt's non disclosure before this court and the appeal court. Handshoe admitted to direct contact with the Louisiana attorneys on October 4, 2012, and made statements indicating insider knowledge of the complaint's drafting. An examination of the meta data of the PDF file of the amended complaint published by Handshoe now shows it was indeed created by the same kind of office machine used by those attorneys.

Further and predicate acts by Truitt and Handshoe show, in addition, a predisposition to make intentional misrepresentations to this Court, including bald-faced statements in signed pleadings regarding the ownership of a $48,000 judgment debt stemming from the SPEECH Act case. Handshoe transferred the debt to Truitt in March, 2014, but both Handshoe & Truitt have told this Court Handshoe still owned the debt in June and October, 2014, signed pleadings. A pattern of fraudulent misrepresentation has become clear over the past 2 years, and the Plaintiffs request court action.