

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

TROUT POINT LODGE, LIMITED, A Nova Scotia
Limited Company; VAUGHN PERRET and
CHARLES LEARY                                                             **PLAINTIFFS**

**VERSUS**                                         CIVIL ACTION NO:  1:12CV00090 LG-JMR

DOUG K. HANDSHOE                                                    **DEFENDANT**

---

**BRIEF OF PLAINTIFF CHARLES LEARY ON
*PRO SE* MOTION TO VACATE 2012 & 2013
ORDERS AS VOID DUE TO A LACK OF SUBJECT-MATTER JURISDICTION**

Now comes Plaintiff Charles Leary, proceeding *pro se* under Fed. R. Civ. P. 60(b)4 seeking that

this Court vacate its previous decision on cross motions for summary judgment as void because of an

original lack of subject matter jurisdiction of this Honorable Court over the case and controversy. As

Plaintiff is proceeding on this motion *pro se*, the allegations in his pleading should be liberally

construed. See e.g. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). Because there was no minimal

diversity ever alleged or established, the Securing the Protection of our Enduring and Established

Constitutional Heritage (SPEECH) Act did not allow subject matter jurisdiction and therefore the

District Court lacked jurisdiction to render judgment. Having made no averments of citizenship of any

party whatsoever, Defendant also had and has no standing to proceed in this case removed from state

court. All underlying judgments are void for lack of subject-matter jurisdiction, which always remained

with Hancock County Circuit Court.

<u>**Background**</u>

Nova Scotia Supreme Court issued a final $427,000.00 (CAN) judgment for, *inter alia*,

defamation, civil harassment, and injurious falsehood against Defendant Doug Handshoe, a resident of

Bay St. Louis, Mississippi, in February, 2012 (*Trout Point Lodge Ltd. v. Handshoe, 2012 NSSC 245*).

1

Plaintiffs are two United States citizens domiciled in Canada and their "Nova Scotia limited company," which was represented in the Nova Scotia court *pro se* by Plaintiff Dr. Leary, who is not an attorney. Plaintiffs enrolled that money judgment in Hancock County Circuit Court (Mississippi) in March, 2012, under the Mississippi *Uniform Enforcement of Foreign Judgments Act*. Defendant shortly thereafter removed the foreign judgment enrollment from state court to this Court citing 28 USC §1441 and solely "federal question" jurisdiction under the SPEECH Act (ECF documents 1 & 2, filed March 26, 2012 and April 3, 2012). The case proceeded by way of cross motions for summary judgment, with no discovery. On December 19, 2012, this Court granted the Defendant's motion for summary judgment and denied the Plaintiffs' motion for summary judgment (Case 1:12-cv-00090-LG-JMR Document 35, Filed 12/19/12). The Plaintiffs timely appealed to the U.S. Court of Appeal for the Fifth Circuit. The Court of Appeal denied the appeal in September, 2013; *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481 (5th Cir. 2013). Jurisdiction seemingly returned to this Court, and in December, 2013, this Court granted Defendant's motion for attorney's fees.

On February 14, 2014, Nova Scotia Supreme Court found Defendant Handshoe liable for copyright infringement under the *Copyright Act* of Canada, and issued an Order for money damages (*Trout Point Lodge Ltd. v. Handshoe, 2014 NSSC 62*). In December, 2015, Plaintiffs enrolled that judgment in Hancock County Circuit Court. Mr. Handshoe shortly thereafter removed that enrollment to this Court citing diversity jurisdiction and the SPEECH Act. Plaintiffs sought remand. On February 16, 2016, based in part on lack of sufficient allegations of diversity, this Court issued Its Order Granting Plaintiffs' Motion to Remand in Case 1:16-cv-00007 (Document 8, Filed 02/16/16). Like the current case, that case involved the enrollment of a final Canadian judgment in Hancock County Circuit Court. Like this case, that enrollment was removed to this Court by Defendant Douglas Handshoe citing 28 U.S. Code § 1441 and the SPEECH Act of 2010. All parties were and are exactly the same.

**Plaintiff's Attention Was Just Recently Drawn to This Issue**

2

The removal petition filed by Mr. Handshoe in the 2016 removal and the removal documents in the instant case in 2012 are nearly identical, and are substantively the same. This Court remanded Mr. Handshoe's 2016 removal citing, in part, a failure to properly establish diversity jurisdiction while also quoting 28 U.S.C. § 4103. "In a Section 1447(c) remand, federal jurisdiction *never* existed" *Bogle v. Phillips Petroleum Co.*, 24 F.3d 758 (5th Cir. 1994) (emphasis in original). This remand event caused instant Plaintiff to re-examine Defendant's 2012 removal, which resulted in the filing of the instant motion. In any event, "there is no time limit on Rule 60(b)(4) motions." *Jackson v. FIE Corp.*, 302 F.3d 515 (5th Cir. 2002).

## Hierarchy of Constitutional and Jurisdictional Requisites and Rules

1. In a removed SPEECH Act case, subject-matter jurisdiction bottoms on Art. III minimal diversity of citizenship, although alternatively a case may be removed under 28 USC § 1441; cf. 28 USC § 4103; *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). The same is reflected in case law concerning the *Class Action Fairness Act* and the interpleader statute, both of which require minimal diversity for the exercise of federal jurisdiction; cf. *State Farm Fire & Casualty Co.* v. *Tashire*, 386 U. S. 523, 531 (1967); *Haynes v. Felder*, 239 F.2d 868 (5th Cir. 1957); *AU Optronics Corp. v. South Carolina*, 699 F.3d 385 (4th Cir. 2012).

2. Absent minimal diversity, jurisdiction rests with the state court, and absent adequate allegations of minimal diversity, the federal court is impermissibly usurping the jurisdiction of the state court over enforcement of a foreign judgment under state law; cf. *Stafford v. Mobil Oil Corp.*, 945 F.2d 803 (5th Cir. 1991); *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214 (5th Cir. 2012); under Rule 60(b)(4) a judgment is "void" if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law; cf. *Brumfield v. Louisiana State Board of Education*, No. 14-31010 (5th Cir. Nov. 10, 2015).

    a) considerations of finality and *res judicata* do not apply in the Rule 60(b)(4) context; cf. *Jackson v. FIE Corp.*, 302 F.3d 515 (5th Cir. 2002);

    b) the court has no discretion; if a judgment is void, it must be vacated; cf. *Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986);

    c) if the party asserting federal jurisdiction makes no allegation of citizenship whatsoever, he has no Art. III standing; cf. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Prasad v. OCWEN LOAN SERVICING, LLC*, No. 2: 15-cv-0555 KJM GGH PS (E.D. Cal. Aug. 5, 2015);

    d) consistent with the above, ultimately, whether there was a remand motion in the district court is irrelevant to determining threshold subject-matter jurisdiction; *State Farm, supra*; *Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001).

