**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**



**TROUT POINT LODGE, LIMITED, A Nova Scotia**
**Limited Company; VAUGHN PERRET and**
**CHARLES LEARY**                                              **PLAINTIFFS**

**VERSUS**                          **CIVIL ACTION NO:  1:12CV00090 LG-JMR**

**DOUG K. HANDSHOE**                                        **DEFENDANT**

---

**BRIEF OF PLAINTIFF VAUGHN PERRET ON**
***PRO SE* MOTION TO VACATE UNDER FEDERAL RULE OF CIVIL**
**PROCEDURE 60(B)(4)**

In this case, minimal diversity of citizenship was jurisdictionally required for removal of this case from state court, and not only for removal, also for jurisdiction to ever vest with the U.S. district court. "If the removal was not proper in the first instance, the state court was never divested of jurisdiction and the federal court consequently has no jurisdiction to exercise;" *Vasura v. Acands*, 84 F. Supp. 2d 531 (S.D.N.Y. 2000) citing *Jackson v. Allen*, 132 U.S. 27, 34, 10 S.Ct. 9, 33 L.Ed. 249 (1889). The United States has both a federal court system and court systems in each of the states. The federal courts are courts of limited jurisdiction. They can hear a case only if it falls within the list of "Cases" and "Controversies" set forth in Article III of the Constitution. In addition, except for certain cases that can be brought directly in the Supreme Court, the federal courts cannot hear a case unless it also falls within a congressional grant of subject matter jurisdiction. Article III diversity jurisdiction extends to any case in which there is "minimal diversity," i.e. diversity of citizenship between any plaintiff and any defendant in the case. However, United States citizens not domiciled in any state destroy diversity, and any company owned by stateless U.S. citizens that is not a corporation for purposes of diversity jurisdiction takes on the stateless citizenship of its owner/members. In a case removed from state court, the defendant alone bears the burden of establishing that diversity exists, and

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**TROUT POINT LODGE, LIMITED, A Nova Scotia**
**Limited Company; VAUGHN PERRET and**
**CHARLES LEARY**                                                   **PLAINTIFFS**

**VERSUS**                       **CIVIL ACTION NO:  1:12CV00090 LG-JMR**

**DOUG K. HANDSHOE**                                                **DEFENDANT**

---

**BRIEF OF PLAINTIFF VAUGHN PERRET ON**
***PRO SE* MOTION TO VACATE UNDER FEDERAL RULE OF CIVIL**
**PROCEDURE 60(B)(4)**

In this case, minimal diversity of citizenship was jurisdictionally required for removal of this

case from state court, and not only for removal, also for jurisdiction to ever vest with the U.S. district

court. "If the removal was not proper in the first instance, the state court was never divested of

jurisdiction and the federal court consequently has no jurisdiction to exercise;" citing *Jackson v.*

*Allen,* 132 U.S. 27, 34, 10 S.Ct. 9, 33 L.Ed. 249 (1889). The United States has both a federal court

system and court systems in each of the states. The federal courts are courts of limited jurisdiction.

They can hear a case only if it falls within the list of "Cases" and "Controversies" set forth in Article III

of the Constitution. In addition, except for certain cases that can be brought directly in the Supreme

Court, the federal courts cannot hear a case unless it also falls within a congressional grant of subject

matter jurisdiction. Article III diversity jurisdiction extends to any case in which there is "minimal

diversity," i.e. diversity of citizenship between any plaintiff and any defendant in the case. However,

United States citizens not domiciled in any state destroy diversity, and any company owned by stateless

U.S. citizens that is not a corporation for purposes of diversity jurisdiction takes on the stateless

citizenship of its owner/members. In a case removed from state court, the defendant alone bears the

burden of establishing that diversity exists, and there is a strong presumption against federal

1

jurisdiction; *Coury v. Prot*, 85 F.3d 244 (5th Cir. 1996). The SPEECH Act requires minimal diversity of citizenship.

Sec. 4103. Removal

``In addition to removal allowed under section 1441, any action brought in a State domestic court to enforce a foreign judgment for defamation in which--

``(1) any plaintiff is a citizen of a State different from any defendant;

``(2) any plaintiff is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

``(3) any plaintiff is a citizen of a State and any defendant is a foreign state or citizen or subject of a foreign state,

may be removed by any defendant to the district court of the United States for the district and division embracing the place where such action is pending without regard to the amount in controversy between the parties.

In this case, no allegation of citizenship existed at the time of removal or thereafter. Citizenship was never established, though in their brief on their motion for summary judgment, Plaintiffs Leary and Perret identified themselves as U.S. citizens resident in Canada, "persons whose business and careers were centered in Nova Scotia" (brief filed 6/20/2012, document 7, page 2 and page 9), which made them non-diverse from any other party and should have called into immediate question the existence of minimal diversity. Furthermore, evidence from Defendant's blog, submitted by Plaintiffs, indicated that Leary and Perret, alone, owned the company, Daniel Abel's ownership having changed long before the state court action was filed (affidavit of Charles Leary, ECF 21, discussed below). In Its Order on summary judgment, this Court only finding was "New Orleans attorney, Daniel Abel, was (or is) a long-time business partner of Vaughn's [sic] and Perret's . . ." (Case 1:12-cv-00090-LG-JMR Document 35 Filed 12/19/12 Page 15 of 19). This was not an adjudication or finding of minimal diversity of citizenship.

2

A removing defendant must positively make a showing of diversity, and there exists a strong presumption against removal resting on basic principles of federalism. Defendant never carried his burden to establish the minimally diverse citizenship of the parties, or any of them. Therefore, jurisdiction never left the state court, and any judgments and orders rendered by this Court are void. "A void judgment, as opposed to an erroneous one, is one which from its inception was legally ineffective"; *Kansas City Southern Ry. Co. v. Great Lakes Carbon*, 624 F.2d 822 (8th Cir. 1980). It is the purpose of this motion to establish that such judgments are void, which need not be a difficult determination.

