IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TROUT POINT LODGE, LIMITED,                          PLAINTIFFS
VAUGHN PERRET AND CHARLES LEARY

VS.                                 CIVIL ACTION NO. 1:12CV90

DOUG K. HANDSHOE                                      DEFENDANT


**TRANSCRIPT OF HEARING ON MOTION FOR CONTEMPT**


BEFORE THE HONORABLE LOUIS GUIROLA
UNITED STATES DISTRICT JUDGE

JULY 27, 2017
GULFPORT, MISSISSIPPI


APPEARANCES:

FOR THE DEFENDANT:

    G. GERALD CRUTHIRD, ESQUIRE
    POST OFFICE BOX 1056
    PICAYUNE, MISSISSIPPI  39466




REPORTED BY:  TERI B. NORTON, RMR, FCRR, RDR
              Mississippi CSR #1906
              2012 15th Street, Suite 403
              Gulfport, Mississippi  39501
              (228) 563-1748

1    **THE COURT:** All right. Madam clerk, I believe we
2 have a civil matter scheduled this afternoon -- this morning.
3 Would you please call the case.
4    **THE CLERK:** Civil Case Number 1:12cv90, Trout Point
5 Lodge, Limited, et al versus Doug K. Handshoe set for a hearing
6 on Motion for Contempt.
7    **MR. CRUTHIRD:** Your Honor, Gerald Cruthird appearing
8 for Douglas Handshoe.
9    **THE COURT:** Counsel for the defendant, Mr. Handshoe.
10 Is Mr. Handshoe here today?
11    **MR. CRUTHIRD:** Yes, sir, he is, and his wife.
12    **THE COURT:** All right. Would they like to sit with
13 you at counsel table? I would invite them to do so if they
14 wish.
15    **MR. CRUTHIRD:** Thank you, Your Honor.
16    **THE COURT:** What says the plaintiff, Trout Point
17 Lodge, Limited? Are they here? Is anyone here on their
18 behalf?
19    All right. Mr. Cruthird, it is apparent that no one is
20 here on behalf of Trout Point Lodge, Limited or the additional
21 plaintiffs, Mr. Perret and Mr. Leary. It may be -- let me ask
22 you this. Teri, can you hear him from counsel table over
23 there? It might be better if you would go to the lectern,
24 Mr. Cruthird.
25    **MR. CRUTHIRD:** Thank you, Your Honor.

1      **THE COURT:**  I am familiar with and I've read your
2  motion, as well as your memorandum in support of that motion in
3  which you seek to hold these plaintiffs in contempt for their
4  failure to abide by an order of the Court which required them
5  to appear for examination by a judgment debtor.  My
6  understanding in reading your motion was that you served Trout
7  Point Lodge, Limited.  Were you able to actually -- and of
8  course, it does me no good to hold Trout Point Lodge, Limited
9  in contempt.  I have no real power in that regard, but were you
10 able to serve Mr. Perret or Mr. Leary?
11     **MR. CRUTHIRD:**  Yes, sir.  I'm not sure where the
12 microphone is right here.
13     **THE COURT:**  It is right in front of you.
14     **MR. CRUTHIRD:**  Okay.  Yes, sir, Your Honor, they were
15 both served -- if Mr. Handshoe will hand me -- I believe
16 sometime in June but more than the time period the Court
17 required prior to this hearing.
18     **THE COURT:**  How was that service effectuated?
19     **MR. CRUTHIRD:**  Personal service.  Let's see, Your
20 Honor.  Well, it appears that this constable served an agent
21 for the defendants, manager of their lodge.  This lodge is in
22 some remote area in I believe Nova Scotia, and it is locked
23 part of the year, but this gentleman was able to make entry,
24 and his return indicates that he served Sophia Gruber, manager
25 of reception of that organization of Trout Point Lodge, Ltd.