3. In a removed case, jurisdiction depends on the existence of allegations of minimal diversity of citizenship in the removal documents or the state court record; cf. *Howery, supra*. Burden rests on the party asserting federal jurisdiction, including in Rule 60(b) context; cf. *Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986). "[T]he citizenship of the parties at the commencement of the actions,

as well as at the time the petitions for removal were filed" must be "sufficiently shown;" if not "the jurisdiction of the state court was never divested"; *cf Jackson v. Allen,* 132 U.S. 27, 34, 10 S.Ct. 9, 33 L.Ed. 249 (1889); *Vasura v. Acands,* 84 F. Supp. 2d 531 (S.D.N.Y. 2000). "Where there is no change of a party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit;" cf. *Conolly v. Taylor,* 27 U.S. 556, 565, 2 Pet. 556, 7 L.Ed. 518 (1829) (Marshall, C.J.).

a) For a company, an allegation citizenship is determined by answering the question whether or not the entity is a corporation for citizenship purposes, or some other common-law entity; cf. *Carden v. Arkoma Associates,* 494 U.S. 185, 110 S. Ct. 1015, 108 L. Ed. 2D 157 (1990). For a corporation, including a foreign corporation, the removing party must allege and establish:
   * the state of incorporation and the primary place of business;
   * it is of no importance to the citizenship analysis "with reference to specific States' laws" what corporate powers or labels, such as "corporation" or "trust" a state may give to an "inanimate creature of state law"; the court must inquire into the true nature of the entity using the common law of federal jurisdiction, be it corporation or otherwise; *Americold Realty Trust v. Conagra Foods, Inc.,* 2016 W.L. 854159 (U.S. 2016); *Chapman v. Barney,* 129 U. S. 677 (1889);

b) for *any* other common law entity, including a joint stock company, a limited partnership, or a limited liability company, the allegations must describe the citizenship of each equity member; cf. *Howery, supra; Arkoma, supra; Americold Realty Trust, supra;* if "the citizenship of [an] unincorporated association *may* [. . .] destroy diversity" then the federal court never had *"jurisdiction* from the inception of this lawsuit" and "state court would be the appropriate forum for the parties to resolve their dispute" *Arena,* 5th Circuit, *supra.*

c) for persons, the allegation must be that they are the citizen of a state or a citizen or subject of a foreign state, and United States citizens domiciled in a foreign county are not citizens of a state or subjects of a foreign state for purposes of diversity; cf. *Coury v. Prot,* 85 F.3d 244 (5th Cir. 1996);

d) the essential analysis as to whether a company is a corporation for citizenship purposes applies equally to foreign companies; cf. *Jerguson v. Blue Dot Inv., Inc.,* 659 F.2d 31 (5th Cir. 1981); *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.,* 536 U.S. 88, 122 S. Ct. 2054, 153 L. Ed. 2D 95 (2002);
   * for foreign companies other than corporations, the removing defendant must allege the citizenship of the members of the company or there is no jurisdiction; the fact that the company is a juridical entity under foreign law is immaterial; cf *FELLOWES v. CHANGZHOU XINRUI FELLOWES OFFICE EQPT.,* 759 F.3d 787 (7th Cir. 2014);
   * an allegation of a party being a "Canada limited company" is insufficient for diversity purposes; cf. HEAT OILFIELD RENTALS, LTD. v. VULCAN OILFIELD SERVICES, LLC, Dist. Court, WD Pennsylvania, No. 2:15-cv-332, (March 12, 2015);
   * Nova Scotia companies organized under the Nova Scotia Act Regarding Joint Stock Companies are a "statutory hybrid between a partnership and a corporation"; *Morris v. Union Bank of Canada,* 31 SCR 594, 1901 CanLII 16 (SCC).

4. Defective allegations of citizenship may be cured or amended *before* final judgment; the U.S. Court of Appeal for the Fifth Circuit allows parties to cure technical defects or failure to specifically allege the citizenship of a party, but only when the amendment made *before* final judgment would do nothing more than state an alternative jurisdictional basis for recovery *upon*

*the facts previously alleged.* Otherwise, the judgment is void and must be vacated; Howery, *supra.*

   a) in a removed case, the parties cannot waive threshold subject-matter jurisdiction like minimal diversity; cf. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2D 1097 (2006); *Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 124 S. Ct. 1920, 158 L. Ed. 2D 866 (2004);
   b) the fact that a party did not bring the matter of diversity to the attention of a Court of Appeal on appeal is immaterial to a judgment being void for lack of subject-matter jurisdiction; cf. *Mitchell v. Maurer,* 293 U.S. 237, 243-44, 55 S.Ct. 162, 79 L.Ed. 338 (1934).

## The SPEECH Act & Citizenship

"Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over those matters specifically designated by the Constitution or Congress"; *Handshoe v. DOE (S)*, Civil No. 1: 13CV254-HSO-RHW (S.D. Miss. Nov. 5, 2013). The SPEECH Act grants a defamation defendant who is a citizen of a State the ability to remove an enforcement action brought in state court to federal court. District court jurisdiction over a removed action is only permissible if: (a) the parties are diverse, irrespective of the complete diversity rule; (b) the plaintiff is a foreign country or citizen and the defendant is a United States citizen; or (c) vice versa. The section also waives the amount in controversy requirement.

> [W]hen an action within the scope of the Act is brought in a state court, the action may be removed if there is minimal diversity of citizenship, without regard to the amount in controversy and even if not all defendants agree to the removal. In other words, removal jurisdiction in such cases extends apparently to the limits of Article III.

Ted Folkman, "Recognition of foreign judgments in defamation cases: the SPEECH Act" Letters Blogatory: The Blog of International Judicial Assistance (https://lettersblogatory.com/2011/04/07/recognition-of-foreign-judgments-in-defamation-cases-the-speech-act/)

However, the relevant section does not apply to defendants who are not "a citizen of a State" or plaintiffs who are stateless citizens. In this case, there existed in the state court complaint and the removal petition no allegations of citizenship on which this Honorable Court could find that Mr. Handshoe is a citizen of the State of Mississippi, or any State, or to find that plaintiffs are citizens of any state or a foreign state. This Honorable Court had jurisdiction to determine its own jurisdiction, and

5

now has jurisdiction to apply Rule 60. However, based on his own pleadings which fail to allege or

establish the citizenship of any party, Defendant has no standing in federal court and there was never

any diversity jurisdiction.

### No Standing

The first basis on which this Honorable Court lacked jurisdiction is that Mr. Handshoe had no

standing. Consistent with the later Fifth Circuit in *Stafford*, *supra*, in *McNutt v. General Motors*

*Acceptance Corp.*, *supra*, The Supreme Court stated:

> The prerequisites to the exercise of jurisdiction [. . .] are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He *must* allege in his pleading the facts essential to show jurisdiction. *If he fails to make the necessary allegations he has no standing.* If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that *he must carry throughout the litigation the burden of showing that he is properly in court.* The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. (emphasis added)

Art. III of the Constitution mandates that any party asserting a claim must have standing in order for a

court to have jurisdiction over his grievance, which in a removed case includes making some allegation

of citizenship. Discussing "*Article III standing*," in *Rohm & Hass Tex. Inc. v. Ortiz Bros. Insulation,*

*Inc.*, 32 F.3d 205 (5th Cir. 1994), at footnotes 4 and 5, the Court referred to

> *Boeing Co. v. Commissioner of Patents & Trademarks,* 853 F.2d 878, 881 (Fed.Cir.1988) ("The issue of standing calls into question the power of the court to hear and decide a case, and it is impossible for a party to waive this requirement."); *cf. Bumberger v. Insurance Co. of North Am.,* 952 F.2d 764, 766 (3rd Cir.1991) (stating that diversity jurisdiction of courts is not subject to waiver). *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing `is perhaps the most important of [the jurisdictional] doctrines.'" (quoting *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (alteration in original)); *Mansfield, Coldwater & Lake Mich. Ry. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884) ("[T]he first and fundamental question is that of jurisdiction, first of this court, and then of the court from which the record comes.").
>
> *Prasad v. OCWEN LOAN SERVICING, LLC,* No. 2: 15-cv-0555 KJM GGH PS (E.D. Cal. Aug.

5, 2015) found a party asserting diversity "must allege, in the pleadings, the facts essential to show proper and complete diversity jurisdiction in order to maintain standing in federal district court. See Fifty Associates v. Prudential Ins. Co. of America, 446 F.2d 1187, 1190 (9th Cir. 1970) (citing McNutt v. General Motors Acceptance Corp. Of Indiana, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L.Ed. 1135 (1935)." Cf. also: *Food Fair Stores v. Food Fair*, 177 F.2d 177 (1st Cir. 1949); *Allery*, *supra*. This Court admonished Mr. Handshoe in 2016 not to "remove actions" based on "conclusory allegations of diversity jurisdiction" (Case 1:16-cv-00007-LG-RHW Document 8 Filed 02/16/16 Page 9 of 9). It is now clear he did so not only in 2016, but also in 2012. In addition to lacking subject-matter jurisdiction, discussed below, Mr. Handshoe thus also had and has no standing.