This is not the first time, nor will it be the last, that Defendant Handshoe has improperly and impermissibly invoked the jurisdiction of this district court. The resources unnecessarily expended by this Court on his litigations, removed and otherwise, is substantial: *Handshoe v. TORSTAR CORPORATION*, Civil Action No. 1: 15-CV-113-KS-RHW (S.D. Miss. Dec. 4, 2015) ("the Court cannot exercise personal jurisdiction over Defendants under the Due Process Clause of the Fourteenth Amendment"); *Handshoe v. Abel*, Civil Action No. 1: 14-CV-159-KS-MTP (S.D. Miss. Jan. 8, 2016) ("Plaintiff's argument now amounts to an admission that he previously made false representations concerning his damages to the Court [. . .] Plaintiff's claim of abuse of process must be dismissed without prejudice for want of subject matter jurisdiction"); *Handshoe v. Abel*, Civil Action No. 1: 14-CV-159-KS-MTP (S.D. Miss. Nov. 24, 2015). ("The Loyola Defendants' Motion to Dismiss [30] will be granted as it pertains to Fernandez and Lamar because the Court is not authorized by state law to exercise personal jurisdiction over them"; "[t]he Court therefore cannot exercise general jurisdiction over the Law Clinic under the Due Process Clause of the Fourteenth Amendment and will grant the Loyola Defendants' Motion to Dismiss [30] as to it as well"; [t]hese would be purely economic consequences, though, which are not enough to confer personal jurisdiction under Mississippi law. *See Jobe*, 87 F.3d at 753. The Court therefore cannot assert personal jurisdiction over Yount for

3

either of these claims); Trout Point Lodge v. Handshoe Case 1:14-cv-00241-LG-JCG Document 22

Filed 11/24/14 ("Defendant's mere argument is insufficient to meet his burden to show that removal

was proper"); Trout Point Lodge v. Handshoe Case 1:16-cv-00007-LG-RHW Document 8 Filed

02/16/16 ("Defendant, as the removing party, has not carried his burden to show that removal is proper

based on diversity jurisdiction or under the Securing the Protection of our Enduring and Established

Constitutional Heritage (SPEECH) Act enacted by Congress in 2010.") This vexatious history is

relevant background to the current inquiry.


**When A Judgment is Void for Lack of Subject-Matter Jurisdiction**

When "the trial court was powerless to render the judgment in the first instance" any judgment

rendered by that court is void. "If the underlying judgment is void, the order based on it is void. *Austin*

*v. Smith*, 114 U.S.App.D.C. 97, 103, 312 F.2d 337, 343 (1962). If voidness is found, relief is not a

discretionary matter; it is mandatory." *VTA, Inc. v. Airco, Inc.*, 597 F.2d 220 (10th Cir. 1979). There

must exist an "incessant command of the court's conscience that justice be done in light of *all* the facts"

(*Bankers Mortgage Company v. United States*, 423 F.2d 73 (5th Cir. 1970)), and in cases requiring

diversity, even minimal diversity, those facts include the citizenship of the parties. "A void judgment is

one which, from its inception, was a complete nullity and without legal effect" *Lubben v. Selective*

*Service System Local Bd. No. 27*, 453 F.2d 645 (1st Cir. 1972).

> The Rule [60(b)(4)] is often used to relieve parties from the effect of a default judgment
> mistakenly entered against them, *e. g., Klapprott*, 335 U. S., at 615 (opinion of Black, J.), a
> function as legitimate in habeas cases as in run-of-the-mine civil cases. The Rule also preserves
> parties' opportunity to obtain vacatur of a judgment that is void for lack of subject-matter
> jurisdiction [. . .] since absence of jurisdiction altogether deprives a federal court of the power to
> adjudicate the rights of the parties. *Steel Co. v. Citizens for Better Environment*, 523 U. S. 83,
> 94, 101 (1998).

*Gonzalez v. Crosby*, 545 U.S. 524, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005).

A U.S. district court exercising jurisdiction without having first established minimal diversity is an

egregious case where there is a "clear usurpation of power" from the state court and a "total want of

4

jurisdiction." This is even more so the case when there was no determination of subject-matter jurisdiction performed by the Court or asserted by the removing defendant, and the total want of jurisdiction passed unnoticed throughout the entire proceeding.  "[A] party attacking a judgment as void need show no meritorious claim or defense or other equities on his behalf; he is entitled to have the judgment treated for what it is, a legal nullity." *Combs v. Nick Garin Trucking*, 825 F.2d 437 (D.C. Cir. 1987) citing 7 J. Moore & J. Lucas, Moore's Federal Practice, ¶ 60.25[2], at 60-224 (1985); see also *Schwarz v. Thomas*, 95 U.S.App.D.C. 365, 369, 222 F.2d 305, 309 (1955) ("'[n]o showing of merits is necessary in support of a motion to vacate a void judgment'") (quoting *Wise v. Herzog*, 72 U.S.App.D.C. 335, 341, 114 F.2d 486, 494 (1940)). "While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void." *Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645 (1st Cir. 1972).  Examples of void judgments include judgments based on a failure to effect proper service. " A default judgment entered when there has been no proper service of the complaint is, *a fortiori,* void, and should be set aside. *See* Rule **60(b)(4)**" *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14 (3d Cir. 1985).

Cases where a lack of required diversity jurisdiction is the reason for voidness are harder to find, but the principle is the same as with cases involving lack of proper service leading to lack of personal jurisdiction. The venerable *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890) (favorably cited in *Lubben, supra*), stands for the proposition that when required diversity of citizenship and amount in controversy requirements are met, there are still cases that are not amenable to the subject-matter jurisdiction of federal courts, and jurisdiction remains with the state court and any federal court judgment was *void*. That situation is directly analogous to the instant case, where Congress and the Constitution have provided that there must positively appear in the record minimal

diversity for removed SPEECH Act cases involving enforcement of a foreign defamation judgment.

> Whatever, therefore, may be held to be the powers of the Circuit Courts in cases of this kind, where necessary citizenship exists between the contestants, which gives the court jurisdiction of all matters between such parties, both in law and equity, where the matter exceeds two thousand dollars in value, we know of no statute, no provision of law, no authority intended to be conferred upon the District Court of the United States to take cognizance of a case of this kind, either on the ground of citizenship, or on any other ground found in this case. According to this view of the subject, the whole proceeding before the District Judge in the District Court was *coram non judice* and void, and the attempt to enforce the judgment by attachment and imprisonment of Burrus for contempt of that order is equally void.