1   **THE COURT:** So what you are telling me is that a
2   process server actually went to Nova Scotia?
3   **MR. CRUTHIRD:** Yes, sir.
4   **THE COURT:** And rather than serving the individual
5   plaintiffs in this case served a person who was present at the
6   Trout Point Lodge there in Nova Scotia?
7   **MR. CRUTHIRD:** And represented herself to be an agent
8   or an employee.
9   **THE COURT:** All right.
10  **MR. CRUTHIRD:** Your Honor, these respondents have
11  been active in the Mississippi state courts, as well as federal
12  court. I can go through the history, but they have been very
13  active. There's a myriad of suits that they filed, and they
14  filed some suits in Canada. So while taking advantage of
15  Mississippi law and also the United States law, when
16  convenient, they retreat to Canada and hide behind their law.
17  **THE COURT:** Well, let me ask you this, Mr. Cruthird,
18  and I'm not unsympathetic to the plight that you and your
19  client face with individuals that do not live in or do a lot of
20  business here in the states. What is it that you want me to do
21  that will accomplish some goal?
22  **MR. CRUTHIRD:** All right, Your Honor. We are
23  prepared to assert two suggestions for sanctions. The one that
24  was discussed with Your Honor and the Court I think back at the
25  earlier date, last date this matter was before the Court, about

1  an attachment to the body, we don't believe that that probably
2  would be legal in Canada.  So we came prepared with a couple of
3  other suggestions.
4          **THE COURT:**  All right.
5          **MR. CRUTHIRD:**  Without going -- I'm sure Your Honor
6  is well aware of your well written, well reasoned opinion you
7  rendered in I think the fall of 2012, which was upheld in an
8  appeal by these defendants or these judgment debtors to the
9  Fifth Circuit in another lengthy opinion.
10      At some point after you rendered your opinion, one of
11 these suits was filed by them, and sadly, or regretfully, it
12 contains subject matter that really should have been collateral
13 estoppel or res judicata should have applied, but Mr. Handshoe,
14 in trying to deal with the suit up there, was found to have
15 submitted to personal jurisdiction and a judgment was rendered
16 in December of 2014.  And then ever since then, they have been
17 trying to enforce that down here through a -- commenced with an
18 initial filing in Hancock County Circuit Court to enforce a
19 foreign judgment, and then that was dismissed by Circuit Court
20 Judge Lisa Dodson for their failure to comply with the
21 statutory requirements, with affidavit, et cetera.  And then it
22 was refiled.  And after argument, Judge Schmidt, Christopher
23 Schmidt of this circuit court district here on the coast -- I'm
24 not sure whether it's the seventh district, eighth district, or
25 one of them -- but anyway, he rendered an order in early

1   January of this year to enforce the foreign judgment.  And we
2   have had court action in that case wherein we asserted a
3   defective writ of execution was sought to be executed upon or
4   levied upon and sold.  So that is still an ongoing proceeding
5   in which these very individuals are seeking to avail themselves
6   of the Mississippi laws.  And we would suggest first that --
7           **THE COURT:**  Could you not -- if they are seeking to
8   enforce a judgment against Mr. Handshoe, could you not seek a
9   counterclaim or a cross-claim against that company in that
10  state court action?
11          **MR. CRUTHIRD:**  Well, we are past that because after
12  he, unfortunately, as Judge Schmidt found, submitted to
13  personal jurisdiction, withdrew, and they took a default
14  judgment.  And again, regretfully, sadly, it pretty much
15  contained the subject matter that your case involved, this case
16  involved.  But anyway, we are on the collection end, and what
17  we would like to request the Court to do would be to enjoin
18  these three judgment debtors from further collection action,
19  and therefore their attorneys, until they make themselves
20  available or compelled to submit themselves to this Court's
21  jurisdiction on the previously ordered judgment debtor
22  examination.  That's our first suggestion.
23          **THE COURT:**  So you would ask for this Court to enter
24  an injunction against these parties, that's Trout Point Lodge,
25  Vaughn Perret and Charles Leary, to enjoin them from making any

1  efforts to collect their foreign judgment against your client
2  until they have responded to this request for the examination
3  of a judgment debtor?
4          **MR. CRUTHIRD:**  Yes, sir.  Yes, Your Honor.
5          **THE COURT:**  What is your next suggestion?
6          **MR. CRUTHIRD:**  Well, the other suggestion or
7  alternative would be for this Court to order a writ of
8  execution from the clerk of this court to be issued against the
9  proceeds, if any, that are derived from the enforcement of that
10 foreign judgment in state court.  It's a Hancock County
11 judgment that is now in Stone County because that's where Mr.
12 and Mrs. Handshoe reside.  It's a personal judgment against
13 them.
14      I mean, our preference is the first one because that would
15 be more coercive potentially to persuade them to come into this
16 court, come into this jurisdiction, and submit themselves to
17 the examination that you had ordered basically for last fall
18 and then again for today.  But that other alternative exists
19 for the Court's consideration.
20         **THE COURT:**  All right.  Now, I'm trying to keep my
21 head wrapped around this, if I can.
22         **MR. CRUTHIRD:**  Yes, sir.
23         **THE COURT:**  There is in existence now a judgment by
24 these plaintiffs against your client in the state court?
25         **MR. CRUTHIRD:**  That is correct, Your Honor.