## Motions under Federal Rule of Civil Procedure 60(b)4

"When either subject matter or personal jurisdiction is contested under Rule 60(b)(4), the burden of proof is properly placed on the party asserting that jurisdiction existed," *Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 385 (S.D.N.Y. 1986). The United States Court of Appeal for the Fifth Circuit has stated that Its decisions on Rule 60(b)(4) are "nuanced" and that "a judgment is void under Rule 60(b)(4) if the court lacked jurisdiction of the subject matter, or of the parties, "or it acted in a manner inconsistent with due process of law."" *Brumfield v. Louisiana State Board of Education*, No. 14-31010 (5th Cir. Nov. 10, 2015). The Brumfield court reversed the district court's denial of the Rule 60(b)(4) motion.

In *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270, 130 S. Ct. 1367, 1377 (2010), The Supreme Court stated generally that "jurisdictional and notice failings [...] define void judgments that qualify for relief under Rule 60(b)(4)." The *Espinosa* Court defined a void judgement as "one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." Other Supreme Court cases have shown that a lack of subject-matter jurisdiction due to a lack of diversity in the record applies as such a case. In 1949, the high court said "the amended rule grants

7

courts a broader power to set aside judgments than did the old rule." *Klapprott v. United States*, 1949, 335 U.S. 601, 69 S.Ct. 384, 390, 93 L.Ed. 266. In *Gonzalez v. Crosby*, 545 U.S. 524, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005) the court observed: "[W]e give little weight to respondent's appeal to the virtues of finality. That policy consideration, standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality." Referring to a court's power to issue "a declaration that a judgment is void," the Supreme Court specified: "for purposes of the matter at hand the judgment must be deemed without *res judicata* effect: *because of lack of jurisdiction* or some other equally fundamental defect, the judgment neither justifies nor bars relief from its consequences" (emphasis added); thus lack of jurisdiction is an appropriate context for such a declaration; *Schlesinger v. Councilman*, 420 U.S. 738, 95 S. Ct. 1300, 43 L. Ed. 2D 591 (1975). In this same vein, the 5th Circuit Court of Appeal weighed principles of finality and *res judicata* against the constitutional values of Rule 60 (on the issue of personal jurisdiction) and found (footnotes removed):

> [W]e judge that — at least given the conflict here between the federal rules governing jurisdiction on the one hand and *res judicata* on the other — in this case, the protections of personal jurisdiction must trump the doctrine of claim preclusion. This result rests on at least two justifications.
>
> First, "[r]es judicata is very much a common law subject." A judicially-derived principle of preclusion generally must perforce yield to the contrary command of a formal rule such as Rule 60(b)(4).
>
> Second, the *res judicata* doctrine protects private and public values — such as repose, finality, and efficiency — that are important, but have not yet found much expression as constitutional principles, at least in the civil context. It appears that the Supreme Court has only once adverted, and then obliquely, to the possibility that due process might prevent the relitigation of matters already decided. We ourselves do not appear ever to have contemplated this possibility. Whatever due-process theory might require, current due-process doctrine concerns itself only minimally, if at all, with preserving any property right that the Jacksons may have acquired through their default judgment. Due-process doctrine is far more concerned with protecting the ability of a party like Fratelli Tanfoglio to contest a rendering court's power to bind it to a judgment in the first place.
>
> The fact that one of the principles in tension here is a development of the jurisprudence, and the other is a constitutional value, may partly be a matter of historical contingency rather than logic

or principled theory. But that is nonetheless the state of the law, and we must apply it as we find it.

*Jackson v. FIE Corp.*, 302 F.3d 515 (5th Cir. 2002).

The 9th Circuit Court of Appeal in *Watts v. Pinckney*, 752 F.2d 406 (9th Cir. 1985) stated:

> The Watts also argue that the doctrine of *res judicata* precludes a collateral attack upon a court's determination of its own jurisdiction. In support of this proposition, the Watts cite *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) and *Lubben v. Selective Service System Local Board No. 27*, 453 F.2d 645 (1st Cir. 1972). While it is true that these cases provide that *res judicata* bars a collateral attack on a final judgment, the Watts' reliance on these decisions is misplaced.
>
> Pinckney's attack on the judgment was *direct*, not collateral. A direct attack is defined as follows:
>
>> A direct attack on a judicial proceeding is an attempt to correct it, or to void it, in some manner provided by law to accomplish that object. It is an attack ... by appropriate proceedings between the parties to it seeking, for sufficient cause alleged, to have it annulled, reversed, vacated or declared void.
>
> 1B J. Moore, *Moore's Federal Practice* ¶ 0.407 at 282 n. 1, *quoting Intermill v. Nash*, 94 Utah 271, 75 P.2d 157.
>
> The doctrine of res judicata does not apply to *direct* attacks on judgments. "Res judicata does not preclude a litigant from making a direct attack [under Rule 60(b)] upon the judgment before the court which rendered it." *Jordan v. Gilligan*, 500 F.2d at 710, *quoting* 1B J. Moore, *Moore's Federal Practice* ¶ 0.407 at 931 (2d ed. 1973).

Applying Rule 60, the 9th Circuit Court of Appeal has also stated:

> Appellant cites authority for the proposition that a court's determination regarding jurisdiction over the subject matter is final, *res judicata*, and not subject to collateral attack. Cf. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104. The cited cases represent good law, but they have nothing to do with a court's power under Rule 60 to vacate or set aside a judgment.

*Resnik v. La Paz Guest Ranch*, 289 F.2d 814 (9th Cir. 1961).

In *Stafford v. Mobil Oil Corp.*, 945 F.2d 803 (5th Cir. 1991), where the district court decision

was vacated as void on the Court of Appeal's own motion, the Court said:

> We have previously stated that "[w]here a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the federal tribunal poaches upon the territory of a coordinate judicial system, and *its decisions, opinions, and orders are of no effect*." *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir. Unit A 1981). (emphasis added)

This earlier jurisprudence is echoed in *Espinoa, supra*, where the Supreme Court highlighted "Rule

9

60(b)(4)'s exception to finality."

**A Precise Question Rarely, If Ever, Addressed**

As established above, a judgment is void under Rule 60(b)(4) if the court lacked jurisdiction of the subject matter. This motion raises the question of federal subject-matter jurisdiction in a removed case when no allegations *whatsoever* of statutorily-required Art. III minimal diversity of citizenship existed at the time of removal and at the time the state court action was filed, and there were in the record reasons to doubt the existence of minimal diversity, in yet the federal court continued to exercise jurisdiction and never noticed the defect or adjudicated its own jurisdiction, either on a party's motion to remand or dismiss, or on Its own motion *sua sponte*.