Likewise here, having never established the minimal diversity required to divest the state court of jurisdiction, the judgments in this case are void. Referring to *United States ex rel. Wilson v. Walker,* 109 U.S. 258, 3 S.Ct. 277, 27 L.Ed. 927 (1883), and *Vallely v. Northern Fire & Marine Ins. Co.,* 254 U.S. 348, 41 S.Ct. 116, 65 L.Ed. 297 (1920), the Court in *United Student Aid Funds, Inc. v. Espinosa,* 130 S. Ct. 1367, 559 U.S. 260, 176 L. Ed. 2d 158 (2010) pointed out that "we interpreted the statutes at issue in those cases as stripping courts of *jurisdiction*" exactly as the SPEECH Act does here. Without minimal diversity, jurisdiction adhered to the state court. In *Wilson, supra,* the Court found:

> In the case of *Windsor v. Mc Veigh,* 93 U.S. 274, Mr. Justice Field, after a review of the cases bearing upon this subject, announces their result as follows:
>
> > "The doctrine invoked by counsel, that when a court has once acquired jurisdiction it has a right to decide every question which arises in the case, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but is subject to many qualifications in its application. It is only correct when the court proceeds, after acquiring jurisdiction of the cause, according to established modes governing the class to which the case belongs, and does not transcend in the extent or character of its judgment the law which is applicable to it."

**District Court Jurisdiction After Appeal of Final Judgment**

This motion is made under Rule 60(b)(4) of the Federal Rules of Civil Procedure, which provides that a court "may relieve a party ... from a final judgment" if "the judgment is void." This Court may consider motions to vacate once the appellate mandate has issued. The Supreme Court approved this procedure in *Standard Oil Co. of California v. United States,* 429 U.S. 17, 97 S.Ct. 31,

50 L.Ed.2d 21 (1976): "the district judge is not flouting the mandate by acting on the motion.

Furthermore, the interest in finality is no more impaired in this situation than in any Rule 60(b)

proceeding" (citations omitted). In *Brumfield v. Louisiana State Board of Education*, No. 14-31010

(5th Cir. Nov. 10, 2015), the Fifth Circuit found that the Supreme Court in *Espinosa* intentionally "has

not definitively interpreted" the "arguable basis" rule used by some circuits in 60(b)(4) cases and did

not apply it in *Brumfield*. In *Box v. DALLAS MEXICAN CONSULATE GENERAL*, No. 14-10744 & 14-

10953 (5th Cir. Aug. 19, 2015), regarding the "arguable basis" standard, the Court intentionally

expressed "no opinion as to the proper standard of review" for a district court in a 60(b)(4) case.

"[F]ederal courts' limited jurisdiction should be given greater weight in considering whether to vacate a

final judgment for lack of subject-matter jurisdiction. Accordingly, federal courts should not apply a

higher standard to 60(b)(4) motions when there has been no explicit finding of subject-matter

jurisdiction in the case that produced the judgment"; Stephen E. Ludovici, *Rule 60(b)(4): When the*

*Courts of Limited Jurisdiction Yield to Finality,* 66 Fla. L. Rev. 881, 905-07 (2014), cited in

*AMERICAN REALTY CAPITAL PROPERTIES INCORPORATED v. Holland*, No. CV-14-00673-PHX-

DGC (D. Ariz. Oct. 8, 2014). RCT GROWTH PARTNERS LLC v. QUAD OCEAN GROUP

LIMITED, Dist. Court, SD Texas 2015 summarized Rule 60(b)(4) jurisprudence in this Circuit:

> Rule 60(b), in turn, allows the court to "relieve a party ... from a final judgment, order, or
> proceeding" if, among other things, "the judgment is void." FED. R. CIV. P. 60(b)(4). A
> judgment is "void" if "the court that rendered it lacked jurisdiction of the subject matter, or of
> the parties, or if it acted in a manner inconsistent with due process of law." *Williams v. New*
> *Orleans Pub. Serv., Inc.,* 728 F.2d 730, 735 (5th Cir. 1984) (quotation marks omitted); *see*
> *generally United Student Aid Funds, Inc.* v. *Espinosa,* 559 U.S. 260, 270-71 (2010) (collecting
> authorities). Granting a Rule 60 motion is ordinarily left within the district court's discretion,
> but "[w]hen ... the motion is based on a void judgment under rule 60(b)(4), the district court has
> no discretion-the judgment is either void or it is not." *Recreational Props., Inc. v. Sw. Mortg.*
> *Serv. Corp.,* 804 F.2d 311, 314 (5th Cir. 1986). For this reason, "there is no time limit on Rule
> 60(b)(4) motions." *Jackson v. FIE Corp.,* 302 F.3d 515, 523 (5th Cir. 2002). "If the judgment is
> void, the district court *must* set it aside." *Id.* at 524 (quotation marks omitted).

## Course of Action After Final Judgment(s)

7

This Court never had subject-matter jurisdiction due to Defendant's unnoticed total failure to allege and establish required minimal diversity of citizenship in "a matter of first impression" under new legislation (*TROUT POINT LODGE LIMITED v. Handshoe*, Cause No. 1: 12CV90-LG-JMR (S.D. Miss. Feb. 25, 2013). If there is "a lack of diversity jurisdiction at the time of removal, if the defect is later *cured before it is noticed*, the federal court has subject matter jurisdiction to enter judgment" (emphasis added) *Texas Beef Group v. Winfrey*, 201 F.3d 680 (5th Cir. 2000). The defect in the instant case was never noticed and the defect never cured. If the judgment is void, this Court has no discretion, it must vacate all existing judgments and orders. It is facially apparent there is no allegation of minimal diversity of citizenship or "facts which in legal intendment constitute it" whatsoever in the state court record or the Defendant's removal petition and there was no discovery; *Anderson v. Watt*, 138 US 694 - Supreme Court 1891. Therefore the exercise of jurisdiction was illusory or hypothetical, as jurisdiction actually remained with Hancock County Circuit Court. If this Court finds upon re-examining the state court record and removal petition it had no subject-matter jurisdiction, it should immediately vacate and remand, not taking up a reply.