1       **THE COURT:** It is in the form of a default judgment?

2       **MR. CRUTHIRD:** That is correct, Your Honor.

3       **THE COURT:** Did you make any effort to set that
4  default judgment aside?

5       **MR. CRUTHIRD:** We fully contested its enforcement
6  under Mississippi's enforcement procedure of a foreign
7  judgment, and the -- while I still believe that the argument
8  about jurisdiction -- I mean subject matter jurisdiction had
9  already been ruled upon by Your Honor in this convoluted case
10 that you tried and rendered your decision on and was affirmed
11 with the Fifth Circuit, the state court judge, the Honorable
12 Judge Schmidt, found that he had submitted to personal
13 jurisdiction.

14      **THE COURT:** All right. Well, even though he may have
15 submitted to personal jurisdiction, a default judgment was
16 entered against your client. My recollection even under state
17 law is that default judgments are very easy to set aside and
18 should be set aside with great deference in the event that
19 there is a legitimate defense, and it seems to me that you may
20 have those. Did you make any effort to set aside the default
21 judgment? Would that not be one way to get back into state
22 court?

23      **MR. CRUTHIRD:** The default was in Canada. Now, Your
24 Honor --

25      **THE COURT:** The default was in Canada?

1         **MR. CRUTHIRD:**  Yes, sir.

2         **THE COURT:**  Then -- well, then, I must be mistaken,
3    or I'm misinformed.  There was no separate state action here in
4    Mississippi?

5         **MR. CRUTHIRD:**  No, sir.  Now, there are civil
6    actions, you know, that have been pending, or have been
7    pending, and I know Your Honor handles thousands of cases.  At
8    one point Mr. Handshoe did try to remove the enforcement of the
9    foreign judgment back to you, or really twice.  But his counsel
10   that had represented him so ably in the trial before you and in
11   the Fifth Circuit appeal and all has been sued by these
12   defendants, judgment debtor defendants, and he did not assist
13   Mr. Handshoe in the removal attempts that you ruled against him
14   on.

15        Well, again, falling back to our suggestion that this
16   would be an ample sanction because it wouldn't be final.  It
17   just would be injunctive relief until such time that they
18   decide they are going to come down here and litigate or
19   participate.

20        **THE COURT:**  I'm uncomfortable with that, and let me
21   tell you why, because, in essence, I would be enjoining -- the
22   federal court would be enjoining the parties from taking action
23   in a state action over which I have no real control, that is,
24   the Stone County action.  And it may very well exceed my
25   authority.  In other words, you could ask for the same relief

1  in the state court, that they be enjoined in the state court
2  from enforcement.
3         This is, quite frankly, a Gordian Knot.  I'm uncomfortable
4  with your suggestion, but I think Mr. Handshoe is entitled to
5  something.  I'm struggling with what to give him.  I don't want
6  to give him an order which is unavailing and which does not
7  produce some edible fruit, if you will.  That's my dilemma
8  here.
9         **MR. CRUTHIRD:**  Well, I would submit that you do have
10 jurisdiction.  Both of those circuit court actions are within
11 your district.  I mean, they also -- we are not asking you to
12 enjoin the honorable circuit judge.  We are asking you to
13 enjoin the non-cooperating litigants here.  And I have no -- I
14 really have no comparison in my four years of practice other
15 than -- I mean, you may laugh at this.  I have stopped justice
16 court or county court litigants by having a chancellor or a
17 circuit judge wrap up the litigation or wrap it up -- and I
18 realize that we had a couple of bites at the apple with the
19 removal that would have brought this back to you, but this
20 wouldn't be a final sanction.  It would just be a sanction just
21 as any number of sanctions, like such as incarceration to
22 coerce them into cooperating.
23        **THE COURT:**  Yes, but that brings us back to the other
24 dilemma that I have, and that is that these individuals have
25 not been personally served.  Quite frankly, they have been