"[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court. *See, e.g. Strain v. Harrelson Rubber Co.,* 742 F.2d 888, 889 (5th Cir. 1984); 1 J. Moore, Moore's Federal Practice § 0.71[5.-1] (1996)"; *Coury v. Prot,* 85 F.3d 244 (5th Cir. 1996). To remove a case to federal court, the defendant must prove to a reasonable probability that federal jurisdiction exists; cf. *Hahn v. PepsiCo, Inc.,* 350 F. Supp. 2d 758 (N.D. Ill. 2004); *DiPONZIO v. BANK OF AMERICA CORPORATION,* No. 11-CV-06192 (W.D.N.Y. July 11, 2011). In the case at bar, there is no question that Defendant failed to demonstrate the factual requirements of minimal diversity at the time Defendant removed this case and at the time the action was filed in state court. Under federal law, curing the conditions that rendered the judgment unenforceable was and is impossible for at least four reasons: (a) there was not just a defective allegation of diversity, there was *no* allegation of diversity or citizenship of any party by removing Defendant; (b) there was no change in the jurisdictional posture of the case at any time; (c) there was no finding of diversity, erroneous or otherwise, made by the federal courts; and (d) the lack of Art. III minimal diversity jurisdictional defect lingered unaddressed throughout the entire removed proceeding. *Vasura v. Acands,* 84 F. Supp. 2d 531 (S.D.N.Y. 2000) ("If the removal was not proper in the first instance, the state court was never divested

of jurisdiction and the federal court consequently has no jurisdiction to exercise;" citing *Jackson v. Allen, 132 U.S. 27, 34, 10 S.Ct. 9, 33 L.Ed. 249 (1889)*). This has been the general rule for well over a century, varied only in exceptional cases where some jurisdictional fact or circumstance has changed during a proceeding such as in the Supreme Court cases of *Caterpillar*, *Dataflux*, and *Newman-Green*. There was no changed jurisdictional fact or circumstance in instant case. *Conolly v. Taylor, supra* ("Where there is no change of a party, a jurisdiction depending on the condition of the party is governed by that condition, *as it was at the commencement of the suit*.") (Marshall, C.J.)" as cited in *Arena*, 5ᵗʰ Circuit, *supra*, at fn 12 (emphasis added). (Notably, the facts of *Arena*, which was *not* a removed case, distinguish it from the instant case; there the "Miller Act claim failed [. . .] and was dismissed by the district court at the beginning of trial.")

Historically, new legislation with new jurisdictional requirements necessary to divest state courts of jurisdiction, such as the SPEECH Act, have occasioned numerous examples of removed cases with void or lacking federal jurisdiction. For example, 28 U.S.C. § 1332 was amended effective July 28, 1958. Subsection (c) of the Amended section 1332 newly provided as follows: "For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." This jurisdictional requirement is now familiar, but in the late 1950s and 1960s, it was not. The following are examples from this time period where in this context of new legislation it is very clear that federal jurisdiction is lacking because subject-matter jurisdiction never attached to the district court in the first place: *Carlton Properties Inc. v. Crescent City Leasing Corp., 212 F.Supp. 370 (E.D.Pa.1962)* ("Since the petition for removal failed to allege a necessary jurisdictional fact, we have no jurisdiction in this matter except to declare our want of jurisdiction," citing *Jackson v. Allen, supra*); *Browne v. Hartford Fire Insurance Company*, 168 F. Supp. 796 (N.D. Ill. 1959) ("since the principal place of business of the defendant corporations is not set out in the petition or the pleadings, there is no allegation of diversity of

citizenship"; "there is a fatal defect in the petition and therefore there are no grounds for removal since this court has no basis upon which to assume jurisdiction."); *Eubanks v. Krispy Kreme Donut, 208 F.Supp. 479, 481 (E.D.Tenn. 1961)* (if the original petition is "entirely lacking in an essential allegation" then "jurisdiction remains exclusively in the State court, and this Court has no authority to permit amendment"); *Garza v. Midland National Insurance Company*, 256 F. Supp. 12 (S.D. Fla. 1966) (There is "no allegation of diversity at the time the suit was filed in the state court"; "state court authority should not be superceded by the federal courts without special authority"); *Browne v. Hartford Fire Insurance Company*, 168 F. Supp. 796 (N.D. Ill. 1959) ("there is no allegation of diversity of citizenship as required"; "this court has no basis upon which to assume jurisdiction");

This jurisdictional requirement has continued to be recognized and enforced by federal courts: *Hubbard v. Tripp*, 611 F. Supp. 895 (E.D. Va. 1985). ("Because defendant is required to state the facts which entitles her to removal, because one of those facts is that at the time of filing the complaint in State court the controversy was between citizens of different States, because defendant failed in her removal petition or otherwise to allege her or plaintiff's citizenship as of the time of filing the complaint in State court within the thirty-day period to file a removal petition, this action must be remanded to the State court . . ."); *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568 (5th Cir. 2004) ("a state court is to be trusted to handle the suit unless the suit satisfies the removal requirements").

In *Jackson v. Allen, supra*, the Supreme Court addressed a case removed from the Civil District Court for the parish of Orleans, Louisiana. The lower federal court rendered final judgment without adjudicating diversity. An appeal ensued. Apparently *sua sponte*, the Court reversed the lower court judgment, stating:

> It appears from the record that the citizenship of the parties at the commencement of the actions, as well as at the time the petitions for removal were filed, was *not sufficiently shown*, and that therefore *the jurisdiction of the state court was never divested. Stevens*v. *Nichols,* 130 U.S. 230. (emphasis added)

The Court did not concern itself with "tacit" adjudication of diversity or waiver, and reversed the lower court judgment. Absent alleged facts of citizenship in the removal petition or the state court record, jurisdiction actually always remained with the state court. In a 60(b)(4) case, the U.S. Court of Appeal for the Eight Circuit stated: "A void judgment, as opposed to an erroneous one, is one which from its inception was legally ineffective"; *Kansas City Southern Ry. Co. v. Great Lakes Carbon*, 624 F.2d 822 (8th Cir. 1980); cf. also *Crehore* v. *Ohio & Miss. Railway*, 131 U.S. 240 ("under the act of Congress, the jurisdiction of the Federal court could not attach until it becomes the duty of the state court to proceed no further. No such duty arises unless a case is made by *the record that entitles the party to a removal*"); *Noble v. Union River Logging R. Co.*, 147 U.S. 165, 173, 13 S.Ct. 271, 37 L.Ed. 123 (1893) ("the allegations and proof of the requisite diversity of citizenship" are among a "class of facts [. . .] which are *necessary* to be alleged and proved in order to set the machinery of the law in motion" and "which, when *found* by such court, cannot be questioned *collaterally* . . .") (emphasis added); *McNutt, supra* ("The prerequisites to the exercise of jurisdiction [. . .] are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He *must* allege in his pleading the facts essential to show jurisdiction.") The district court must also have adjudicated its own jurisdiction; if the jurisdictional question of diversity in a removed case passes unaddressed and is never established neither by the court nor by the party whose burden it is to establish jurisdiction, then such federal jurisdiction is void, having never left the state court.

> Several courts and commentators have observed that "diversity of citizenship is but a quasi-jurisdictional fact. A judgment based upon an erroneous *finding* of diversity is not void and is immune from collateral attack." *Green v. Hale*, 433 F.2d 324, 330, n. 14 (5th Cir.1970) (quoting *Lester v. McFaddon*, 415 F.2d 1101, 1107 (4th Cir. 1969)). *See also Kansas City So. Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir.), *cert. denied*, 449 U.S. 955, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980) ("error in interpreting a statutory grant of jurisdiction ... does not render the judgment a complete nullity"); 7 *Moore's Federal Practice* ¶ 60.25[2] at 230-31 (2d ed. 1987). This statement of law, however, does not apply to the instant case where the district court did not render a judgment into which a finding of diversity merged.
> *DEPEX REINA 9 PART. v. Texas Intern. Petroleum*, 897 F.2d 461 (10th Cir. 1990).

**Distinguishing Instant Case from Rule 60(b)(4) Motions *Not* Involving Diversity Jurisdiction**

*Espinosa, supra,* did not involve in any way the issue of lack of constitutional minimal diversity and subject-matter jurisdiction. The Supreme Court specifically confined its findings to bankruptcy. So the *Espinosa* case, as distinguished from the instant case, was <u>not</u> a jurisdictional case:

> we interpreted the statutes at issue in those cases as stripping courts of *jurisdiction*—either over the parties, *id.,* at 354-356, 41 S.Ct. 116, or the res, *Wilson, supra,* at 265-266, 3 S.Ct. 277—and United concedes that the statutory limit in this case is not jurisdictional" (emphasis in original).

Likewise, *Box v. DALLAS MEXICAN CONSULATE GENERAL*, No. 14-10744 & 14-10953 (5th Cir. Aug. 19, 2015), though it did not involve diversity jurisdiction, involved foreign sovereign immunity and subject-matter jurisdiction. The Fifth Circuit emphasized the lack of a controversy involving "jurisdictional facts" in that case in addressing Rule 60, i.e. "Because the relevant facts were established as the law of the case, and because those facts are not jurisdictional facts . . ." In the instant case, by contrast, jurisdictional facts were not established by the federal courts and those facts (minimal diversity of citizenship) *were* jurisdictional facts.