Mr. Handshoe never alleged his own citizenship or domicile. "[A] removing defendant must also allege the factual bases for federal jurisdiction in its notice of removal under § 1446(a)" (*Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007)). Mr. Handshoe made no allegations of citizenship, residency, or domicile whatsoever regarding any party in his removal documents; and in subsequent briefs he only referred to his residency. "To be a citizen of a state, a natural person must first be a citizen of the United States. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). The natural person's state citizenship is then determined by her state of domicile, not her state of residence" (*Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001)). "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state" (*Kanter, supra*).

> Though the defendant in a diversity case, unlike the plaintiff, may have no actual knowledge of the value of the claims [or the citizenship of the plaintiffs], the defendant is not excused from the duty to show by fact, and not mere conclusory allegation, that federal jurisdiction exists. Indeed, the defendant, by removing the action, has represented to the court that the case belongs before it. Having made this representation, the defendant is no less subject to Rule 11 than a plaintiff who files a claim originally. Thus, a defendant that files a notice of removal prior to receiving clear evidence that the action satisfies the jurisdictional requirements, and then later faces a motion to remand [or for relief from judgment], is in the same position as a plaintiff in an original action facing a motion to dismiss. The court should not reserve ruling on a motion to remand [or under Rule 60] in order to allow the defendant to discover the potential factual basis of jurisdiction. Such fishing expeditions would clog the federal judicial machinery, frustrating the limited nature of federal jurisdiction by encouraging defendants to remove, at best, prematurely, and at worst, in cases in which they will never be able to establish jurisdiction.

*Lowery v. Alabama Power Co., supra.*

In addition, substantial case law on diversity allegations has determined the required allegations to divest a state court of its jurisdiction are not statutory but jurisdictional, even more so when treating Art. III minimal diversity as in the SPEECH Act. To move to the merits without having minimal diversity established in a removed SPEECH Act case would be ""assuming" jurisdiction for the purpose of deciding the merits," which the Supreme Court declined to accept in *Steel Co., supra.*

> We decline to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers. This conclusion should come as no surprise, since it is reflected in a long and venerable line of our cases. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle, 7 Wall. 506, 514 (1869).* "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Great Southern Fire Proof Hotel Co. v. Jones, supra, at 453.* The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L. M. R. Co. v. Swan, 111 U. S. 379, 382 (1884).*

*CONAGRA FOODS, INC. v. AMERICOLD LOGISTICS, LLC*, No. 13-2064-JWL (D. Kan. Document 65 Filed 04/11/16) ("The Circuit concluded *sua sponte* that this court lacked subject matter jurisdiction over the case." "The Circuit's mandate language in this case gives the court no discretion on remand but instead gave a specific instruction to vacate the judgment and remand the case to state court.")

9

Plaintiff respectfully suggests this Court should examine Its jurisdiction based on the removal

documents and state court record, and vacate, as It has no jurisdiction to do anything but declare that a

lack of jurisdiction existed in the underlying proceeding.

Stone v. State of South Carolina, 117 U.S. 430, 6 S. Ct. 799, 29 L.Ed. 962 (If the case is truly

"removable under the statute" the jurisdiction "of the Circuit Court of the United States immediately

attaches", "but still, as the right of removal is statutory, before a party can avail himself of it, he *must*

show upon the record that his is a case which comes within the provision of the statute" (emphasis

added); "The mere filing of a petition for the removal of a suit, which is not removable, does not work a

transfer. To accomplish this the suit must be one that may be removed, and the petition must show a

right in the petitioner to demand the removal"); *Insurance Company* v. *Pechner,* 95 U.S. 183,

185, ("his petition for removal when filed becomes a part of the record in the cause. It should state facts

which, when taken in connection with such as already appear, entitle him to the transfer. If he fails in

this, he has not, in law, shown to the [state] court that it cannot `proceed further with the suit'");

*Burlington &c. Railway Co. v. Dunn,* 122 U.S. 513, 515 "the question will be decided on the face of

the part of the record of the state court which ends with the petition for removal, for the Circuit Court

can no more take a case until its jurisdiction is shown by the record, than the state court can be required

to let it go until the record shows that its jurisdiction has been lost"; *Madisonville Traction Co. v. St.*

*Bernard Mining Co., 196 U. S. 239, 251-252 (1905)* "if the case was not a removable one, then the

decree was erroneous"; *Metz v. Unizan Bank*, 649 F.3d 492 (6th Cir. 2011) ("if the jurisdictional

allegations are frivolous or defective from the outset, then *jurisdiction never existed in the first place*")

(emphasis added); *Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473-74, 127 S.Ct. 1397, 167*

*L.Ed.2d 190 (2007)* ("demonstration that the original allegations were false will defeat jurisdiction);

*Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805 (7th Cir. 2010) ("if after the case is filed it is

discovered that there was no jurisdiction at the outset [. . .] it is a case in which there never was federal

jurisdiction."

Throughout the federal proceedings, it remained uncontested Trout Point's owners, Plaintiffs Leary and Perret, are not citizens of a state for diversity purposes; neither are they foreign citizens. They are stateless citizens. *Newman-Green, Inc.* v. *Alfonzo-Larrain,* 490 U. S. 826 (1989). This placed them among "indispensable adverse parties [...] not competent to sue or liable to be sued" in federal court; *Anderson v. Watt*, 138 US 694 - Supreme Court 1891. "An American national, living abroad, cannot sue or be sued in federal court under diversity jurisdiction [...] if [the American national] was found to be domiciled abroad, he would not be a citizen of any state and diversity of citizenship would also fail." "For purposes of diversity jurisdiction, only the American nationality of a dual national is recognized." "Moreover, an American living abroad is not by virtue of that domicile a citizen or subject of the foreign state in which he resides . . ." *Coury v. Prot*, 85 F.3d 244 (5th Cir. 1996).