1   served in a foreign country and through an agent, which may be
2   insufficient.
3       All right.  I'm inclined to do one of two things, and I
4   don't want you to spend any more time or any more resources on
5   this than you absolutely have to.  Mr. Handshoe has a $48,000
6   judgment out there that he may or may not be able to collect.
7   He was entitled to attorney's fees.  Attorney's fees are what
8   he got in the federal court.  I'm inclined to either give you
9   an opportunity to further brief my authority as a sanction to
10  enjoin these defendants from further collection proceedings,
11  and within that additional briefing to discuss whether or not
12  the Court -- or whether or not these parties have been properly
13  served through an agent in a foreign country.  Or my other
14  inclination, frankly, is to go ahead and provide you with an
15  order in which the Court will order these defendants to show
16  cause of why they have not appeared here today at this hearing
17  and give you another opportunity to get them served personally.
18  In other words, I'm looking for you to give me -- give me
19  some --
20      **MR. CRUTHIRD:**  Perhaps Mr. Handshoe can go up there
21  and personally deliver the agent to serve them.
22      **THE COURT:**  Well, the agent, I don't think that is a
23  problem.  An agent --
24      **MR. CRUTHIRD:**  I meant a process server.  I'm sorry.
25      **THE COURT:**  Well, another question is, would we have

1   the authority to go into a foreign country and serve an
2   individual with a -- I frankly am at a loss here.
3          **MR. CRUTHIRD:**  I believe we would take the second
4   alternative, Your Honor, if we have a choice, to go back and
5   try to serve them personally and brief it.
6          **THE COURT:**  All right.  Why don't you talk that over
7   with Mr. Handshoe.  You know, there comes a time when matters
8   that we take up -- and I'm aware that Mr. Handshoe has been
9   wronged and is entitled to recover his attorney's fees.  But at
10  some point, we reach a level of diminishing return, maybe not
11  even diminishing return but no return at all, and we start
12  going into the red.
13         **MR. CRUTHIRD:**  Yes, sir.
14         **THE COURT:**  But, of course, that's not a decision
15  that's up to me.  That's more of a practical decision, not
16  necessarily a legal decision.  It's one that Mr. Handshoe
17  himself must struggle with in his own heart.  Why don't you
18  talk that over with your client and then let me know what you
19  want to do, and I will do the best that I can with my
20  limited -- rumors of my authority have been greatly
21  exaggerated, and I will do what I can within the limits of my
22  authority.
23         **MR. CRUTHIRD:**  I understand, Your Honor.  I can come
24  back and inform the clerk or whoever here shortly, if that's
25  acceptable.

1          **THE COURT:**  That would be perfectly fine.  I don't
2   want to discommode Mr. Handshoe or waste any of his time if I
3   don't absolutely -- well, there's never a good reason to waste
4   anyone's time, but I would like to see something productive
5   done here and not simply spinning our wheels in the mud.  All
6   right?
7          **MR. CRUTHIRD:**  Thank you, Your Honor.
8          **THE COURT:**  Thank you and I thank your clients.  We
9   will recess this hearing at this time, and I will wait to hear
10  from you.
11         **MR. CRUTHIRD:**  Thank you.
12         **THE COURT:**  Thank you.  You may be excused.
13                    (HEARING CONCLUDED)
14
15
16
17
18
19
20
21
22
23
24
25

```
 1
 2
 3                    CERTIFICATE OF COURT REPORTER
 4
 5         I, Teri B. Norton, RMR, FCRR, RDR, Official Court
 6   Reporter for the United States District Court for the Southern
 7   District of Mississippi, appointed pursuant to the provisions
 8   of Title 28, United States Code, Section 753, do hereby certify
 9   that the foregoing is a correct transcript of the proceedings
10   reported by me using the stenotype reporting method in
11   conjunction with computer-aided transcription, and that same is
12   a true and correct transcript to the best of my ability and
13   understanding.
14         I further certify that the transcript fees and format
15   comply with those prescribed by the Court and the Judicial
16   Conference of the United States.
17
18
19
20         s/ Teri B. Norton
           TERI B. NORTON, RMR, FCRR, RDR
21         OFFICIAL COURT REPORTER
22
23
24
25
```