Tellingly, *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 16, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951) found:

> The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties. To permit a federal trial court to enter a judgment in *a case removed without right from a state court* where the federal court could not have original jurisdiction of the suit even in the posture it had at the time of judgment, would by the act of the parties work a wrongful extension of federal jurisdiction and give district courts power the Congress has denied them. (emphasis added)

The Court reaffirmed *American Fire* in *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 117 S. Ct. 467, 136 L. Ed. 2D 437 (1996), which also did not address lack of Art. III minimal diversity, and involved a change in the jurisdictional posture of parties to the case during the proceeding. As distinguished from the instant case, in *Caterpillar* the case went to trial and resulted in a judgment founded on complete diversity. In *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 118 S. Ct. 956, 140 L. Ed. 2D 62 (1998), the Supreme Court emphasized that "there was no continuing defiance of the

14

congressional condition in *Caterpillar*, but merely an untimely compliance." In the instant case there was never untimely compliance; the citizenship of the parties remained unaddressed and undetermined at final judgment. Unlike many other 60(b)(4) cases discussed below, in the instant case the lack of established or alleged minimal diversity was *never* cured by Defendant or addressed by the court.

### *Cases Vacating Final Judgment as Void*

In *Mansfield, C. & LMR Co. v. Swan*, 111 US 379 - Supreme Court 1884, there was not silence on citizenship, but rather the removing defendants admitted they were "unable to state" where a plaintiff was domiciled at the time of removal. The removal petition stated the plaintiff was at one time "(according to your petitioners' recollection) a citizen of the State of Ohio, but that he is not now a citizen of that State, but where he now resides or whereof he is now a citizen (except that he is a citizen of one of the States or Territories comprising the United States), your petitioners are unable to state." With no allegation of state citizenship at the time of removal, the Supreme Court had to find there was a lack of diversity, and "consistent" with the facts both alleged and unalleged, the Supreme Court found that plaintiff, though a citizen, was not a citizen of any state. The lower court's judgment was vacated, and It was ordered to remand the case to state court.

In more recent times, when lack of diversity jurisdiction remains a factor after final judgment under Rule 60 or on their own motion, courts have granted such motions and vacated final judgments. In addition, federal courts have explicitly rejected the premise of an "implicit" adjudication of subject-matter jurisdiction when that topic was never actually frontally addressed by the district court. In *Getty Oil, Div. Of Texaco v. Ins. Co. of North Am.*, 841 F.2d 1254 (5th Cir. 1988), it was argued the district court had implicitly found subject-matter jurisdiction. The Fifth Circuit rejected that argument: "nothing in the record indicates that the district court made such a determination" (fn 6). "[W]hen the alleged basis for jurisdiction is diversity of citizenship, the district court *must* be *certain* that the parties

15

are in fact diverse *before* proceeding to the merits of the case" (emphasis added). In vacating the

district court judgment, the Court stated:

> [T]he district court made no findings or determination, specific or otherwise, regarding
> jurisdiction, and we therefore decline to presume, as the defendants-appellees suggest, that the
> district court actually considered the unresolved jurisdictional issues before ruling on the merits
> of the case.

Published diversity cases were Rule 60(b)(4) motions have been granted include: *Grady v. Grady*, No.

10-CV-8809 (CS) (S.D.N.Y. Aug. 26, 2015); *RES-GA CREEKSIDE MANOR, LLC v. STAR HOME*

*BUILDERS, INC.*, Civil Action No. 2: 10-CV-207-RWS (N.D. Ga. Dec. 2, 2011); *United Nat. Ins. Co.*

*v. Waterfront NY Realty Corp.*, 907 F. Supp. 663 (S.D.N.Y. 1995); and *AMERICAN REALTY*

*CAPITAL PROPERTIES INCORPORATED v. Holland*, No. CV-14-00673-PHX-DGC (D. Ariz. Oct. 8,

2014), where the court found it relevant that

> the Court never explicitly decided the question of subject-matter jurisdiction. Although the
> *parties raised the issue and the Court questioned Plaintiff's counsel about it*, the Court never
> decided the matter. (emphasis added)

Though not a 60(b)(4) case, in *Stafford v. Mobil Oil Corp.*, 945 F.2d 803 (5th Cir. 1991), the Court of

Appeal *sua sponte* raised the issue of vacating the district court decision as void. "The district court

never had before it, at any time relevant to this appeal, any evidence tending to establish the presence

of diversity jurisdiction, and it made no jurisdictional finding." The Court vacated. It must be

emphasized that none of the cases discussed in the two sections immediately above involved the

present situation where there existed *no averment or allegation of citizenship whatsoever by a*

*removing defendant on which the district court could predicate threshold subject-matter jurisdiction*.

Even in *Stafford*, the Court of Appeal found that although some facts existed, the parties asserting

jurisdiction "failed to allege sufficient facts in their pleadings for the purpose of establishing the

existence of diversity jurisdiction" and there existed "an absence of proof of facts necessary to establish

diversity of citizenship."

16

## No Jurisdiction Under 28 USC §§ 1441 & 1332(a)

Defendant could not have properly removed the state court complaint under 28 USC § 1441 or

retained subject-matter jurisdiction under 28 USC § 1332(a). Under 28 USC 1441(a), the SPEECH Act,

an Act of Congress, expressly provides conditions for removal that require minimal diversity of

citizenship among the parties. Under 28 USC 1441(b) there is no complete diversity under 28 USC

1332(a). Pursuant to 28 U.S.C. § 1332, a district court has jurisdiction over all civil actions where (1)

the suit is between citizens of different states, and (2) the amount in controversy exceeds $75,000.

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, *supra*. § 1332 requires complete diversity; therefore, each

defendant must be a citizen of a different state than each plaintiff. Plaintiffs Leary & Perret are not

citizens of a state for purposes of diversity jurisdiction, a fact known to Defendant when he effected

removal, but that he refused to allege.

While there is original jurisdiction under the SPEECH Act for a declaratory judgment action, a

28 USC § 4104 removal from a state court can only be accomplished by demonstrating

constitutionally-required minimal diversity. To say, as Defendant did, that because Mr. Handshoe

removed citing the SPEECH Act there was "original jurisdiction" would promote circular reasoning;

the Act itself requires minimum diversity of citizenship consistent with Art. III to usurp jurisdiction

from the state court. In addition, "[b]y unimpeachable authority, a suit brought upon a state statute does

not arise under an act of Congress or the Constitution of the United States because prohibited thereby."

*Gully v. First Nat. Bank in Meridian*, 299 US 109.

Congress intended the SPEECH Act to apply in state courts because foreign country judgments

are properly brought to state court for enrollment subject to state law, and defamation law is controlled

and developed in state courts. "The term `domestic court' means a Federal court or a court of any State"

(28 U.S.C. § 4101 *Definitions*). The first domestic court to apply the Act was a state court: *Pontigon v.

Lord*, 340 S.W.3d 315 (Mo. Ct. App. 2011). The Act has two components, one (§ 4104) that consists of

17

federal question jurisdiction (the declaratory judgment cause of action), and one (§ 4103, improperly and conclusorily invoked here by Defendant) involving removal from state court and a minimal diversity requirement coextensive with Art. III judicial powers. "This Court's cases firmly establish that Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution." *Verlinden BV v. Central Bank of Nigeria, 461 US 480* - Supreme Court 1983.

> The Constitution broadly provides for federal-court jurisdiction in controversies "between Citizens of different States." Art. III, § 2, cl. 1. This Court has read that provision to demand no more than "minimal diversity," *i. e.*, so long as one party on the plaintiffs' side and one party on the defendants' side are of diverse citizenship, Congress may authorize federal courts to exercise diversity jurisdiction. See *State Farm Fire & Casualty Co.* v. *Tashire,* 386 U. S. 523, 530-531 (1967). Further, the Constitution includes no amount-in-controversy limitation on the exercise of federal jurisdiction.