Knowing that the personal plaintiffs' stateless U.S. citizens status did not meet federal minimal diversity and removal jurisdiction, the two parties whose citizenship Defendant Handshoe failed to state and establish were Trout Point and himself, Defendant Handshoe. Mr. Handshoe could have averred he was a citizen of a State as as required by federal law and the Constitution; however throughout the proceeding he utterly failed to do so. "Defendant failed to allege his own citizenship in the Notice of Removal. (See Not. of Removal.) [. . .] As the Notice of Removal only mentions Defendant's residence and not their citizenship, the Notice of Removal is insufficient to invoke the Court's diversity jurisdiction." *US Bank National Association v. Flores*, No. ED-16-CV-00492-VAP-SPx (E.D. Cal. Mar. 22, 2016); also *Sheridan v. Reidell*, 465 F. Supp. 2d 528 (D.S.C. 2006) (plaintiff failed to allege her own citizenship in a non-removed diversity case). Thus, this fact alone is a fatal jurisdictional flaw, and combined with stateless U.S. citizens Leary & Perret, even more glaringly so.

Even if Trout Point were a Canadian corporation for diversity purposes, minimal diversity was never alleged or established; and there is no allegation or facts established indicating Trout Point is, on

11

the balance of probabilities, a corporation for purposes of diversity. Indeed, this Court found "there has

been no discovery in this action"; *TROUT POINT LODGE LIMITED v. Handshoe*, Cause No. 1:

12CV90-LG-JMR (S.D. Miss. Feb. 25, 2013).

Trout Point Lodge, Limited could never be *assumed* to be a corporation for purposes of federal

subject-matter jurisdiction (*Heat Oilfield, supra; White Pearl Inversiones S.A. (Uruguay) v. Cemusa,

Inc.*, 647 F. 3d 684, 686 (7th Cir. 2011)). Federal common law, not the law of any state, determines

whether a person is a citizen of a particular state (including a foreign state) for purposes of such

jurisdiction. J. Moore, Moore's Federal Practice, § 0.74[1] (1996); *e.g., Mas v. Perry,* 489 F.2d 1396,

1399 (5th Cir.) *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974). Given that federal courts

in removed cases must exercise "a presumption against subject matter jurisdiction" (*Coury, supra*), the

existence of diversity must appear positively; "we have examined the complaint and have discovered

nothing there that *negates* the possibility that [defendant] should be considered a citizen of New York

here because it has members" who are non diverse; *Baer v. United Servs. Auto. Ass'n,* 503 F.2d 393,

395 (2d Cir. 1974).

Unlike a corporation, for purposes of assessing diversity of citizenship a limited liability

company or a joint-stock company is a citizen of the state (or stateless U.S. citizen) of which a

"member" of the company is a citizen. Indeed, much of this case was about the distinct differences

between American and Canadian law, but no court ever inquired into the issue of how such differences

might affect the citizenship of artificial entities.

> A court should not "assume[] that [a foreign state] has business entities that enjoy corporate
> status as the United States understands it[,]" as "not even the United Kingdom has a business
> form that is exactly equal to that of a corporation." *White Pearl Inversiones S.A. (Uruguay) v.
> Cemusa, Inc.,* 647 F. 3d 684, 686 (7th Cir. 2011). "Deciding whether a business enterprise
> based in a foreign nation should be treated as a corporation [. . .] can be difficult. Businesses in
> other nations may have attributes that match only a subset of those that in the United States
> distinguish a 'corporation'—a business with indefinite existence, personhood (the right to
> contract and litigate in its own name), limited liability for equity investors, and alienable shares,
> among other features—from forms such as the limited liability company, the limited

partnership, and the business trust." *Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co.,* 759 F. 3d 787, 788 (7th Cir. 2014) (Easterbrook, J.) (vacating district court's judgment and remanding with instructions to dismiss for want of subject-matter jurisdiction where, on appeal, the defendant business established under the law of China was found to be "closer to a limited liability company than to any other business structure in this nation," thus defeating diversity where both the plaintiff and a member of the defendant entity were citizens of Illinois) (internal citation omitted)

*KESHOCK v. METABOWERKE GmbH*, Civil Action No. 1:-00345-N (S.D. Ala. July 20, 2015).

*Carden v. Arkoma Associates,* 494 U.S. 185, 110 S. Ct. 1015, 108 L. Ed. 2d 157 (1990) articulated a

general rule: *every association of a common-law jurisdiction other than a corporation is to be treated*

*like a partnership.* The reference to "common-law jurisdiction" in the preceding sentence

acknowledges the holding of *Puerto Rico v. Russell & Co.,* 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903

(1933), that the civil-law entity known as a *sociedad en comandita* is to be treated like a corporation.

*Carden* makes clear that this holding is *not* to be extended. *Carden* was reaffirmed this year in

*Americold, supra:*

> Congress never expanded this grant of citizenship to include artificial entities other than corporations, such as joint-stock companies or limited partnerships. For these unincorporated entities, we too have "adhere[d] to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all [its] members.'" *Carden,* 494 U. S., at 195-196 (quoting *Chapman v. Barney,* 129 U. S. 677, 682 (1889)).

*Jerguson v. Blue Dot Inv., Inc.,* 659 F.2d 31 (5th Cir. 1981) held that the essential analysis as to

whether a company is a corporation for citizenship purposes applies equally to foreign companies.

"Determining the citizenship of a corporation for purposes of diversity jurisdiction historically was

entangled with the question of whether a corporation, as a mere legal entity, could be considered a

citizen at all." The Supreme Court has noted this, and the accord of several circuits, but has not entered

the issue:

> [T]hose Circuits that have reached the issue are in agreement that § 1332(c) extends to alien corporations. See *Danjaq, S. A. v. Pathe Communications Corp.,* 979 F. 2d 772, 773-774 (CA9 1992); *Vareka Investment, N. V. v. American Investment Properties, Inc.,* 724 F. 2d 907, 909 (CA11 1984); *Jerguson v. Blue Dot Investment, Inc.,* 659 F. 2d 31, 35 (CA5 1981). There is no need for us to weigh in on this point.

Traffic Stream, *supra*

There had to exist in the record at the time of removal facts or allegations establishing a reasonable probability that Trout Point Lodge, Limited was a corporation and not a joint stock company or limited liability company. The Fifth Circuit in *Mas*, *supra*, held that the "determination of one's State citizenship for diversity purposes is controlled by federal law, not by the law of any State." Determination of what kinds of companies are corporations for purposes of citizenship in a diversity jurisdiction analysis is governed by "the trilogy of *Chapman, Great Southern,* and *Bouligny*"; *Carden, supra.* A foreign state's definition of a juridical entity is irrelevant to the analysis of United States federal courts. The Court of Appeal for the 7th Circuit has recently found that the proposition that "every "juridical person" — that is, every entity that can own property, make contracts, transact business, and litigate in its own name — is a corporation" for diversity of citizenship purposes is erroneous. *FELLOWES v. CHANGZHOU XINRUI FELLOWES OFFICE EQPT.,* 759 F.3d 787 (7th Cir. 2014) citing *Puerto Rico v. Russell & Co.,* 288 U.S. 476, 481-82, 53 S.Ct. 447, 77 L.Ed. 903 (1933).