*Exxon Mobil Corp. v. Allapattah Services, Inc., supra.*

After Defendant removed this case from state court, at least two additional factors came into play.

> First, "subject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *United States* v. *Cotton,* 535 U. S. 625, 630 (2002). Moreover, courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party. *Ruhrgas AG* v. *Marathon Oil Co.,* 526 U. S. 574, 583 (1999).

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006).

## Minimal Diversity

Intentionally consistent with Art. III, under the SPEECH Act 28 USC § 4103, "in addition to removal allowed under section 1441," federal courts only have subject matter jurisdiction of actions removed from state court when there is minimal diversity of citizenship. As with the minimal diversity requirement of the *Class Action Fairness Act* (CAFA) of 2005, the SPEECH Act "confers federal *diversity jurisdiction*" on actions to enforce a foreign defamation judgment; *Allapattah Services, Inc., supra,* (emphasis added). Even in CAFA cases, the removing party must have "pleaded minimal diversity." *DORSTEN v. SLF SERIES G, LLC*, No. 15-CIV-61235-BLOOM/Valle (S.D. Fla. Sept. 21, 2015).

> Until Congress changes our jurisdiction and allows us to hear cases based on something less than complete diversity, we cannot act. And make no mistake, whether to confer diversity

jurisdiction in the absence of complete diversity is a quintessential political decision belonging to Congress, as congressional efforts to respond to abuses in state court class action litigation by allowing their removal on minimal diversity have so recently reminded us.

[. . .] To the point, our insistence that diversity removal, powerful as it is, remain within its congressionally marked traces is demanded by principles of comity and federalism — that a state court is to be trusted to handle the suit unless the suit satisfies the removal requirements. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568 (5th Cir. 2004)

In *AU Optronics Corp. v. South Carolina*, 699 F.3d 385 (4th Cir. 2012), the sole minimal diversity CAFA plaintiff in a removed case was the State of South Carolina, who challenged the court's subject matter jurisdiction. The district court remanded the case to state court, having "decided that the cases failed to satisfy CAFA's minimal diversity requirement." "South Carolina is not a citizen of any state for purposes of diversity jurisdiction. [...] Thus, minimal diversity does not exist among the named parties, as the district court explained." The Court of Appeal affirmed the decision of the district court. The minimal diversity requirement of both CAFA and the SPEECH Act are clearly jurisdictional in nature. The Court of Appeal for the Fifth Circuit observed that Congress "confer[red] diversity jurisdiction in the absence of complete diversity" with that Act; *Smallwood, supra*. Like CAFA, the SPEECH Act thus "alters the landscape for federal court jurisdiction." The SPEECH Act allows district courts to "abandon the complete diversity rule" (*Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006)) but still mandates the only way the party seeking removal "to satisfy minimal diversity is by *demonstrating*" (Abrego, *supra*, emphasis added):

(1) any plaintiff is a citizen of a State different from any defendant; (2) any plaintiff is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (3) any plaintiff is a citizen of a State and any defendant is a foreign state or citizen or subject of a foreign state. 28 U.S.C. § 4103

To paraphrase the Supreme Court, "there is no doubt that the similarity of § 4103 to Article III bespeaks a shared purpose" *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 122 S. Ct. 2054, 153 L. Ed. 2D 95 (2002). Cf. *Hildebrand v. DENTSPLY INTERNATIONAL, INC.*, Civil Action No. 06-5439 (E.D. Pa. Sept. 30, 2011) (When a party "from the commencement of

this action cannot establish diversity, subject matter jurisdiction never *was* properly invoked here, and thus never was destroyed by subsequent events"; "no federal court subject matter jurisdiction ever existed, and the Court must dismiss this action" (emphasis in original).

## Failure to Make Any Allegation of Minimal Diversity Was a Jurisdictional Fault

Averment by the Defendant of facts necessary to find minimal diversity in the instant case is therefore jurisdictionally and statutorily required. The Constitution "demands" "minimal diversity" for federal subject matter jurisdiction to vest in cases usurped from a state court's jurisdiction; *Exxon Mobil Corp. v. Allapattah Services, Inc., supra.* "Article III of the Constitution requires [...] minimal diversity" *Dresser Indus. v. Underwriters At Lloyd's of London*, 106 F.3d 494 (3d Cir. 1997).

The averment of constitutional minimal diversity requirement in removed diversity cases is jurisdictional. Unlike the facts in *Arbaugh, supra*, where there was a non-jurisdictional employee-numerosity requirement that could be waived, in the instant case, the averment of minimal diversity is a constitutional requirement under Art. III. In *Arbaugh*'s language, minimal diversity of citizenship is a "threshold ingredient" to subject-matter jurisdiction. Congress intended to make the SPEECH Act's minimal diversity requirement under Sec. 4103 completely consistent and coextensive with the minimal diversity requirement of Art. III; otherwise—if it required no averment of diversity--Sec. 4103 would be unconstitutional.

In a removed case, where jurisdiction had already vested with the state court consistent with the SPEECH Act's provision for concurrent jurisdiction, the actual *existence* of diversity jurisdiction, *ab initio,* depends on the removal petition's compliance with the requirement of making some allegation of citizenship or domicile for all parties. In fact, Plaintiffs' averment about their U.S. citizenship and domicile in Canada (i.e. stateless citizens) strongly suggested the non-existence of the required minimal diversity.

In *Americold Realty Trust v. Conagra Foods, Inc.*, 2016 W.L. 854159 (U.S. 2016), the Supreme

Court affirmed the decision of the U.S. Court of Appeal for the Tenth Circuit involving a case removed

based on diversity of citizenship because Americold was averred in removal documents to be a citizen

of Maryland. As in the instant case, "the District Court accepted jurisdiction and resolved the dispute in

favor of [the defendant]." Some plaintiffs appealed, others did not. The Court of Appeal, *sua sponte*,

questioned diversity because, on its face, defendant was "not a corporation" but a "trust" and ultimately

vacated the district court final judgment on cross-motions for summary judgment. As "there was *no*

*record* of the citizenship of Americold's shareholders, the Tenth Circuit concluded that the parties

failed to demonstrate that the plaintiffs were 'citizens of different States' than the defendants"

*Americold, supra*. Based on this, the Circuit Court "vacate[d] its judgment on the merits" due to lack of

subject-matter jurisdiction; *ConAgra Foods, Inc. v. Americold Logistics, LLC*, 776 F.3d 1175 (10th Cir.

2015). The burden lay on the removing defendant to allege and demonstrate citizenship of the parties,

and the fact that the district court had "accepted" jurisdiction did not, neither for the Court of Appeal

nor the Supreme Court, constitute some sort of tacit adjudication of subject-matter jurisdiction that then

became *res judicata* or that plaintiffs waived. The Supreme Court reaffirmed its finding in *Arkoma,*

*supra*, that there is only "a *limited* exception for corporations" in diversity jurisdiction in removed

cases (emphasis added).

> Despite our oft-repetition of the rule linking unincorporated entities with their "members," we
> have never expressly defined the term. But we have equated an association's members with its
> owners or "'the several persons composing such association.'" Carden, 494 U. S., at 196
> (quoting Great Southern Fire Proof Hotel Co. v. Jones, 177 U. S. 449, 456 (1900)).

*Americold* argued that it was called a "trust" and that it was a juridical person under Maryland law, and

thus a citizen of that state under *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64

L.Ed.2d 425 (1980). The Supreme Court rejected both the contention that what state law terms the

entity in question matters for considerations of federal subject-matter jurisdiction, *and* that the juridical

person status of the entity under state law is relevant for the same analysis. It mattered not how state

law labels or names an entity in the context of deciding if diversity of citizenship exists.