In *Americold*, the removing defendant failed to provide any "record of the citizenship of Americold's shareholders" and the appeal court correctly concluded there was a failure to "demonstrate that the plaintiffs were ""citizens of different States" than the defendants" and vacated the underlying judgment. On appeal, The Supreme Court stated: "This case asks us to determine the citizenship of Americold Realty Trust, a "real estate investment trust" organized under Maryland law." Since the record contained no necessary facts, The Court looked to state law, which "provides an answer."

> Applying this principle with reference to specific States' laws, we have identified the members of a joint-stock company as its shareholders, the members of a partnership as its partners, the members of a union as the workers affiliated with it, and so on.

Nova Scotia companies have unique features and an ancient statutory heritage dating to 1855; officers may represent the company in court *pro se* (as the record shows Dr. Leary did in the underlying defamation case); they have "members" not shareholders; it is possible to be a member of an Nova

14

Scotia company without owning shares. As the Supreme Court in *Americold* summarized:

> Distilling this Court's precedent, the Tenth Circuit reasoned that the citizenship of any "non-corporate artificial entity" is determined by considering all of the entity's "members," which include, at minimum, its shareholders. Id., at 1180–1181 (citing Carden v. Arkoma Associates, 494 U. S. 185 (1990)). As there was no record of the citizenship of Americold's shareholders, the court concluded that the parties failed to demonstrate that the plaintiffs were "citizens of different States" than the defendants.

Like Americold Realty Trust, Defendant Handshoe failed to carry his burden in the instant case. Simple research by Mr. Handshoe and his two attorneys could have shown that a Nova Scotia limited company was not a *corporation* for purposes of diversity of citizenship, even though Nova Scotia may refer in passing to Nova Scotia companies as "corporations." *Trawick* v. *Asbury MS Gray-Daniels, LLC,* 244 F. Supp. 2d 697, 699 (SD Miss. 2003) (criticizing counsel for failing to do the "minimal amount of research" that would have revealed the absence of subject-matter jurisdiction), as cited by The Supreme Court in *Grupo Dataflux, supra.* In fact, the New York joint stock company of *Chapman* v. *Barney, supra,* and today's Nova Scotia joint stock company are the same and share the same origin in English common law; both being like "corporations" by state legislation but never reaching corporate status for purposes of federal common law diversity jurisdiction. The State of New York enacted Acts giving joint stock companies corporate powers and characteristics starting in 1849; cf. "New York Joint Stock Companies and the Federal Corporation Tax," *Columbia Law Review* Vol. 16, No. 2 (Feb., 1916), pp. 133-137. So similar were joint stock companies and corporations that in *Mason v. American Express Co.*, 334 F.2d 392 (2 Cir. 1964), the Second Circuit held that the American Express Company, a joint stock company, was a citizen of New York; however, "the precedential value of *Mason* was, at the least, seriously undermined by United Steelworkers v. R. H. Bouligny, Inc.,*supra,* 382 U.S. at 152 n. 10, 86 S.Ct. 272, which, as we have stressed seems to represent a broad reaffirmance of the diversity rule traditionally applied to unincorporated associations" *Baer*, Second Circuit, *supra. Bouligny* was upheld in *Arkoma* and *Americold,* clearly overturning *Mason.* The United States Court of Appeal for

the Sixth Circuit considered the citizenship of a New York joint stock company and found (citations omitted):

> It seems plain that jurisdiction may be sustained here only if defendant can be held to be a corporation of the State of New York. The fact that it may be sued by its common name is not enough. Nor is it enough to say that defendant's organization has many features which permit it to operate and carry on its functions in a manner indistinguishable from that followed by corporations.

*Brocki v. American Express Company*, 279 F.2d 785 (6th Cir. 1960); affirmed *Brocki v. American Express Co.*, 364 U.S. 871, 81 S. Ct. 113, 5 L. Ed. 2d 92 (Supreme Court 1960).

In the decade following *Brocki*, New York converted all joint stock companies then still existing to corporations. Nova Scotia did not. The "Nova Scotia Act Respecting Joint Stock Companies (the "Companies Act")" (cf. *IN RE SMURFIT-STONE CONTAINER CORPORATION*, No. 09-10235 (BLS (Bankr. D. Del. June 11, 2010)) is a statute that has undergone no substantive change for 160 years. *Re. E L Management Incorporated*, 2004 NSSC 169 ("With the proclamation last March of the new British Columbia Business Corporations Act, Nova Scotia became the last memorandum of association jurisdiction in Canada." "The Act of 1855 [implemented in 1856] provided for the kind of scheme we have today.") Like the Supreme Court in *Americold*, the Court in *Brocki, supra*, looked to "New York courts" to see "whether similar joint-stock associations are, or are not, corporations. They have said they are not." In *Morris v. Union Bank of Canada*, 31 SCR 594, 1901 CanLII 16 (SCC), the Chief Justice of the Supreme Court of Canada explained common law differences between joint stock companies and corporations (footnote removed):

> Since the case of *McCraken v. McIntyre* there have been great changes in the statute law affecting shareholders' liability. At the time *McCraken v. McIntyre* was decided, companies incorporated, as that company was, were corporations pure and simple. They were not (to use the expression of Lord Justice Lindley) like that statutory hybrid between a partnership and a corporation, a joint stock company. They did not partake in any way of the character of a partnership. There was no winding up process. Therefore creditors of the company had nothing to do *ab initio* with the agreements between the company and its shareholders.