> Many States, however, have applied the "trust" label to a variety of unincorporated entities that have little in common with this traditional template. Maryland, for example, treats a real estate investment trust as a "separate legal entity" that itself can sue or be sued.

On remand, the *Americold* plaintiffs who had not appealed filed a motion to vacate under Rule 60(b) (4); Americold opposed the motion, stating that the higher court decisions did not apply to those plaintiffs since they had not appealed, citing waiver and *res judicata* principles. The district court flatly rejected any suggestion that it had jurisdiction to consider any motion from any party, and the entire judgment was vacated and remanded; *ConAgra,* (district court) *supra.*

In *Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001), the defendant removed the case from state court citing federal question jurisdiction. Plaintiff's allegations included "violation of the Federal Trade Commission rules, regulations, and statutes." The district court accepted jurisdiction due to "reference to federal law in his complaint," and later denied remand. Final judgment was entered in favor of Allstate. As in the instant case, the "complaint d[id] not contain allegations of diversity or lack of diversity," however the similarity to the instant cases ends there. Defendant Allstate's allegation of federal question jurisdiction—used to initially vest the district court with subject-matter jurisdiction, which was subject to adjudication due to the remand motion--did not involve an Act of Congress that required diversity of citizenship, which distinguishes the instant case from the facts in *Howery*. Nevertheless, the Howery court does speak to the threshold importance of diversity:

> The record does not contain allegations or evidence of diversity of the parties. We then lack jurisdiction over this case and we need not address Howery's challenge to the district court's refusal to remand. We VACATE the judgment of the district court and REMAND this case to the district court with instructions to DISMISS the case for lack of jurisdiction.

In removed cases, a lack of adequate allegations of diversity by the party asserting jurisdiction are fatal to federal jurisdiction, which is void. That is the same as in the instant case. The fact that remand was moved for and denied was totally irrelevant to the *Howery* Court as the district court never had

jurisdiction to begin with.

Mr. Handshoe had to make an allegation of minimal diversity of citizenship; he remained silent on this issue and instead conclusorily claimed federal question. This is not a defective allegation it is *no* allegation. Congress "limited the right to amend to *defective* pleadings, not omitted pleadings" (emphasis in original) *Outdoor World Corp. v. Calvert*, 618 F. Supp. 446 (E.D. Va. 1985). "Because plaintiff's complaint is silent as to the citizenship of the parties, and complete diversity of citizenship is not apparent from the face of the complaint (and indeed, appears to be lacking), the Court cannot exercise jurisdiction over this case . . ."; *Smith v. Bank of America, NA*, No. 4: 13CV1280 CDP (E.D. Mo. July 10, 2013). This leads to at least two consequences: (1) Defendant could have amended his removal petition within thirty days; failure to do so is fatal to federal subject-matter jurisdiction; (2) after thirty days, any attempt to make a new allegation claiming a new ground for jurisdiction, such as minimal diversity or to properly state the citizenship of the parties, is forbidden because, as seen above, absent such allegations jurisdiction was never divested from the state court and this would be an impermissible new (not amended) basis for jurisdiction. In *Blakeley v. United Cable System*, 105 F. Supp. 2d 574 (S.D. Miss. 2000), this District Court stated:

> the courts that have addressed the issue have uniformly recognized that a defendant's ability to amend the removal petition *after* the thirty-day time limit for removal prescribed by § 1446 extends only to "amendments to correct 'technical defects' in the jurisdictional allegations in the notice of removal," and that amendments to remedy a "a substantive defect in the [removal] petition", i.e., to add a new basis for federal jurisdiction, are not permitted. *See, e.g.,Briarpatch Ltd. v. Pate*, 81 F.Supp.2d 509, 516-17 (S.D.N.Y.2000) ("[f]ailure to assert federal question jurisdiction as a basis for removal is a substantive defect" which defendant may not cure by amendment after expiration of thirty-day time limit of § 1446(b)); *Stein v. Sprint Communications Co.*, 968 F.Supp. 371, 374 (N.D.Ill.1997) ("[A] defendant may not amend its notice of removal after the 30-day limit in § 1446(b) to remedy a substantive defect in the petition"); *Wright v. Combined Ins. Co. of America*,959 F.Supp. 356, 359 (N.D.Miss.1997) ("If a defendant seeks to amend the notice of removal at any time thereafter, he may only do so to clarify the jurisdictional grounds for removal, which were unartfully stated in the original notice. He may not allege new jurisdictional grounds for removal."); *Spillers v. Tillman*, 959 F.Supp. 364, 372 (S.D.Miss.1997) ("Although a defendant is free to amend a notice of removal within the 30-day period set forth in 28 U.S.C. § 1446(b), once the 30-day period has expired, amendment is not available to cure a substantive defect in removal proceedings.");*Lowes v. Cal*

*Dive Int'l, Inc.,* No. 97-407, 1997 WL 178825 (E.D.La.1997) (recognizing that "[w]hile defendants may freely amend their notice of removal within thirty days of service, they may not add new grounds for removal after the thirty day period has expired"); *Iwag v. Geisel Compania Maritima,* 882 F.Supp. 597, 601 (S.D.Tex.1995)(observing that "[s]ection 1653 does not allow the removing party to assert additional grounds of jurisdiction not included in the original pleading," and thus holding that court would "disallow amendments to notices of removal that present grounds for removal not included in the original notice"); Charles A. Wright, Arthur R. Miller & Edward H. Cooper,*Federal Practice and Procedure* § 3733, at 358-61 (3d ed. 1998) ("[T]he notice may be amended only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice... Completely new grounds for removal jurisdiction may not be added....").

Mr. Handshoe cannot allege the citizenship of the parties for that would be to allege a new basis for this

Court's jurisdiction; *Zamora v. Wells Fargo Home Mortg.,* 831 F. Supp. 2d 1284 (D.N.M. 2011), citing

14C Wright & Miller, *Federal Practice and Procedure* § 3733, at 651-659 (4th ed. 2009) ("defendants

*may not add completely new grounds for removal* or furnish missing allegations, even if the court

rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction

on the basis of a ground that is present but that defendants have not relied upon"; *Constance v.*

*AUSTRAL OIL EXPLORATION CO., INC.,* Civil Action No. 12-cv-01252 (W.D. La. Feb. 6, 2013) (in

cases when neither the petition of removal nor the state court record revealed the required domiciliary

information of the defendants at the time the case was filed, then jurisdiction is *lacking*) (emphasis

added). There is no indication in the record that diversity actually existed, and in fact the opposite is

true given the United States citizenship of the Canadian-domiciled plaintiffs,  the "joint stock" nature

of their company, and the total absence of any averment of Mr. Handshoe's citizenship and state of

domicile. The Fifth Circuit Court of Appeal has unequivocally found:

> "[s]ection 1653 provides a method for curing defective *allegations* of jurisdiction" where the defect is merely one of the pleading and not one of an absence of proof of facts necessary to establish diversity of citizenship. *Aetna, 796 F.2d at 775* (emphasis in original).
>
> However, where there the defect is "basic and actual, not formal, ... amendment of [the] pleadings is unavailing." *Russell v. Basila Mfg. Co.,* 246 F.2d 432, 433 (5th Cir.1957) (citations omitted); *see also McGovern, 511 F.2d at 654* (amendment of inadequate allegations of diversity jurisdiction disallowed where "there is no indication in the record that diversity in all probability exists"). In the instant case, we cannot treat the defect as merely one of form, rather

than one of substance. Defendants contend, and contended below, that diversity jurisdiction does not and did not exist. The district court never had before it, at any time relevant to this appeal, any evidence tending to establish the presence of diversity jurisdiction, and it made no jurisdictional finding.