This view of Nova Scotia limited companies as a "statutory hybrid between a partnership and a corporation" is affirmed in contemporary legal scholarship on Nova Scotia companies:

16

The NSCA [Nova Scotia Companies Act] has never been a complete code of corporate law and, while it has been amended over time, it has not been thoroughly modernised. As a result, the NSULC form of business organization remains grounded in *the old English memorandum and articles of association model* of incorporation and is meant to be interpreted through a combination of statutory interpretation and *common law jurisprudence*. (emphasis added)

Mohamed F. Khimji, "Shareholder Liability in Nova Scotia Unlimited Companies," 37 Dalhousie L.J. 787 (Fall, 2014).

In Chapman, *supra*, The Supreme Court decisively rejected the proposition that the United States Express Company, a joint stock company, could be a corporation for purposes of diversity, "although plaintiff was endowed by New York with capacity to sue, it could not be considered a "citizen" for diversity purposes. 129 U. S., at 682." Carden, *supra*. *Americold* assures us nothing has changed. As the Seventh Circuit said in *Fellowes, supra*, one cannot "establish a different rule for functionally identical entities established under other nations' laws." Leary and Perret were not diverse; Mr. Handshoe's citizenship remains unalleged, unestablished, and therefore nondiverse; and the status of Leary & Perret's business Trout Point was, given no evidence to the contrary, that of a company organized under the Nova Scotia *Act Respecting Joint Stock Companies* whose citizenship remained totally undetermined, as in *Americold, supra*. And in *Americold*, the judgment had to be vacated.

Mr. Handshoe himself was aware of evidence pointing to the fact that Trout Point Lodge was owned jointly by stateless U.S. citizens Leary and Perret. An affidavit of Charles Leary filed with this Court on July 21, 2012 (ECF 21) recounted verbatim a public Handshoe blog post regarding an investigation of company records at the "Registry of Joint Stock Companies Nova Scotia." The Handshoe informant noted that Leary, Perret, and Daniel Abel had jointly registered as "partners" of "Trout Point Lodge" but that subsequently only Leary and Perret "registered Trout Point Lodge Ltd Dec 14, 1998, and this time they took off Abel's name, and just have Leary and Perret as partners." In Mr. Handshoe's "Complaint for Declaratory Relief" filed with this district court February 8, 2012 with all instant Plaintiffs as the defendants, Defendant Handshoe identified Charles Leary and Vaughn Perret as "owners of Trout Point Lodge, Limited," and baldly stated he was suing "Defendants, also

17

United States Citizens . . ." domiciled in Canada. Instant Defendant specifically identified Leary,

Perret, *and* Trout Point as "United States Citizens" and later referred to Trout Point as a "Canadian

limited company" but not as a citizen of Canada. Mr. Handshoe knew removal was improper, and

should be sanctioned. This Court accordingly only found that Mr. Abel, whose citizenship also

remained unalleged and unknown, "was (or is)" a business partner of Leary & Perret who was a "New

Orleans attorney" (ECF 35).

## Question of Subject-matter Jurisdiction, Not Statutory Removal Jurisdiction

Plaintiff Perret is not launching a collateral attack or now questioning removal jurisdiction

(though this was lacking as well), but rather is stating that a threshold basis for usurping state court

jurisdiction under the SPEECH Act was always lacking. Defective removal leads to void judgments;

*Wood v. Home Insurance Company*, 305 F. Supp. 937 (C.D. Cal. 1969) ("Want of federal jurisdiction

would make futile the litigation of any of the issues in this Court;" "Jurisdiction is here sought to be

based on diversity of citizenship and it does not appear that all of the defendants are citizens of a state

other than California. Thus, this Court lacks the requisite jurisdiction . . ."); *Abels v. State Farm Fire &

Cas. Co.*, 770 F.2d 26 (3d Cir. 1985) (discussing diversity of citizenship allegations, "lack of

jurisdiction would make any decree in the case void and the continuation of the litigation in federal

court futile" citing 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3642, at

149 (2d ed. 1985)).

There are only three pieces of federal legislation known to Plaintiff that require minimal

diversity; but they all require minimal diversity for a jurisdictional reason. The first is the interpleader

statute, 28 U. S. C. § 1335; the second is the Class Action Fairness Act of 2005; and the third is the

SPEECH Act of 2010. Taking a look at The Supreme Court Decision in *State Farm*, *supra*, it is clear

that even with new legislation that only requires minimal diversity, jurisdictional analysis by the court

is required, *sua sponte* if necessary. "Since the matter concerns our jurisdiction, we raise it on our own

motion." The *State Farm* Court found the requirement of the statute to be for minimal diversity, like

the SPEECH Act. Then the High Court itself raised the question that illuminates why a minimal

diversity requirement in federal legislation is *jurisdictional* not *statutory*.

> There remains, however, the question whether such a statutory construction is consistent with Article III of our Constitution, which extends the federal judicial power to "Controversies. . . between Citizens of different States . . . and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

The Court decided nothing more than minimal diversity was required by Art. III and "we conclude that

the present case is properly in the federal courts." In *Haynes v. Felder*, 239 F.2d 868 (5th Cir. 1957),

the 5th Circuit earlier explained the interpleader statute: "the Act is bottomed on the diversity

jurisdiction of the United States courts, permitted by Art. III, § 2, cl. 1(7) of the Constitution, and thus

it was necessary for Congress to specify some alternative form of diversity on which jurisdiction in

particular cases could be grounded. This it did in the present Act by *requiring* "claimants, of diverse

citizenship" (emphasis added). The self-same requirement is true of the SPEECH Act.

In his concurring opinion in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S. Ct. 2273, 105

L. Ed. 2d 1 (1989), Justice Stevens referred to such considerations as "true jurisdictional" concerns.

> [T]he cases are legion holding that a party may not waive a defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent. See, *e. g., Owen Equipment & Erection Co.* v. *Kroger,* 437 U. S. 365, 377, n. 21 (1978); *Sosna* v. *Iowa*, 419 U. S. 393, 398 (1975); *California* v. *LaRue,* 409 U. S. 109, 112, n. 3 (1972); *American Fire & Casualty Co.* v. *Finn*, 341 U. S. 6, 17-18, and n. 17 (1951); *Mitchell* v. *Maurer*, 293 U. S. 237, 244 (1934); *Jackson* v. *Ashton,* 8 Pet. 148, 149 (1834). This must be particularly so in cases in which the federal courts are entirely without Article III power to entertain the suit.