Stafford, *supra*

Nowhere in "Defendant's Notice of Removal" (ECF 1) in this case is there mention of the citizenship of any party, or facts necessary to make that determination. Nowhere in Plaintiffs' "Motion to Enroll Foreign Judgment," filed in state court (ECF 2), is there mention of the citizenship of any party. Defendant's Notice merely makes the conclusory allegation that "Plaintiffs' suit involves a federal question" under 28 USC § 1401 and mentions 28 USC § 4103 (which section requires minimal diversity), and does not even espouse required diversity demanded by the SPEECH Act. "Absent allegations of citizenship as to all parties, the Court cannot determine whether it has diversity jurisdiction over this case" *HSBC BANK USA, NA v. Lopez*, No. CV 12-05536 GAF (VBKx) (C.D. Cal. July 13, 2012). State and federal courts have concurrent jurisdiction under the Act. The enrollment of a foreign defamation judgment does not alone constitute facts sufficient to give original jurisdiction to the federal court, as alleged in conclusory fashion by Defendant. The SPEECH Act itself requires minimal diversity for subject-matter jurisdiction to vest in federal court and be divested from state court. The Plaintiffs' petition to enroll foreign judgment raised no federal question. A "defense of federal law preemption will not constitute an independent basis for federal jurisdiction sufficient to entitle the party asserting it to removal." *Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)*, cited by Picco, 5th Cir. *supra*. See also *Gully v. First National Bank in Meridian*, 299 U. S. 109, 112 (1936).

As of March 8, 2012, the Mississippi state court had jurisdiction over the enrollment of the Canadian judgment; that jurisdiction cannot have been usurped to federal court without some legitimate basis. Indeed, it is evident Mr. Handshoe "cut and pasted" language from his 2012 removal document to his 2016 removal document, where this Honorable Court has already found that Mr. Handshoe

"failed to establish that the Court has diversity jurisdiction." In fact, in both Defendant's 2012 and 2016 federal court removal documents and in the state court enrollment documents, the record in this case does not distinctly and affirmatively allege the citizenship of the parties. So, in February, 2016, this Court found that "Defendant's conclusory statement that 'Plaintiffs' suit involves diverse parties' is insufficient." However, in the 2012 Notice filed by Defendant he did not even make this bare allegation of diversity; Mr. Handshoe made *no* allegation of diversity whatsoever.

The only averment appearing anywhere in the state court record attached to the removal documents is a caption (not a pleading) that Trout Point Lodge is a "Nova Scotia limited company." Defendant's removal document does not plead Trout Point "is a corporation, nor does it plead the identity(ies) and citizenship of the owner(s)/member(s)." It also does not plead Trout Point's primary place of business. Thus, in an identical situation a federal district court recently found an allegation of a Canadian "limited company" insufficient to establish diversity of citizenship for purposes of federal jurisdiction; HEAT OILFIELD RENTALS, LTD. v. VULCAN OILFIELD SERVICES, LLC, Dist. Court, WD Pennsylvania, No. 2:15-cv-332, (March 12, 2015). *White Pearl Inversiones SA v. Cemusa, Inc.*, 647 F.3d 684 (7th Cir. 2011) ("[I]t can be difficult to decide whether a business bearing the suffix "Ltd." is a corporation for the purpose of § 1332 or is more like a limited partnership, limited liability company, or business trust"). See also *Stafford v. Mobil Oil Corp., supra*; *SJ Properties Suites v. Specialty Finance Group, LLC*, 772 F.Supp. 2d 1021, 1030-1031 (E.D.Wis. 2010) (corporate status and citizenship of Icelandic "limited companies" undetermined for diversity purposes); *GLOBAL TRANSACTIONS, LLC v. GLOBAL SPECTRUM PICO PTE., LTD.*, Civil Action No. 12-7208 (E.D. Pa. Mar. 6, 2013) (jurisdictional status of Singapore "limited company" uncertain); *SHTARK INVESTMENT GROUP, LLC v. NEVIOT NATURE OF GALILEE LIMITED*, No. 6: 12-cv-1365-Orl-37KRS (M.D. Fla. Mar. 20, 2013) (Israel "limited company" status unalleged and undetermined). In fact, it is implicit in the *Heat Oilfield* decision that the court had concluded a Canadian "limited

26

company" may on the balance of probabilities *not* be a corporation for purposes of diversity jurisdiction, and will require the defendant to plead the identity(ies) and citizenship of the owner(s)/member(s).

## Defendant's Burden and Federal Court's Obligation

In a removed case, until there is an averment of citizenship by the defendant, a jurisdictional fault exists in a federal court's subject-matter jurisdiction and the defendant's own standing. In *Russell v. Basila Mfg. Co.*, 246 F.2d 432 (5th Cir. 1957) even when, on summary judgment, lack of necessary diversity was "eliminated" but "only by virtue of the adjudication by the Court presuming to have jurisdiction, i. e., power to act", in reality that power is "not then existing" and "amendment of pleadings is unavailing." "Clearly this was the act of a Court having no jurisdiction." Such case law makes clear there are two thresholds of federal subject-matter jurisdiction based on Art. III minimal diversity and standing: (1) a required averment of diversity by removing defendant; otherwise the federal court is usurping the state court's power without any justification; (2) after that averment is made and removal is accepted by the district court, a requirement that (a) the Defendant positively establish in the record the required diversity, and (b) that the federal court examine its own subject-matter jurisdiction. In this instant case, one cannot pass the first threshold, and although this Honorable Court need go no further, a jurisdictional fault awaits at the second threshold as well. "Here there was not merely a defective allegation of jurisdiction, but rather there was no *tendered showing* that jurisdiction in fact existed." *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770 (5th Cir. 1986) (emphasis added).

Defendant "continued to have the burden of proof" regarding diversity jurisdiction throughout the federal court process; *Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986). Again, this Honorable Court need go no further; the Rule 60(b)(4) motion must be granted; and the Order on cross-motions for summary judgment vacated as void.

**Conclusion**

In summary, minimal diversity of citizenship was required by the SPEECH Act for this Honorable Court to have subject-matter jurisdiction. The lack of alleged or established minimal diversity of citizenship resulted in jurisdiction never leaving the state court, resulting in a situation where all Orders of this Court on the merits are affected by so fundamental an infirmity of subject-matter jurisdiction that Plaintiff may raise the infirmity even after the judgment became final. The citizenship status of plaintiffs and defendant remained undetermined up to the point of a final determination. Personal plaintiffs are not citizens of any state for purposes of Art. III or the SPEECH Act; Trout Point Lodge was never shown to be a corporation. Defendant has never been alleged or shown to be a citizen of a State. It cannot be said, nor was it ever averred, that plaintiffs have a citizenship diverse from Defendant (or that Defendant is a citizen of a state who can avail himself to the SPEECH Act). The issue is not a minor one, as it involves the required minimal diversity provided by Art. III of the Constitution in order for this district court to have usurped power from the state court. The issue is neither a statutory fault nor a jurisdictional fault that was cured by the time of final judgment. ""Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.""*Steel Co. v. Citizens for Better Environment*, *supra*, citing *Ex parte McCardle*, 7 Wall. 506, 514 (1869). For the above reasons, this Court must vacate Its Order of December 19, 2012, dismiss the case, and remand the enrollment of the 2012 judgment of Nova Scotia Supreme Court back to Hancock County Circuit Court.

Respectfully Submitted this ⸂16⸃ day of June, 2016.

Charles L. Leary, Ph.D.

CERTIFICATE OF SERVICE

I, Charles Leary, do hereby certify that I have sent a true and correct copy of the foregoing documents by using facsimile and email to:

G. Gerald Cruthird, Esq.
P.O. Box 1050
Picayune, Mississippi 39466
ggeraldc@bellsouth.net

Jack E. Truitt, Esq.
The Truitt Law Firm, LLC
149 North New Hampshire Street
Covington, Louisiana 70433
mail@truittlaw.com

This 6th day of ~~April~~ June, 2016

Charles L. Leary, PhD
189 Trout Point Road
E. Kemptville, Nova Scotia B5A 5X9
CANADA
(902) 761-2142
(800) 980-0713 facsimile
foodvacation@gmail.com