The indisputable lack of subject-matter jurisdiction in this case is not a statutory requirement that can

now be cured or was waived. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 117 S. Ct. 467, 136 L. Ed. 2d 437

(1996) involved a situation where removal was improper, statutorily, but then by the commencement of

trial, the jurisdictional defect was cured and diversity existed. That is clearly not the case here. Unlike

the facts in *Caterpillar*, in this Honorable Court and in the Court of Appeal a "jurisdictional defect

19

lingered through judgment." Indeed, the *Caterpillar* court unequivocally stated: "if, at the end of the

day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated." It is to cases like

Caterpillar and Steel Co. that one must look in deciding the voidness of the judgments in the instant

case, for Supreme Court direction specifically on Rule 60(b)(4) itself is sparse. "This area of law,

although rarely trod upon, is ripe for reform. It is time for the Supreme Court to settle the law in this

area, as—even with the assistance of commentators—the opinions of the federal courts of appeals are

certainly confusing" Ludovici, *supra*.

      "[L]ack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal

court by consent, inaction or stipulation" *Basso v. Utah Power and Light Company*, 495 F.2d 906 (10th

Cir. 1974) citing *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). The

Plaintiffs cannot have waived this Court's subject-matter jurisdiction:

> one might say that there never was a cure, but that the party who failed to object before the end
> of trial forfeited his objection. This is logical enough, but comes up against the established
> principle, reaffirmed earlier this Term, that "a court's subject-matter jurisdiction cannot be
> expanded to account for the parties' litigation conduct."

*Grupo Dataflux v. Atlas Global Group, supra.*

Unlike the complex jurisdictional situation in *Dataflux*, there was no change of citizenship during the

instant proceedings, but the outcome is the same: "this case fails to *present* "two adverse parties [who]

are not co-citizens." *State Farm Fire & Casualty Co., supra*" (emphasis added). As the dissent in

*Dataflux* stated the facts, the instant case can be distinguished from "*Caterpillar* and *Newman-Green,*"

which "by contrast, involved parties who were minimally, but not completely, diverse at the time

federal-court proceedings began. *Caterpillar, 519 U. S., at* 64-65; *Newman-Green, 490 U. S., at 828*;

*supra, at* 587-589." The fact that plaintiffs appealed, which might have been an opportunity to raise

subject-matter jurisdiction, is also irrelevant to the analysis. In *Mitchell v. Maurer,* 293 U.S. 237, 243-

44, 55 S.Ct. 162, 79 L.Ed. 338 (1934), "the Insurance Commissioner filed in the federal court, on May

2, 1933, a motion to vacate its order appointing the ancillary receivers; to dissolve the restraining order;

and to dismiss the petition of the primary receivers." Diversity of citizenship, though facially apparent

from the caption, never existed.

> Unlike an objection to venue, lack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties. An appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review. *Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382.* Hence, the failure of the Insurance Commissioner to claim, in his petition for certiorari, that the order of the District Court was void for lack of federal jurisdiction of the suit, and his failure otherwise to call to the attention of this Court the lack of diversity of citizenship are immaterial.

It was the burden and obligation of Mr. Handshoe, including under Federal Rule of Civil

Procedure 11, and after that, the duty of the federal courts, to review subject-matter jurisdiction. "We

repeatedly have instructed that before proceeding with a case, federal trial and appellate courts have the

duty to examine the basis for their subject matter jurisdiction, doing so on their own motion if

necessary" *Torres v. Southern Peru Copper Corp.*, 113 F.3d 540 (5th Cir. 1997). Respectfully, despite

being on notice to the stateless citizen status of the plaintiffs, neither this Honorable Court nor the

Court of Appeal for the Fifth Circuit ever examined the existence of the constitutionally required

diversity jurisdiction.

> *Steel Co.* held that Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case. "For a court to pronounce upon [the merits] when it has no jurisdiction to do so," *Steel Co.* declared, "is . . . for a court to act *ultra vires*." 523 U. S., at 101-102.

Ruhrgas Ag v. Marathon Oil Co., 526 US 574 - Supreme Court 1999 citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2D 210 (1998).

> It is true, as a general rule, that a man cannot reverse a judgment for error in process or delay, unless he can shew that the error was to his disadvantage; but it is also a rule, that he may *reverse a judgment for an error of the Court*, even though it be for his advantage. [. . .]
>
> Here *it was the duty of the Court to see that they had jurisdiction*, for the consent of parties could not give it.
>
> It is therefore an error of the Court, and the plaintiff has a right to take advantage of it. [. . .] the judgment was reversed. (emphasis added; citations removed)

Capron v. Van Noorden, 6 US 126 - Supreme Court 1804, cited by Judge Graves, *Stuart v. University of Miss.*, 21 So. 3d 544 (Miss. 2009).

## Summary

21

This district court never had subject-matter jurisdiction over this case, as minimal diversity of citizenship was never established, minimal diversity was never addressed or adjudicated, and there existed facts in the record tenindg to case in doubt minimal diversity required by the SPEECH Act and Art. III for a case removed from state court. The underlying presumption against federal jurisdiction was never rebutted. This was therefore a usurpation of power from the state court, and all judgment are void. This court must vacate all judgments in this case and remand the case to Hancock County Circuit Court. Mr. Handshoe and his attorneys should be sanctioned for conduct that resulted in avast waste of judicial time and resources and the plaintiffs' time and resources.

Respectfully submitted this ⟵ day of June, 2016.

Vaughn J. Perret

## CERTIFICATE OF SERVICE

I, Vaughn Perret, do hereby certify that I have sent a true and correct copy of the foregoing documents by using facsimile and email to:

G. Gerald Cruthird, Esq.
P.O. Box 1050
Picayune, Mississippi 39466
ggeraldc@bellsouth.net

Jack E. Truitt, Esq.
The Truitt Law Firm, LLC
149 North New Hampshire Street
Covington, Louisiana 70433
mail@truittlaw.com

This _____ day of June, 2016

Vaughn J Perret
189 Trout Point Road
E. Kemptville, Nova Scotia B5A 5X9
CANADA
(902) 761-2142
(800) 980-0713 facsimile
foodvacation@gmail.com